IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO – Cleveland Division

| | | | |
|---|---|---|---|
| DEMETRIUS KERN | : | Case No. | 1:23-cv-1327 |
| Plaintiff | : | | |
| v. | : | | |
| NAFTALI WOLF, et. al. | : | | |
| Defendants | : | | |

<u>**PLAINTIFF'S MOTION TO COMPEL**</u>

Plaintiff, through Counsel, moves this Court for an order compelling discovery from the Defendants.  Pursuant to L.R. 37.1, the undersigned counsel, by their signatures below, certify that have made sincere, good faith efforts to resolve these disputes, have met and conferred, and exhausted extra-judicial means.  Broadly speaking, these discovery disputes involve two issues and involves a refusal to answer deposition questions on these topics, as well as to respond to written discovery related to the same issues.  First, Defendants have obstructed limited discovery on financial related net-worth discovery as to Defendants Wolf and Lewis, even though punitive damages were plead against them (and, while not required, warranted under the facts of this case), and even though Defendant Wolf explicitly plead a due process defense that implicates this discovery.

Second, Defendant Wolf has asserted a psychotherapist-patient privilege into discovery involving his mental health treatment, even though he has placed his treatment for anger management and PTSD at issue and even though he produced to his employer summaries of treatment that waived any privilege, as justifying or at least mitigating his actions towards the Plaintiff in this case.  That sort of sword and shield use of the privilege is a waiver under Sixth Circuit case law.  A memorandum in support is attached, as is a proposed order.

1

Respectfully submitted (and certified as provided above),

/s/ Christopher Wiest                          /s/Thomas B. Bruns
Christopher Wiest (Ohio 0077931)       Thomas B. Bruns (Ohio 0051212)
Chris Wiest, Atty at Law, PLLC            Bruns, Connell, Vollmar, Armstrong
25 Town Center Blvd, Suite 104           4555 Lake Forrest Dr., Suite 330
Crestview Hills, KY 41017                     Cincinnati, OH 45242
513/257-1895 (v)                                  513-312-9890 (v)
859/495-0803 (f)                                   tbruns@bcvalaw.com
chris@cwiestlaw.com
**Attorneys for Plaintiff**

<u>**MEMORANDUM IN SUPPORT**</u>

**I.     FACTS**

This case arises out of a series of constitutional violations (and the commission of state torts) against the Plaintiff, by Defendants, Naftali Wolf, Carly Lewis, and the City of Cleveland Heights.  (Compl., Doc. 1). Wolf and Lewis are sued individually, with punitive damage claims asserted against them.  *Id.*  Most of the interactions of Wolf and Lewis are captured on body worn cameras.

**A.   <u>The net worth of Lewis and Wolf in light of punitive damage claims</u>**

1.   <u>Depositions and written discovery were directed at Lewis and Wolf</u>

Defendants Lewis and Wolf were each asked questions about net worth in their respective depositions, and, in each case, and without obtaining or seeking a protective order, both refused to answer questions related to their net worth.  First, Defendant Lewis declined to answer any questions on two years of net worth.  (Depo. Lewis at 255-257, attached hereto as

Exhibit 1).[1]  The same occurred during the deposition of Naftali Wolf.  (Depo. Wolf at 317-319,

attached hereto as Exhibit 2).[2]

---

[1] Q   Do you have a bank account?

A   I do.

Q   Where is that at?

MR. BECK:  She's not going to give you  any of that.  You don't have a right to that knowledge  now.

MR. WIEST:  Okay.  We have punitive damages in this case, and I am entitled under existing  precedent to ask questions about the amounts of her  assets for the purposes of having the jury assess the  amount of punitive damages.

MR. BECK:  I know that, but I've just  never had anybody try to get it this early in the  case.  What I'm suggesting to you is that if the case  proceeds closer, I'm going to give you information on  that.  And I want to put it on the record, and I don't  think it's relevant at this point.

MR. WIEST:  Are you instructing her not  to answer?

MR. BECK:  I am.

MR. WIEST:  Okay.  For the record, I  was going to ask, and I'm assuming the instruction is  not to answer, about bank account amounts, other  account amounts, net worth, net assets for the  preceding two years, and I'm assuming that you're  going to instruct her not to answer on all of that for  the record.

MR. BECK:  I am.   (Depo. Lewis at 255-257).

[2] MR. BRUNS:  Now this is for you: We're switching gears.  I am going to ask your client about his personal assets to include his net assets over the last two years.

MR. SPYKER:   I'm going to take the same position Greg Beck took when you were asking Carly Lewis the same things.

MR. BRUNS:  Okay.  And you're instructing him not to answer and you're refusing to let him answer any questions regarding his collectability in terms of a punitive damage award.

MR. SPYKER:   Correct.  Yes.
…

Q.  I'm going to, I'll ask you questions, I'm about to ask you questions regarding your net assets within two years of this incident and – or today, I should say, because we have a claim for punitive damages and that's one of the issues that arises in a claim for punitive damages and my understanding is your attorney is going to instruct you not to answer any questions at all on those issues. And are you instructing him?

MR. SPYKER:   Yeah.  How we would normally handle this is bifurcate the issue.  If you get there, we will allow discovery on that if we ever get to that point. For the purposes of this deposition, his privacy, et cetera, same position Greg Beck took with Carly Lewis's deposition.  I'm going to advise you not to answer those questions. You now have to make the choice whether or not to follow my instruction or answer questions about your financial assets that opposing counsel wants to ask you.
…
Q.  Are you following the advice of your lawyer and you're refusing to those answer those questions?

Plaintiff likewise propounded an Interrogatory, and two requests for production to Defendants Wolf and Lewis, targeted at the net worth issue (Interrogatory No. 20[3] and two RFPs that were both numbered RFP 35).[4]  See Declaration Wiest, attached as Exhibit 3 hereto, at Exhibits A and B.  Defendants objected to both and refused to answer.  *Id.* at Exhibits C and D. The parties have exhausted extra judicial measures regarding this issue.  (see Declaration Wiest, Exhibit 3, at Exhibits E and F).

---

A.  Yes.  (Depo. Wolf at 317-319).

[3] **Interrogatory No. 20**: For Defendants Wolf and Lewis, identify with particularity the details of each Defendant's net worth for the years 2022, 2023, or 2024 to date. For the avoidance of all doubt, this includes an identification of any assets and amounts of such assets, including beneficial interests (i.e. bank statements, real property deeds, automobile titles, and the account location and amount), as well as liabilities (i.e. judgments, mortgages or liens and the holder and amount of such liabilities).

**Wolf's Response**: Objection. The request is not relevant to any claim or defense and not proportional to the needs of the case. Further, at this stage of the case, the request is unduly invasive of Defendant's privacy. Subject to and without waiving any objections, as counsel has already been told, this Defendant will allow discovery as relevant if and when underlying claims survive.

**Lewis/City's Response**: Objection.  The request is not relevant to any claim or defense and not proportional to the needs of the case. Further, at this stage of the case, the request is unduly invasive of Defendant's privacy. Subject to and without waiving any objections, as counsel has already been told, this Defendant will allow discovery as relevant if and when underlying claims survive.

[4] **RFP 35 (first instance)**. For Defendants Wolf and Lewis, produce copies of any federal and/or state tax returns for the years 2022 or 2023.

**Wolf's Response**: Objection. The request is not relevant to any claim or defense and not proportional to the needs of the case. Further, at this stage of the case, the request is unduly invasive of Defendant's privacy. Subject to and without waiving any objections, as counsel has already been told, this Defendant will allow discovery as relevant if and when underlying claims survive.

**Lewis/City's Response**:  Objection. This request is not relevant to the involved claims.

**RFP 35 (second instance)**. For Defendants Wolf and Lewis, produce copies of any documents reflecting defendant's net worth and financial condition for the years 2022, 2023, and/or 2024 to date. For the avoidance of all doubt, this includes any document reflecting assets (i.e. bank statements, income or pay stubs, real property deeds, automobile titles, etc.), as well as any document reflecting liabilities (i.e. judgments, mortgages or liens).

**Wolf's Response**: Objection. The request is not relevant to any claim or defense and not proportional to the needs of the case. Further, at this stage of the case, the request is unduly invasive of Defendant's privacy. Subject to and without waiving any objections, as counsel has already been told, this Defendant will allow discovery as relevant if and when underlying claims survive.

**Lewis/City's Response**:  Objection. This request is not relevant to the involved claims

2.  <u>The claims against Lewis and Wolf and defenses raised by them and procedural history</u>

This matter was initiated via a verified complaint that sought, among other things, punitive damages against Wolf and Lewis, in their individual capacities, for violations of the Plaintiff's civil rights.  (Ver. Compl., Doc. 1, PageID#1-20).  Specifically, there are Fourth and First Amendment Claims against Wolf and Lewis, *id.* at ¶¶ 62-84, along with a specific punitive damage claim against both related to that claim.  *Id.* at ¶72, 83.  There is a bevy of state law claims against Wolf and Lewis, *id.* at ¶¶ 85-109, with associated punitive damage claims.  *Id.* at ¶¶94-95, 100-101, 108-109.

Wolf asserted a due process defense to punitive damages, placing his net worth plainly at issue.  (Answer Wolf, Doc. 11, at Fifteenth Defense, PageID#66).  The parties consented to a scheduling order (Doc. 14), and the court entered a scheduling order that ***did not bifurcate these proceedings or discovery***, including with respect to punitive damage discovery (Doc. 15).

3.  <u>Plaintiff has established sufficient evidence for punitive damages to go to the jury</u>

While not required for discovery on net worth on punitive damages, Plaintiff has likewise established sufficient evidence via body camera footage, to submit punitive damages to the jury.[5]

That includes claims on unlawful detention.  *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *United States v. Hardnett*, 804 F.2d 353, 356 (6th Cir. 1986); *United States v. Hill*, 195 F.3d 258, 267 (6th Cir. 1999).  And false arrest.  *Taylor v. Michigan Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Webb v. United States*, 789 F.3d 647, 660 (6th Cir. 2015).  Clearly established law made clear that merely refusing to

---

[5] These are authenticated with the declaration of Mr. Wiest, and have been filed conventionally as Exhibits 11 and 12.  This is not all of the evidence on why punitive damages are available and appropriate here.  For instance, available evidence is that Lewis and Wolf met after the interaction with Mr. Kern in a synagogue for purposes of getting their stories straight, suggesting a concerted effort to manufacture a cover up.  (Depo. Wolf at 39-42).

identify was plainly insufficient under an obstruction charge (as was Mr. Kern's photographing and speaking/arguing with the officers), particularly where the evidence is clear that he complied with directives of police and Lewis to stand back until she was ready to speak with him, and he did so for several minutes. *Wright v. City of Euclid*, 962 F.3d 852, 873 (6th Cir. 2020); *Jones v. City of Elyria*, 947 F.3d 905, 915 (6th Cir. 2020); *Patrizi v. Huff*, 690 F.3d 459, 464 (6th Cir. 2012).

Lewis was told by Mr. Kern that she had not activated her lights and sirens, had almost hit him, and he wanted to obtain her name and badge number in order to file a complaint. *See* Declaration Wiest with conventional filing of BWC video for Lewis and Wolf. Mr. Kern stated several times to Lewis that he was upset with Defendant Lewis' actions. *Id.* Mr. Kern stated that Wolf was violating his rights as well as Plaintiff's repeated verbal refusals to accede to the illegal demand to identify himself by Lewis and Wolf. *Id.* This is all protected speech under clearly established rights. *City of Houston v. Hill*, 482 U.S. 451, 461-463 (1987), *McCurdy v. Montgomery County*, 240 F.3d 512, 520 (6th Cir. 2001), *Barnes v. Wright*, 449 F.3d 709, 718 (6th Cir. 2006), *Greene v. Barber*, 310 F.3d 889, 895-96 (6th Cir. 2002). Adverse actions are taken against Mr. Kern in short order after this speech, in which he is detained, arrested and then the detention continues right after the speech. That is more than sufficient for all three elements of the First Amendment retaliation claim. *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999).

"Punitive damages are appropriate in a § 1983 action 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *King v. Zamiara*, 788 F.3d 207, 216 (6th Cir. 2015) (*quoting Smith v. Wade*, 461 U.S. 30, 56 (1983)). Moreover, proving punitive damages on a § 1983 claim does not necessarily require proof of malice (though the evil motive

or intent aspect of the damages would also suffice). *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999). Similarly, federal law does not require the intentionality that state law does for punitive damages, but permits such damages where there is evidence of a "reckless or callous disregard for the plaintiff's rights …" *Smith*, 461 U.S. 30, 51.

Case law in the Sixth Circuit establishes that these violations by Defendants of clearly established rights is sufficient to establish the entitlement to a punitive damage instruction. *Dorr v. City of Ecorse*, 305 Fed. Appx. 270 (6th Cir. 2008); *Wesley v. Campbell*, 864 F.3d 433 (6th Cir. 2017); *Burkhart v. Randles*, 764 F.2d 1196 (6th Cir. 1985). In the First Amendment retaliation claim context, the Sixth Circuit has made clear that "a defendant who has been found liable for First Amendment retaliation has engaged in conduct that warrants consideration of an award of punitive damages." *King*, 788 F.3d 207, 217. Said another way, Plaintiff has sufficient evidence, based on the body camera alone, for the punitive damages claims to go to the jury.

### B. Discovery directed at Wolf's mental health treatment

1. Wolf asserts a privilege objection over mental health treatment in his deposition and by way of written discovery

Wolf asserted a privilege objection over mental health treatment in his deposition. (Depo. Wolf at 33-35, Exhibit 2). Plaintiff likewise propounded requests for production to Defendants Wolf and the City, targeted at the treatment issue (RFP 33).[6] See Declaration Wiest,

---

[6] RFP 33. Produce copies of any and all mental health records and/or documents of any kind, to include treatment summaries and/or progress notes and/or opinion statements, provided to the City of Cleveland Heights and/or its police department and relating to the diagnosis and/or treatment for anger management issues and/or PTSD, by Naftali Wolf or any of his treatment providers, from January 1, 2022 to the present.

**Wolf Response**: Objection. The request is not relevant to any claim or defense and not proportional to the needs of the case. Further objection, the requested material is privileged and that privilege has not been waived.

**City/Lewis Response**: Objection, to the extent this request is for medical information of Sgt Wolf, the City will not provide any information without Sgt Wolf's consent. However, for purposes of providing information, there are no responsive documents.

attached as Exhibit 3 hereto, at Exhibits A and B.  We have also indicated that we intended to

subpoena these providers once the privilege issue is resolved.  *See id.* at Exhibit E.

>   2.  <u>Facts regarding waiver of the privilege regarding mental health treatment by</u>
>       <u>putting the treatment at issue and providing records of the treatment to third</u>
>       <u>parties (the city)</u>

Wolf himself, in proceedings before the City in disciplinary hearings over the arrest of

Mr. Kern, utilized as a defense his ongoing treatment for anger management and PTSD.   (Depo.

Wolf at 226-228, 234-235, Exhibit 2 hereto and Exhibit 35 to the deposition attached).  Chief

Britton, as FRCP 30(b)(6) representative, confirmed these disclosures.  (Depo. Britton at 145-

148, Exhibit 4 hereto, and Exhibit 35 to the deposition).  As part of the disposition of the

discipline, Wolf was required to "continue with your counseling and will be required to provide

proof of participation and periodic updates documenting your progress with your medical

provider."  *Id.*  And Wolf has been submitted letters from his psychiatrist documenting his

continued treatment for PTSD and anger management to the City.  (Depo. Wolf, Exhibit 2, at

237-239).

## II.    LAW AND ARGUMENT

FRCP 37(a) provides that

(a) Motion for an Order Compelling Disclosure or Discovery.

(1) *In General.* On notice to other parties and all affected persons, a party may move for an order
compelling disclosure or discovery. The motion must include a certification that the movant has
in good faith conferred or attempted to confer with the person or party failing to make disclosure
or discovery in an effort to obtain it without court action.
(B) *To Compel a Discovery Response.* A party seeking discovery may move for an order
compelling an answer, designation, production, or inspection. This motion may be made if:
…
(iii) a party fails to answer an interrogatory submitted under Rule 33; or
(iv) a party fails to produce documents or fails to respond that inspection will be permitted—or
fails to permit inspection—as requested under Rule 34.

FRCP 26 (b) governs the scope of discovery, and indicates, generally, that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense … Information within this scope of discovery need not be admissible in evidence to be discoverable."

Caselaw is clear that "a plaintiff should not be denied access to information necessary to establish her claim…" *Lestienne v. Layne*, 2011 U.S. Dist. LEXIS 116228, 2011 WL 4744912 at *2 (W.D. Ky. October 7, 2011) (*citing Surles v. Greyhound Lines, Inc*., 474 F.3d 288, 305 (6th Cir. 2007). Generally speaking, courts should construe Rule 26 relevance broadly. *Invesco Inst'l (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 380 (W.D. Ky. 2007); *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). "Any information that bears upon the likelihood of any issue that is or is likely to be raised in the case is relevant for purposes of discovery." *Locke v. Swift Transp. Co. of Ariz., LLC*, 2019 U.S. Dist. LEXIS 17412 (KYWD 2019). "Relevant material for the purpose of discovery will encompass any matter that may bear upon, or reasonably could lead to other matters that could bear upon, any issue that is or likely may be raised in the case." *Roach v. Hughes, et. al.*, 4:13-CV-00136-JHM-HBB, Docket #12, 2014 U.S. Dist. LEXIS 200815 (W.D. Ky. May 7, 2014). The party resisting discovery bears a heavy burden to "establish either that the material requested does not fall within the broad scope of relevance under Rule 26(b)(1) or is so marginally relevant that the potential harm resulting from the production clearly outweighs the presumption in favor of disclosure." *Invesco Inst'l (N.A.), Inc.*, 244 F.R.D. 374, 380.

**A. Discovery seeking current financial net worth, and a two-year lookback on financial position information, is highly relevant as to the punitive damages claims, and to the fraud claims**

As noted, deposition questions and written discovery seek _current_ financial holding information for Lewis and Wolf.  Defendants Lewis and Wolf were each asked questions about net worth in their respective depositions, and, in each case, and without obtaining or seeking a protective order, both refused to answer questions related to their net worth.  (Depo. Lewis at 255-257, attached hereto as Exhibit 1; Depo. Wolf at 317-319, attached hereto as Exhibit 2).

FRCP 30(c)(2) is clear: "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Defendants and their counsel did not claim that the line of questioning implicated a privilege, there was no limitation on the subject matter of the questioning imposed by the Court, and Defendants have not suggested that they intended to present a motion under FRCP 30(d)(3).

Plaintiff likewise propounded an Interrogatory, and two requests for production to Defendants Wolf and Lewis, targeted at the net worth issue (Interrogatory No. 20 and two RFPs that were both numbered RFP 35).  See Declaration Wiest, attached as Exhibit 3 hereto, at Exhibits A and B.  Defendants objected to both and refused to answer.   _Id._ at Exhibits C and D.

It is well settled that information regarding a defendant's net worth or financial condition is relevant to a claim for punitive damages. _TXO Production Corp. v. Alliance Resources Corp._, 509 U.S. 443, 462 n. 28 (1993).  Such information allows the factfinder to craft a punitive damages award, if necessary, that will provide appropriate retribution and deterrence. _Romanski v. Detroit Ent., L.L.C._, 428 F.3d 629, 647 (6th Cir. 2005).

Courts routinely allow production of tax and other financial records and net worth information where the plaintiff seeks punitive damages. _See, e.g., In re Heparin Prods. Liab. Litig._, 273 F.R.D. 399, 410 (N.D. Ohio 2011) (Carr, J._) ("a party's financial position is relevant to a punitive damages claim, and therefore such discovery is permissible … [and] it is "well-

settled law [that] factors such as [net worth] are typically considered in assessing punitive damages."); *Cawley v. Eastman Outdoors, Inc.*, No. 1:14-CV-00310, 2014 U.S. Dist. LEXIS 130588, 2014 WL 4656381, at *3 (N.D. Ohio) (Gwin, J.).; *Commins v. NES Rentals Holdings, Inc.*, 2018 U.S. Dist. LEXIS 107879 (WDKY 2018) (concluding current financial position information is relevant and related to punitive damages); *U.S. v. Matusoff Rental Co.*, 204 F.R.D. 396, 399 (S.D. Ohio 2001) ("The overwhelming majority of federal courts to have considered the question have concluded that a plaintiff seeking punitive damages is entitled to discover information relating to the defendant's financial condition in advance of trial."); *Howard v. Wilkes & McHugh, P.A.*, No. 06-2833 M1/P, 2008 U.S. Dist. LEXIS 73663, 2008 WL 4415162, at *6 (W.D. Tenn. Sept. 24, 2008) (same); *D' Onofrio v. SFX Sports Group, Inc.*, 247 F.R.D. 43, 52-53 (D.D.C.2008) (same); *Lane v. Capital Acquisitions*, 242 F.R.D. 667, 670 (S.D.Fla.2005) (same); *Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 654 (D.Kan.2004) (same).

In terms of scope, courts uniformly hold that both current financial status, and a two-year lookback, is the appropriate scope for punitive damage discovery purposes. *In re Heparin Prods. Liab. Litig.*, 273 F.R.D. 399, 409 (indicating two-year lookback typical and ordering production of financial information for past two years for punitive damage purposes); *S. Cal. Hous. Rights Ctr. v. Krug*, No. 06-1420, 2006 U.S. Dist. LEXIS 65330, 2006 WL 4122148, *2 (C.D. Cal. Sept. 5, 2006) (limiting discovery to two-year period); *Lane v. Capital Acquisitions*, 242 F.R.D. 667, 670 (S.D. Fla. 2005) (same); *Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 654 (D. Kan. 2004) (same).

Additionally, the majority of courts have held that a plaintiff seeking punitive damages is entitled to such discovery in advance of trial without a *prima facie* showing that plaintiff is entitled to recover punitive damages. *Westbrook v. Charlie Sciara & Son Produce Co.*, No. 07-

11

2657 MA/P, 2008 U.S. Dist. LEXIS 24649, 2008 WL 839745, at *2 (W.D. Tenn. Mar. 27, 2008); *Howard*, 2008 U.S. Dist. LEXIS 73663, 2008 WL 4415162, at *6; *Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.*, 130 F.R.D. 149, 152 (D. Kan. 1990); *see also U.S. v. Matusoff Rental Co.*, 204 F.R.D. 396, 399 (S.D. Ohio 2001) ("The overwhelming majority of federal courts to have considered the question have concluded that a plaintiff seeking punitive damages is entitled to discover information relating to the defendant's financial condition in advance of trial."). Published decisions from the Northern District of Ohio are in accord with this position. *In re Heparin Prods. Liab. Litig.*, 273 F.R.D. 399 (NDOH 2011).

Defendants admitted that this is relevant information in the depositions, but suggested that it could not be obtained now (when it can be tested). But they have sought no protective order on that score, and delaying such discovery undermines Plaintiff's ability to test any claims about net worth. The interrogatory and responses to the request for production in question should be compelled and the depositions of Wolf and Lewis re-opened to obtain this information.

### B. Wolf has waived any privilege over his mental health treatment for PTSD anger management and by putting it at issue in related city disciplinary proceedings related to this incident, and by providing documentation of treatment to the City

Wolf has waived any privilege for two related (yet distinct reasons). First, he has placed his mental health treatment at issue regarding the incident with Mr. Kern in defending discipline against the incident and explaining himself; and second, he has waived the privilege with respect to such treatment by his disclosure of it to third parties, namely the City of Cleveland Heights and its police chief.

Defendants also argued over the relevancy of this information. But this treatment information, which Wolf himself gave and disclosed to the City as a central defense or argument in mitigation of discipline, again, arising from discipline over the very incident that is the subject

12

of this lawsuit, and underpinning Wolf's excuse to the City of why he acted the way he did on the date in question is somehow not relevant is absurd.

In federal question cases like the instant action, questions of privilege are governed by federal common law. *Reed v. Baxter*, 134 F.3d 351, 355 (6th Cir. 1998). Federal Rule of Evidence 501 provides that "[t]he common law — as interpreted by United States courts in the light of reason and experience — governs a claim of privilege … ." Fed. R. Ev. 501. While the Sixth Circuit Court of Appeals has noted the importance of private communications between psychotherapist and patient, and found that a privilege should attach to such communications under Rule 501 (*In re Zuniga*, 714 F.2d 632, 639 (6th Cir. 1983)), the privilege is not absolute.

Specifically, the Sixth Circuit has found that a patient waives the psychotherapist-patient privilege where the patient "put[s] [his] emotional state at issue in the case." *Maday v. Pub. Libraries of Saginaw*, 480 F.3d 815, 821 (6th Cir. 2007). This rule is in keeping with the waiver practice applied to other privileges. *See, e.g., In re Lott*, 424 F.3d 446, 453 (6th Cir. 2005) (finding that a client waived his attorney-client privilege by alleging ineffective assistance of counsel, and thereby putting the attorneys' advice at issue). This rule ensures that a party cannot use a privilege as both sword and shield (as Wolf has so far), by placing into evidence only those portions of privileged materials which are beneficial, and then using the privilege to hide those portions which would benefit the opposing parties. *See Hollinger Int'l Inc. v. Hollinger Inc.,* 230 F.R.D. 508, 518 (N.D. Ill. 2005) ("The sword and shield analogy is rooted in fairness. Fairness considerations may arise when a party partially discloses privileged communications or affirmatively relies on privileged communications to support a claim or defense, and then attempts to shield the underlying communications from the opposing party."); *see also Columbia*

*Pictures Television, Inc. v. Krypton Broad. of Birmingham*, Inc., 259 F.3d 1186, 1196 (9th Cir. 2001).

Courts have concluded that a party waives his or her psychotherapist-patient privilege by "put[ting] the substance of the advice from or communication with the psychotherapist directly at issue in the suit." *Burke v. Lawrence*, No. 1:11-CV-1044, 2013 U.S. Dist. LEXIS 77384, 2013 WL 2422883, at *2 (W.D. Mich. June 3, 2013) (*citing Koch v. Cox*, 489 F.3d 384, 389, 376 U.S. App. D.C. 376 (D.C. Cir. 2007)); *see also Jackson v. Chubb Corp.*, 193 F.R.D. 216 (D.N.J. 2000); Sidor v. Reno, No. 95 CIV. 9588 (KMW), 1998 U.S. Dist. LEXIS 4593, 1998 WL 164823, at *1 (S.D.N.Y. Apr. 7, 1998).

That is what Wolf has done – placed his mental health at issue, including by attempting to excuse his actions because of his mental health.

Relatedly and perhaps more importantly, Wolf's disclosure of his treatment to the City constituted waiver.  A patient may waive the psychotherapist—patient privilege by knowingly and voluntarily relinquishing it, such as by disclosing the substance of therapy sessions to unrelated third parties. *United States v. Hayes*, 227 F.3d 578, 586 (6th Cir.2000). The burden rests on the person invoking the privilege to demonstrate its applicability, including the absence of any waiver of it." *United States v. Bolander*, 722 F.3d 199, 222 (4th Cir. 2013).  Case law, from this district, supports waiver here.  *Dekany v. City of Akron*, 2017 U.S. Dist. LEXIS 2713 (NDOH 2017).  In *Dekany*, this Court found waiver where the there was discussion about general treatment received for particular issues, including "depression and staying safe," "irritability anger and depression," and "openly discussed the specific communications that occurred during his sessions with a third party." *Id.* at *5.  As part of the disposition of the discipline, Wolf was required to "continue with your counseling and will be required to provide

14

proof of participation and periodic updates documenting your progress with your medical

provider." (Depo. Britton at 145-148, Exhibit 4 hereto, and Exhibit 35 to the deposition). And

Wolf has testified he submitted letters from his psychiatrist documenting his continued treatment

for PTSD and anger management to the City.  (Depo. Wolf, Exhibit 2, at 237-239). That is on all

fours with *Dekany*, and there has been a waiver through disclosure of his treatment to the city.

### C.  Sanctions are warranted

FRCP 37(a)(5) requires sanctions to be issued unless Defendants can demonstrate their

nondisclosure, response, or objection was substantially justified. Plaintiff requests sanctions be

imposed with respect to the net worth issue and instructions not to answer questions or provide

responses, but recognize that the issue of waiver of the mental health privilege is a closer

question and do not seek sanctions on that issue.

## III.  CONCLUSION

Plaintiff's Motion to Compel should be granted.

Respectfully submitted,

/s/ Christopher Wiest_____          /s/Thomas B. Bruns_____
Christopher Wiest (Ohio 0077931)             Thomas B. Bruns (Ohio 0051212)
Chris Wiest, Atty at Law, PLLC               Bruns, Connell, Vollmar, Armstrong
50 E. Rivercenter Blvd., Ste. 1280           4555 Lake Forrest Dr., Suite 330
Covington, KY 41011                          Cincinnati, OH 45242
513/257-1895 (v)                             513-312-9890 (v)
859/495-0803 (f)                             tbruns@bcvalaw.com
chris@cwiestlaw.com
**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing upon all counsel of record, this 7 day of
August, 2024, via filing same with the Court's CM/ECF system.

/s/Christopher Wiest

15