THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

CLEVELAND DIVISION

~~~~~~~~~~~~~~~~~~~~

DEMETRIUS KERN,

      Plaintiff,

   vs.          CASE NO:  1:23-cv-1327

NAFTALI WOLF, et al.,

      Defendants.

~~~~~~~~~~~~~~~~~~~~

Videotaped deposition of
NAFTALI WOLF

Thursday, June 20, 2024
8:58 A.M.

Taken at:
Baker, Dublikar, Beck, Wiley & Mathews
400 South Main Street
North Canton, Ohio

REPORTER:  Pamela S. Greenfield, RDR, CRR

JOB NO. 6742486

```
 1    APPEARANCES:

 2

 3        Christopher Wiest, Esq.
          Chris Wiest Attorney At Law, PLLC
 4        50 E. Rivercenter Boulevard
          Suite 1280
 5        Covington, Kentucky  41011
          (513) 257-1895
 6        Chris@CWiestLaw.com
          -and-
 7        Thomas B. Bruns, Esq.
          Bruns, Connell, Vollmar & Armstrong LLC
 8        4555 Lake Forest Drive
          Suite 330
 9        Cincinnati, Ohio 45242
          (513) 326-0274,
10        Tbruns@bcvalaw.com,

11            On behalf of the Plaintiff;

12
          Andrea K. Ziarko, Esq.
13        Baker, Dublikar, Beck, Wiley & Mathews
          400 South Main Street
14        North Canton, Ohio  44720
          (330) 499-6000
15        Andreaz@bakerfirm.com,

16            On behalf of the Defendants
              City of East Cleveland, et al.;
17

18        Thomas N. Spyker, Esq.
          Reminger Co., L.P.A.
19        200 Civic Center Drive
          Suite 800
20        Columbus, Ohio  43215
          (216) 687-1311
21        Tspyker@Reminger.com,

22            On behalf of the Defendant
              Naftali Wolf.
23

24    ALSO PRESENT:

25        Randy Andrews, CLVS, videographer
```

```
 1              W I T N E S S   I N D E X

 2                                      PAGE

 3   CROSS-EXAMINATION
     NAFTALI WOLF
 4   BY MR. BRUNS                        11

 5   CONTINUED CROSS-EXAMINATION
     NAFTALI WOLF
 6   BY MR. BRUNS                        205

 7   REDIRECT EXAMINATION
     NAFTALI WOLF
 8   BY MR. SPYKER                       324

 9   RECROSS-EXAMINATION
     NAFTALI WOLF
10   BY MR. BRUNS                        329

11
          INDEX OF PREVIOUSLY MARKED EXHIBITS
12
     EXHIBIT                             PAGE
13
        Exhibit 19                        29
14
        Exhibit 12                        71
15
        Exhibit 36                        72
16
        Exhibit 2                         94
17
        Exhibit 1                        101
18
        Exhibit 3                        133
19
        Exhibit 4                        142
20
        Exhibit 6                        145
21
        Exhibit 7                        152
22
        Exhibit 21                       161
23
        Exhibit 24                       167
24
        Exhibit 28                       171
25
```

```
 1
            INDEX OF PREVIOUSLY MARKED EXHIBITS
 2
      EXHIBIT                              PAGE
 3
        Exhibit 32                         195
 4
        Exhibit 33                         196
 5
        Exhibit 34                         211
 6
        Exhibit 35                         222
 7
        Exhibit 40B                        239
 8
        Exhibit 40B                        240
 9
        Exhibit 31                         248
10
11          O B J E C T I O N   I N D E X
12    OBJECTION BY                         PAGE
      MR. SPYKER                            20
13    MR. SPYKER                            20
      MR. SPYKER                            21
14    MR. SPYKER                            22
      MR. SPYKER                            22
15    MR. SPYKER                            22
      MR. SPYKER                            23
16    MR. SPYKER                            24
      MR. SPYKER                            26
17    MR. SPYKER                            27
      MR. SPYKER                            27
18    MR. SPYKER                            27
      MR. SPYKER                            28
19    MR. SPYKER                            28
      MR. SPYKER                            28
20    MR. SPYKER                            28
      MR. SPYKER                            32
21    MR. SPYKER                            33
      MR. SPYKER                            33
22    MR. SPYKER                            34
      MR. SPYKER                            39
23    MR. SPYKER                            43
      MR. SPYKER                            44
24    MR. SPYKER                            45
      MR. SPYKER                            45
25    MR. SPYKER                            46
```

```
 1    O B J E C T I O N   I N D E X   C O N T I N U E D
 2    OBJECTION BY                          PAGE
      MR. SPYKER                            46
 3    MR. SPYKER                            46
      MS. ZIARKO                            47
 4    MR. SPYKER                            47
      MS. ZIARKO                            47
 5    MR. SPYKER                            48
      MR. SPYKER                            51
 6    MS. ZIARKO                            51
      MR. SPYKER                            51
 7    MS. ZIARKO                            51
      MR. SPYKER                            53
 8    MR. SPYKER                            53
      MS. ZIARKO                            53
 9    MR. SPYKER                            53
      MR. SPYKER                            54
10    MR. SPYKER                            54
      MR. SPYKER                            54
11    MR. SPYKER                            59
      MR. SPYKER                            59
12    MR. SPYKER                            60
      MR. SPYKER                            61
13    MR. SPYKER                            62
      MR. SPYKER                            62
14    MR. SPYKER                            63
      MR. SPYKER                            63
15    MR. SPYKER                            64
      MR. SPYKER                            80
16    MR. SPYKER                            87
      MR. SPYKER                            96
17    MR. SPYKER                            96
      MR. SPYKER                            96
18    MS. ZIARKO                            97
      MR. SPYKER                            97
19    MS. ZIARKO                            97
      MR. SPYKER                            97
20    MR. SPYKER                            98
      MR. SPYKER                            103
21    MR. SPYKER                            103
      MR. SPYKER                            103
22    MR. SPYKER                            104
      MR. SPYKER                            105
23    MR. SPYKER                            106
      MR. SPYKER                            107
24    MR. SPYKER                            107
      MR. SPYKER                            108
25    MR. SPYKER                            110
```

```
 1   O B J E C T I O N   I N D E X   C O N T I N U E D
 2   OBJECTION BY                              PAGE
     MR. SPYKER                                111
 3   MR. SPYKER                                112
     MR. SPYKER                                113
 4   MR. SPYKER                                116
     MR. SPYKER                                118
 5   MR. SPYKER                                124
     MR. SPYKER                                125
 6   MR. SPYKER                                127
     MR. SPYKER                                128
 7   MR. SPYKER                                131
     MR. SPYKER                                132
 8   MR. SPYKER                                140
     MR. SPYKER                                141
 9   MR. SPYKER                                141
     MR. SPYKER                                148
10   MR. SPYKER                                150
     MR. SPYKER                                153
11   MR. SPYKER                                155
     MR. SPYKER                                157
12   MR. SPYKER                                159
     MR. SPYKER                                161
13   MR. SPYKER                                164
     MR. SPYKER                                165
14   MR. SPYKER                                165
     MS. ZIARKO                                165
15   MR. SPYKER                                165
     MS. ZIARKO                                165
16   MR. SPYKER                                166
     MR. SPYKER                                166
17   MS. ZIARKO                                166
     MR. SPYKER                                168
18   MR. SPYKER                                169
     MR. SPYKER                                169
19   MR. SPYKER                                169
     MR. SPYKER                                169
20   MR. SPYKER                                170
     MR. SPYKER                                170
21   MR. SPYKER                                170
     MR. SPYKER                                173
22   MR. SPYKER                                176
     MR. SPYKER                                176
23   MR. SPYKER                                177
     MR. SPYKER                                177
24   MR. SPYKER                                177
     MR. SPYKER                                178
25   MR. SPYKER                                178
```

| 1 | O B J E C T I O N   I N D E X   C O N T I N U E D | |
| 2 | OBJECTION BY | PAGE |
|   | MS. ZIARKO | 179 |
| 3 | MR. SPYKER | 179 |
|   | MR. SPYKER | 179 |
| 4 | MR. SPYKER | 180 |
|   | MR. SPYKER | 181 |
| 5 | MS. ZIARKO | 181 |
|   | MR. SPYKER | 182 |
| 6 | MR. SPYKER | 182 |
|   | MR. SPYKER | 182 |
| 7 | MR. SPYKER | 183 |
|   | MR. SPYKER | 183 |
| 8 | MR. SPYKER | 184 |
|   | MR. SPYKER | 184 |
| 9 | MR. SPYKER | 185 |
|   | MR. SPYKER | 185 |
| 10 | MR. SPYKER | 186 |
|   | MS. ZIARKO | 186 |
| 11 | MR. SPYKER | 186 |
|   | MS. ZIARKO | 186 |
| 12 | MR. SPYKER | 187 |
|   | MR. SPYKER | 187 |
| 13 | MR. SPYKER | 187 |
|   | MR. SPYKER | 187 |
| 14 | MS. ZIARKO | 188 |
|   | MR. SPYKER | 188 |
| 15 | MR. SPYKER | 188 |
|   | MR. SPYKER | 189 |
| 16 | MR. SPYKER | 191 |
|   | MR. SPYKER | 191 |
| 17 | MR. SPYKER | 191 |
|   | MS. ZIARKO | 196 |
| 18 | MR. SPYKER | 202 |
|   | MR. SPYKER | 209 |
| 19 | MR. SPYKER | 209 |
|   | MR. SPYKER | 214 |
| 20 | MR. SPYKER | 216 |
|   | MR. SPYKER | 218 |
| 21 | MR. SPYKER | 218 |
|   | MR. SPYKER | 220 |
| 22 | MR. SPYKER | 220 |
|   | MR. SPYKER | 220 |
| 23 | MR. SPYKER | 222 |
|   | MR. SPYKER | 222 |
| 24 | MR. SPYKER | 222 |
|   | MR. SPYKER | 225 |
| 25 | MR. SPYKER | 227 |

```
 1   O B J E C T I O N   I N D E X   C O N T I N U E D
 2   OBJECTION BY                          PAGE
     MR. SPYKER                            229
 3   MR. SPYKER                            236
     MR. SPYKER                            251
 4   MR. SPYKER                            251
     MS. ZIARKO                            255
 5   MR. SPYKER                            255
     MR. SPYKER                            255
 6   MR. SPYKER                            256
     MR. SPYKER                            256
 7   MR. SPYKER                            257
     MR. SPYKER                            257
 8   MR. SPYKER                            259
     MR. SPYKER                            259
 9   MR. SPYKER                            259
     MR. SPYKER                            261
10   MR. SPYKER                            263
     MS. ZIARKO                            263
11   MR. SPYKER                            265
     MR. SPYKER                            268
12   MR. SPYKER                            270
     MR. SPYKER                            270
13   MR. SPYKER                            272
     MR. SPYKER                            272
14   MR. SPYKER                            273
     MR. SPYKER                            273
15   MR. SPYKER                            274
     MS. ZIARKO                            275
16   MR. SPYKER                            275
     MR. SPYKER                            275
17   MR. SPYKER                            276
     MR. SPYKER                            276
18   MR. SPYKER                            277
     MR. SPYKER                            281
19   MR. SPYKER                            284
     MR. SPYKER                            286
20   MS. ZIARKO                            290
     MR. SPYKER                            290
21   MR. SPYKER                            290
     MR. SPYKER                            291
22   MS. ZIARKO                            291
     MR. SPYKER                            294
23   MR. SPYKER                            294
     MR. SPYKER                            295
24   MR. SPYKER                            296
     MR. SPYKER                            297
25   MR. SPYKER                            297
```

```
 1   O B J E C T I O N   I N D E X   C O N T I N U E D

 2   OBJECTION BY                          PAGE
     MR. SPYKER                            298
 3   MR. SPYKER                            298
     MR. SPYKER                            299
 4   MR. SPYKER                            299
     MR. SPYKER                            308
 5   MR. SPYKER                            309
     MR. SPYKER                            309
 6   MR. SPYKER                            310
     MR. SPYKER                            310
 7   MR. SPYKER                            311
     MR. SPYKER                            312
 8   MR. BRUNS                             328
     MR. BRUNS                             328
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1

2          THE VIDEOGRAPHER:  Good morning.

3    We are going on the record at 8:58 a.m.

4    This is Media Unit Number 1 of the video

5    recorded deposition of Naftali Wolf

6    taken by counsel for the plaintiff in

7    the matter of Demetrius Kern versus

8    Naftali Wolf, et al. filed in the United

9    States District Court, Northern District

10   of Ohio, Cleveland Division, Case Number

11   1:23-cv-1327.

12          We're at 400 South Main Street in

13   Canton, Ohio.

14          My name is Randy Andrews

15   representing Veritext.  I am the

16   videographer.  Court reporter is Pam

17   Greenfield also with Veritext.

18          MR. SPYKER:  He just needs a

19   tissue.

20          MR. BRUNS:  Could you hand him

21   that box.

22          THE WITNESS:  Thank you.

23          THE NOTARY:  You're welcome.

24          THE VIDEOGRAPHER:  Will counsel

25   present please identify themselves for

1          the record.

2                    MR. BRUNS:  Tom Bruns and Chris

3          Wiest on behalf of Demetrius Kern, the

4          plaintiff.

5                    MR. SPYKER:   Tom Spyker on

6          behalf of the deponent.

7                    MS. ZIARKO:  Andrea Ziarko on

8          behalf of Defendants Lewis and the City

9          of Cleveland Heights.

10                   THE VIDEOGRAPHER:  Thank you.

11         Will the court reporter please swear in

12         the witness.

13                   -  -  -  -

14        NAFTALI WOLF, of lawful age, called by the

15   Plaintiff for the purpose of cross-examination,

16   as provided by the Rules of Civil Procedure,

17   being by me first duly sworn, as hereinafter

18   certified, deposed and said as follows:

19         CROSS-EXAMINATION OF NAFTALI WOLF

20   BY MR. BRUNS:

21   Q.  May I call you sergeant?  How would you like me

22       to address you today?

23   A.  You can call me Nate.

24   Q.  Nate.  Okay.  Thank you.  I appreciate that.

25       Please call me Tom.

```
1              MR. SPYKER:  Objection.  If you
2         know.
3   A.  She's a, I think a social worker, therapist.
4   Q.  Okay.  And where is she located?  Is she with a
5       group?  Is she on her own?
6   A.  She's on her own.
7   Q.  And where?  Where is she, like what city?
8   A.  It's Chardon, Ohio.
9   Q.  And does her practice, is there a name to it?
10  A.  Santore.
11  Q.  Santore what?
12  A.  And associates.
13  Q.  Santore & Associates.  Thank you.
14         And we can certify those questions about,
15      because I'm going to go into questions about
16      the, your treatment for anger management and
17      PTSD and that kind of thing, so you're going to
18      instruct him not to --
19              MR. SPYKER:  I'm going to object
20         and instruct him not to answer on the
21         basis of privilege.
22              MR. BRUNS:  All of those
23         questions, correct?
24              MR. SPYKER:  All of those
25         questions and we can --
```

```
 1                    MR. BRUNS:  Yeah.

 2                    MR. SPYKER:  And I understand

 3            that you're going to potentially take

 4            that up, that's fine.  I just, that

 5            entire line I'm going to object to.

 6                    MR. BRUNS:  Yeah, that's fine.  I

 7            do want to know some more particulars

 8            and you can instruct him not to answer

 9            if you see fit.

10      BY MR. BRUNS:

11      Q.  When did you first seek any sort of treatment?

12                    MR. SPYKER:  Objection.  I'm

13            going to instruct the witness not to

14            answer.

15                    MR. BRUNS:  Okay.  So no

16            questions about how long has it been a

17            problem, what was the cause of the

18            problem?

19                    MR. SPYKER:  I'm going to

20            instruct the witness not to answer those

21            questions.

22                    MR. BRUNS:  Okay.  In other

23            words, let's just make it crystal clear:

24            Other than the name and the location of

25            the, the name of his therapist and the
```

 1              location of the practice, you're going

 2              to instruct him not to answer any

 3              questions about it.

 4                   MR. SPYKER:  That is correct, on

 5              the basis of privilege.

 6     BY MR. BRUNS:

 7     Q.  All right.  We got down this road because you

 8         were testifying that you talked to your wife

 9         about the lawsuit, your therapist about the

10         lawsuit.

11              Did you talk to anyone else about the

12         lawsuit?

13     A.  With my spiritual advisor.

14     Q.  Who is that?

15     A.  My dad.

16     Q.  And what is his name?

17     A.  S-R-U-L-Y.  W-O-L-F.

18     Q.  And anyone else?

19     A.  The chief.  Internal affairs.

20     Q.  Anyone else?

21     A.  My union rep.

22     Q.  Anyone else?

23     A.  And then my psychiatrist.

24     Q.  And who is your psychiatrist?

25     A.  She just retired, but Laurie, L-A-U-R-I-E,

Page 39

1   Q.  Anyone else?

2   A.  Not that I can recall.

3   Q.  Okay.  When did you, let's take those one at a

4       time.

5           When did you speak to Officer Torres if you

6       did?

7   A.  Sometime after that incident.

8   Q.  Same day?

9   A.  Same day.

10  Q.  And tell me about that discussion.

11  A.  I can only tell you from what I can recall.

12  Q.  That's all I'm asking.

13  A.  I wanted to just clarify that.

14          He had made a comment to me, something

15      along the lines of hey, you know, boss, how

16      could you allow certain types of

17      insubordination coming from Officer Lewis and I

18      said, I responded something along the lines of

19      hey man, don't worry about it.  Like it is what

20      it is and it dropped.

21  Q.  What was he referring to when he said

22      insubordination by Officer Lewis?

23              MR. SPYKER:  Objection.  If you

24          know.

25  A.  At the time I did not know.

1  Q.  You didn't ask him?

2  A.  No.  He said something about her attitude if I

3      remember correctly but I didn't know what he

4      was talking about really.

5  Q.  But he was specifically, he mentioned something

6      about her attitude and specifically asked you

7      what are you going to do about her

8      insubordination?

9  A.  Some -- I don't know if those were his exact

10     words.  I can't recall.

11 Q.  But that was the gist of what he was asking

12     you?

13 A.  Yes.

14 Q.  And your response to him was:  I'll handle it?

15 A.  I think it was:  Hey don't worry about it.

16     We'll figure it out, or something.  Something

17     along those lines.

18 Q.  Do you recall anything else about that

19     conversation with him?

20 A.  I do not.

21 Q.  Okay.  When -- did you have any other

22     conversations with Officer Torres about the

23     incident?

24 A.  I have not.

25 Q.  How about Officer Lewis?  When did you talk to

```
 1      her once -- after you left the scene of the
 2      incident?
 3   A. Shortly after.
 4   Q. Where were you?
 5   A. The parking lot of Park Synagogue.
 6   Q. I'm sorry?
 7   A. Park, the parking lot of Park Synagogue.
 8   Q. Why were you in the parking lot of Park
 9      Synagogue?
10   A. Because sometimes that's where officers meet up
11      to talk.  It's a large, very large property.
12   Q. And did you go there with that purpose in mind?
13   A. Oh, yes.  Yes.
14   Q. And who were you going there to talk to?
15   A. Officer Lewis.
16   Q. And why were you going to a place where
17      officers go to talk in order to meet up with
18      Officer Lewis and talk to her?  Why were you
19      doing that?
20   A. I intended to do a little small counseling
21      session.
22   Q. Why?
23   A. At some point during this incident or after, I
24      can't recall when it was exactly during or
25      after, she had made a comment to me that she
```

Page 42

1    did not want to charge Mr. Kern because she did

2    not want to get a complaint.

3  Q.  Was it, did she tell you that while you were at

4    the Park Synagogue parking lot?

5  A.  I honestly can't recall when or where.

6  Q.  Well --

7  A.  But I think it was before.

8  Q.  Well, let's just go back over that timeline.

9       You left the scene and that's when you

10    turned off your body-worn cam, right?

11  A.  Okay.

12  Q.  And you're in your cruiser, correct, when you

13    turned off your body-worn cam; is that correct?

14  A.  I'm sorry?

15  Q.  You were in your cruiser when you turned off

16    your body-worn cam?

17  A.  Honestly, I don't remember.  I've never seen

18    the videos so...

19  Q.  Okay.  But you left the scene?

20  A.  Okay.

21  Q.  Did you go straight to the parking lot at Park

22    Synagogue?

23  A.  I can't recall.

24  Q.  I'm just trying to find out when she would have

25    told you that if it wasn't at the scene.

1          Do you see that in the second paragraph of

2     the "Pre-Disciplinary Hearing" section, middle

3     of the second paragraph:  "You took

4     responsibility for your actions."

5   A.  Yes.

6   Q.  How did you take responsibility for your

7     actions?

8   A.  In what, in what way?

9   Q.  It says here you took responsibility for your

10     actions.  You admitted all the factual findings

11     were true and then it says you took

12     responsibility for your actions.

13          I'm asking how did you take responsibility

14     for your actions?

15   A.  I admitted to the chief that I was having a bad

16     day and that I didn't de-escalate and maybe

17     could have waited a little bit longer.

18   Q.  Did you take responsibility in any other way?

19   A.  No.

20   Q.  Okay.  And you don't believe you should have to

21     take responsibility in any other way.  Is that

22     fair?

23   A.  That is fair.

24   Q.  And then it says:  "Further you indicated" --

25     or I'm sorry, the rest of that sentence was:

```
 1        "And attributed your actions to having a 'bad

 2        day.'"

 3             The bad day was the marital issue, right?

 4   A.   Correct.

 5   Q.   The was there any other reason why you were

 6        quote, "having a bad day"?

 7   A.   No.

 8   Q.   And then it says:  "Further, you indicated that

 9        since prior to this incident, you have been in

10        continuous counseling for 'anger management'

11        and 'PTSD' related issues," correct?

12   A.   Correct.

13   Q.   Were you using that, did you tell the folks at

14        the pre-disciplinary hearing, did you tell them

15        that by way of a mitigating factor for why you

16        acted the way you did?

17                     MR. SPYKER:  Objection.

18   A.   No.

19   Q.   Well, why did you bring up the fact that you've

20        been in continuous counseling from before this

21        incident for anger management and PTSD related

22        issues?

23             Why did you bring that up and volunteer

24        that information at the hearing?

25   A.   At some point the chief and I had discussed
```

Page 228

```
 1      some things privately.

 2   Q.  What?

 3   A.  Well, I've been in some therapy and things like

 4       that and --

 5   Q.  So you, why, when did that occur?

 6   A.  Several months before all this.

 7   Q.  Before the February prehearing?

 8   A.  And before all of this.

 9                  MR. WIEST:  Before September 22?

10   Q.  Yeah.  Before September 22nd, 2022?

11   A.  Uh-huh.

12   Q.  Is that a yes?

13   A.  Yeah, I'm sorry, yes.

14   Q.  And what was the occasion for you to tell the

15       chief then that you were in counseling for

16       anger management and PTSD related issues?

17   A.  When he's not my chief, he's a friend and I

18       needed to talk to somebody.

19   Q.  So you were talking to him just as a friend?

20   A.  Correct.

21   Q.  Okay.  And why were you talking to him as a

22       friend about those issues?

23   A.  Because I felt that he needed to know.

24   Q.  As a friend, as a chief or both?

25   A.  Both.
```

Page 234

1   A.  No.

2   Q.  And you as far as you recall didn't tell him

3       why you were having those issues?

4   A.  No.

5   Q.  Is that correct?

6   A.  As far as I can recall, correct.

7   Q.  Okay.  Did you have any other conversation with

8       the chief about your anger management and PTSD

9       issues and treatment or therapy for the same?

10  A.  No.

11  Q.  Okay.  So I'm going to go back to the

12      pre-disciplinary hearing, all right?  You

13      admitted that they --

14              MR. WIEST:  Ask him did he do

15          anything in response.

16  Q.  Yeah.

17      As far as you're aware, after your

18      conversation with the chief that took place in

19      2022 sometime before this incident with

20      Mr. Kern, as far as you're aware, the chief did

21      not ask you to do anything, take any steps

22      regarding the problems you were having?

23  A.  Correct.

24  Q.  Okay.  And then let's fast-forward to this

25      pre-disciplinary hearing it's February 28,

1       2023.  You admitted that in -- this is a

2       correct statement, that in the hearing you

3       admitted that even before this incident you had

4       been in continuous counseling for anger

5       management and PTSD related issues, and my

6       question to you is:  Why did you tell them that

7       in the hearing?

8   A.  I don't know.

9   Q.  It's your testimony here today that questions

10      about that are all privileged and confidential.

11      You don't want me --

12  A.  Right.

13  Q.  -- inquiring about them, correct?

14  A.  Correct.

15  Q.  But you told folks in the hearing about them,

16      correct?

17  A.  Correct.

18  Q.  And you don't know why you told them?

19  A.  I didn't give them any details.

20  Q.  No, I didn't ask --

21  A.  Okay.

22  Q.  -- what details you gave.

23      You don't know why you told them you had

24      been in treatment from before this incident,

25      continuous counseling for anger management and

1  Q.  And then it says:  "You indicated to me."

2      You're talking, you indicated to the chief that

3      you've been in counseling for conditions,

4      right?

5  A.  Correct.

6  Q.  Okay.  The chief then determined, based on all

7      the evidence presented, that you are to receive

8      a six-day unpaid suspension.  Do you see that?

9  A.  Yes.

10  Q.  Okay.  And it's your belief that that only

11      occurred because of the media coverage that

12      this incident got after the fall of 2022?

13  A.  Yes.

14  Q.  All right. And it says:  "You are ordered to

15      continue with your counseling."

16          Do you see that?

17  A.  I do.

18  Q.  All right.  "And will be required to provide

19      proof of participation and periodic updates

20      documenting your progress with your medical

21      provider."

22          Do you see that?

23  A.  I do.

24  Q.  Have you done that?

25  A.  I did.

Page 238

1    Q.   Okay.  Who do you, who did you provide, number

2         one, the proof of your participation in

3         counseling?  Who did you provide that proof to?

4    A.   To the chief of police.

5    Q.   So he, what did you provide to him?

6    A.   Letters from my psychiatrist.

7    Q.   Okay.  And then you had to provide periodic

8         updates documenting your progress with your

9         medical provider, right?

10   A.   Correct.

11   Q.   What were those periodic updates?  What did

12        they consist of, your treatment records, an

13        opinion letter from one of your providers,

14        what?

15   A.   No.  It was just that I was going to therapy.

16   Q.   Okay.  So he ordered that you had to provide

17        periodic updates documenting your progress.

18        You also had to go to therapy.  Obviously going

19        to therapy, you provided proof of that.

20             What proof did you provide of your progress

21        in therapy?

22   A.   I didn't.

23   Q.   You never provided that to the city?

24   A.   No.  I provided --

25   Q.   To the department?

Page 239

1    A.   I provided one letter to the chief and that was

2         it.

3    Q.   Okay.  Has anyone from the department followed

4         up with you to say you are not complying with

5         what you've been ordered to do?

6    A.   No.

7    Q.   Let's go to, let's see, Exhibit 40B?

8    A.   Can we back up for a second real quick?

9    Q.   Yeah.

10   A.   So the date of this.

11   Q.   What?

12   A.   Of...

13                   MR. WIEST:  Exhibit 35?

14   A.   Of the pre-disciplinary hearing, right?

15   Q.   Okay.

16   A.   I had a, I did have a private conversation with

17        the chief in his office where he had told me:

18        Hey, this is what we're going to do and --

19   Q.   He told you before the hearing?

20   A.   Yeah.  He said:  These are your choices and

21        this is what we're going to do, you're going to

22        be required to go to counseling and at which

23        point I did tell him: Hey, I'm already in

24        counseling, so I just, I messed up my dates a

25        little bit.  I had a, I did have a private

```
 1                    MR. BRUNS:  Now this is for you:

 2            We're switching gears.  I am going to

 3            ask your client about his personal

 4            assets to include his net assets over

 5            the last two years.

 6                    MR. SPYKER:   I'm going to take

 7            the same position Greg Beck took when

 8            you were asking Carly Lewis the same

 9            things.

10                    MR. BRUNS:  Okay.  And you're

11            instructing him not to answer and you're

12            refusing to let him answer any questions

13            regarding his collectability in terms of

14            a punitive damage award.

15                    MR. SPYKER:   Correct.  Yes.

16                    THE VIDEOGRAPHER:  I have five

17            minutes till I've got to change.  Would

18            this be a good time or?

19                    MR. WIEST:  So he's instructed.

20            He needs to follow the advice to

21            preserve the issue.

22                    MR. BRUNS:  Yeah.  Yeah.

23    A.  I'm so confused.  Okay.

24    Q.  It's okay.

25                    MR. SPYKER:   Go ahead.
```

1  Q.  I'm going to, I'll ask you questions, I'm about

2      to ask you questions regarding your net assets

3      within two years of this incident and -- or

4      today, I should say, because we have a claim

5      for punitive damages and that's one of the

6      issues that arises in a claim for punitive

7      damages and my understanding is your attorney

8      is going to instruct you not to answer any

9      questions at all on those issues.

10         And are you instructing him?

11             MR. SPYKER:   Yeah.  How we

12         would normally handle this is bifurcate

13         the issue.  If you get there, we will

14         allow discovery on that if we ever get

15         to that point.

16             For the purposes of this

17         deposition, his privacy, et cetera, same

18         position Greg Beck took with Carly

19         Lewis's deposition.  I'm going to advise

20         you not to answer those questions.

21             You now have to make the choice

22         whether or not to follow my instruction

23         or answer questions about your financial

24         assets that opposing counsel wants to

25         ask you.

Page 319

1   A.  Okay.

2   Q.  Are you following the advice of your lawyer and

3       you're refusing to those answer those

4       questions?

5   A.  Yes.

6   Q.  Thank you.

7                  MR. WIEST:  Certify the

8            question.

9                  MR. BRUNS:  Yeah, we'll certify

10           the question and the questions they

11           refused on today.

12      BY MR. BRUNS:

13  Q.  Has anything you've testified to today been the

14      whole truth and nothing but the truth?

15  A.  Yes.

16                 MR. BRUNS:  Let's take a moment.

17                 MR. WIEST:  Yeah.

18                 THE VIDEOGRAPHER:  Off the

19           record.  This is the end of Media Unit

20           Number 4.  Time is 3:30.

21               -  -  -  -

22         (Thereupon, a recess was had.)

23               -  -  -  -

24                 THE VIDEOGRAPHER:  On the record.

25           This is the beginning of Media Unit

1   Q.   Is that a yes?

2   A.   I'm sorry.  Yes.

3   Q.   And you heard Officer Lewis say that this third

4        party was videoing the, her traffic stop,

5        correct?

6   A.   Correct.

7   Q.   So you knew when you responded that this third

8        party was engaged in First Amendment protected

9        activity, correct?

10  A.   Correct.

11  Q.   All right.  That's all I have.

12                  MS. ZIARKO:    No questions.

13                  MR. SPYKER:    We'll read.

14                  MR. WIEST:    And we will order

15          E-tran.  No rush.

16                  MR. SPYKER:    And we'll take a

17          copy.

18                  MS. ZIARKO:   Yes.

19                  THE VIDEOGRAPHER:  And we'll go

20          off the record at 3:45.

21                      -  -  -  -

22              (Signature reserved.)

23              (Deposition concluded at 3:34 p.m.)

24                      -  -  -  -

25

Page 331

```
 1

 2

 3
                    C E R T I F I C A T E
 4

 5
        The State of Ohio, ) SS:
 6      County of Cuyahoga.)

 7
               I, Pamela S. Greenfield, a Notary Public
 8      within and for the State of Ohio, authorized to
        administer oaths and to take and certify
 9      depositions, do hereby certify that the
        above-named witness was by me, before the
10      giving of their deposition, first duly sworn to
        testify the truth, the whole truth, and nothing
11      but the truth; that the deposition as above-set
        forth was reduced to writing by me by means of
12      stenotypy, and was later transcribed into
        typewriting under my direction; that this is a
13      true record of the testimony given by the
        witness; that the deponent or a party requested
14      that the deposition be reviewed by the
        deponent; that said deposition was taken at the
15      aforementioned time, date and place, pursuant
        to notice or stipulations of counsel; that I am
16      not a relative or employee or attorney of any
        of the parties, or a relative or employee of
17      such attorney or financially interested in this
        action.
18
               IN WITNESS WHEREOF, I have hereunto set my
19      hand and seal of office, at Cleveland, Ohio,
        this July 6, 2024.
20

21

22
        <%25705,Signature%>
23      Pamela S. Greenfield, CRR, RDR
        Notary Public, State of Ohio
24      My commission expires July 2, 2028

25
```





EXHIBIT

35

**ALL-AMERICAN CITY**

*City of trees... symbol of a live and growing community with diverse roots founded in a rict variety of cultural heritages... thriving in the awareness of the present and rising to the challenge of the future*

CITY OF
**CLEVELAND HEIGHTS**
DIVISION OF POLICE

40 SEVERANCE CIRCLE, CLEVELAND HEIGHTS, OHIO 44118 * Telephone (Area Code 216) 291-4974
CHRISTOPHER M. BRITTON, CHIEF
chief@clvhts.com

Sergeant Naftali Wolf
Cleveland Heights Police Department

**March 22nd, 2023**

On Tuesday, February 28th, 2023, I met with you to conduct a Pre-disciplinary Hearing relative to an incident that occurred on Thursday September 22nd, 2022, at approximately 1900 hours. OPBA Attorney Dan Leffler, OPBA Union Representative Detective William Robinson and I were present at the Hearing.

The purpose of this hearing was to provide you with your constitutional right and right under the applicable collective bargaining agreement to notice and a fair hearing in response to the investigation of the events that occurred on the aforementioned date, which included alleged violations of the Police and Procedures of the Police Department.

**Factual Summary**

On September 22nd, 2022, at about 1900 hours, you had responded to Mayfield Road near the intersection of Inglewood Road to assist Officer Carly Lewis on a traffic stop in which she reported via radio that an individual, later learned to be Demetrius Kern, did "not know how to yield to lights and siren." When you contacted Officer Lewis and Kern, you made a statement that you were not aware what was going on, but you told Kern what he was doing was "against the law." As Officer Lewis was attempting to obtain the identification of Kern, Kern denied her request. You continued to tell Kern that what he was doing was "illegal" and you could charge him with interfering with a traffic stop. You subsequently requested an additional unit for a "male who is obstructing." After Kern's repeated refusals to provide identification, you placed him under arrest at 1904 hours even after Officer Carly Lewis informed you he didn't do anything wrong.

Upon your initial arrival on scene, you appeared bothered and annoyed. At one point, you sigh heavily which is caught on your body camera. While placing him in handcuffs, you told Kern "I am not doing this" and "I am not putting up with your bullshit." You made no initial effort to avoid conflict or to de-escalate the situation. It wasn't until you arrested Kern, that you tried to ascertain all the facts to establish probable cause for the arrest.

In an interview on October 20th, 2022 you stated to Detectives Mathis and Pierson that you "interpreted" that Kern was "obstructing" Officer Lewis. You also stated, "I knew I was a little

Page **1** of 7

bit jumping the gun...I can tell you that." You told detectives that your actions were based upon your "interpretation" of what occurred. Also, you told detectives you were "not clear" of what "obstructing" was and that case law is very unclear despite receiving Legal Update Training in October 2021. If you were unclear about the criminal law, you should have sought further clarification.

## Statement of Policy

The Cleveland Heights Police Department's Policy Manual sets forth the conduct and behavior to be followed by all police officers of the department. Any violation of these rules shall be a basis for disciplinary actions. Disciplinary action may take the form of a verbal or written reprimand, unpaid suspension, loss of vacation days, demotion or termination of employment.

## Specifications

At the Pre-disciplinary Hearing the specifications of charges against you in this matter were discussed. The following outlines the policies that you have been charged with violating:

## Specification #1. Violation of the Cleveland Heights Police Department Law Enforcement Code of Ethics:

*While I consider the way I choose to conduct my private affairs a personal freedom, I accept the responsibilities for my actions, as well as inactions, while on duty or off duty, when those actions bring disrepute on the public image of my employer, my fellow workers and the law enforcement profession.*

*I vow to perform all my duties in a lawful, professional and competent manner. I consider the abilities to be courageous in the face of danger and to exercise restraint in the use of my powers and authorities to be the ultimate public trust. I accept that I must consistently strive to achieve excellence in learning the necessary knowledge and skills associated with my duties. I will keep myself physically fit and mentally alert so that I am capable of performing my duties according to the standards of quality expected of my position.*

*I vow to be fully truthful and honest in my dealings with others. I will obey the laws that I have sworn to enforce and uphold. I will conduct myself and perform my duties and responsibilities in a manner that complies with the standards of my Department and the lawful directions of my supervisors.*

*I vow to treat others with courtesy at all times. I consider it to be a professional weakness to allow another's behavior to dictate my actions. I will not allow others' actions or failings to be my excuse for not performing my duties in a responsible, professional and expected manner.*

*I vow to empathize with the problems of people with whom I come into daily contact. However, I will not allow my personal feelings, prejudices, animosities, or friendships to influence the discretionary authorities entrusted to me. I will affirmatively seek ways to avoid conflicts and potential conflicts of interest that could compromise my official authority or my employer's public image.*

*I hold the authority inherent in my position to be an affirmation of the public's trust in me as a public servant. I do not take this trust lightly. As long as I remain in this position, I will dedicate myself to maintaining this trust and upholding all the ideals of my profession.*

**Specification #2: Violation of the Mission Statement of the Cleveland Heights Police Department which reads as follows:**

*The Cleveland Heights Police Department, in partnership with the Community, is dedicated to protecting the lives, property and rights of all persons while maintaining order, reducing fear, informing the public and enforcing the laws fairly and impartially.*

*The men and women of the Cleveland Heights Police Department will perform their duties with the highest degree of professionalism, honesty and dedication to those that they serve. These duties will be delivered under the direction of strong leadership with a commitment to continuing education.*

*All members of the Cleveland Heights Police Department will work as a unified group in order to uphold this mission.*

**Specification #3: Violation of the Core Values of the Cleveland Heights Police Department which are as follows:**

*1. Constitutional Rights*

*We shall uphold this country's values as embodied in the Constitution and dedicate ourselves to the preservation of life, individual freedom and justice for everyone.*

*2. Integrity*

*Integrity is the absolute honest and ethical personal behavior and performance of duty that must be the hallmark of every member of this Department.*

*3. Professional Excellence*

*Recognizing the changing and diverse needs of the community, the Cleveland Heights Police Department pledges to establish and maintain high-performance standards to ensure public confidence and trust. Professional excellence is a direct result of progressive training, a positive attitude and personal commitment.*

*4. Commitment to Members*

*The Department recognizes that its members are the vital component to the successful delivery of our services. We believe we can achieve our highest potential by actively involving our members*

*in problem-solving and improving our services.  We support an organizational climate of mutual trust and respect.*

5. *Community Orientation*

*Members shall uphold laws in an ethical, impartial, courteous and professional manner while respecting the rights and dignity of all persons.  We will be compassionate and provide assistance to victims and those in need.*

6. *Community Partnership*

*We encourage and expect the participation of the community in facilitating solutions to problems of mutual concern.  We solicit and support contributions from all members of our community.*

7. *Loyalty*

*Members owe a high duty of loyalty to our community, the police profession, their jobs, and the Cleveland Heights Police Department. This requires being productive, giving their best to work effectively and efficiently, complying in deed and spirit with the Department's lawful directives, cooperating and working amicably with others, following the chain-of-command when applicable, being respectful, and conducting themselves in a manner that does not needlessly or falsely cast the Department's reputation, or the reputation of its members, in a false light.*

**Specification #4: Violation of Policy 1000; Job Description/Requirements of a Sergeant:**

*Include the "ability to react quickly and calmly to emergency police situations and to "instruct" the "work of subordinates; ability to make sound judgement." Its critical as well that a Sergeant makes good command decisions and assists subordinates with important decisions on technical matters.*

**Specification #5: Violation of Policy 1010 Personnel Complaints provides guidelines for the reporting of complaints.**

*It is the policy of this department that the community can report misconduct without concern for reprisal or retaliation. Policy 1010.6.1 dictates that Supervisors who become aware of alleged misconduct shall take reasonable steps to prevent aggravation of the situation and respond to all complaints in a courteous and professional manner.*

**Specification #6: Violation of Policy 319 Standards of Conduct establishes standards of conduct that are consistent with our values and mission of the department.**

*It is the policy of the department that failure to meet the guidelines in this policy may be cause for disciplinary action. Policy 319.52 Ethics – "any other failure to abide by the standards of ethical conduct.*

*Policy 319.5.7 Efficiency outlines certain conduct that violates this policy such as neglect of duty and incompetence. Policy 319.5.9 Conduct outlines other conduct as well that violates policy.*

> ➢ *Discourteous, disrespectful or discriminatory treatment of any member of the public or any member of this department or the City.*
> ➢ *Criminal, dishonest, or disgraceful conduct, whether on- or off-duty, that adversely affects the member's relationship with this department.*
> ➢ *Any other on- or off-duty conduct which any member knows or reasonably should know is unbecoming a member of this department, is contrary to good order, efficiency or morale, or tends to reflect unfavorably upon this department or its members.*
> ➢ *Use of obscene, indecent, profane or derogatory language while on-duty or in uniform.*

**Specification #7: Violation of Policy 600 Investigation and Prosecution states:**

*It is the policy of the Cleveland Heights Police Department to investigate crimes thoroughly, with due diligence, and to evaluate and prepare criminal cases for appropriate clearance or submission to a prosecutor.*

## Pre-Disciplinary Hearing

At the hearing, you acknowledged receipt of the charging letter and were then afforded the opportunity to be heard on each of the seven specifications.

During the hearing, you acknowledged all of the factual findings of the incident/investigation except that you denied knowingly and/or intentionally violated anyone's Constitutional rights as outlined in Specification #3 related to the Core Values of the Cleveland Heights Police Department.  You took responsibility for your actions and attributed your actions to having a "bad day." Further, you indicated that since prior to this incident, you have been in continuous counselling for "anger management" and "PTSD" related issues.

## Findings

Based upon your testimony at the pre-disciplinary hearing and the evidence collected relative to this matter, I have determined the following in regards to each of the six specifications:

*Specification #1*:  I have determined that you are **guilty** of violating the Cleveland Heights Police Department Law Enforcement Code of Ethics. Your actions that day brought disrepute to the public image of the police department. Your conduct was unprofessional and incompetent.

Your conduct was also not in compliance with the standards of the department. You made no effort to avoid conflict or to de-escalate the situation.

***Specification #2:*** I have determined that you are **guilty** of violating the Mission Statement of the Cleveland Heights Police Department by not maintaining high performance standards and professional excellence in the performance of your duties by being discourteous, disrespectful, and rude with the use of profanity.

***Specification #3:*** I have determined that you are **guilty** of violating the Core Value of the Cleveland Heights Police. Your conduct and performance lacked integrity. You failed to maintain high-performance standards to ensure confidence and trust by failing to avoid conflict. You failed to fully investigate the incident to gather all of the facts before making the determination to make an arrest. Your decision to arrest Kern was based upon your "interpretation" of the facts. Even though not done intentionally, the decision to arrest Kern was based upon your misinterpretation of law. If you were unclear about the law as you indicated in an October 20th, 2022, interview, you should have sought further clarification. You failed to involve other members in the department in problem solving to avoid confrontation and you failed to de-escalate the situation. You were also discourteous and acted unprofessionally. Your conduct lacked loyalty, respect, and needlessly cast the Department's reputation, and the reputation of its members in a bad light.


***Specification #4:*** I have determined that you are **guilty** of violating Policy 1000; the Job Description/Requirement of a Sergeant. As a senior member of this department and a Sergeant, it was your responsibility that day to guide and assist Officer Lewis. You failed to exercise reasonable diligence in your responsibilities and decision making. As a Sergeant, it is your responsibility to help and guide subordinates. It is also your responsibility to assist your subordinates with important decisions on technical matters. By your failure to be clear on the law as it relates to Obstruction and interference with a traffic stop, you failed to assist Officer Lewis in her duties, and failed in your duties, as a law enforcement officer.

***Specification #5:*** I have determined that you are **not-guilty** of violating Policy 1010 Personnel complaints by making no reasonable steps to mitigate the aggravation of the situation. Upon further review, there is lack of supporting evidence to support this charge.

***Specification #6:*** I have determined that you are **guilty** of violating Policy 319 Standards of conduct by failure to meet the guidelines in the policies of the Cleveland Heights Police Department. As evident from body camera footage, your conduct was discourteous and disrespectful, which included profane language. During the arrest of Kern, you told him "I am not putting up with your bullshit."

***Specification #7:*** I have determined that you are **guilty** of violating Policy 600 Investigation and Prosecution by failing to investigate crimes thoroughly and with due diligence. You failed to interview Officer Lewis in a timely manner which was necessary to obtain all the facts. Even after Officer Lewis advised you Kern did nothing wrong, you arrested Kern and ordered Officer

# CONFIDENTIAL

Lewis to charge Kern with Obstruction without a proper evaluation of the facts.  It wasn't until after you arrested him that you attempted to ascertain what had occurred. The original complaint was initially reviewed by Lt. Williams. In the complaint follow up form submitted by Lt. Williams, he noted that Kern "should have been allowed to leave on his own free will at this stage of the encounter." The charge against Kern was subsequently dismissed by Prosecutor Roessner for lack of probable cause. As you stated in an interview, your actions were based upon your "interpretation" of events.

*There was no evidence or charges related to any other policies reviewed or investigated including Policy 313.3.1 Discrimination, Policy 313.3.2 Retaliation, or Policy 313.3.3 Sexual Harassment.

**Penalty**

It should be noted as indicated during your Pre-Disciplinary Hearing that you took responsibility for your actions on September 22nd, 2022.  You indicated to me that you have been in counselling for conditions related to anger management and PTSD. Along with this, you attended and completed a 24-hour training seminar called Confident Non-Escalation in October 2022.

It is therefore my determination that based on all the evidence presented in this matter, you are to receive a 6 - day (48 hours) unpaid suspension. You are ordered to continue with your counselling and will be required to provide proof of participation and periodic updates documenting your progress with your medical provider.  If you are unable to provide satisfactory documentation from your personal medical provider, you will be required to complete an anger management and/or a PTSD related program through the City of Cleveland Heights Employee Assistance Program.

This letter of determination also constitutes a full and final resolution of this disciplinary action against you, and this shall fully resolve the above - referenced disciplinary action against you as long as you meet the requirements outlined above.

You and the Union acknowledge that any future related infractions shall be cause for further disciplinary action.

You have entered into this agreement voluntarily and without coercion. You acknowledge you have conferred with counsel and/or a Union representative before signing this letter of agreement.

Christopher M. Britton, Chief of Police                    Sgt. Naftali Wolf

Daniel Leffler, OPBA Legal Counsel                    Det. W. Robinson, OPBA Union Representative