

CASE NO. 1:23-CV-01327

# DEMETRIUS KERN

V.

# NAFTALI WOLF, ET AL.

**DEPONENT:**

**DEMETRIUS KERN**

# DATE:

**June 12, 2024**

 schedule@yourdepos.com

866.800.7031

www.yourdepos.com

1          IN THE UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF OHIO

3             CASE NO.: 1:23-CV-01327

4            JUDGE CHARLES ESQUE FLEMING

5

6               DEMETRIUS KERN,

7                  Plaintiff

8

9                     V.

10

11             NAFTALI WOLF, ET AL.,

12                 Defendants

13

14

15

16

17

18

19

20

21

22

23   DEPONENT:  DEMETRIUS KERN

24   DATE:      JUNE 12, 2024

25   REPORTER:  KAYLEIGH KINNAMON

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202



Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1                    APPEARANCES

 2

 3   ON BEHALF OF THE PLAINTIFF, DEMETRIUS KERN:

 4   Christopher Wiest, Esquire

 5   Chris Wiest Law, A Law Firm

 6   25 Town Center Boulevard

 7   Suite 104

 8   Covington, Kentucky 41017

 9   Telephone No.: (513) 257-1895

10   E-mail: chris@wiestlaw.com

11

12   AND

13

14   Tom Bruns, Esquire

15   Bruns, Connell, Vollmar & Armstrong LLC

16   4555 Lake Forest Drive

17   Suite 330

18   Cincinnati, Ohio 45242

19   Telephone No.: (937) 999-6261

20   E-mail: tbruns@bcvalaw.com

21

22

23

24

25
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1                    APPEARANCES  (CONTINUED)

 2

 3   ON BEHALF OF THE DEFENDANT, NAFTALI WOLF:

 4   Thomas Spyker, Esquire

 5   Tommy Kazckowski, Esquire

 6   Reminger Co., L.P.A.

 7   200 Civic Center Drive

 8   Suite 800

 9   Columbus, Ohio 43215

10   Telephone No.: (614) 228-1311

11   E-mail: tspyker@reminger.com

12   tkaczkowski@reminger.com

13

14   ON BEHALF OF THE DEFENDANTS, CARLY LEWIS AND CLEVELAND

15   HEIGHTS:

16   Greg Beck, Esquire

17   Andrea Ziarko, Esquire

18   Baker, Dublikar, Beck, Wiley & Mathews

19   400 South Main Street

20   North Canton, Ohio 44720

21   Telephone No.: (330) 499-6000

22   E-mail: beck@bakerfirm.com

23

24

25
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1                        INDEX

 2                                          Page

 3   DIRECT EXAMINATION BY MR. SPYKER          6

 4   EXAMINATION BY MR. BECK                   81

 5   REDIRECT EXAMINATION BY MR. SPYKER       147

 6   FURTHER EXAMINATION BY MR. BECK          163

 7

 8                       EXHIBITS

 9   EXHIBIT                                  Page

10   A - Verified Complaint-Spyker            53

11   B*- Sergeant Wolf Body Cam Footage       77

12   D - Responses To Interrogatory          116

13        [*Will forward exhibit B upon receipt.]

14

15                    FORMAL REQUEST

16   1 - Medical records from the previous car

17       accident

18

19

20

21

22

23

24

25
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1                            STIPULATION

 2

 3    The deposition of DEMETRIUS KERN was taken at BAKER

 4    DUBLIKAR, BECK, WILEY & MATHEWS, 400 SOUTH MAIN STREET,

 5    NORTH CANTON, OHIO 44720 on WEDNESDAY the 12TH day of

 6    JUNE 2024 at approximately 10:17 a.m. (ET); said

 7    deposition was taken pursuant to the FEDERAL Rules of

 8    Civil Procedure. It is agreed that KAYLEIGH KINNAMON,

 9    being a Notary Public and Court Reporter for the State

10    of OHIO, may swear the witness and that the reading and

11    signing of the completed transcript by the witness is

12    not waived.

13

14

15

16

17

18

19

20

21

22

23

24

25
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1                       PROCEEDINGS
 2           MR. WIEST:  And then I know we're going to
 3      order today.
 4           THE REPORTER:  Okay.
 5           MR. WIEST:  No-rush E-Tran.
 6           THE REPORTER:  No-rush E-Tran?
 7           MR. WIEST:  Yep.
 8           THE REPORTER:  Perfect.
 9           MR. WIEST:  Thanks.
10               (OFF THE RECORD)
11           THE REPORTER:  Mr. Kern, are you ready?
12           THE WITNESS:  Yes, ma'am.
13           THE REPORTER:  All right.  Perfect.  If I can
14      have you raise your right hand?  Do you solemnly
15      swear or affirm that the testimony you're about to
16      give will be the truth, the whole truth, and
17      nothing but the truth?
18           THE WITNESS:  Yes.
19           THE REPORTER:  All right.
20      You may proceed.
21               DIRECT EXAMINATION
22 BY MR. SPYKER:
23      Q.   Okay.  Sir, my name is Tom Spyker.  We met
24 briefly off the record.  I'm one of the defense
25 attorneys on the other side.  I represent Nate Wolf.
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

1  Greg and Andrea, they represent the department and the

2  other officer involved.

3          We're here today because you filed a lawsuit

4  against the City of Cleveland Heights Police Department

5  and a couple of its officers, and this is an opportunity

6  we get to talk to you to figure out more about your

7  claim and ask some questions we have about it.

8          Fair enough?

9  A.   Yes.

10 Q.   Okay.  Have you ever been deposed before?

11 A.   For a car accident.

12 Q.   Okay.

13 A.   Other than that, I'm not sure.

14 Q.   Okay.  How long ago was the car accident that

15 you were deposed in?

16 A.   The car accident happened Cinco de Mayo of '20

17 or '21, I believe.

18 Q.   Okay.

19 A.   I'm not sure the exact date.

20 Q.   Okay.  So I might ask some more questions

21 about that down the road, but you've been in one of

22 these before.  I'm going to just go over some ground

23 rules.  These are mostly to make her life easier.  She's

24 typing down everything that we say.

25          So sometimes, we can get conversational, so

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

1   some of these ground rules are really just to kind of
2   control the pacing of conversation and make sure that
3   everything is accurately recorded, fair?
4       A.   Fair.
5       Q.   Okay.  We're doing a good job so far.  I'm
6   going to ask you verbal questions.  It's important that
7   you give me verbal answers.  Sometimes when things get
8   conversational, we do non-verbal shrugging, head
9   nodding.  It's hard for her to record what's being
10  indicated by those things.
11           So if I ask you a question and you say uh-huh,
12  and I say, is that a yes?  I'm not trying to be rude.
13  I'm just trying to get the correct thing on the record.
14           Fair enough?
15      A.   So, basically, articulate everything.
16      Q.   Articulate everything.
17      A.   Yes.
18      Q.   Absolutely.
19      A.   I understand that.
20      Q.   Yeah.  And I'm going to forget.  You're going
21  to forget.  And if I remind you, not me being rude, just
22  making sure that she gets everything, fair?
23      A.   Fair.
24      Q.   Okay.  Similarly, when things get
25  conversational, we're doing a good job of this already,

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1   but you might anticipate what my question is.  In a
 2   normal conversation, we might start to talk over each
 3   other.  It's important that we try not to do that
 4   because it's hard for her to record two people at once.
 5        A.   I respect you.
 6        Q.   Okay.  Fair enough.
 7        A.   I won't talk over you.
 8        Q.   I'll do my best not to talk over you, but
 9   sometimes it just happens in conversation --
10        A.   Okay.
11        Q.   -- fair?
12        A.   Okay.
13        Q.   All right.  Another rule.  I talk fast, so
14   you -- please tell me to slow down if you need to -- if
15   I start to forget.
16             I'm going to ask you some bad questions.  I'm
17   going to ask you some questions that sound stupid.
18   That's not intentional.  It's just because that happens
19   sometimes.  If you don't understand anything that I'm
20   asking you, all you got to do is just say, hey, I don't
21   understand, can you rephrase that?
22             And I'm happy to get to a place where we
23   understand what the question is, okay?
24        A.   Okay.  Correct.
25        Q.   Okay.  Fair enough.
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202



Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1              THE REPORTER:  I'm so sorry.  I couldn't -- if
 2       I could just have you speak up a little bit.
 3              THE WITNESS:  All right.
 4              THE REPORTER:  It's a little hard to hear.
 5              THE WITNESS:  All right.
 6              THE REPORTER:  Thank you.
 7  BY MR. SPYKER:
 8       Q.   All right.  Well, let's start with some
 9  background that we had already talked about.  Just
10  briefly, what happened in that car accident?  That
11  resulted in a lawsuit, I'm assuming.
12       A.   I was stopped --
13              MR. WIEST:  Objection to form.
14              Go ahead.
15              THE WITNESS:  I didn't --
16              MR. WIEST:  No, no.  You can answer.
17              THE WITNESS:  Okay.  I was stopped at a light,
18       and I was rear-ended.
19  BY MR. SPYKER:
20       Q.   Okay.  Did you -- were you injured in any way
21  during that car accident?
22       A.   Yes.
23       Q.   All right.  Tell me about the injuries you
24  suffered during that car accident.
25       A.   I had injuries to my spine and my head, a
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1  couple slipped discs in my back.  And that -- from my
 2  recollection, that was the sum of it.
 3      Q.   And when you said you had injuries to your
 4  spine and head, let's separate that out.  Injuries to
 5  your spine, what type of injury to your spine did you
 6  have?
 7      A.   I can't -- I have no medical background.  I
 8  can't answer that.
 9      Q.   No.  Fair enough.  What kind of treatment did
10  you go through for your spinal injury?
11      A.   Physical therapy.
12      Q.   Okay.  Did you treat in any other way other
13  than physical therapy?  Did you have any surgical
14  intervention?  Did you have --
15      A.   No surgical intervention.
16      Q.   Okay.  How long were you in physical therapy
17  related to your spine?
18      A.   I have no recollection of that.  I don't know
19  how long it was.
20      Q.   That's fair.  That's fair.  Now, talking about
21  your head injury, what's your understanding of the head
22  injury you suffered during that car accident?
23      A.   The -- well, I -- my medical expertise -- I
24  just had a head injury.  I can't --
25      Q.   No.  I understand.
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 13 of 168. PageID #: 1271
The Deposition of DEMETRIUS KERN, taken on June 24, 2024

12

 1      A.    -- expound on that.

 2      Q.    Do you recall if any medical professionals

 3   told you that you had a concussion, for example?

 4      A.    I believe so.

 5      Q.    Okay.  And you said a couple of slipped discs,

 6   right, as related to that car accident?

 7      A.    No.  I was just being conversational.

 8      Q.    Sure.  Not a test.  I'm not going to hold you

 9   to the exact medical terminology of it.  I'm just trying

10   to get a better understanding of --

11      A.    Correct.

12      Q.    -- how the car accident impacted you.

13      A.    I was -- man, my back was -- I was in pain.

14      Q.    Okay.  Now you took a -- you said you gave a

15   deposition related to that auto accident.  I assume then

16   that means that a lawsuit was filed; is that fair?

17      A.    That's fair.

18      Q.    Okay.  And I'm assuming -- correct me if I'm

19   wrong, please.  You filed a lawsuit seeking to recover

20   for someone rear-ending you, right?

21            MR. WIEST:  Objection to form.

22            You can answer.

23            THE WITNESS:  Recover?  What do you mean?

24   BY MR. SPYKER:

25      Q.    Or you filed a lawsuit to be compensated for

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1   someone rear-ending you; is that accurate?
 2              MR. WIEST:  Objection to form.
 3              You can answer.
 4              THE WITNESS:  Yes.
 5   BY MR. SPYKER:
 6        Q.   Okay.  And I don't need details of amounts or
 7   anything, but how did that case resolve?  Did it settle?
 8   Was it dismissed?  Did it go to trial?
 9        A.   It settled --
10        Q.   Okay.
11        A.   -- I believe.  I don't know the terminology.
12        Q.   Fair enough.
13        A.   All right.
14        Q.   You didn't go to trial, though, on it, right?
15        A.   I don't believe I went to trial.
16        Q.   Okay.
17        A.   I went into -- I talked to people, and there
18   was something after that.  But I don't -- I never sat on
19   a bench or anything like that.
20        Q.   Okay.  But you never went to a courtroom with
21   a judge and a jury determining who was at fault for the
22   accident?  Something like that?
23        A.   I don't believe that's what that was.
24        Q.   Easy enough.  All right.  Got a little
25   sidetracked there because I was interested about the
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 15 of 168. PageID #: 1273
The Deposition of DEMETRIUS KERN, taken on June 21, 2024

14

1    traffic accident.  Let's backtrack and get into some

2    more general background.

3              Are you currently employed?

4        A.   Yes, sir.

5        Q.   All right.  Tell me what you do for a living,

6    please.

7        A.   I'm a marketing manager for the region at one

8    company, and I'm a marketing manager for this direct

9    place out of Cleveland, Ohio.

10       Q.   Okay.  You said you're a marketing manager for

11   one company?

12       A.   Yeah.  I work for two companies.  I have two

13   jobs.

14       Q.   Two companies.  Okay.  What are the names

15   of -- what's the name of the company you're a marketing

16   manager for?

17       A.   Marketing Made For You and CLE Solutions.

18       Q.   The position at Marketing Made For You, how

19   long have you worked there?

20       A.   A little under a year.

21       Q.   Okay.  Is that a full-time job?  You putting

22   in 40 hours a week?

23       A.   I put in more than 40.

24       Q.   Well, yeah.  At least 40 hours a week, I

25   should have said.

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
1        A.    It's full-time.  Yes.

2        Q.    All right.  How long have you worked for -- I

3   think you said CLE Solutions?

4        A.    Yes.

5        Q.    Okay.  How long have you worked for CLE

6   Solutions?

7        A.    A little under a year, but I've worked for

8   them in the past.

9        Q.    Okay.  What does -- what do you do for CLE

10  Solutions?

11       A.    I manage -- pretty much manage the marketing.

12       Q.    Okay.

13       A.    Yeah.

14       Q.    Me not understanding even what CLE Solutions

15  is, what does that company do?

16       A.    They provide services for people of lower

17  income based off of a grant provided by the government.

18       Q.    Okay.  And Marketing Made For You, what is

19  that company?

20       A.    It's the same thing.

21       Q.    Same thing?

22       A.    Yes.

23       Q.    Okay.  Fair enough.  CLE Solutions, is that

24  also a full-time position, or is that --

25       A.    Yes.
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1          Q.   Okay.

 2          A.   They were --

 3          Q.   So you're a busy guy?

 4          A.   Yes.

 5          Q.   Fair enough.  You'd been doing both of those

 6    jobs for about a year.

 7          A.   A little under a year.

 8          Q.   A little under a year.  What was your

 9    employment prior to those two positions?

10          A.   Prior to that, I was going through physical

11    therapy and waiting for a release.  And then before

12    that -- no.  I -- you -- I don't know.  What are you

13    asking? Just so --

14          Q.   I'm just saying, what job did you have before

15    working at either Marketing Made For You or CLE

16    Solutions?

17               MR. WIEST:  Objection.  Form.

18               THE WITNESS:  I was going to physical therapy.

19    BY MR. SPYKER:

20          Q.   Okay.

21          A.   Yes.

22          Q.   All right.  Understanding that you were going

23    through physical therapy, was that related to your auto

24    accident that we had already discussed about?

25          A.   No.
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 18 of 168. PageID #: 1276
The Deposition of JUSTIN KERN, taken June 21, 2024

17

     1     Q.   All right.  What was that physical therapy
     2   related to?
     3     A.   It was related to the injury inflicted by
     4   Cleveland Heights.
     5     Q.   Fair enough.  And we'll -- I want to separate
     6   that out just because we're talking about background
     7   now.  We'll talk about that later when we start to talk
     8   about the underlying incident.
     9          Understanding that you were going through
    10   physical therapy prior to taking these jobs at Marketing
    11   Made For You and CLE Solutions, what was the last
    12   employment you held prior to those two positions?
    13          MR. WIEST:  Objection to form.
    14          You can answer.
    15          THE WITNESS:  The last -- so before that, I
    16      was going to school --
    17   BY MR. SPYKER:
    18     Q.   Okay.
    19     A.   -- right?  And I would have to look in my
    20   records to answer that question.
    21     Q.   Okay.  As we sit here today, you can't
    22   remember the last job you had prior to -- because all --
    23   if I'm asking a poor question, I apologize.
    24          I just want to know, what was the last job you
    25   had?

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

 1        A.   Well, you said I couldn't remember.  I never

 2    said I couldn't remember.  I said, to be accurate, I

 3    want to look in my records.

 4        Q.   No.  And I apologize.  I didn't mean to imply

 5    anything.  Do you know what the last job you had was

 6    prior to working at Marketing Made For You and CLE

 7    Solutions, your two current positions?

 8             MR. WIEST:  Objection to form.

 9             THE WITNESS:  I worked for the State of

10    Ohio --

11    BY MR. SPYKER:

12        Q.   Okay.

13        A.   -- as a corrections officer, youth specialist.

14        Q.   Okay.

15        A.   I don't know if that's directly, but I know I

16    worked there.

17        Q.   Okay.  Do you recall when you got that job

18    working for the State of Ohio as a corrections officer?

19        A.   I can't be definitive.  I think it was '17 or

20    '18.

21        Q.   All right.  All right.  And do you recall when

22    you left that position?

23        A.   Well, when you say left, I got -- had to have

24    surgery on my -- my thumb.  So when you said -- I didn't

25    really -- after that was over, that's when -- I think

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

1  that was over '20 or '21, after everything.  I'm not

2  sure the exact date.

3         Because I injured myself -- one of the kids

4  were trying to tip a bed over onto another kid, and I

5  stopped the bed from falling on the kid.

6      **Q.   Okay.  So that resulted in a workplace injury?**

7      A.   To my thumb.

8      **Q.   To your thumb.  Did you take paid time off**

9  **after that, as you were recovering from that injury?**

10     A.   Yeah.  I had workers' comp that I was -- I had

11 paid time off, but that exhausted itself.  And it's

12 another faction of that -- that took over after that.  I

13 forgot the name of it, but it's still some type of

14 compensation.  Yeah.

15     **Q.   After you injured your thumb, did you ever**

16 **return to full-time work with the State of Ohio as a**

17 **corrections officer?**

18     A.   After I injured my thumb, I didn't.  But they

19 offered me my job back, even after everything.

20     **Q.   All right.  What caused you not to take that**

21 **offer?**

22     A.   Well, the State of Ohio has a great thing

23 going, and I don't want to say any disparaging remarks

24 about them.  I don't know exactly why I didn't go back,

25 but I -- I enjoyed the job working with the kids and

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

1  being able to reach them.  The ones that I could reach.

2      Q.  Sure.

3      A.  So me getting injured was a big factor in not

4  going back to being in a prison.  Because when you work

5  with kids, you're still in prison.  A -- a jail, it's

6  like you're still in prison, so that was a -- a factor

7  to me.

8          And I didn't want to be in prison, especially

9  working with -- some kids you can reach.  Other kids,

10  you can't reach.  And it's hard on you sometimes.

11      Q.  Sure.  So I can completely understand that. So

12  totality of circumstances -- basically, you just decided

13  not to go back; is that fair?

14      A.  I -- I -- at that time, I don't know why I

15  didn't go back.

16      Q.  Okay.  Did you have any jobs in between

17  working as a correction officer for the State of Ohio

18  and then this employment that you're currently engaged

19  with?

20      A.  Yes.  I drove Lyft.

21      Q.  Okay.

22      A.  That was the injury -- that just came back to

23  me.  I'm sorry about that.

24      Q.  No worries.  No worries.  You drove Lyft.  You

25  did that after the State of Ohio corrections job,

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

1    correct?

2         A.   Yes.

3         Q.   Okay.  And about how long did you do that for?

4         A.   I'm not sure the exact amount of time.

5         Q.   Okay.  Besides driving Lyft, did you have any

6    other employment after --

7         A.   Oh.  Yes.

8         Q.   -- the State of Ohio Corrections job, but up

9    to your current employment?

10        A.   I did.  I got an opportunity -- it's -- one of

11   my good friends is a -- has a high position at an

12   insurance office, and he told me to get my insurance

13   license.  But I had -- I had left that job as soon as I

14   got paid because I didn't want that to conflict with my

15   workers' compensation, but it did.

16             So I started that job under the basis of

17   learning the field.  And when I get done with workers'

18   comp, I would start.  But I advised my superior that if

19   I get paid, I couldn't keep it.  As soon as he gave me

20   money, I left that.  And then a little bit after that,

21   that is when I started driving Lyft.

22             And I only started driving Lyft at the time

23   because the workers' compensation wasn't sufficient

24   enough for me to take care of my daughter that I just

25   had.  And that resulted in me receiving a felony charge.

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

1           From my understanding, I thought that they

2    were just going to take my settlement and repay the

3    State of Ohio.  I worked taxable income.  I had no

4    intention to defraud or mistrust the State of Ohio.  And

5    even the nature of the employment is stating to that

6    because in that case, people would work under the table.

7    I worked taxable income.

8        Q.    Okay.  So there was several things there, and

9    I'm just trying to understand.  So what I'm

10   understanding from the answer you just gave me --

11       A.    And I'm just being conversational.

12       Q.    And I understand, and that's why I'm restating

13   because I want to make sure that I'm not

14   misunderstanding anything.

15           You were receiving workers' compensation

16   benefits related to your injury you suffered at the

17   State of Ohio corrections officer position?

18       A.    Yes.

19       Q.    Then you had started picking up some other

20   employment that had resulted in some income, and then

21   there was -- State of Ohio perceived some conflict

22   between you receiving workers' compensation benefits and

23   receiving that income.

24           Is that a fair summary of what you're trying

25   to tell me?

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

1     A.   It's a summary, but I wouldn't say it's fair.

2  The first part of it is a mischaracterization.  I went

3  and got my insurance license with the basis of learning,

4  so when it was done, I would be ready to work.  But

5  outside of that, yes.

6     **Q.   Okay.  And I'm not trying to mischaracterize**

7  **anything.  I'm asking the question to try to better**

8  **understand.**

9     A.   I understand.

10     **Q.   And you said that it resulted in a felony**

11  **charge.  I didn't fully understand that part.  Can you**

12  **explain that more?**

13     A.   I don't know what you want me to explain.  I

14  got charged for doing something I wasn't supposed to do.

15     **Q.   Okay.  What was your understanding of what the**

16  **charge was?  Specifically, that you were alleged to have**

17  **done wrong?**

18     A.   I have no legal basis.  I don't understand the

19  legal question.

20     **Q.   Okay.  What was the outcome of the felony**

21  **charge?**

22     A.   The outcome, I was charged with fraud, and I

23  paid back everything to the State of Ohio I've owed.

24  I've done my time.  I've been rehabilitated.  I never

25  was incarcerated, but I am sorry for what I did, and I

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1   learned from it.
 2       Q.   Okay.  I understand.  And did you -- was there
 3   a trial related to your fraud charge?
 4       A.   I would never take something to trial that I
 5   actually did.
 6       Q.   Okay.
 7       A.   I pled to it.  I didn't even get a lawyer.
 8   They -- they provided me one.  And I know what I did was
 9   wrong, so I advised them I'll just plead out.
10       Q.   Okay.  In your words, what was wrong that you
11   had done?
12       A.   Breaking the law.
13       Q.   Okay.  What law did you break?  Your
14   understanding.  I understand you don't have any legal
15   expertise, but you said, you understand you did
16   something wrong.  So what is your understanding of the
17   wrong thing you did?
18       A.   My only understanding of it is what I was
19   charged with --
20       Q.   Okay.
21       A.   -- and what they said I did.  And what I
22   did --
23       Q.   Okay.
24       A.   -- is not what they said I did, but that's my
25   understanding.
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1        Q.    Okay.  What did you do that was wrong in your
 2   eyes such that you didn't contest it and take it to
 3   trial?
 4        A.    I mean, the whole thing.  I -- I'm not proud
 5   of it.  You know what I mean?  It's kind of touchy
 6   because I -- my profession was law enforcement, and at
 7   the time, I just had a new kid, a daughter.  I didn't
 8   know which direction to take, and I couldn't look my
 9   daughter in the eyes after I lost my apartment, couldn't
10   afford my car, and tell her I couldn't feed her, so --
11        Q.    Another rule I should have told you.  If you
12   need to take a break for any reason at any time, that's
13   fine.  Just let me know.
14        A.    I -- I appreciate it.
15        Q.    Yeah.  Okay.  And I understand, and I'm not --
16   I don't want to belabor this point.  I just -- I kind of
17   want to just understand it better so that I can move on.
18   And I can certainly appreciate that it's a bit of a
19   touchy topic, but you had told me, or at least I
20   understood that you'd told me words to the effect that
21   you had done something that, in your eyes, you saw as
22   wrong.
23              I'm just trying to understand what that action
24   was.  What was the action you took that you thought was
25   wrong that --
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1        A.   I'm confused about your confusion because I
 2   worked on workers' comp, and now you're saying that you
 3   don't understand.  You want me to --
 4        Q.   Okay.  No.
 5        A.   -- elaborate on it --
 6        Q.   No.  That's --
 7        A.   -- so I'm confused about what you're confused
 8   about.
 9        Q.   -- yeah.
10        A.   So I was charged for working on workers' comp.
11        Q.   Okay.
12        A.   So in my words that you're asking for, I don't
13   have any legal understanding to answer that question.
14        Q.   What you just told me is very helpful.  What
15   you just told me is very helpful.  Were you charged with
16   working for workers' comp related to the insurance
17   position, the Lyft position, or both?
18        A.   Well, I wasn't charged with working for
19   workers' comp.
20        Q.   Working while on workers' comp is what I
21   meant.
22        A.   Okay.  So the totality of that is, I
23   believe -- I -- but I'm not sure.  It's -- but I believe
24   it's the totality or just the fact of working while
25   receiving workers' comp in itself, which I didn't even
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1   fight, and I pled to because I actually did it.
 2          And I paid back the whole $10,000 that they
 3   said I was over, and I forfeited the settlement for my
 4   thumb.  So I've learned from it.
 5      Q.   I understand.  Okay.
 6      A.   I -- I'm not proud of it.  I wouldn't do it
 7   again.
 8      Q.   While we're talking about that, you said that
 9   your profession was law enforcement.  Aside from the
10   corrections position with the State of Ohio, have you
11   held any other law enforcement roles?
12      A.   I worked --
13          MR. WIEST:  Objection to form.
14          You can answer.
15          THE WITNESS:  -- I worked for Cleveland
16      Heights.
17   BY MR. SPYKER:
18      Q.   Okay.
19      A.   I was an intern for the court for the
20   Honorable Judge Buchanan, and I interned, and then they
21   hired me on.  That was at a young age.
22      Q.   What position were you hired on into?
23      A.   The -- the specific position I'm unsure of,
24   but I worked in the court, and I assisted the bailiffs.
25      Q.   Was that a law enforcement role?
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

1       A.     I believe that is law enforcement.

2       Q.     What were your law enforcement duties as you

3  understood them in that position?

4       A.     Can you explain the question?

5       Q.     Yeah.  What laws were you enforcing in that

6  role?

7       A.     Well, if somebody was to act out in court, I

8  would help with removing them.

9       Q.     Okay.  Was the position such that it required

10 you to wear a uniform?

11      A.     I did have to dress up.

12      Q.     Okay.  And maybe I asked a bad question.  So

13 when I say wearing a uniform, I mean like a marked,

14 identified uniform as opposed to wearing a certain level

15 of clothing, business casual, casual.

16             Were you in a uniform that identified you as a

17 law enforcement officer of some kind?

18      A.     I'm confused about --

19      Q.     Did --

20      A.     -- the question.

21      Q.     -- let me just ask a very easy question.  Did

22 you have to wear a uniform to that job?

23      A.     What -- I -- I had to wear what they advised

24 me to wear.

25      Q.     And what was that?

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1        A.    They -- I had a dress code.  I -- I don't
 2   understand what you're asking.
 3        Q.    Okay.
 4        A.    Are you implying that I have to wear a -- a
 5   police officer suit to help the court?
 6        Q.    I'm not implying anything.  I'm just simply
 7   asking a question.  You said that you thought it was a
 8   law enforcement role.
 9        A.    Well --
10        Q.    I'm trying to understand if it was a uniformed
11   law enforcement role where you were required to show up
12   in a uniform that had visible displays of being in a law
13   enforcement position, a badge, patches.
14        A.    I never said I thought it was law enforcement.
15   That's not -- that's what you said.  I said it was a law
16   enforcement role, but that's apples and -- apples and
17   oranges.  I worked in the court.
18        Q.    Okay.
19        A.    From my understanding, working in the court is
20   a part of law enforcement.  If it isn't, I'd be happy
21   for you to correct me.
22        Q.    It's not my job to correct you.
23        A.    Okay.
24        Q.    I'm just trying to understand the background
25   and figure some things out.  Okay.  So we have that
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

 1   position you had in the court.  We have the corrections

 2   role with the State of Ohio.  Outside of those two

 3   roles, have you had any other professional experience

 4   that you would consider related to law enforcement?

 5        A.   Professional.  So you're asking me if I had

 6   any professional experience related to law enforcement.

 7   No.  I mean, I don't -- I don't under -- no.  I don't

 8   believe so.

 9        Q.   Okay.  How long did you have that job where

10   you were working at the court?

11        A.   It was over a period of a few years.

12        Q.   All right.  All right.  Let's move off of your

13   employment, talk about some different background.  Tell

14   me about your educational background.

15        A.   I have a high school diploma, and I have some

16   college.

17        Q.   Do you have any degrees, associate's, anything

18   of that nature, or just some college courses?

19        A.   Just some college courses.

20        Q.   Okay.  When is the last time you took college

21   courses?

22        A.   20 -- no.  Last time I took college courses? I

23   went to Tri-C.  That's the college.  And then I went

24   to -- that's not a college.  Tri-C.

25        Q.   And when was that?

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1        A.    '22.
 2        Q.    Were you taking specific college courses for
 3   just general education?  What was your goal?  Were you
 4   working towards a degree?  Just trying to understand a
 5   bit more what you were studying.
 6        A.    Well, I was studying -- it was a pre -- it was
 7   a test.  They prepared you for the CCNA test, so it
 8   wasn't -- that's the answer.  It was preparation for a
 9   test --
10        Q.    Okay.
11        A.    -- a certification.
12        Q.    Fair.
13        A.    Right.
14        Q.    And I may be wrong, but I -- and I may be
15   associating things that shouldn't be associated.  Was
16   that related to you getting your insurance license that
17   you talked about before where you were trying to get
18   into the insurance industry, and you were trying to
19   train so that you could work when you were off workers'
20   comp?  Were those courses related to that?
21        A.    I don't understand how that could be related.
22        Q.    Oh, I don't -- I just --
23              MR. WIEST:  So just listen to the question.
24              THE WITNESS:  All right.
25              MR. WIEST:  He wants to know --
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1                  THE WITNESS:  Okay.
 2                  MR. WIEST:  -- was the CCNA related to the
 3        insurance?
 4                  THE WITNESS:  No, sir.
 5   BY MR. SPYKER:
 6        Q.   Okay.
 7                  MR. SPYKER:  Thank you.
 8                  THE WITNESS:  Sorry about that.
 9   BY MR. SPYKER:
10        Q.   Yeah.  All right.  Where do you currently
11   live?
12        A.   4520 -- do you want the address or a city?
13        Q.   Yeah.
14        A.   Okay.
15        Q.   No.  The full address.
16        A.   4527 Laurel Road, L-A-U-R-E-L, Road, South
17   Euclid, Ohio 44121.
18        Q.   How long have you been there?
19        A.   Let me see.  I'm not sure.  Years.  I think
20   since 2018 or '19.
21        Q.   Okay.  Does anybody live there with you at
22   that address?
23        A.   Yes.
24        Q.   Who lives there with you?
25        A.   My three children and their mother.
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

 1      Q.   Okay.  Are your three children all under the
 2   age of 18?
 3      A.   Yes.
 4      Q.   Okay.  What's their mother's name?
 5      A.   Brandy Wilson.
 6      Q.   How long has Ms. Wilson lived there with you
 7   at that address?
 8      A.   Since the house was purchased.
 9      Q.   Okay.  Fair enough.  How old is your oldest
10   child?
11      A.   Well, he's not my biological child --
12      Q.   Oh.
13      A.   -- but he's my child.
14      Q.   I get it.
15      A.   He's 15.
16      Q.   Okay.  And then the next oldest?
17      A.   7.
18      Q.   7.
19      A.   3.  And 3.
20      Q.   Thank you.  Let's see.  We talked about -- and
21   I don't need any more information, at least right now,
22   on the workers' compensation injury to your thumb that
23   you suffered while you were with the State of Ohio.
24           Outside of that, have you ever filed any
25   workers' compensation claims?

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

1      A.   No.  Not to my knowledge.

2      Q.   **Have you ever filed for any forms of**

3 **disability?**

4      A.   I don't recall.

5      Q.   **And you had mentioned, in connection with the**

6 **State of Ohio corrections position, that your workers'**

7 **compensation had ran out, and then you applied for**

8 **something else.**

9           **Is it possible that it was some kind of**

10 **short-term disability?  I thought you had mentioned you**

11 **had applied for some other kind of benefit.**

12      A.   Never.

13           MR. WIEST:  Objection to form.

14           THE WITNESS:  Never said that.

15 BY MR. SPYKER:

16      Q.   **Okay.  My mistake, then.  After you ran out of**

17 **workers' compensation benefits from the State of Ohio,**

18 **did you immediately cease working there?**

19      A.   When I -- could you repeat the question?

20      Q.   **Yeah.  And maybe I was confused in my notes. I**

21 **probably took something down wrong.  Let's just go back**

22 **and clear it up.  Tell me how your employment with the**

23 **State of Ohio came to an end.**

24      A.   The surgery of my thumb and the physical

25 therapy, and then after everything was done, they asked

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1    me -- even after I was charged and this case was
 2    present, they asked me, did I want to come back?  So
 3    that's how it ended.
 4        Q.   Okay.  And then you had declined coming back
 5    for the reasons we had previously discussed, right?
 6        A.   I didn't discuss it.  I said I don't recall.  I
 7    said I don't recall at that time why I didn't go back.
 8        Q.   Okay.  And I believe you also told me about
 9    the stress of the positions, being able to reach some
10    kids, not being able to reach other kids.  I had
11    understood that as all factoring into your decision.
12             Did I misunderstand that?
13        A.   Yeah.  But ultimately at that -- at that time,
14    I'm not sure why I didn't go back.
15        Q.   Fair enough.  All right.  I want to talk a
16    little bit about your medical history.  I know we had
17    talked about you had the injury to the thumb.  You also
18    had some injuries related to a motor vehicle accident
19    that you had previously had.  So when I'm asking you
20    these questions, I'm not asking for more details about
21    those things.
22             So set those things aside, okay?
23        A.   Right.
24        Q.   Aside from those things, have you ever been in
25    any other motor vehicle collisions that resulted in
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 37 of 168. PageID #: 1295
The Deposition of GREGORY JOSEPH KERN, taken on June 12, 2024

36

```
 1   injury to yourself?

 2        A.    I'm not sure off the top of my head.

 3        Q.    Okay.  What about -- let's just maybe go a bit

 4   broader and streamline things.

 5        A.    Hold on.

 6        Q.    Yeah.

 7        A.    Yeah.  I -- I'm not sure off the top of my

 8   head.

 9        Q.    No.  That's okay.  Have you ever -- outside of

10   the things that we've already discussed, and outside of

11   any injuries that may have resulted from the incident

12   that we're here to talk about today -- so in other

13   words, I'm talking about your medical conditions prior

14   to the traffic stop that's subject of the lawsuit but

15   not the ones that we've already talked about.

16              Have you ever had any major physical injuries

17   that resulted in your hospitalization?

18        A.    Yes.

19        Q.    Okay.  What comes to mind?  Tell me about

20   those.

21        A.    I tore my quad.

22        Q.    Okay.  When did you tear your quad?

23        A.    Like, the dates are -- I don't --

24        Q.    That's fine.  It's not a memory test.

25        A.    -- fleeting.
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202



Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1        Q.    Yeah.

 2        A.    Yeah.

 3        Q.    Approximately, if you recall.

 4        A.    I think three to four years ago.

 5        Q.    Okay.  Anything else besides the torn quad,

 6   with all the other qualifiers, right?  So not talking

 7   about the incident and not talking about the injuries

 8   we've already talked about.

 9        A.    And in regards to the date, I don't want it to

10   be definitive like I'm saying exactly --

11        Q.    No.  I assure you, this is not a memory test.

12   We can request medical records and get exact dates.  I'm

13   just trying to understand what your memory is.  And if

14   your memory is, I don't remember, that's the answer.

15        A.    I mean, I've been to -- I'm asthmatic, so --

16        Q.    Okay.

17        A.    -- I've been to the hospital for things

18   before.

19        Q.    Yeah.  And --

20        A.    But I'm not -- for me to say, definitively,

21   this then that, but I can say -- yeah.  I can't say

22   definitively.

23        Q.    That's fair.  Let's do it this way.  Have you

24   ever had any broken bones?

25        A.    Broken bones.  No.
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

1       Q.    Okay.

2       A.    Not -- from my best memory, no.

3       Q.    Sure.  Have you had any other major injuries

4   to your muscle groups, tears, ruptures, outside of what

5   we talked about with your thumb and the quad?

6       A.    No.  I don't believe so.

7       Q.    What about dislocations of joints, bone, other

8   skeletal, muscular issues that may not be a tear or a

9   broken bone?

10      A.    I don't believe so.

11      Q.    Okay.

12            MR. WIEST:  And again, just for the record,

13      we're not talking about the motor vehicle accident,

14      the injury to the thumb, or the incident that we're

15      here to talk about.

16            MR. SPYKER:  Correct.

17            MR. WIEST:  Yeah.

18            MR. SPYKER:  Yeah.  I'm just trying to get

19      general background --

20            MR. WIEST:  Right.

21            MR. SPYKER:  -- and not --

22            MR. WIEST:  Yeah.

23            MR. SPYKER:  -- go into repetitive things or

24      things that we'll go into later.

25            MR. WIEST:  Right.

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
1    BY MR. SPYKER:
2         Q.   All right.  As we sit here today, sir, are you
3    on any medications?
4         A.   No, sir.
5         Q.   Okay.  All right.  I'd like to transition to
6    the portion of the deposition where I begin talking
7    about the actual incident.
8              THE WITNESS:  Can I get some water too?
9              MR. SPYKER:  We can take a quick break.  Yeah.
10        Let's take five minutes.
11             THE WITNESS:  I don't need a break.  I just
12        want water.
13             MR. SPYKER:  I'm actually going to hit the
14        bathroom again.  I had a two-hour drive and --
15             MR. WIEST:  Okay.  Right.
16             MR. SPYKER:  -- too many bottles of water, so
17        early break for me because I have the bladder of a
18        five-year-old.
19             THE WITNESS:  All right.  Thank you.
20                  (OFF THE RECORD)
21             THE REPORTER:  We are back on the record. Time
22        is 10:55.
23   BY MR. SPYKER:
24        Q.   All right.  Just took a quick break, and we're
25   going to actually start talking about what I'll say is
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

1    the substance of the lawsuit.  The interaction you had

2    during a stop on September 22, 2022, which is the

3    subject matter of your lawsuit.

4            What I'd like to do is just start with, from

5    your recollection, just tell me what happened that day.

6            MR. WIEST:  Objection to form.

7            Go ahead.

8            THE WITNESS:  Oh.  Okay.

9            MR. WIEST:  Yeah.  I will tell you when I

10          don't want you to answer.  Unless he's asking about

11          conversations you've had with Mr. Bruns and I, I'm

12          generally going to have you answer everything, so

13          go ahead and --

14          THE WITNESS:  Okay.

15          MR. WIEST:  -- yeah.

16          THE WITNESS:  So the whole --

17   BY MR. SPYKER:

18    Q.   Yeah.  I just want to hear your perspective,

19   what you recall about the incident.

20    A.   Okay.  So I was in the curb lane, and I'm not

21   sure if it's north or south we're traveling.  But I was

22   going down from Orangeville towards Taylor, I believe,

23   but I didn't even make it that far.

24          I'm driving along, and the officer cuts me off

25   at a 30- to 50-degree angle.  And after cutting me off,

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
1    like, that's when she pulls somebody over.  No lights
2    were on when she cut me off.  No sirens were on when she
3    cut me off.  And then she pulled up and stopped.  Can
4    you hear me?
5              THE REPORTER:  Uh-huh.
6              THE WITNESS:  Okay.  She pulled up and
7         stopped, and I made sure that I gave her enough
8         room so she would feel secure.  I was at least one
9         to two car lengths away from her.
10             I didn't approach her.  I didn't even attempt
11        to approach her.  I didn't vocalize anything in a
12        threatening manner.  I didn't yell at her.  I
13        said -- when she got out of her car, I opened my
14        door, and I said, I want your name and your badge
15        number.  You almost ran me off the road.
16             From there, she said, give me one second.
17             And upon her request, I gave her one second.
18        If she would advise me that she's on a stop, or I
19        was interrupting her stop, or to go to the police
20        station, I can't be at her stop, I would have left
21        her stop.  But all I wanted was her name and her
22        badge number, and I would have left.
23             Per her request, I went to the back end of my
24        car to give her even more space so she would feel
25        secure while doing what she was doing.  At that
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202



THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

1  point, I didn't vocalize anything else.  I sat

2  there -- I stood there quietly and waited for her,

3  per her request.

4      When she came back, she apologized vehemently

5  over and over and over again.  She said, I'm sorry.

6  From -- and what -- I don't remember exactly the

7  verbiage she used after that.

8      But I remember I said, you apologized.  You

9  were wrong.  I'll let it go.

10      From then, she said, I'm not wrong.

11      And that was confusing, somebody apologizing

12  and saying they're not wrong, right?  So I didn't

13  know what she was apologizing for at that point.

14      So then I said, this is the disconnect, the

15  public -- you public officials have with the public

16  because after you do something, you should just

17  admit it and say you're wrong and be on your way.

18      But she said, I am apologizing.  I am

19  admitting.

20      And don't quote me.  I believe that's exactly

21  the verbiage she said, which that's the premise of

22  it.

23      And from there, we had a talk, and she called

24  for backup.  She asked me to hold on, and she was

25  still -- she went back up.

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1        The backup came.  Naftali Wolf came up,
 2   accusatory, right?
 3        And I told him -- I -- you don't even know
 4   what's going on.  You weren't here.
 5        And he -- he scoffed laughingly in a sense to
 6   me, right?
 7        No.  I wasn't.  You shouldn't have did this.
 8        He was so aggressive that I insisted that I
 9   dealt with Carly Wolf.  And when Carly Wolf --
10   Carly Lewis, Carly Lewis, Carly Lewis.  My
11   apologies.  Carly Lewis.
12        And when she came back, she said, deal with
13   me.  And then she said, listen to me, right?
14        I didn't say anything back to her.  I listened
15   to her, right?
16        She told me to take my hands out of my pocket.
17        I did so willingly, without any
18   back-and-forth.
19        Then she asked me for my ID and my name.
20        And from my position, I didn't break the law.
21   I didn't -- I wasn't pulled over.  I stopped her by
22   my own will.  All I wanted was her name and badge
23   number to go over and make a complaint about her
24   reckless driving, right?
25        Between her and the sergeant, it went crazy,
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

1    and I didn't know what was going to happen because
2    one officer was saying she wants to let me go, and
3    the other officer was saying something different.
4    And he was very aggressive.
5            So from that point, me not having a legal
6    standpoint from my understanding to identify
7    because I didn't break the law, I didn't identify.
8    I said I'm not going to do it because what's your
9    reasonable articulable suspicion?  And then I asked
10   him, was I being detained?
11           And he said, if you want to be detained.
12           So I was very confused at that point, and I
13   was in fear of my life at that point.
14           And then from me working at Cleveland Heights,
15   right, I didn't expect this from any officer in the
16   City of Cleveland Heights, right?  So this took
17   from me a lot.  I was secure before this.  Thought
18   I had a sense of security.  I had trust for
19   Cleveland Heights, of all cities, where I worked
20   at.  I would never think that an officer would tell
21   me I'm going to be detained if I want to be, after
22   I was told I didn't break any laws.
23           I went to a very diverse school, and I have
24   come from a diverse background, a very progressive
25   background, and I never felt Black in America.  I

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

1    felt American, but this made me feel Black in
2    America.
3          And I was put in handcuffs, and he's twisting,
4    twisting.  And I turned around, and I look at him,
5    and I say, why are you twisting on me like that?
6    And he's still being so aggressive.  And I say, why
7    are you so full of machismo?
8          And he yells at me, sit down.
9          Even at the point where I'm sitting down, and
10   I say, I am sitting down.
11         When I was sitting down, he still yelled at
12   me, sit down.  Then he slammed the door on me.
13   When I get in, he slams the door on me like I'm a
14   dog.
15         In the back of the car, Carly Lewis says, I
16   apologize, over and over.  The prosecutor is good.
17         I said, hold on a second.  The prosecutor?
18         Yeah.  The white prosecutor, the new one.
19         I said, color doesn't matter.
20         But she told me over and over again,
21   basically, that she would be in court for me,
22   basically. I apologize.  The prosecutor is good.
23   I'll be there. Basically, saying, I'll be there for
24   you.
25         MR. WIEST:  Do you want to take a break?

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1          MR. SPYKER:  You guys have any tissues or
 2    anything?
 3          THE REPORTER:  I thought we did.
 4          MR. WIEST:  Let's just take a little moment.
 5          MR. SPYKER:  Yeah.  We can take a moment.
 6          THE REPORTER:  Going off record.
 7               (OFF THE RECORD)
 8          THE REPORTER:  We are back on record.
 9          THE WITNESS:  So I'm in the back of the car
10    and she says, I don't even know what to write this
11    ticket for.
12          So in my mind, I'm like, man, they could just
13    write anything.  And I thought we progressed so
14    much past this.
15          So she has to go back to -- to speak to
16    Naftali Wolf to even know what to write on the
17    ticket that she was there for.  And he had no idea.
18    No idea what went -- happened.  What happened?  No
19    idea.  So I didn't know what was going to happen to
20    me at that point.
21          And all I can think of is my educational
22    background of what happened after 1865, convict
23    leasing and Black Codes.  Where you catch one by
24    the railroad and arrest him for whatever we write
25    down.  And I never thought at the -- in this period
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

1   of time that this could happen.

2        And for her -- for her to keep apologizing,

3   over and over, over and over, but not stand up when

4   she knew I didn't obstruct.  She knew I didn't

5   obstruct. She knew I didn't obstruct.  Obstruction

6   is an action at its core.  I didn't act.  She

7   requested me to stay there.

8        And even Naftali Wolf, when he came, and he

9   did -- I didn't know who he was.  He said that all

10  right.  Carly, handle that.  We could talk on the

11  side of the road.  That's what he told me.  He told

12  me that we could talk on the side of the road and

13  get it figured out.  So I was still there at his

14  request.

15       Then after everything, I was -- I mean, I was

16  injured.  I asked for an ambulance.  And they tell

17  me that they're going to tow my car.  It was just

18  so nonchalant when you're dealing with somebody in

19  a position of authority that you could just say

20  whatever you want to say.

21       And then he said, we got him in cuffs now.  We

22  got to do it.

23       This is so despicable.  And I even gave the

24  city a chance.  After this, I gave -- I -- I --

25  before I got a lawyer, before I met Chris --

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1              MR. WIEST:  Hold on.  That wasn't the
 2        question.
 3              THE WITNESS:  Oh.
 4              MR. WIEST:  The question is, what happened
 5        that day?
 6              THE WITNESS:  Okay.
 7              After he injured me, he came back to see what
 8        was wrong.
 9              And I said, I'm not dealing with you.  You
10        injured me.
11   BY MR. SPYKER:
12        Q.    All right.  I have some follow-up questions.  I
13   appreciate you taking the time to explain that to me.  I
14   obviously wasn't there, so this is my opportunity to
15   learn about it.
16              You'd started to talk a little bit more about
17   the aftermath, and you had started to tell me about how
18   you had tried to deal with the city and give them a
19   chance before you got a lawyer.
20              Tell me about that.
21        A.    I reached out to Chief Britton.  I believe
22   that's his name, Chief Britton.  And I talked to him,
23   and he asked me to come in.  And I was so disturbed that
24   I was scared to even go to that police station.
25              I asked him, could he meet me at Starbucks?
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

1    Because I don't feel comfortable even coming there.

2           He said he could.  But he -- he said, I assure

3    you, you'll be fine if you come here.  You have my word.

4           So I went there, and I talked to the chief.

5    And after talking to the chief, he told me, even though

6    he -- he said he -- everybody understood my position.

7    That's what's confusing to me.  From Carly Wolf [sic],

8    she -- I understand his position.  To the chief

9    understanding my position.  To the detectives

10   understanding my position.

11          To nobody, not one person, saying, Mr. Kern,

12   we apologize for this.  We know we was -- even the mayor

13   understood my position.

14          But they say, she -- she didn't apologize. She

15   said, I'm sorry.  But I'm not wrong.  That's not an

16   apology.

17          So when I went to speak to Chief Britton, when

18   asked -- when I -- when I specifically asked him his

19   position on it, he told me, I do not know the mind frame

20   of my officers at the time.

21          Well, what mind frame do you have to be in to

22   violate somebody's rights?

23      Q.   **You mentioned, while you were telling me about**

24   **what happened, that you were injured and asked for an**

25   **ambulance.**

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1              Tell me about how you were injured.

 2              MR. WIEST:  Objection to form.  He did not say

 3         that he asked for an ambulance, I don't believe.

 4    That --

 5              MR. SPYKER:  Yes.  He did.

 6              MR. WIEST:  -- mischaracterizes the testimony.

 7              MR. SPYKER:  That's exactly what he said.  But

 8         the record --

 9              MR. WIEST:  Go ahead.

10              MR. SPYKER:  -- reflects it.

11    BY MR. SPYKER:

12         Q.   Wait the -- either way, you had mentioned you

13    were injured.  And I believe, at least, and the record

14    will reflect one way or the other whether you asked for

15    an ambulance or not.  All I'm asking, simply, just tell

16    me about the injury.

17              How were you injured during the encounter?

18         A.   My shoulder was in pain.  Extreme pain.

19         Q.   Okay.  And when you say extreme pain, pain is

20    subjective, right?  It's hard for me to quantify what

21    pain you are feeling.  I'm not feeling it.  So one way

22    we try to understand that is comparing it to other pain.

23    So on a scale of 1 to 10, 10 being the worst injury

24    you've ever had in your life, 1 being your arm itches.

25    Something that's kind of innocuous.
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1              How would you describe the pain in your
 2    shoulder at the time of the encounter?
 3        A.   A 7 or 8.
 4        Q.   Okay.  And just so that I can start to
 5    understand how you quantify pain.  You had told me
 6    previously about your thumb injury with the State of
 7    Ohio corrections.
 8              Using that same scale, your shoulder injury
 9    here being a 7 to 8, where would you rate that thumb
10    injury?
11        A.   Comparing, I could -- that thumb injury was
12    nothing.
13        Q.   It was nothing?  Fair enough.  What about when
14    you tore your quad?  You'd already told me about that as
15    well.  Where would you rate that?
16        A.   That was about a 9 or 10.
17        Q.   It was about a 9 or a 10?
18        A.   Yeah.
19        Q.   Okay.  Was that quad injury -- and I don't
20    know.  I always use the example -- it's not something
21    that would come up, but I've passed a kidney stone. That
22    is the worst pain that I've ever had in my life. That's
23    a 10 out of 10, right?
24             MR. BECK:  That is bad.
25    BY MR. SPYKER:
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202



Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1        Q.    That's a 10 out of 10.
 2              MR. BRUNS:  That scales 12.
 3              MR. SPYKER:  Yeah.  That's a 12.
 4              MR. BECK:  From what I've heard.
 5              MR. BRUNS:  From what I've heard.
 6  BY MR. SPYKER:
 7        Q.    That is the worst pain I've ever experienced.
 8        A.    Okay.
 9        Q.    So your quad injury, saying it's an 8 or a 9,
10  is that the worst pain you've ever experienced in your
11  life?  Physical pain?
12        A.    Yeah.  The quad.  Yeah.  That was something
13  else.
14        Q.    Okay.
15        A.    But this was too, though.
16        Q.    Right.  So this was -- just going off the
17  scale, that's why I'm trying to understand it --
18        A.    Yes.
19        Q.    -- and we do these things.  Quad is an 8 or a
20  9.  This is our 7 or an 8.  So they're kind of close,
21  but the quad was -- you'd rank it a bit worse?
22        A.    Yes.
23        Q.    Okay.  But they're in the same ballpark?
24        A.    Yes.
25        Q.    Okay.  And aside from this and your quad
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202



Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1    injury, have you experienced any other physical pain in
 2    your life that gets up to that scale, that level?
 3         A.   Back -- but with my spine, it's -- it's
 4    different.
 5         Q.   Sure.
 6         A.   Like when you slip discs, you can't move.
 7         Q.   Yeah.  That's fair.
 8         A.   So best of my recollection, yeah.
 9         Q.   Okay.  And I think I understand exactly what
10    you're saying.  I've had disc problems.  You're saying
11    it's a different type of injury.
12              So it's not that immediate sudden surge of
13    pain that you're feeling?
14         A.   Correct.
15         Q.   That you would with the quad, or the injury
16    you experienced during the traffic --
17         A.   Correct.
18         Q.   -- encounter?
19         A.   Correct.
20              MR. SPYKER:  Okay.  Fair enough.  Thank you.
21              All right.  I'm going to hand you what's been
22         marked as Exhibit A, and it's just the Verified
23         Complaint.
24                      (EXHIBIT A MARKED FOR IDENTIFICATION)
25              THE WITNESS:  Thank you.
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

 1          MR. SPYKER:  I think I have -- do you guys
 2     need?  I have a handful.
 3          MR. BECK:  I've got a copy.
 4          MR. SPYKER:  I just marked up -- yeah.  Marked
 5     up on that one.
 6          MS. ZIARKO:  I'm good.  I can pull those.
 7          MR. SPYKER:  Okay.
 8          MS. ZIARKO:  Yeah.  That's fine.
 9          MR. BECK:  I've got a bunch of copies.
10          MS. ZIARKO:  Okay.
11     BY MR. SPYKER:
12          Q.   All right.  So Exhibit A is the Verified
13     Complaint filed in this matter.  Will you do me a favor
14     and turn to the last page?
15          A.   The last page.
16          Q.   Yeah.
17          A.   Oh, I signed something.
18          Q.   Go ahead and take a moment and read that.  And
19     once you've had the chance to review that last page, let
20     me know if that's your signature.
21          A.   Yeah.  That's my signature.
22          Q.   Okay.  So what this verification page and your
23     signature at the bottom of it tells me is that, at some
24     point prior to this complaint being filed, you reviewed
25     the factual allegations contained in here, and you swore

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 56 of 168. PageID #: 1314
The Deposition of DEMETRIUS KERN, taken June 21, 2024

55

```
 1    that they were true; is that fair?  Do you remember
 2    doing that?
 3         A.   That's fair.
 4         Q.   Okay.  And you probably did that in connection
 5    with your attorneys, and I don't want to know anything
 6    you discussed with your attorneys.
 7         A.   Right.
 8         Q.   If a question even seems like I'm implying
 9    that I want to know something you discussed with your
10    attorneys, I assure you it's not.  I want to go over
11    some of the facts in this complaint since you've
12    previously reviewed them and verified that they are
13    true.
14              We'll start on page 3 when you get there.  All
15    right.  Go ahead and read paragraph 9 for me and let me
16    know when you've had a chance to do that.
17         A.   Go ahead.
18         Q.   Okay.  Paragraph 9, that accurately describes
19    the beginning of the encounter where you allege Officer
20    Lewis cut you off, fair?
21         A.   Fair.
22         Q.   Okay.  And I'm going to streamline past some
23    stuff.  Greg, on behalf of his clients, will probably
24    ask you some more questions about this beginning, but I
25    want to get to the point where my client, who is -- I'm
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1    mixing up names too now -- Sergeant Wolf, where he
 2    arrives on scene.  So if you'll turn to page 4.
 3         A.   I'm here.
 4         Q.   Okay.  Read paragraphs 20 through 24 for me,
 5    and let me know when you've had a chance to read those
 6    and review them.
 7         A.   Yes.  I read it.
 8         Q.   Okay.
 9              THE WITNESS:  Did you get that?  Thank you.
10    BY MR. SPYKER:
11         Q.   Everything in there looked accurate to you as
12    you recall it?
13         A.   Yes.
14         Q.   Okay.
15         A.   It might have been more verbiage.
16         Q.   Sure.  Of course.  Of course.  And this -- by
17    and large, it's captured on video too, so --
18         A.   Right.
19         Q.   -- what we're doing here is, there are a few
20    minor things I'm going to ask you about as contained in
21    the complaint.  And actually, paragraph 24 goes onto the
22    next page, so go ahead and flip to that and read that
23    last sentence in there.
24         A.   Which -- on which page?
25         Q.   So paragraph 24, which is at the bottom of
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

1   page 4, that paragraph actually continues onto page 5.

2   So read through that as well.  I just want to make sure

3   you read all of paragraph 24.

4       A.    Yeah.

5       Q.    Okay.  Reading paragraph 24 of your Verified

6   Complaint, listening to things that you've told me, and

7   reading some other paragraphs in your Verified

8   Complaint, you allege that Defendant Wolf was motivated

9   by racial animus; is that fair?

10      A.    That's fair.

11      Q.    Okay.  What facts that happened, either the

12  day on the scene or thereafter, lead you to believe that

13  Mr. Wolf was motivated by your race?

14      A.    When he came to the scene, what happened

15  didn't matter.  It just didn't matter.  I was a tall,

16  nice-sized, Black guy.

17      Q.    Okay.  So I guess what I'm trying to

18  understand is, what occurred that made you think what

19  happened was motivated by the fact you were a Black guy,

20  as opposed to being a tall, nice-sized guy?

21      A.    Because under similar circumstances, I would

22  expect a sergeant to come to the scene and at least ask

23  what's going on.  And I wasn't privileged that.

24      Q.    And I'm just trying to understand why you

25  concluded that that was racially motivated as opposed to

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

1    any other motivation.

2        A.   Because if it happened to you, and I looked

3    like you, I would've at least been asked, what happened?

4        Q.   **How do you know that to be true?**

5        A.   How would I -- how do I know that he would've

6    gave someone else the benefit of the doubt?

7        Q.   **Yeah.  How do you know that to be true?**

8        A.   I am sorry.  I was just reliving it.

9        Q.   **Of course.  Of course.  Take whatever time you**

10   **need to answer the question.  I'm in no rush.**

11       A.   Because how I was treated.

12       Q.   **Okay.  What specifically about the treatment**

13   **led you to believe that the way you were being treated**

14   **was motivated by your race?**

15            MR. WIEST:  Objection to form.

16            THE WITNESS:  It was -- it was a prejudice.  He

17            didn't -- it -- the feeling that he gave me and how

18            he treated me and how he spoke to me was very

19            condescending.  He didn't give me a privilege to be

20            treated like a decent human being.

21            He didn't know anything about me.  He didn't

22            run my -- he didn't have my name to run anything

23            about me.  He didn't have my ID.  He just came and

24            saw what he saw.  Now, if it's customary for that

25            to happen, I'd be -- maybe.  But I don't think so.

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

1          From my opinion, I wasn't treated fairly.

2     BY MR. SPYKER:

3          Q.    And setting aside being treated unfairly,

4     that's one component of it.  A large portion of your

5     complaint is dedicated to alleging that you were being

6     treated unfairly specifically because of your race.  And

7     I understand what you're saying.

8               But do you have any articulable facts as to

9     why you concluded that this was based on your race and

10    not the situation?  Your size, the dynamics, something

11    else going on in the defendant's life.  I'm just trying

12    to understand how you concluded it was based on your

13    race.

14              MR. WIEST:  Objection to form.  Argumentative.

15         Asked and answered.

16              Go ahead.

17    BY MR. SPYKER:

18         Q.    You can answer the question.

19         A.    Oh, okay.  So in totality of it, if the driver

20    in front of me -- if I was white, right, Carly Lewis

21    wouldn't ask the -- the other driver if she knew me --

22    if he knew me.  She -- Carly Lewis asked, do you know

23    that guy back there?

24              Do all Black people know each other?  Do you

25    ask drivers that are driving down the road, do they know

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

1    each other?  If you were driving in front of me and got

2    pulled over, would -- she would've asked you, did you

3    know me behind -- behind you?  She would've?

4         Q.    I'm just letting you answer.  My head shake is

5    not meant to imply anything.  I'm just allowing you to

6    answer.

7         A.    I can tell when somebody doesn't like me.  And

8    I can tell why.  And I can tell when it's for no reason.

9    I have no previous exchange with Naftali Wolf.  Why else

10   wouldn't he like me?

11        Q.    Well, you would agree with me that liking you

12   for no reason, or not liking you for no reason, and not

13   liking you because you're Black, those are two entirely

14   different things, right?

15             MR. WIEST:  Objection.  Argumentative.  Asked

16        and answered.  Form.

17             You can answer it, again.

18   BY MR. SPYKER:

19        Q.    Just to be clear, my question was a narrow one

20   this time.

21        A.    I know.  I'm reliving it.  I'm sorry.

22        Q.    I know.  But my question was just -- I don't

23   want you to unnecessarily relive it.  My question is

24   just, not liking you for no reason, and not liking you

25   because you are Black, those are potentially two

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1   different things, correct?

 2        A.   Potentially --

 3        Q.   Right.

 4        A.   -- two different things.

 5        Q.   Because if I -- if someone doesn't like you

 6   because you're Black, that's not liking you for a

 7   reason.  That's not liking you for no reason, fair?

 8        A.   Say that again.

 9        Q.   If someone doesn't like you because you're

10   Black, that's a reason they don't like you.  As opposed

11   to if someone just doesn't like you for no reason, they

12   don't have a reason?

13             MR. WIEST:  Objection to form.  Argumentative.

14             Go ahead.

15             THE WITNESS:  It was just too much that didn't

16        matter that should have mattered.  And it -- it

17        brought me back to the history of this country.

18        And I've never felt like anything but American.

19        But when you can say, I'm just going to make

20        something up to charge him, the history of America

21        is, that's happened to Black people before, right?

22   BY MR. SPYKER:

23        Q.   And you had told me, I believe, that -- and if

24   I'm misquoting this, it's not intentional.  I'm doing my

25   best to keep accurate notes.
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1              When we were first talking about this, I
 2   believe you had told me something along the lines of,
 3   prior to this incident, you had never felt Black in
 4   America; you had just felt American?
 5        A.   Correct.
 6        Q.   Okay.  What about this situation was different
 7   than other things you may have experienced previously in
 8   your life where you felt your blackness was at the
 9   center of the attention?
10              MR. WIEST:  Objection to form.  Asked and
11         answered.  We're probably on the fifth question
12         that is repetitive.  I'm going to allow him one
13         more time, and then I'm going to instruct him not
14         to answer.  If we need to get the judge on the
15         phone, we can.
16              MR. SPYKER:  That's fine.
17              MR. WIEST:  Go ahead.
18              MR. SPYKER:  I'm happy to get the judge on the
19         phone.
20              MR. WIEST:  Yeah.
21              MR. SPYKER:  It's not argumentative, first of
22         all.  Second of all, I don't think he's answered
23         the question, but let's cross that bridge when we
24         get there. If the answer is, nothing other than a
25         gut feeling, that's fine.
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
1              MR. WIEST:  That wasn't the testimony.

2              MR. BRUNS:  Wasn't the testimony.

3              MR. WIEST:  Go ahead.

4    BY MR. SPYKER:

5         Q.   What did Defendant Wolf specifically say or do

6    that made you believe he was treating you differently

7    based on your race?

8         A.   He arrived to the scene, and he disregarded

9    anything that was happening at the scene.  Anything that

10   was going on didn't mean anything.  He just looked at me

11   in a condescending way and told me, basically, his way

12   or I go to jail.

13        Q.   Okay.  Is there anything else?

14        A.   That sums it up.

15        Q.   Okay.  Take a look at paragraph 27.  It's on

16   page 5.  Well, actually, go -- we've read through 24.

17   I'd like you to read through 25, through, let's do 28.

18             And let me know when you're ready to talk

19   about those.

20        A.   Ready.

21        Q.   Okay.  Now, in your rereading of these

22   paragraphs that I've had you read going back to 28, it

23   appears to me -- and correct me if I'm wrong, this is

24   occurring -- or at least it's being retold in somewhat,

25   at least loosely, chronological order; is that fair?
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

     1        A.    That's your characterization of it.

     2        Q.    Well, I'm -- the reason I'm asking and

     3   presenting my characterization of it is to better

     4   understand it because these are your factual allegations

     5   that you've verified.  And if we need to go back, if you

     6   need to turn back to the page, read back several

     7   paragraphs, I'm just asking, from your perspective, is

     8   this occurring in the chronological order that you

     9   recall it?

    10        A.    I'm not sure what the chronological order it's

    11   happening, but --

    12        Q.    Okay.  So --

    13             MR. WIEST:  So hold on.  Do you understand the

    14        question?  He's asking, is it occurring at --

    15             THE WITNESS:  It's happening --

    16             MR. WIEST:  -- he's asking whether these

    17        numbered paragraphs are happening from a timeline

    18        perspective.  Chronological means --

    19             MR. BRUNS:  One after the other.

    20             MR. WIEST:  -- one after the other.

    21             THE WITNESS:  From my understanding, yeah.

    22   BY MR. SPYKER:

    23        Q.    Okay.  All right.  Fair enough.  So paragraph

    24   27, you stated Defendant Wolf was violating your rights.

    25   At that point, when you told Defendant Wolf that, what

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

1    rights did you believe were being violated?

2        A.    I didn't break any laws, which I was advised.

3    I didn't break any laws.  So -- and I -- and there was

4    not even a presumption of me breaking the law, and I

5    didn't even witness any felony.  So I know I didn't have

6    any objective.  I mean, any -- I didn't have any reason

7    to identify on a state level or a city level as the --

8    the report says the same thing.

9        Q.    Okay.

10       A.    And he went in my pockets too.  Went through

11   my wallet.

12       Q.    Well, I don't want to get ahead of ourselves.

13   I don't mean to interrupt you, but I don't think we're

14   there yet in the chronological timeline --

15       A.    Okay.

16       Q.    -- of the facts.  So my understanding is that,

17   at this point, at least the timeline that paragraph 27

18   is representing where you state to Defendant Wolf that

19   your rights are being violated.  And then going down to

20   paragraph 29, this is when he radios in.

21            You've not been detained at this point; is

22   that fair?

23            MR. WIEST:  Objection.  Form.

24            THE WITNESS:  I don't know what I --

25            MR. WIEST:  Calls for legal conclusion.

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202



THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1              You can answer.

 2              THE WITNESS:  I don't know what I was because

 3        I -- when I asked him, was I being detained, he

 4        told me, if I want to be.

 5              MR. SPYKER:  Okay.  You know what I think

 6        makes sense -- let's go off the record.  Let's get

 7        the video ready.  I'd like to -- I'd like just to

 8        go with Wolf's video.  And I can kill two birds

 9        with one stone and speed this up.

10              MR. BECK:  Okay.

11                   (OFF THE RECORD)

12              THE REPORTER:  All right.  We are back on.

13 BY MR. SPYKER:

14    Q.    All right, sir.  We've pulled up the body

15 camera footage from Sergeant Wolf from the day of the

16 incident.  I'm just going to kind of orient you where we

17 are.  There's a timestamp up here.  You see 9-22-2022,

18 and it's 19:00:57.

19              As I start and stop the video, I'm going to

20 call out some timestamps, and I'm going to reference

21 this.  Those are the timestamps I'm going to reference

22 for the record.

23              Fair enough?

24    A.    Yes.

25    Q.    Okay.  So kind of a caveat to our roles as
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1    we're going the back-and-forth.  I'm going to play
 2    portions of the video, have you review it.  If we need
 3    to go back and look at other things, that's fine.  But
 4    as I'm asking and answering my questions, there's going
 5    to be a little extra cadence to it because I'm going to
 6    call out the specific timestamps so that she can record
 7    it down; is that fair?  Good to go?
 8        A.   Yeah.
 9        Q.   Do you need to take a break?
10        A.   No.
11            MR. SPYKER:  Okay.  All right.  I will say,
12        especially now with him facing that way, I might
13        need the volume to bump up just a little.
14                 (VIDEO RECORDING PLAYED)
15                 (VIDEO RECORDING STOPPED)
16            MR. SPYKER:  And let's stay on the record.
17        But, Counsel, my preference is that the court
18        reporter does not try to transcribe what's being
19        articulated on the body cam.  Just does video
20        start, video stop, let the camera speak for itself.
21            MR. WIEST:  Yeah.  This is a Scott v. Harris
22        case in terms of, I don't think there's any dispute
23        about what happens once the camera starts.  And at
24        the end of the day, I don't think any testimony
25        about what is or isn't on the camera is going to be
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1          relevant other than what's on the camera.  But
 2          that's fine.
 3                  MR. SPYKER:  Yeah.  I'm not planning on going
 4          through the whole video.  I have some narrow
 5          questions.
 6                  MR. WIEST:  Okay.
 7                          (VIDEO RECORDING PLAYED)
 8                          (VIDEO RECORDING STOPPED)
 9   BY MR. SPYKER:
10      Q.    All right.  I paused the video at 19:01:39.
11              Sir, my question is, you had described in your
12   complaint, in your kind of narrative testimony about it,
13   that one of the issues you had taken with Defendant Wolf
14   was that he had shown up as this incident was going on,
15   and he didn't know what was going on.
16              Is that a fair characterization?
17      A.    That's -- he even said that.
18      Q.    Okay.  And I understand.
19      A.    He even -- he even said that.
20      Q.    Yeah.  And just point of clarity.  Watching
21   this video through the few seconds that we see here,
22   Defendant Wolf coming up.  This is the first
23   interactions you've had with him.
24              There've been no prior interactions with
25   Sergeant Wolf prior to his approaching your conversation
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202



Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1    that's underway with Officer Lewis; is that correct?
 2            MR. WIEST:  Objection to form.
 3            You can answer.
 4            THE WITNESS:  Ask the question again.
 5    BY MR. SPYKER:
 6        Q.    Yeah.  So this video cam depicts Officer -- or
 7    Sergeant Wolf walking up to you.  You're in the middle
 8    of a conversation with Officer Lewis.
 9            Had you had any prior interaction with
10    Sergeant Wolf prior to him approaching you here?
11        A.    No.
12        Q.    Okay.  And I think you had maybe mentioned
13    this in passing in response to another question, but
14    prior to the date of the incident, you had had no prior
15    interactions with Sergeant Wolf, right?  He was an
16    unknown person to you.
17        A.    Correct.
18        Q.    Okay.  Same with Officer Lewis?
19        A.    To -- from the best of my recollection, both.
20        Q.    Okay.  And you hadn't run into either of them,
21    that you recall, with your role working for the city?
22        A.    I don't remember.
23        Q.    If you had, it doesn't stand out?
24        A.    If I had, he wouldn't have treated me like
25    that.
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 71 of 168. PageID #: 1329
The Deposition of OFFICER JUSTIN KERN, taken on June 4, 2024

70

```
 1          MR. SPYKER:  Okay.  Fair enough.  Let's watch
 2     just a little bit more.
 3                    (VIDEO RECORDING PLAYED)
 4                    (VIDEO RECORDING STOPPED)
 5  BY MR. SPYKER:
 6     Q.   Okay.  Stopped at 19:02:28.  And reviewing
 7  body cam footage, you've now started to have some
 8  back-and-forth conversation with Defendant Wolf?
 9     A.   Yes.
10     Q.   Okay.  Up to this point, now that we're
11  watching it on the body camera with a little extra added
12  context, has Defendant Wolf done anything, from your
13  perspective, that has displayed that his motivation was
14  racial?
15     A.   He came.  He didn't know what was going on.
16  And he made an accusation that was baseless.  He didn't
17  know what -- he said, I -- I shouldn't have pulled -- I
18  should have followed her.
19          I don't know exactly the verbiage he used, but
20  he said I shouldn't have done something.  And he didn't
21  know what he was talking about.
22     Q.   Okay.
23     A.   And I was very calm at that point.  I -- I was
24  calm, really, from my understanding, through the whole
25  thing.
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1        Q.   Sure.  Okay.  Anything other than what you
 2   just told me that leads you to conclude that, at this
 3   point in time, Defendant Wolf is acting with a racial
 4   motivation?
 5        A.   So I'm trying to understand your question.
 6        Q.   Yeah.  You --
 7        A.   So to understand your question.  You're asking
 8   me that, is there anything would've happened -- say it
 9   again.
10        Q.   Yeah.  Sure.  I'm just asking -- you gave me
11   an answer, and it was a perfectly fine answer explaining
12   your position.
13             I'm just asking, aside from what you just
14   said, has anything occurred at this point in the
15   interaction that led you to believe that Defendant
16   Wolf's actions were motivated by your race?
17        A.   Yes.
18        Q.   Okay.  What else?
19        A.   I think he would've gave somebody else a
20   chance to even find out further what was going on, which
21   he didn't.  He didn't give me that opportunity.
22             MR. SPYKER:  All right.  Going to continue
23        playing at 19:02:28.
24                  (VIDEO RECORDING PLAYED)
25                  (VIDEO RECORDING STOPPED)
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

BY MR. SPYKER:

    Q.    Stopped the video at 19:02:52.  You previously told me that you recall remaining calm throughout the interaction.

        Do you still think, after reviewing the video, that you're remaining calm?

    A.    I believe I said, from the best of my understanding -- best of my recollection.

    Q.    I understand.  And now that we've actually watched the video and we've refreshed your recollection, I'm just asking, do you -- would you still characterize yourself as remaining calm?

    A.    I would characterize myself as responding to an inaccurate accusation.

    Q.    Okay.  And you had previously, again, best of your recollection, characterized yourself as remaining calm throughout the incident.  My question is more narrow.  And I understand you're reacting to something.

        But my question is, after reviewing the video, would you still characterize your reaction, up to this point in the situation, as remaining calm throughout the entire encounter?

    A.    I -- I did raise my voice.  I would characterize it as that.

    Q.    Okay.  Fair enough.  A couple of seconds

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1   before we stopped the video, Defendant Wolf -- and we
 2   can go back if you need to.  That's not a problem.  I'm
 3   just trying to get through my line quickly and move on
 4   and get us out of here.
 5            But Defendant Wolf had said you had asked what
 6   his, I believe it was articulable suspicion was?
 7        A.   I asked him what his RAS was, and he said,
 8   what's your RS?  He -- he heard me exactly, but he -- he
 9   said it in a condescending manner, like, how would you
10   know that?  What's your RS?  He said it like that, so --
11            MR. SPYKER:  Okay.  I backtracked the video to
12        19:02:42.  I'm going to play.  Maybe.
13            Greg, did I break it?
14                 (VIDEO RECORDING PLAYED)
15                 (VIDEO RECORDING STOPPED)
16   BY MR. SPYKER:
17        Q.   I'm actually going to go back a little bit
18   further.
19                 (VIDEO RECORDING PLAYED)
20                 (VIDEO RECORDING STOPPED)
21   BY MR. SPYKER:
22        Q.   All right.  19:02:27, starting from there.
23                 (VIDEO RECORDING PLAYED)
24                 (VIDEO RECORDING STOPPED)
25   BY MR. SPYKER:
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1         Q.    Okay.  So you just had that interaction that
 2    you were -- just talked about, right?
 3         A.    Right.
 4         Q.    Okay.  And Defendant Wolf says, I'll explain
 5    it to you.  That's where we just stopped at 19:02:37,
 6    right?
 7         A.    Right.
 8         Q.    Okay.
 9                    (VIDEO RECORDING PLAYED)
10                    (VIDEO RECORDING STOPPED)
11    BY MR. SPYKER:
12         Q.    Okay.
13         A.    So --
14         Q.    I stopped at 19:02:40.  Let me ask a question
15    first.
16         A.    All right.
17         Q.    And I'll give you every opportunity to
18    explain.
19         A.    Okay.
20         Q.    Defendant Wolf attempts to start to explain
21    his articulable suspicion, and then you immediately
22    interrupt him.
23               Is that a fair and accurate summary of what
24    just happened in that two seconds?
25         A.    I thought we were having a conversation.
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

 1         Q.    Okay.  All right.

 2                     (VIDEO RECORDING PLAYED)

 3               THE WITNESS:  Just -- excuse me.

 4    BY MR. SPYKER:

 5         Q.    Let me pause it.

 6                     (VIDEO RECORDING STOPPED)

 7    BY MR. SPYKER:

 8         Q.    Go ahead.

 9         A.    Before, you told me you would let me finish.

10         Q.    Of course.  Yeah.  Please.  If you have more

11    to say, please.

12         A.    I lost it, though.  Go ahead.  I don't --

13         Q.    That's okay.  And if it comes back to you,

14    don't be shy about interrupting me.

15         A.    All right.

16         Q.    If you have something to add to any previous

17    question or anything, feel free to interrupt me if it

18    comes to you, okay?

19         A.    Oh, it just came back.

20         Q.    Yes.

21         A.    So my voice tonality fluctuated, so it wasn't

22    a consistent elevated.  From the video, it shows I

23    brought it back down, so.

24         Q.    Okay.  And we're going to pick up at 19:02:47.

25                     (VIDEO RECORDING PLAYED)

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1                    (VIDEO RECORDING STOPPED)
 2    BY MR. SPYKER:
 3         Q.   All right.  All right.  We're paused at
 4    19:03:25.  We've gone forward about 40-ish seconds in
 5    the interaction since I had previously asked you this
 6    question.  I'm just trying to get a full and complete
 7    understanding.  So I understand what you'd already told
 8    me.  We don't need to rehash that.
 9              But in this last 40 seconds, this exchange
10    that we just watched, is there anything additional that
11    led you to believe the Defendant Wolf was acting with a
12    racial motivation?
13              MR. WIEST:  Objection to form.
14              THE WITNESS:  Yes.  I felt threatened by him.
15    BY MR. SPYKER:
16         Q.   Based on the back-and-forth interaction that
17    we see in the video?
18         A.   I felt threatened when -- the whole time,
19    from -- from him telling me that -- him knowing -- not
20    willingly saying it, his knowledge of the event didn't
21    matter.  I didn't know what was going to happen.
22         Q.   All right.  I think I'm done with the video.
23    For now, at least.
24              THE REPORTER:  And are we marking the video as
25         an exhibit?
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1              MR. SPYKER:  We'll mark it as Exhibit B.
 2              MR. BECK:  B.
 3              THE REPORTER:  All right.
 4                  (EXHIBIT B MARKED FOR IDENTIFICATION)
 5    BY MR. SPYKER:
 6       Q.   All right.  If you could go to page 8 of your
 7    Verified Complaint for me, paragraph 55.  And that
 8    continues on to paragraph 9 -- or I'm sorry, page 9.
 9              So just read all of paragraph 55 for me and
10    let me know when you've had a chance.
11       A.   I guess I understand that.
12       Q.   Okay.  My question is kind of simple, and I
13    understand if you don't, but paragraph 55, do you have
14    any firsthand knowledge of what's referenced in there?
15              MR. WIEST:  Objection to form.
16              THE WITNESS:  Do I have firsthand knowledge?
17    BY MR. SPYKER:
18       Q.   Yeah.  So paragraph 55 summarizes Defendant
19    Wolf has significant history of troubling incidents, and
20    it lists out a few examples in that allegation.
21              Do you know anything about those --
22              MR. WIEST:  Objection --
23    BY MR. SPYKER:
24       Q.   -- prior incidents?
25              MR. WIEST:  Objection to form.  You mean
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1        beyond reading the reports we obtained by public
 2        record request?
 3              MR. SPYKER:  Sure.  Right.
 4              MR. WIEST:  Okay.  Do you --
 5              MR. SPYKER:  I'm asking what he --
 6              MR. WIEST:  -- have any knowledge above and
 7        beyond that?
 8              THE WITNESS:  When you say firsthand,
 9        firsthand means, I saw it?
10  BY MR. SPYKER:
11     Q.   No.  I'm saying, what do you know about these
12  incidents?
13     A.   Other than public record, nothing.
14     Q.   Okay.  So you made a public records request.
15  You reviewed the public records, and that's what you
16  know about the incidents?
17     A.   I --
18     Q.   I get it.  That's --
19              MR. WIEST:  Yeah.  Yeah.  I don't want you to
20        talk about anything you talked about with Counsel.
21              MR. SPYKER:  That's fair.  I understand it. My
22        inquiry has been satisfied.
23  BY MR. SPYKER:
24     Q.   Have you had any interactions with Defendant
25  Wolf after the incident?
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
1        A.   No.

2        Q.   No?

3        A.   Other than -- I didn't -- and I can't say it's

4   him.  I got some -- somebody put some mail on my door

5   from Cleveland Heights after the mayor put a -- a task

6   force in place.

7             And I don't -- I don't get -- I didn't -- I

8   didn't get that mail.  I didn't request it.  Somebody

9   put it on my door, though.  So I'm not saying it was

10  him, but I felt that was threatening.

11       Q.   Okay.  Explain that to me.  Let me break it

12  down because I'm not sure I'm fully tracking on that.

13  Let's break that down into a few different things.

14            What was placed on your door after the

15  incident?

16       A.   It was a newspaper that I don't subscribe to,

17  that it shows mayor and comments from the whole thing,

18  and it was put at my -- my house.  My -- matter of fact,

19  it was put at my mother's house.  That was the most

20  threatening to me, my mother.

21       Q.   Okay.  And I just want to make sure I'm not

22  confused.  Was a copy of this newspaper -- clipping, is

23  that a fair way to describe it?

24       A.   No.  It was the whole paper of it shoved in

25  the door.  So when somebody gets there, they'll see it.
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1        Q.   Okay.  Oh, was that placed at your house and
 2   your mother's house or just --
 3        A.   No.  At my mother's house.
 4        Q.   Okay.  So not both.  It was just your mother's
 5   house?
 6        A.   No.  Just my mother's.
 7        Q.   Okay.  When did that happen?
 8        A.   I don't know the exact date.
 9        Q.   Okay.  And you have -- you don't know who put
10   it there?
11        A.   I have no way to know that.
12        Q.   Okay.
13             MR. SPYKER:  If everybody is okay with it, I'm
14        either done or close.  I probably have a few
15        follow-ups that I just need to organize.  I'm going
16        to pass it to them so we can keep things moving,
17        and then I'll just --
18             MR. WIEST:  That's fine.
19             MR. SPYKER:  -- ask any follow-ups that I have
20        based on what they get at.
21             MR. WIEST:  Sure.
22             MR. BECK:  Tom, are you done, or are you --
23             MR. SPYKER:  Yeah.  I was going to pass it to
24        you guys because I'm -- I probably have some more,
25        but I was going to review my notes and then let you
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1        guys ask and go in.
 2              MR. BECK:  Okay.  That's fine.
 3                    EXAMINATION
 4   BY MR. BECK:
 5        Q.    Are you okay for me from here?  Can you hear
 6   me from here?
 7        A.    Yeah.  I can hear you.
 8        Q.    Okay.
 9        A.    Can --
10              THE REPORTER:  Thank you.
11   BY MR. BECK:
12        Q.    Mr. Kern, you and I met when you came in
13   today.  My name is Greg Beck, and this is Andrea Ziarko,
14   one of my partners.  And we are both representing
15   Cleveland Heights and Carly Lewis.
16              I just want to draw back on a couple of things
17   today.  We have a copy of your medical records related
18   to your treatment after the accident -- or after this
19   incident.
20        A.    Okay.
21        Q.    And there are references in those records to
22   previous medical treatment.  And you've talked about
23   some of that.  You've talked about the quad tear that
24   you had.  I think it was a tendon.  And then I think
25   you've talked about your thumb injury.
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

1      A.    Right.

2      Q.    **There's references in those records about**

3 **chiropractic treatment.  Have you treated with a**

4 **chiropractor before September of 2022?**

5      A.    So after that car accident, it was some

6 chiropractor that was trying to get me to come.  I went

7 one time, and I left because when I got there, right, I

8 figured out what it was.  And he even billed me for some

9 services.  And other -- other than that, no.

10      Q.    **Do you have a family doctor that you treat**

11 **with regularly?**

12      A.    Dr. Jimmy.

13      Q.    **Can you spell Dr. Jimmy's name?**

14      A.    Jimmy, J-I-M-M-Y.  And I think her last name

15 is Neffaro (phonetic).  Jimmy Neffaro.  I'm not sure. Is

16 that -- I'm not sure.  Maybe you have record of that,

17 but I believe it's Dr. Jimmy.

18      Q.    **Do you know where Dr. Neffaro's office is**

19 **located?**

20      A.    It's a University branch located in Beachwood,

21 Ohio.

22      Q.    **So she's affiliated with the University**

23 **Hospitals, to your knowledge?**

24      A.    Yes, sir.

25      Q.    **Okay.  And how long have you treated with Dr.**

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1    Neffaro?

 2         A.   I'm not sure, but it's been -- I'm not sure,

 3    to be honest.

 4         Q.   You mentioned in your deposition already that

 5    you had sustained some injuries in this car crash that

 6    happened within the last five years or so.  And you

 7    mentioned that you had some injuries to your spine and

 8    also to your head.

 9              Now, my question is, did you see an orthopedic

10    surgeon or any specialist with respect to the spine

11    injuries?

12         A.   Yes.

13         Q.   Who was that?

14         A.   Well, I don't want to say yes to that because

15    I don't know the medical names of them.  I don't know --

16    I -- for me to say I've seen a doctor and I don't know

17    his qualifications or status would be incorrect.  So

18    I've seen doctors, but I don't know their specialty.

19         Q.   Do you have an ability to obtain a list of the

20    doctors that you actually saw relative to the treatment

21    from the car crash?  Because that information is

22    important, at least to me, to see what your injuries

23    were leading up to this incident.

24         A.   So you're asking me, do I have the ability to?

25         Q.   Yes, sir.
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1        A.   I think I'm able.  I do have the ability to.
 2        Q.   Would you be willing to do that for me?
 3   Because I don't want to ask you something that you just
 4   can't remember.  So what I'm inquiring about is, do you
 5   have the -- can you obtain that information for us so we
 6   don't waste time?
 7        A.    Whatever that would -- my lawyer tells me to
 8   do, I will.
 9             MR. BRUNS:  We'll put him on the task and --
10             MR. WIEST:  Yeah.  I just --
11             MR. BECK:  Yeah.  All I want is the list of
12        the treating doctors so I can get the records.
13             MR. WIEST:  I think some of that may be in our
14        existing production because I went back in time,
15        and he may be able to tell you that it was
16        associated with University or the other provider as
17        well because I think he's just -- or Metro, I think
18        everything he's gotten from there.  You may want to
19        ask him.  And it may already be in the production.
20        I don't know.  We'll go look.
21             MR. BECK:  Yeah.  I didn't really see that,
22        but I know there has been -- there are some
23        records.
24   BY MR. BECK:
25        Q.   So are the -- following the traffic accident,
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

1    was your treatment all through the University Hospital

2    systems or Metro?

3         A.    I believe so.

4         Q.    Okay.  So outside of those two entities, Metro

5    or University Hospitals, following the car crash, did

6    you have treatment with any other agents?

7         A.    I don't believe so.

8         Q.    Before the crash that happened, let's say

9    within five years, I think you've testified you have not

10   been in any other prior auto accidents; is that right?

11        A.    Best of my recollection.  And I don't know if

12   I was definitive and said I haven't been in anything.

13   From best of my recollection, but I know I haven't

14   injured my shoulder.  Conclusively I know that.

15        Q.    Well, have you -- I'm sorry.  I didn't mean to

16   interrupt.  Go ahead.

17        A.    Right.  But I -- I don't believe so.  Best of

18   my recollection.

19        Q.    Have you been in any accident or any event

20   where you've injured other parts of your body that we

21   haven't talked about yet?

22              You've talked about your thumb.  We've talked

23   about your back.  We've talked about the head, the

24   concussion you may have sustained in the auto crash, and

25   with the quad injury.

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

 1      A.   I'm not sure.  Possibly my left shoulder.  I
 2 think I seen that somewhere.
 3      Q.   **Keep going.**
 4      A.   But I'm not sure even about that.
 5      Q.   **Maybe this will help.**
 6           MR. BECK:  I'm going to mark what we've
 7      identified as Exhibit --
 8           MR. BRUNS:  We're on C.
 9           MR. BECK:  -- C.  We got a bunch of them.
10           THE REPORTER:  It's okay.
11           MR. SPYKER:  All over the place.
12           MR. BECK:  All right.  We'll make this a C.
13           THE WITNESS:  Can I use the bathroom?
14           MR. BECK:  Oh, yes.  Take a break.  That's
15      fine.  Can take ten minutes.  It's fine.  We've
16      been going for an hour.
17                (OFF THE RECORD)
18           THE REPORTER:  We are on.
19           MR. BECK:  Yes.  With respect to Exhibit C,
20      which are part -- or some of the medical records
21      from Mr. Kern, the defense agrees that we'll use
22      this as an exhibit only for purposes of refreshing
23      recollection. We'll not mark it as an exhibit to be
24      used and attached to the deposition, but we all
25      agree that we're looking at the actual medical

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1        records of Mr. Kern.
 2             Fair enough?
 3             MR. WIEST:  Correct.
 4             MR. BECK:  All right.
 5                  (OFF THE RECORD)
 6   BY MR. BECK:
 7        Q.   All right.  Mr. Kern, you ready?
 8        A.   Yes.
 9        Q.   Thank you.  We're looking at Exhibit C, and
10   these are records apparently from University Hospital
11   that were supplied by your counsel at our request.
12             And in fact, if you turn to the second page,
13   which is Bates stamped, you see in the middle, it says
14   Kern and then 856?  You see that?  At the very, very
15   bottom in the middle of the page at the bottom?
16        A.   Yes.
17        Q.   All right.  So these are marked.  They're
18   Bates stamped.  And that's a -- looks like it's a
19   medical release, and is that your signature dated
20   July 11, 2023?
21        A.   Yes.
22        Q.   Okay.  What I'd like you to do is turn -- and
23   these are sort of in reverse order.  So I would like you
24   to turn to page -- it's Bates stamped 936.
25        A.   9 --
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1              MR. WIEST:  It's almost the very back.
 2   BY MR. BECK:
 3        Q.    It's toward the very back.  And if you see at
 4   the top left corner, it says, date of visit.  This is a
 5   visit that you had with the hospital -- or to University
 6   Hospital physicians on October 13, 2022.
 7              Do you see that?
 8        A.    Yeah.
 9        Q.    All right.  And if you turn to the previous
10   page on page 78, at the very top, it lists the
11   diagnoses/problems.
12              Do you see that?
13        A.    Yes.
14        Q.    All right.  And underneath that, there are
15   three little bullet points that say acute pain to left
16   lower extremity, anxiety, and asthma.
17              Do you see that?
18        A.    Yes.
19        Q.    All right.  The references to acute pain to
20   left lower extremity, is that your left leg?
21        A.    When it -- I don't even know when this is.
22        Q.    Well, this is October 13, 2022, which is three
23   weeks after the accident.  After the incident involving
24   your arrest -- your detention and so forth with
25   Cleveland Heights.
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202



Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1      A.   I -- I -- yeah.  But this has nothing to do
 2  with that.
 3      Q.   Well, that wasn't my question.  And I
 4  apologize.
 5           MR. WIEST:  Listen to his question.
 6           THE WITNESS:  Oh, yeah.  Yeah.
 7  BY MR. BECK:
 8      Q.   My question is, it's referencing, in the first
 9  bullet point, acute paint to your left lower extremity.
10  Now, I've listened to your testimony with respect to
11  everything that you claim occurred in this incident
12  with --
13      A.   Right.
14      Q.   -- Sergeant Wolf.  You don't -- you're not
15  making a claim that he injured your left lower
16  extremity, are you?
17      A.   I had fell.  It's coming back to me.  So I had
18  fell at Beachwood mall, and I hurt my leg.  And I
19  advised them that there was a hole in the ground at
20  Beachwood mall, and they have a record of all of it.
21           MR. WIEST:  So his question was, you're not
22           alleging anything with your leg with Sergeant Wolf
23           or the interaction with Cleveland Heights?
24           THE WITNESS:  Oh, no.  I'm sorry.  I didn't
25           answer your question.
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1    BY MR. BECK:
 2         Q.    All right.  Now --
 3         A.    Was being conversational.
 4         Q.    -- since we're on that issue, and it's a
 5    question I was going to ask you anyway, if you turn to
 6    page 900, which is further up, that's a visit of
 7    February 9, 2023.
 8         A.    2023.  900?
 9         Q.    900 at the bottom.
10         A.    Okay.
11         Q.    You see at the top left, it says,
12    February 9, 2023.  That's the date of your visit.  But
13    at the bottom at the second to the last paragraph, it
14    says, history of present illness, quote, "Patient states
15    that a week ago, he slipped on ice outside and fell
16    forward on the left side of his chest."
17              Is that the fall you're talking about, or is
18    that a different fall?
19         A.    I believe that's the same fall.
20         Q.    Okay.  But this would've been several months
21    after.  This would've been the following year.  This
22    would've been five months after the incident with --
23         A.    I -- I'm not completely sure.  I know I fell
24    at Beachwood mall, and I reported it.  I don't know the
25    dates on it.
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

 1        Q.    All right.

 2        A.    But I didn't attempt to -- I don't know.  I --

 3   I told them it was a hole in the ground, and I just

 4   don't remember this stuff.

 5        Q.    Did you make a claim against anybody or any

 6   entity for this fall that you had at Beachwood mall or

 7   otherwise?

 8        A.    No.  I didn't -- I didn't sue anybody.

 9        Q.    And other than this lawsuit, have you ever

10   sued anybody?

11             MR. WIEST:  Objection to form.  And I know

12        you've already talked about the auto accident.

13   BY MR. BECK:

14        Q.    I'm sorry.  That's correct.  Other than the

15   auto accident -- have you filed a lawsuit against any

16   other person or entity other than the auto accident case

17   and Cleveland Heights?

18             MR. WIEST:  And objection to form.  Are you

19        including his work comp claim that we've talked

20        about as well, in the context of lawsuit?

21   BY MR. BECK:

22        Q.    Well, we'll set aside your workers' comp

23   claim.

24             MR. WIEST:  Okay.

25   BY MR. BECK:

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202



Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1        Q.    Which is administrative claim.
 2              MR. WIEST:  Right.
 3   BY MR. BECK:
 4        Q.    But an actual lawsuit in a common pleas court
 5   or a federal court against anybody other than what we've
 6   talked about?
 7        A.    From the best of my memory, I don't believe
 8   so.
 9        Q.    All right.  And other than lawsuits, have you
10   made a claim against anybody else for damages or
11   injuries that may have been caused to you that didn't
12   result in a lawsuit, but for which you sought
13   compensation in some way?
14              MR. WIEST:  And that would include workers'
15        comp?
16              MR. BECK:  Other than workers' comp.
17              MR. WIEST:  I'm sorry.
18              MR. BECK:  Yes.  Yeah.  That's right.
19   BY MR. BECK:
20        Q.    Other than workers' comp.
21        A.    I haven't filed any claims.
22        Q.    I'm not asking you about that.  I'm sorry.
23   Maybe I confused you.  What I meant was, sometimes you
24   present a claim against an entity without filing a
25   lawsuit, and those claims are resolved.  What I'm asking
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

1    is, did you have any event that occurred where you

2    sustained some type of injury where you presented a

3    claim -- for instance, the fall at Beachwood, that's a

4    good example.

5              I'm asking you whether or not you presented a

6    claim against the Beachwood mall that didn't result in a

7    lawsuit?

8         A.   Well, I asked them to fix the thing, and I --

9    I told them I got injured.  But I -- I didn't pursue

10   any -- I didn't get a lawyer or anything like that, if

11   that's --

12        Q.   Okay.  Did they pay you any compensation for

13   the fall?

14        A.   No.  Not at all.

15        Q.   But that's a good example.  Anything like

16   that --

17        A.   Yeah.

18        Q.   -- where you didn't get a lawyer.  You

19   presented a claim, but you received some sort of

20   compensation.

21        A.   I more so just wanted them to fix the hole in

22   the ground before some elderly woman falls and really

23   hurts herself.

24        Q.   All right.  So I -- so the answer to that is

25   no, right?

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

 1        A.   Right.  Right.

 2        Q.   You don't -- okay.  All right.  I'm sorry.

 3   Sidetrack.  Going back, then, to 935, which is my --

 4   started my original conversation.

 5        A.   935.

 6        Q.   All right.  At the very top, again, there's

 7   these diagnoses.  So the acute pain in left lower

 8   extremity --

 9        A.   I can't --

10        Q.   -- you don't know what the cause of that was?

11        A.   -- I can't conclusively answer that.  I'm --

12   I'm not sure.

13        Q.   Okay.  But you are conclusively stating that

14   it had nothing to do with your encounter with Mr. Wolf

15   or Ms. Lewis?

16        A.   Right.

17        Q.   Okay.  There's an allegation of anxiety.  Had

18   you ever presented with anxiety issues before?

19        A.   I believe I have because when I was a child,

20   my father had a substance abuse problem, and it was hard

21   for me to deal with that as a child.  My father not

22   being there.  So I believe -- I believe so.

23        Q.   Okay.  And asthma you've already talked about.

24   You've had asthma, that diagnosis, since what?  You were

25   young?

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
1        A.    Yes.

2        Q.    And what do you -- what treatment do you --

3    have used for asthma?

4        A.    Well, I haven't got a prescription for asthma

5    in probably almost a year.  A little under a year, I

6    believe.  From my -- best of my memory, I don't think I

7    prescribed to get an inhaler in a little under a year.

8        Q.    Have you used an inhaler in the past?

9        A.    Yes.

10       Q.    And what was the medication?  Was it albuterol

11   that you would use?

12       A.    Yes.

13       Q.    Okay.  But I think what you've said is that,

14   in the last year, you haven't needed to have an -- use

15   an inhaler?

16       A.    Right.  But -- but to be conclusive, it's been

17   a variation of medicines they treated my asthma with.

18       Q.    Okay.  All right.  So let's now turn to the

19   next page, which is 936 in Exhibit C.  And you see that

20   there's a section here, it says, "Active problems," and

21   there's quite a long list.

22       A.    Yeah.

23       Q.    So we start at the top, acute pain to right

24   knee.  Is that -- what was the cause of that problem?

25       A.    That -- that was when I tore my quad.  And
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1    then a lot of stuff on here, my previous doctor, he

 2    removed -- but I guess it's still in the records, but

 3    some of this stuff, I wasn't even aware of myself.

 4    And -- and it was a guy -- I -- I can give you the

 5    doctor that removed -- he told me he removed some of the

 6    stuff because I wasn't sure about some of this stuff.

 7         Q.   Well, if we -- if you go down several bullet

 8    points, you see concussion and concussion syndrome.

 9         A.   Right.

10         Q.   Would those be issues that you believe are

11    related to the car accident?

12         A.   Yes.

13         Q.   Do you know what treatment you would've

14    received for the concussion syndrome?

15         A.    I seen several doctors for my concussion, but

16    I -- I have no medical background, so I can't be

17    conclusive.

18         Q.   Do you remember -- and this is kind of a silly

19    question.  I'm going to ask you if you remember

20    something that had to do with injury to possibly your

21    brain, but did you have any treatment with any

22    specialists with respect to memory problems or problems

23    with thinking and so forth after the car crash?

24         A.    I've had treatment with specialists, but to --

25    for me to be conclusive from what type of doctor it is,
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1   I can't be conclusive on that.
 2        Q.   And I think this goes back to my original --
 3        A.   Right.
 4        Q.   -- questions, why we need to know what -- who
 5   you treated with.  Because that would be the -- your
 6   medical records would be the best source of the problems
 7   that you presented after the car crash, correct?
 8        A.   For the car crash?
 9        Q.   Yes, sir.
10        A.   I mean, it would -- the car crash, yes.  Yeah.
11        Q.   Now, you talked a little bit about the anxiety
12   and stuff, and I'm not interested in probing very deeply
13   on that.
14             But my question is, after this incident with
15   Sergeant Wolf, did you receive any treatment or consult
16   with any specialist, psychologist, psychiatrist,
17   therapist with respect to any anxiety or emotional
18   problem that arose from your encounter with the
19   Cleveland Heights Police Department in September 2022?
20        A.   I did.  I seen a psychiatrist after this, and
21   he said I had PTSD, I believe.  For MetroHealth.  I
22   believe -- is it MetroHealth?  Can you say the question
23   again?  I'm sorry.
24             MR. WIEST:  You answered.
25   BY MR. BECK:
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

1      Q.    Yeah.  What I'm interested in, and you're

2   starting to get there, but I didn't mean to confuse you.

3   What I'm interested in is, after this encounter on

4   September of 2022 with Cleveland Heights Police

5   Department, did you receive any type of treatment from a

6   therapist, a psychiatrist, or a counselor regarding any

7   emotional turmoil or any problem that you associate with

8   that incident?

9      A.    Yes.

10     Q.    All right.  Tell me about that.

11     A.    I went to see a -- a doctor, and he prescribed

12  me some medicine.  And I talked to him, and that's it.

13     Q.    Was it only one treatment?

14     A.    I believe I went more than one.  Yeah.

15     Q.    Did you treat -- and again, I know this is

16  just your memory, and you're not --

17     A.    Right.

18     Q.    -- you may not know the specialty, but --

19         MR. WIEST:  Bless you.

20         MR. BRUNS:  Thanks.

21  BY MR. BECK:

22     Q.    -- do you know if you followed up with a

23  psychiatrist, or did you follow up with a psychologist

24  or a counselor?

25     A.    I just don't know their specialty.  I'm sorry.

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

1     Q.   Do you know the name of the psychiatrist?

2     A.   I know the location.

3     Q.   What's the location?

4     A.   It was MetroHealth right by University

5  Hospital in Cleveland, Ohio.  So University has a main

6  campus on Euclid, and it's down from there.  It's not

7  that far from it.

8     Q.   Do you know with what frequency you followed

9  up with this medical provider?

10    A.   Well, that goes back to how many times, and

11  I'm not really sure.  I just know he prescribed me some

12  medicine, and I know the type of medicine throws the

13  hormones off, so I wasn't -- I -- I don't know.  I

14  didn't want to be overmedicated.

15         But it -- it was traumatic.  Like, I don't --

16  I -- and I'm being conversational now.  I had -- I don't

17  have anxiety unless it's a traumatic incident in my

18  life.  You know what I mean?  I have nothing to complain

19  about in life.  No matter what decision I make or made,

20  I took it on the chin as a man, and I stand on it and I

21  took my consequences.  And I also took my benefits from

22  the good decisions I made.

23    Q.   Before you treated with this physician,

24  whether it's a psychiatrist or otherwise, who prescribed

25  some medication for you after this incident -- before

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 101 of 168. PageID #: 1359
The Deposition of DEMETRIUS KERR, taken on June 9, 2023
100

```
 1   that time, had you ever received any medication from any
 2   medical provider for depression or anxiety or stress?
 3        A.   In the totality of my life, yes.
 4        Q.   Right.
 5        A.   As a child, I was misdiagnosed as ADHD, and
 6   they took that off.  But I was really depressed because
 7   my father not being there, and I can't explain the
 8   feeling of not having your father.  And I made it this
 9   far, so.
10        Q.   Let me narrow that down then.  What about
11   within five years of this September 2022 incident, had
12   you received any medical treatment or medication from
13   any medical practitioner for depression, anxiety,
14   stress, that sort of thing?
15        A.   Well, I --
16             MR. WIEST:  Did you say 2020?
17             MR. BECK:  Yeah.  This incident happened in
18        September of 2022.
19             MR. WIEST:  2020 and '22.
20             THE WITNESS:  I don't know the dates, but to
21        be transparent, I was robbed at my own apartment --
22        my old apartment, but I don't think I was
23        prescribed medicine.
24             When I was going into my apartment, somebody
25        was out there.  It was a group of three guys.  They
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 102 of 168. PageID #: 1360
The Deposition of DEMETRIUS KERN, taken June 21, 2024
101

1    was out there with guns, and that was a traumatic
2    incident for me.  And I'm not -- I've never been in
3    that position, so I went to talk to someone to get
4    some type of calmness from that.
5    BY MR. BECK:
6        Q.    Was that when you were in South Euclid still?
7        A.    No.  No.  That's not even -- that's further
8    back, now that I think about it.
9        Q.    That's why I asked if you --
10       A.    But I just was being conversational.
11       Q.    So just based on your memory and the
12   records --
13       A.    Not to my knowledge.
14       Q.    All right.  And if you look further down on
15   Exhibit C, page 936, there is this reference.  There's
16   two bullet points about three-fourths the way down.  It
17   says, "Right shoulder," and then "rotator cuff syndrome,
18   right shoulder."
19           Do you know who made the diagnosis of right
20   rotator cuff syndrome?
21       A.    I'm not sure about that.
22       Q.    Is it your testimony, Mr. Kern, that before
23   this incident in September of 2022, you had never
24   experienced any problem or pain in your right shoulder?
25       A.    From the best of my knowledge, I've never had

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 103 of 168. PageID #: 1361
The Deposition of DEMETRIUS KERR, taken on June 9, 2022
102

1  any pain in my right shoulder that required any type of

2  medical intervention.

3      Q.    Well, let me ask it another way.  Had you ever

4  injured your right shoulder or had any pain in your

5  right shoulder before this incident in September of

6  2022?

7      A.    I've never had any pain like this in my

8  shoulder, and I'm not sure -- and -- and I'm -- and I'm

9  not dodging your question, but I'm specifically not

10  sure.  But to the best of my understanding and my

11  knowledge, I haven't.

12      Q.    Well, let me ask you a little differently. You

13  look like someone that knows your way around a gym.

14      A.    Oh.  You're just being modest.  I appreciate

15  you.

16      Q.    No, no, no.  I've spent a little time there

17  myself.

18      A.    I'm chubby, man.

19      Q.    And I am -- I've done all kinds of things to

20  my shoulder, just in training.

21      A.    Right.

22      Q.    So I'm asking you, had you ever just hurt

23  yourself just working out or training or throwing a

24  baseball or anything like that with respect to your

25  right shoulder before September of 2022?

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

 1       A.    From the best of my knowledge, no.

 2       Q.    All right.  So your claim is that before

 3  September 2022 -- before this encounter with Cleveland

 4  Heights, you had never had any real issue with your

 5  shoulder and never had any treatment on it?

 6            MR. WIEST:  Objection to form.  Right

 7       shoulder.

 8  BY MR. BECK:

 9       Q.    Right shoulder.  I'm sorry.

10       A.    So my testimony is, my shoulder was fine

11  before this.  And I -- I haven't had any type of medical

12  history that would cause something like this.

13       Q.    Mr. Spyker asked you certain questions about

14  the event, and I won't go back through those, but you

15  said at one point on the tape that your shoulder popped.

16       A.    Well --

17       Q.    Describe, what are you talking about?

18       A.    -- I did say that, but it was an unfamiliar

19  pain, right?  And I didn't know what was going on.  And

20  in the -- even in the video, I'm holding my -- I -- I

21  saw it.  When I look back, I'm -- I'm holding my

22  shoulder a certain way even in the video, and I didn't

23  know what was going on.

24       Q.    When did that happen?  Was that when he placed

25  his arm -- your arm behind your back?

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF  Doc #: 54  Filed: 10/30/24  105 of 168.  PageID #: 1363
The Deposition of DEMETRIUS KERR, taken on June 9, 2024
104

1        A.    I can't conclusively say when it happened from

2  when he was cranking me, which at that time I thought it

3  was because he was cranking me.  But in the totality of

4  things, he did slam the door on me, right?  He didn't

5  slam the door on my legs, but he slammed the door on me.

6        **Q.    Are you saying that the door collided with**

7  **your right shoulder?**

8        A.    I'm saying the door hit me.

9        **Q.    Where did it hit you?**

10       A.    It hit my upper extremity.

11       **Q.    Which would be your right shoulder?**

12       A.    Yes.

13       **Q.    All right.  You agree with me, don't you, that**

14  **when looking at the video, the body cam videos of both**

15  **Officer Lewis and Sergeant Wolf, you don't make any**

16  **appreciable response to Officer Wolf cuffing you other**

17  **than to say that the cuffs were tight?**

18       A.    No.  I said --

19            MR. WIEST:  Objection.

20            THE WITNESS:  -- why are you twisting -- I --

21       I -- when you say appreciable, can you explain that

22       to me?

23  BY MR. BECK:

24       **Q.    Did you scream in pain?  Did you say, you**

25  **popped my shoulder?  Did you say, my arm hurts?  Did you**

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 106 of 168. PageID #: 1364
The Deposition of DEMETRIUS KERR, taken on June 21, 2024
105

```
 1   say anything like that on the tape?
 2        A.   I -- I did say, why are you doing -- I -- not
 3   my exact verbiage.  I don't want to be conclusive on
 4   that, but I did say, why are you -- in the premise of
 5   what I'm saying, I asked him, why is he doing this to
 6   me?
 7        Q.   All right.  So I -- but I'm asking a more
 8   direct question.  From your review of the tape -- and I
 9   presume you've looked at these tapes before you came
10   here today?
11        A.   Before I came here today?
12        Q.   Yes, sir.
13        A.   Not today.
14        Q.   Before today, had you looked at the body-worn
15   camera footage from Officer Lewis --
16        A.   Oh, before?
17        Q.   -- or Sergeant -- yes.
18        A.   Yeah.  Before.  Yeah.
19        Q.   How many times do you think you've seen it?
20        A.   A couple because -- I mean, because I relive
21   it.  I didn't really have to dive in it deep because I
22   still relive it.
23             MR. WIEST:  Listen to the question.
24             THE WITNESS:  All right.  Go ahead.
25   BY MR. BECK:
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

1    Q.    So you looked at it several times before you

2    came here today?

3    A.    Less than five.

4         MR. WIEST:  Objection to form.

5    BY MR. BECK:

6    Q.    Okay.  All right.  And all I'm trying to

7    figure out is, in the actual footage, which is

8    undisputed, where in that process do you claim your

9    shoulder was injured?

10   A.    From when he was twisting me to when I was in

11   the car.  When he twisted me and he said, stop

12   resisting, when I wasn't resisting, to when I was in the

13   car, and he slammed the door on me, that's where it

14   happened.

15   Q.    But the events in between putting you in the

16   car and cuffing you, he didn't do anything to your

17   shoulder?

18   A.    Well, I'm unqualified to answer a medical

19   question like that.  I don't -- I don't know -- I -- I

20   know I was injured, and I know it happened that day, but

21   I have no qualifications to specify when I was injured.

22   I have no medical background.

23   Q.    Now, did you ask for an ambulance?

24   A.    I did.  I believe so.

25   Q.    Okay.  And you then took yourself to the

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 108 of 168. PageID #: 1366
The Deposition of DEMETRIUS KERR, taken June 9, 2024

107

1    hospital so that your car wouldn't be towed; is that

2    true?

3         A.   Yes.

4         Q.   And what hospital did you go to?

5         A.   I went to the nearest one.  It was like a

6    minute away.  That's why I was like, I could just go

7    right there.

8         Q.   And do you recall what you -- what your --

9    what symptoms you presented, what complaints you made at

10   that point?

11        A.   I told them exactly what happened.  I was

12   assaulted by the police officer.  He violated my rights.

13   And -- go ahead.

14        Q.   Were you then treated and released?

15        A.   I was -- so I think I might have went to the

16   police station and made a report first.  The order in

17   that is confusing, but I -- I know I went to the

18   hospital.  I'm not sure which one happened first, but I

19   believe I went straight to the hospital.

20        Q.   Are you right-handed, sir?

21        A.   I am.

22        Q.   Other than the fall that happened at

23   Beachwood, it looks like in February of 2023, have you

24   had any other incidents where you've injured yourself

25   since this event in --

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1        A.    Since this event?

 2        Q.    Yes.  In September of 2022.

 3        A.    I don't believe so.  I don't believe so.

 4        Q.    Have you done anything that aggravated the

 5   problem with your right shoulder between September of

 6   2022 and the time that you had the surgical intervention

 7   in, I think, May of 2023?

 8        A.    The physical therapy was very aggravating.

 9        Q.    I agree with that.

10        A.    Yeah.

11        Q.    Other than treatment, what I'm asking for is

12   something like the fall.  You didn't make a complaint of

13   right shoulder problems after the fall, but that's an

14   example.

15              Did you have something like a fall or an

16   injury or something that aggravated your shoulder

17   condition before there was a surgical procedure in the

18   spring of 2023?

19        A.    I don't believe so.

20        Q.    Now, was the surgery successful?

21        A.    Well, from my understanding, and what I was

22   advised, this type of surgery isn't a success type

23   thing.  They -- whatever they did, I just have to live

24   with it.

25        Q.    Do you know what they did?
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 110 of 168. PageID #: 1368
The Deposition of DEMETRIUS KERN, taken on June 9, 2024
109

1      A.   I can't articulate it for you to understand
2   it, but the nature of the surgery, which I had to go --
3   and it's just me being conversational and transparent
4   with you.  Before I even considered having the surgery,
5   I went to two doctors, right?

6           Because the nature of the surgery with what I
7   was advised is, I could -- the mobility of my arm could
8   be changed if I had the surgery.  So that -- that was a
9   consideration to even have the surgery.  That's when I
10  went to MetroHealth.  And I didn't go with that doctor,
11  but I'm not taking away -- anything away from him.  He's
12  a brilliant, amazing doctor, right?  He just was
13  booked -- he's so good, he's booked out, right?  And --

14      **Q.   Do you know which surgeon that was?  Who that**
15  **was?**

16      A.   Names are fleeting, you know.  He even gave
17  me -- before I even -- he gave me medicine to -- to see
18  how that worked before I even considered it.  And the
19  one at UH even gave me some prevention before.  And I
20  believe I had therapy before I even had the surgery.

21          But he was booked out so far, I -- I was going
22  to get a second opinion anyway.  I went to the doctor at
23  UH, and he told me he had the surgery before, so I felt
24  more comfortable with someone saying that they've had it
25  themselves.  And he wasn't booked out far, so I was

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 111 of 168. PageID #: 1369
The Deposition of DEMETRIUS KERRY, taken on June 9, 2024

110

1  like, the sooner I can get this done, the better.

2      Q.   Okay.  Now, let's talk a little bit -- we have

3  the records, so I don't want to drag you through those.

4  I'm interested in your own memory.  Let's start with the

5  day following this incident in September of 2022, after

6  your encounter with the police.

7         What physical problems were you having with

8  your shoulder and --

9      A.   Well, I had to go back to -- from my

10  recollection, I had to go back to the hospital that

11  other day because the medicine wasn't cutting it.  And

12  then that night, I went to the hospital at Metro.  Not

13  Metro.  That hospital -- no.

14        So the second day -- I'm trying to put this

15  together.  I'm sorry.  The second day -- I don't know.

16  But the second time I went to -- I don't know what day

17  it was, right?  The second time I went to the hospital,

18  which was in the next few days, or maybe even later on

19  that night, I went to UH.

20        And I had a mental breakdown in UH because

21  when I went in, there was some officers that came right

22  after me, and I was -- I was very, I guess, paranoid, to

23  say the least.  And I -- they were walking over by my

24  room looking around.

25        I said, I just got assaulted by the police.

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF  Doc #: 54  Filed: 10/30/24  112 of 168.  PageID #: 1370
The Deposition of DEMETRIUS KENNY, taken on June 5, 2024
111

 1    Can you please leave my room, right?

 2            And he got an attitude.  And I ended up

 3    calling -- I found out he worked for Cleveland Police,

 4    and I -- I didn't make -- mean to cause a disturbance,

 5    but I was -- I -- I was mentally disturbed from that,

 6    right?  And it should be in the UH -- the -- the nurses

 7    would know about that.

 8            But I made a complaint with Cleveland Police

 9    because he -- he said, I'm not leaving your room.

10            And I was like, man, I just -- I told you I

11    was assaulted, man.  Why are you here?  So I was so

12    disturbed and paranoid that even being in the hospital

13    around police was disturbing to me.

14        Q.   **What sort of problems were you having with**

15    **your shoulder, then, in that first several weeks after**

16    **the accident -- after the incident?**

17        A.   Well, the mobility was limited.  It was pain.

18    It's just the -- the use of my shoulder, it was limited.

19        Q.   **Well, what were you prevented from doing?**

20        A.   Normal life -- like day-to-day life.  My

21    daughter, she wanted me to pick her up.  Couldn't --

22    like, that was pain.  I couldn't really do for myself

23    like I wanted to.  My whole life was limited, man.

24        Q.   **Were you -- did you use a sling during the**

25    **treatment before the surgery?**

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202



Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 113 of 168. PageID #: 1371
The Deposition of DEMON TUS KENNEY, taken June 9, 2024
112

1       A.   I believe they did give me a sling.

2       Q.   And again, I won't take you through the

3   medical records because they'll document your complaints

4   and your treatment and so forth, but ultimately, you had

5   the surgical procedure, I think, in May of 2023.

6            How did you progress after the surgery?

7       A.   I went to physical therapy, and my physical

8   therapist, I believe it's either Sean (phonetic) or

9   John, they were really good over there.  They helped me

10  a lot.  But the progression, it came along.  It wasn't

11  instantaneous, but I believe I progressed.

12      Q.   And watching you today -- and you seem like

13  you have pretty good mobility back in the arm.  You've

14  been able to speak and talk and animate with your hands;

15  is that true?

16      A.   Yeah.  But if you come over and push down

17  right here, I'll scream like a baby.

18      Q.   You're talking about the top of your shoulder?

19      A.   Yeah.

20      Q.   The AC joint at the top, right?

21      A.   Yeah.

22      Q.   Are you back working out again?

23      A.   Working out?

24      Q.   Uh-huh.

25      A.   That was -- no.  I mean, I go now and then,

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 114 of 168. PageID #: 1372
The Deposition of DEBRA KEEN, taken on June 9, 2024
113

```
 1   but I have to do legs and -- I do upper body some, but
 2   it isn't like to the -- to the extent I can do my legs.
 3   And I stopped doing legs because I didn't want to have
 4   big glutes.  You know what I mean?  So I cut back some.
 5        Q.   Do you go to a -- do you belong to a gym?
 6        A.   I do.
 7        Q.   What gym?
 8        A.   FITWORKS.  Well, a couple.  FITWORKS, Esporta,
 9   which is LA Fitness, and the JCC.
10        Q.   And did you belong at any of those places at
11   the time of the incident in September of 2022?
12        A.   Well, I had LA Fitness, and I got -- LA
13   Fitness is Esporta.  It's the same brand, right?  I got
14   FITWORKS because it's 24 hours.  And then I got -- the
15   Jewish Community Center is so I can take my family. They
16   had a great deal.  And my kids can go there, and my
17   significant other can go there.
18        Q.   So after your surgery, have you returned to
19   the gym?
20        A.   Yeah, I have.
21        Q.   And tell me about your work -- do you do any
22   upper body workout, any routine?
23        A.   I've done some, yeah.  But I'm chubby.  I
24   mean --
25        Q.   Well, what I'm asking you is, have you done --
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 115 of 168. PageID #: 1373
The Deposition of DEMETRIUS KERR, taken on June 9, 2022
114

1  do you do any shoulder work or any chest work, any back

2  work?

3       A.   When I do shoulder work, it's very light. I'll

4  probably never get to being strong without the idea of

5  me hurting myself.

6       Q.   Well, what limitations do you have now with

7  your right shoulder?

8       A.   Now?  I'm concerned about defending myself.

9  That's a big concern of mine.

10      Q.   Do you mean --

11      A.   Like, just in daily life.  Like -- and -- and,

12 like, working out, certain objectives that I need to do

13 in the course of things I do to -- to make money.  Work,

14 to specify that instead of say, make money.  But just --

15 it's an inhibiting thing that I have to live with.

16      Q.   Well, what can't -- what events can you not do

17 now with your right arm that you could do before?

18      A.   Well, even when I pick my daughter up now,

19 there's certain ways that will still cause me to have to

20 put her down, right?  So I -- I pick --

21      Q.   So you're experiencing pain?

22      A.   Yeah.  I pick my daughter up and she can lean

23 a certain way or your kid touches you a certain way

24 and -- or -- and then it's sometimes when I -- I -- so I

25 can't put stuff on this shoulder comfortably.

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 116 of 168. PageID #: 1374
The Deposition of DEMETRIUS KERRY, taken on June 9, 2023

115

```
 1              MR. WIEST:  Just for the record, your right
 2         shoulder?
 3              THE WITNESS:  Yeah.  Comfortably.  I would
 4         have to adjust it a little bit.  So it's -- it's
 5         like putting -- well, I don't know really a way to
 6         accurately explain it.  It's just, like, never the
 7         same.
 8              Even -- even the limited or if somebody sees
 9         it different, they perceive it as I have mobility.
10         However they perceive it is just not the same as it
11         was before this happened.
12    BY MR. BECK:
13         Q.   Do you have a full range of motion in the
14    shoulder?
15         A.   Well, I don't know.  When you say full range
16    of -- when I left Sean or -- what's his other name?  I
17    didn't have a full range motion when I left --
18         Q.   Can you put your hand up over your head?  Can
19    you put --
20         A.   Yeah.  But I --
21         Q.   Can you stretch?
22         A.   -- when I move back, it starts to -- I feel
23    it.
24         Q.   All right.  But you can also reach over to
25    your left shoulder?
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF  Doc #: 54  Filed: 10/30/24  117 of 168.  PageID #: 1375
The Deposition of DEMETRIUS KERN, taken June 9, 2021
116

```
 1        A.   Yeah.
 2        Q.   Reach behind your back?
 3        A.   Limited.  Yeah.  But I feel it.  Without
 4   feeling pain.  You know what I mean?  It wasn't like
 5   this, man, before.
 6        Q.   And your left shoulder, you have no trouble
 7   with your left shoulder?
 8        A.   No.  I can get busy with this one.  You know
 9   what I mean?
10             MR. WIEST:  Just for the record, when you say
11        this one, the left shoulder?
12             THE WITNESS:  Yeah.
13             This tea is running through me.  You mind if I
14        go to the restroom?
15             MR. BECK:  Yeah.  It's a good time.  We can
16        take a quick break.
17                  (OFF THE RECORD)
18   BY MR. BECK:
19        Q.   You ready?
20        A.   Yes.
21             MR. BECK:  I'm going to mark Exhibit D.
22                  (EXHIBIT D MARKED FOR IDENTIFICATION)
23             MR. BECK:  Pass those down.  Yeah.
24   BY MR. BECK:
25        Q.   Mr. Kern, I'm going to give one to you.
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF  Doc #: 54  Filed: 10/30/24  118 of 168.  PageID #: 1376
The Deposition of DEMETRIUS KERN, taken on June 9, 2024
117

1          MR. SPYKER:  Oh, she's going to mark it.

2          MS. ZIARKO:  Okay.  Yeah.

3          MR. SPYKER:  I don't know why I always screw

4     that up.  I'm off in my own world.

5          THE REPORTER:  It's okay.

6          MR. WIEST:  Oh, she's going to have a

7     different copy for you.  That's fine.  Here.

8     Sorry.

9  BY MR. BECK:

10     Q.    Mr. Kern, I'll represent to you that Exhibit D

11  are your responses to Interrogatory and Request for

12  Production of Documents that were presented to you by

13  Counsel for Mr. Wolf.  And what I'm actually

14  interested -- and turn to page 6.

15          There was a question with -- in question 8,

16  and the question was, describe the damages that you

17  sustained.  And what I'm -- what I see here, of course,

18  are three separate itemizations: medical bills, lost

19  wages, and then your 1983 damages.

20          So my question is, with respect to your

21  medical bills, have they been paid?

22     A.    The insurance, I believe, took care of it.

23     Q.    Is it -- is the insurance Medicare -- or

24  Medicaid, or was it separate insurance?

25     A.    When you ask, is it Medicare or Medicaid, I

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

1    believe it's Medicaid.

2         Q.   Okay.  Yeah.  In other words, at the time that

3    you were work -- at the time of the incident in

4    September of 2022, were you working for any entity that

5    provided you medical benefits?

6         A.   No, sir.

7         Q.   Okay.  So your bills, then, were paid by

8    Medicaid, by the government, correct?  Is that true?

9         A.   Yes, sir.

10        Q.   Has there been any out-of-pocket that you

11   personally have had to pay for any of those expenses?

12        A.   I'm -- I'm not sure.

13        Q.   Okay.  Are you currently receiving any type of

14   treatment for any ailment or injury or problem that you

15   associate with this encounter that happened in September

16   of 2022?

17        A.   I'm not currently receiving any treatment.

18        Q.   When was the last time you received any

19   treatment, to the best of your recollection?

20        A.   In -- you're saying in general treatment?

21        Q.   Yeah.  What I'm interested in is when was the

22   last time, to your memory, that you received any medical

23   treatment or anything you relate to this encounter with

24   the Cleveland Heights police?

25        A.   I think it was the physical therapy.  Physical

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF  Doc #: 54  Filed: 10/30/24  120 of 168.  PageID #: 1378
The Deposition of DEMETRIUS KERR, taken on June 9, 2024
119

```
 1   therapy.  I'm -- I'm not sure, though, but I -- I
 2   believe it was the physical therapy.
 3        Q.   And would that have ended in 2023, or have you
 4   done some this year in 2024?
 5        A.   I haven't done any this year.
 6        Q.   And again, that would all be in the medical
 7   records?
 8        A.   Yes, sir.
 9        Q.   Okay.  And then you have a category of lost
10   wages.
11        A.   Right.
12        Q.   Were you working at the time of the incident
13   that happened in September of 2022?
14        A.   I was in school at the time for the -- I was
15   in school at the time.
16        Q.   And I know you talked about that a little bit,
17   but what was your school?  What were you studying at
18   that time?
19        A.   Well, the -- it was preparation for Cisco
20   Certified Network Analyst.
21        Q.   Were you able to complete the schooling even
22   after this incident occurred?
23        A.   No.  The completion of the preparation for the
24   exam, I -- I missed some -- I missed some time.  And I
25   wasn't -- like, in the mind -- so the whole thing went
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 121 of 168. PageID #: 1379
The Deposition of DEMOETRIUS KERR, taken June 9, 2022
120

1  to waste, to be honest, because I wasn't even in the

2  mind state to even take this exam, like --

3      Q.    Did you ever take the exam?

4      A.    No.

5      Q.    Okay.  And you may have answered this when Mr.

6  Spyker was asking the questions, but before September of

7  2022, when was the last time that you were employed?

8      A.    For the -- well, that whole period for the

9  Department of Corrections, Ohio Department of

10 Corrections, no.  That's before.  I think that is when I

11 drove Lyft and had my insurance license.  That's when.

12 Yeah.

13     Q.    And what was the name of the employer for the

14 Lyft?

15     A.    Lyft?

16     Q.    Yeah.

17     A.    Lyft.

18     Q.    Just Lyft, right?

19     A.    Yeah.

20     Q.    Okay.  How long did you do that?

21     A.    I'm not sure the exact time, but I did that,

22 once again, when -- which I got in a little bit of

23 trouble, which I'm not proud of, for -- that's -- that's

24 when I did it.

25     Q.    Well, what I'm interested in is, you're

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 122 of 168. PageID #: 1380
The Deposition of DEBORAH KERR, taken June 19, 2024
121

1 claiming $64,500 of estimated lost wages.  And I'm just
2 interested in upon what do you base that?
3      A.   I believe that's relatively low because CCNA,
4 they -- it's about 80,000.  But based off my current job
5 from April to the end of May, I made $20,000.
6      Q.   Is it your testimony that the reason you're
7 claiming lost wages is because you couldn't take the
8 test?
9      A.   I'm claiming that it stopped me from
10 proceeding with my employment efforts because I was in
11 school to take an -- to preparation for an exam.  This
12 was so detrimental to me that I couldn't take anything
13 and pass because my mind was traumatized.
14      Q.   Did you ever make an effort to take the CCNA
15 test again?
16      A.   I didn't make an effort to take it or any
17 other exam because everything that I felt that I needed
18 to know was taken -- well, not taken, but I wasn't
19 mentally in a state where I could take it because I was
20 dealing with this.
21      Q.   Okay.  And help me understand.  If you
22 would've taken the CCNA test, did you have a guaranteed
23 job?
24      A.   A Professor Hamid.  Yes.  He -- he has
25 contacts, and he said, all I needed to do is get your

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 123 of 168. PageID #: 1381
The Deposition of LEE DEMETRIUS KERN, taken on June 9, 2024
122

 1    CCNA, and he'll take care of the rest.

 2        Q.    All right.  I didn't ask that very well.  And

 3    I apologize.  Had any employer said to you, Mr. Kern, if

 4    you just pass this CCNA test, I'll have a job for you?

 5        A.    Well, the employers have partnerships with

 6    Hamid and Tri-C.

 7        Q.    Listen to my question.  Did any employer say

 8    to you, give you anything in writing, represent to you

 9    that if you pass this CCNA test, that you would have a

10    job?

11        A.    No employer talks -- would talk directly to

12    me, but this is a program where the professor, Professor

13    Hamid, gets people employed.  So it -- it is not even

14    customary for these students to talk directly until it's

15    time to apply with their resume.

16            The professor does all the work, and he's a

17    renowned professor, and he's helped a lot of people get

18    into programs.  So Hamid, he helps a lot of people.

19        Q.    All right, but just so I understand, if you

20    would've passed -- taken the test and passed, the other

21    condition would've been that this professor, Professor

22    Hamid, would've had to still line up some employment for

23    you; is that true?

24        A.    Well, I'll say it, but if I never had this

25    incident, I would've took my test.

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 124 of 168. PageID #: 1382
The Deposition of DEMETRIUS KERR, taken on June 9, 2023
123

```
 1        Q.    That wasn't my question.  My question was --
 2              MR. WIEST:  Listen to him.
 3              THE WITNESS:  Okay.
 4   BY MR. BECK:
 5        Q.    Just listen to the question.  I'm not trying
 6   to trick you.  I'm trying to understand the process.
 7        A.    All right.
 8        Q.    If you would've taken the test, there was
 9   still the necessity for this professor to line up a job
10   for you; is that true?
11        A.    I wouldn't say that because I -- Professor
12   Hamid took a certain number of, like, five students to
13   the Cisco Certified Conference, and I met employers
14   there, and they advised me, I just need to get your
15   certificate.
16              And I even keep in contact with the one guy
17   that's high up in cyber security.  So I just needed to
18   get my documents, and I would've been straight.  And
19   that's to answer your question.
20        Q.    Okay.  And then just so I understand, and this
21   is the -- this will put the closure on it in my inquiry.
22   How far along were you in your studies at the time of
23   this incident in September of 2022 to enable you to take
24   the CCNA test?
25        A.    I think it was two more preps.  It was two
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

1 more preps, I believe, and I would've been done.

2      Q.   And what's a prep?

3      A.   Well, the preparation course. So it was

4 Introduction to Cybersecurity one, two, the

5 Fundamentals -- Fundamentals of Routing and Networking.

6 It was CBRAL (phonetic). A C -- C -- I forgot the

7 acronyms, but it's basically the training and the rules

8 I need to be a Cisco Certified Analyst.

9      Q.   And as a Cisco Certified Analyst, what would

10 you do?

11      A.   Protect networks. Like, protect -- so like

12 this office right here, you -- you run off Wi-Fi, right?

13 I could come in here and find your flaws to see if

14 somebody can get your information. And I would secure

15 your flaws.

16      Q.   And these two preps, is this just two days of

17 training?

18      A.   No. Uh-uh. It's -- it was a semester,

19 basically.

20      Q.   All right. So --

21      A.   It was six, I think six months.

22      Q.   And so you had two of those?

23      A.   Two left.

24      Q.   Which would've taken you what? A year?

25      A.   No. It had take -- taken me, I think to the

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 126 of 168. PageID #: 1384
The Deposition of DEMETRIUS KERR, taken June 21, 2022
125

```
 1   spring.
 2        Q.   All right.  So even if you hadn't had this
 3   encounter in September of 2022, you would not have been
 4   able to be eligible for this new job until the spring of
 5   2023?
 6        A.   Well, you could say -- you could say -- I --
 7   you could say that, I believe.  I believe you could say
 8   that.
 9        Q.   Yeah.  I'm not trying to trick you.  I'm just
10   trying to figure out --
11        A.   Right.
12        Q.   -- the timing.  All right.  So you're --
13   whatever lost wage claim that you are making would begin
14   in the spring of 2023 because that's when you would've
15   been at the point where you would've completed your
16   training so that you would've been eligible to take the
17   CCNA test?
18        A.   Well, I wouldn't say that because I had other
19   options.  Just like the job I'm working now where from
20   April to May, I made 20,000.  They've been waiting on
21   me.
22        Q.   All right.  I want to talk to you -- go back
23   to Exhibit A, which is your certified complaint.  I'm
24   going to ask you just a few questions about that.  And
25   then I think I'm done.
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 127 of 168. PageID #: 1385
The Deposition of DEMETRIUS KENNEDY, taken on June 9, 2021
126

```
 1              You were asked a number of questions in -- by
 2   Mr. Spyker about your allegations within this complaint
 3   that Sergeant Wolf had some sort of racial animus toward
 4   you?
 5        A.   Right.
 6        Q.   You don't make that allegation against
 7   Ms. Lewis -- Officer Lewis, do you?
 8        A.   I think it's a totality.
 9        Q.   Well, what I'm asking is, is I'm looking at
10   your complaint, and I'm not --
11              MR. WIEST:  Listen to the question.
12              MR. BRUNS:  Listen to the question.
13              THE WITNESS:  All right.
14   BY MR. BECK:
15        Q.   I'm not sure --
16        A.   Well in the complaint, no.  I -- I don't
17   believe it's made.
18        Q.   All right.  So in the complaint, you don't
19   allege, as you did with Sergeant Wolf, that Officer
20   Lewis had a racial bias against you.
21              You don't make that allegation, do you?
22        A.   From the understanding of the complaint -- if
23   I -- I understand it right, yes.
24        Q.   All right.  And as you sit here today, do you
25   believe that she had some sort of racial animus or bias
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

1    against you?

2        A.   After I looked after -- looked at everything

3    from the totality, even her asking the other driver,

4    does he know me, which is weird to ask somebody, does

5    they know -- do they know somebody else in traffic?  Why

6    would they know me?  I mean, what's the reason?

7            What -- if the other person was Irish, would

8    she -- would've asked that Black guy, do you know that

9    Irishman back there?  I don't think so.  So me being

10   Black, she connected them both.

11           And the reason she even pulled him over is for

12   an event that he didn't -- he didn't break the law right

13   then.  She pulled him over for something another day,

14   though.  So she was trying to connect everything

15   together.

16           And the idea of asking me for my ID was even

17   more racist because it's, oh, he has to be a criminal.

18   And that's what they were trying to cover it up. Because

19   if they got my ID, and I had some type of conviction or

20   something in my record or even a warrant, they would've

21   legitimized their stop.  But it's got to be something.

22       Q.   Of course, Officer Lewis didn't stop you.

23       A.   They didn't stop me, but they pulled over.

24       Q.   Let me ask a question.  Officer Lewis did not

25   stop you.  You actually stopped, correct?

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1        A.   But they said it was a traffic stop.
 2        Q.   You voluntarily --
 3             MR. WIEST:  Listen.
 4   BY MR. BECK:
 5        Q.   -- injected yourself into her stop; is that
 6   true?
 7        A.   No.
 8             MR. WIEST:  Objection to form.
 9             THE WITNESS:  I didn't inject myself in
10        anything.
11   BY MR. BECK:
12        Q.   Did you voluntarily stop?
13        A.   I voluntarily pulled over.
14        Q.   And you voluntarily exited your vehicle?
15        A.   At the request of the officer.
16        Q.   Are you saying that Officer Lewis ordered you
17   out of your vehicle?
18        A.   When I opened my door, she said, give me a
19   second.
20        Q.   But she didn't tell you to get out of the
21   vehicle, did she?  I want to be clear here.  It's on the
22   tape.  She didn't order you out of the vehicle, did she?
23        A.   I don't think she ordered.
24        Q.   Did she ask you out of the -- to get out of
25   the car?
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 130 of 168. PageID #: 1388
The Deposition of DEMETRIUS KERR, taken on June 21, 2024

129

```
 1        A.    I don't know.  She didn't -- I don't believe
 2   she asked me to get out of the car either.
 3        Q.    This is simple.  I'm sorry.  You voluntarily
 4   left your vehicle so that you could confront Officer
 5   Lewis?
 6              MR. WIEST:  Objection to form.
 7              THE WITNESS:  That's incorrect.
 8   BY MR. BECK:
 9        Q.    You voluntarily exited your vehicle so that
10   you could ask her for her identity and badge number,
11   correct?
12        A.    Yes.
13        Q.    And she told you to wait so that she could
14   address the vehicle that she had actually stopped?
15        A.    No.  She said give her a second.
16        Q.    And you gave her that second?
17        A.    I gave her more than a second.
18        Q.    All right.  There was nothing racist about
19   that encounter, was there?
20        A.    Just -- not to say give me a second.  It can't
21   be racist.  Give me a second.
22        Q.    Well, what was racist about her watching you
23   exit your vehicle voluntarily so that you could ask her
24   for her badge number?
25        A.    Well, the idea that you associate two people
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202



THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

1  of the same color because they're the same color,

2  knowing each other.  I don't know what racism is, if

3  that's not racism.

4      Q.  So what you're assuming is -- so I understand

5  your testimony, is that simply because Officer Lewis

6  made an inquiry as to the vehicle that she had actually

7  stopped as to whether that driver knew who you were, who

8  stopped behind her vehicle, that is evidence of racism?

9          MR. WIEST:  Objection.  Form and

10         argumentative.

11         You can answer.

12         THE WITNESS:  I think that's a gross

13         mischaracterization.

14  BY MR. BECK:

15      Q.  I'm sorry.  Isn't that what you told me?  I

16  thought you said that the mere fact that she asked Mr.

17  Goodman if he knew who you were is evidence of racism.

18      A.  Well, I didn't say that.  It took --

19         MR. WIEST:  Hold on.  Objection.  Form.

20         Argumentative.  You've cut him off once.  Please

21         allow him to answer.

22         Go ahead.

23         THE WITNESS:  I didn't say that in totality.

24         It was -- that was a complete spectrum of racism.

25  BY MR. BECK:

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 132 of 168. PageID #: 1390
The Deposition of DEMETRIUS KERRY, taken on June 9, 2022
131

```
 1        Q.   So just so I'm clear, it wasn't racist, in
 2   your opinion, for her to simply ask the driver that she
 3   had stopped lawfully, whether or not the vehicle that
 4   pulled up behind her after that stop was someone that
 5   the driver knew?
 6             MR. WIEST:  Objection to form.
 7             THE WITNESS:  Can you repeat that?  I'm sorry.
 8   BY MR. BECK:
 9        Q.   It was not racist, was it, for her to ask the
10   vehicle driver that she had stopped, whether he knew the
11   vehicle that had stopped behind her cruiser?
12             MR. WIEST:  Objection to form.
13             You can answer.
14             THE WITNESS:  Anytime you associate people by
15        the same color, that's racism.  I don't know every
16        Black man.  And every Black -- Black man doesn't
17        know me.
18   BY MR. BECK:
19        Q.   So it's only -- you believe it's a racist
20   maneuver on Officer Lewis's part simply because
21   Mr. Goodman was also African American?
22             MR. WIEST:  Objection to form.
23             THE WITNESS:  I don't believe she would've
24        asked an Irishman.
25   BY MR. BECK:
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 133 of 168. PageID #: 1391
The Deposition of DEMETRIUS KERN, taken on June 7, 2024
132

1     Q.   Thank you.  That's the second time you've said

2  that.  So you believe that if Mr. Goodman was actually

3  Caucasian, she never would've made an inquiry as to

4  whether or not the vehicle that had stopped behind her

5  was someone that the driver knew?

6     A.   I believe if she was -- he was Caucasian, she

7  wouldn't have asked me.

8     Q.   Okay.  Now, you mentioned that you were a

9  correction officer.  Did you -- what sort of police

10  training did you actually go through?  Do you -- are

11  you -- were you OPOTA certified?

12     A.   OPOTA?  Can you break the acronym -- acronym

13  down?

14     Q.   All right.  Do you know what the Ohio Police

15  Academy is?

16     A.   Yes.

17     Q.   Did you attend it?

18     A.   I attended the training in Columbus for all

19  correctional officers.

20     Q.   And how long was that training?

21     A.   I don't remember the -- the length of it, but

22  it was very in-depth.  They taught us a lot.  They

23  taught us how to handle things.  They taught us

24  physical, how to train, how to touch people.  They

25  taught us a lot, and I learned a lot.  And most of all,

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 134 of 168. PageID #: 1392
The Deposition of DEMETRIUS KERN, taken on June 9, 2021
133

1  they -- they told -- taught us to treat the inmates like
2  human beings.
3      Q.   Other than Officer Lewis asking Mr. Goodman
4  whether he knew who you were, what other racist activity
5  did Officer Lewis engage in?
6      A.   Well, her story changed numerous times.  So --
7  and I think even if -- if you pull -- if -- if it was
8  you and you stopped, she wouldn't have said that you
9  impeded her stop.  He didn't -- he didn't stop to lights
10  and sirens.
11         And then she went back and changed that a
12  couple more times to the point, after all of this, after
13  all this ruckus was caused by her, when she could have
14  just radioed -- radioed in, I almost hit somebody.  He
15  stopped, and I'm going to handle it.  Like a responsible
16  person that takes responsibility for the stuff they do,
17  right?
18         But if it was you, right, they would've gave
19  you the benefit of the doubt.  I know they would've.
20      Q.   Are you finished?
21      A.   Go ahead.
22      Q.   My question was, and maybe you answered it,
23  you believe that Officer Lewis's decision process in
24  initially engaging with you was racist?
25      A.   I -- in totality, I think it was racist.

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 135 of 168. PageID #: 1393
The Deposition of DEBORAH KERR, taken June 21, 2024
134

1    Q.   And you're making that statement, not on what

2  she -- about what she said, but simply because of your

3  assumption that if you had been a Caucasian, she

4  would've handled the entire situation differently?

5          MR. WIEST:  Objection to form.

6      Mischaracterizes the testimony.

7          You can answer.

8          THE WITNESS:  I'm making that -- and I don't

9      want to say assumption because that's not what it's

10     to me.  I'm making a declaration because the

11     totality of her actions, she -- even after

12     everything, she went to the back and said, yeah.  I

13     did it.

14 BY MR. BECK:

15     Q.   I'm sorry.  Did what?

16     A.   I almost caused an accident.

17          And that's when Naftali Wolf asked her, so

18  what really happened?  After everything, what really

19  happened?  It was concerning to him after everything was

20  done, what happened?

21          She said, oh, yeah.  I really did it.

22     Q.   Now you talked about this accident.  Let me

23  just make sure I understand the fact pattern.  You were

24  in the left lane?

25     A.   No, I wasn't.

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 136 of 168. PageID #: 1394
The Deposition of DEMETRIUS KERRVILLE, taken on June 9, 2024
135

1    Q.    You were in the right lane?

2    A.    Yes, sir.

3    Q.    All right.  She was in the left lane?

4    A.    Yes, sir.

5    Q.    Up ahead of you?

6    A.    No.

7    Q.    Beside you?

8    A.    Yes.

9    Q.    So describe where her car was in relation to

10   yours when she began to move into the curb lane.  Was it

11   right next to yours, or was it partially in front of

12   yours?

13   A.    So when she -- this is us.

14   Q.    How fast were you going?

15   A.    The speed limit.

16   Q.    Which is?

17   A.    I believe it's 35 right there, or 25.

18   Q.    How long had Officer Lewis's vehicle been next

19   to yours as you were proceeding down -- was this

20   Mayfair?

21   A.    No.  Yeah.  That is Mayfair.

22   Q.    It was Mayfair?

23   A.    Yeah.  Mayfield.

24   Q.    Mayfield.  I'm sorry.

25   A.    Yeah.  Yeah.

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF  Doc #: 54  Filed: 10/30/24  137 of 168.  PageID #: 1395
The Deposition of DEBORAH KERR, taken June 9, 2022
136

```
 1        Q.    How far -- how long had she been driving next
 2   to you on Mayfield before she moved over?
 3        A.    I don't know how long she would've been
 4   driving beside me.
 5        Q.    Was there -- did she signal before she moved
 6   over?
 7        A.    Signaling.  I -- I don't even know how
 8   physics -- I can see somebody signaling, and they cut in
 9   like that.  I don't know if she was signaling.
10        Q.    Well, how far in front of you was she when she
11   moved over from the left lane to the right lane?
12        A.    When I seen her cutting in, I had to step on
13   the brakes, so she wasn't in front of me at all.
14        Q.    Did your -- did you lock your brakes up?
15        A.    Locked my brakes up in the -- in -- in saying
16   just come to a complete stop.
17        Q.    Did you push the brakes to the floor so that
18   your brakes locked up?
19        A.    I pushed my brakes to the floor.  Yeah.
20        Q.    Did your vehicle skid?
21        A.    Skid.  Skid.  I believe so.
22        Q.    Did you steer to the right?
23        A.    Steer to the right would've been the curb.
24        Q.    So you didn't steer to the right?
25        A.    I didn't want to hit the curb.  I almost -- I
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF  Doc #: 54  Filed: 10/30/24  138 of 168.  PageID #: 1396
The Deposition of DEMETRIUS KERR, taken on June 9, 2024
137

 1  did like this, but I didn't -- I had nowhere to go.

 2      Q.   How close to her vehicle did she come to you?

 3      A.   Very close.

 4      Q.   How close?

 5      A.   I'm not sure.  I can't really measure the

 6  feet.  And if you're asking me a question, I can't

 7  measure, but it was to the point where it would've been

 8  an accident.

 9      Q.   But you brought your vehicle to a stop?

10      A.   Yeah.  I stopped.  She got in front of me, and

11  I rode on down and parked, like, a couple car lanes

12  behind her, so I could have enough space so she would

13  feel secure.

14      Q.   You didn't see her overhead lights on?

15      A.   They weren't on.

16      Q.   So you're saying that Officer Lewis is lying,

17  that she didn't have her overhead lights on when she

18  made this maneuver?

19      A.   She lied a couple times.

20      Q.   What else did she lie about?

21      A.   Well, I would say, considerably, majority of

22  the thing.

23      Q.   All right.  Let me ask you this.  Did she lie

24  about having her siren on?

25      A.   She -- her siren was on when she got in front

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 139 of 168. PageID #: 1397
The Deposition of DEMETRIUS KERN, taken on June 9, 2021
138

```
 1    of me.
 2         Q.   So her siren was on?
 3         A.   When she got in front of me.
 4         Q.   And her overhead lights were on?
 5         A.   When she was in front of me.
 6         Q.   You didn't see --
 7         A.   Completely in front of me.
 8         Q.   Do you know if she was -- had executed her
 9    overhead lights and siren as she was making her maneuver
10    to change lanes?
11         A.   No.  No.  When she was in the lane, that's --
12    when she was completely in the lane, that's when she did
13    it.
14         Q.   All right.  So your testimony is she was
15    completely in front of you?
16         A.   Yes.
17         Q.   Had avoided the crash?
18         A.   No.  She --
19         Q.   Had avoided the accident?
20         A.   When you say avoided the crash, she almost
21    caused the crash.
22         Q.   All right.  But your testimony is her lights
23    and sirens were not turned on until after she had fully
24    entered the curb lane where you were traveling?
25         A.   That's why she apologized.
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 140 of 168. PageID #: 1398
The Deposition of DEMETRIUS KERRY, taken on June 9, 2022
139

1    Q.   And there was no accident?

2    A.   No.  There wasn't.

3    Q.   You were not injured in that event?

4    A.   I was injured by Naftali Wolf.

5    Q.   In the event of stopping your vehicle, you
6    were not injured?

7    A.   No.

8    Q.   After Officer Lewis apologized to you, why
9    didn't you just leave the scene at that point?

10   A.   If I apologized to you and say I'm not wrong,
11   that's not an apology.

12   Q.   So you did not accept her apology?

13   A.   It's not about accepting.  It's about if I
14   apologize to you and you say, I'm not wrong, what did
15   you apologize for?

16        And that led to, this is the disconnect.  And
17   I said that very calmly, right?  This is the disconnect
18   we have with public officials.  Because if you do
19   something wrong, just say, I'm wrong, and go on your
20   way.  And by saying, oh, I'm sorry.  But I'm not wrong.
21   So what just happened?

22   Q.   Why was it important to you that Officer Lewis
23   apologized to you in a different manner after you had
24   already confronted her and already obtained her name and
25   badge?

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202



Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 141 of 168. PageID #: 1399
The Deposition of DEMETRIUS KERNS, taken on June 21, 2024
140

```
 1              MR. WIEST:  Objection to form.
 2              THE WITNESS:  Well, I didn't.  She never --
 3         my -- if she would've gave me -- so let me
 4         answer -- answer your question.  I'm sorry.  But I
 5         was being conversational.  It wasn't important to
 6         me.  What was important to me is getting her name
 7         and badge number so I could leave.
 8    BY MR. BECK:
 9         Q.    Did you have that after she apologized?
10         A.    She never gave me her card.  I don't believe.
11         Q.    Did she have a uniform on that had her name
12    plate on and her badge number?
13         A.    Yes.  But she told -- she requested me, give
14    her a second.  If she didn't say, give her a second, I
15    could have been on my merry way.
16         Q.    But after she came back to you, before
17    Officer -- Sergeant Wolf arrived, you did talk to her,
18    and you did see her name, and you did know her badge
19    number.
20         A.    And I wasn't able to leave.
21         Q.    What stopped you from leaving?
22         A.    Two officers.
23         Q.    Did Officer Lewis ever say, you cannot leave?
24         A.    She was backing up her superior.
25         Q.    Did Officer Lewis engage in any of the
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202



Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 142 of 168. PageID #: 1400
The Deposition of DEMETRIUS KERNS, taken on June 9, 2021
141

1  handcuffing?

2      A.   No.  I don't believe so.

3      Q.   **Your complaint against Officer Lewis is that**

4  **she failed to what?  Intervene to prevent her sergeant**

5  **from placing you under arrest?**

6          MR. WIEST:  Objection.  Calls for a legal

7      conclusion.  To the extent that --

8          I mean, if you know, you can answer.

9          THE WITNESS:  Which I believe she has a -- is

10     a mandatory right -- well, not right, mandatory

11     obligation to intervene when there's other

12     mischief.

13 BY MR. BECK:

14     Q.   **Well, look at -- in Exhibit A, look at**

15 **paragraph 52, which is your sworn statement.**

16     A.   Right.  Page -- page?

17     Q.   **Page 8.**

18     A.   Okay.

19     Q.   **Paragraph 52.**

20     A.   Page 8.  Is that not D?

21     Q.   **That's A.  I'm sorry.  That's the complaint.**

22         MR. WIEST:  And by the way, just for the

23     record, we intend to assert both a failure to

24     intervene theory and, because of Lewis's direct

25     involvement with the arrest and charging decisions,

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF  Doc #: 54  Filed: 10/30/24  143 of 168.  PageID #: 1401
The Deposition of DEMETRIUS KERELOU, taken on June 9, 2022
142

 1           direct claims against her.  Just for the record,

 2           that's a legal thing.  That's an attorney thing.

 3           That's not a client thing, but you can ask him

 4           about it.

 5     BY MR. BECK:

 6           Q.    Yeah.  I'm just asking about your sworn

 7     statement.

 8           A.    Go ahead.

 9           Q.    Your lawyers can make whatever argument they

10     want.

11           A.    What was the question?

12           Q.    Your sworn statement is in paragraph 52 that

13     she had an opportunity to intervene and stop Wolf

14     several times.

15           A.    But she declined to.

16           Q.    Well, isn't the event that you're complaining

17     about with respect to Sergeant Wolf, the fact that you

18     were handcuffed and placed under arrest?

19           MR. WIEST:  Objection to form.  Calls for

20           legal conclusion.

21           Go ahead.

22           THE WITNESS:  Can you repeat that so I -- I

23           understand it?

24     BY MR. BECK:

25           Q.    Yeah.  Your claim against Sergeant Wolf is

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 144 of 168. PageID #: 1402
The Deposition of DEMETRIUS KERR, taken on June 21, 2024
143

```
1    that he placed you under arrest and handcuffed you?
2         A.   Right.
3              MR. WIEST:   That is one claim.   Just for the
4         record.
5              Go ahead.
6    BY MR. BECK:
7         Q.   And you're saying that Officer Lewis should
8    have stopped Sergeant Wolf from exercising authority at
9    the traffic stop and prevented her supervisor from
10   detaining you and placing you in handcuffs and arresting
11   you?   That's what you're saying?
12             MR. WIEST:   Objection to form.
13             THE WITNESS:   I'm saying that she had a duty
14        to uphold, despite if it was her superior or her
15        subordinate.   That if an officer does something
16        that he isn't supposed to do, she's supposed to
17        intervene.
18   BY MR. BECK:
19        Q.   Look at paragraph 60, which is on page 9. This
20   deals with the conversation that you had with Chief
21   Britton.   Tell me about this conversation where Chief
22   Britton said that Cleveland Heights had inadequate
23   training on issues of constitutional rights and race and
24   policing that led to the interaction in question.
25             Is that exactly what he said?
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 145 of 168. PageID #: 1403
The Deposition of DEMOFTUS KERR, taken June 21, 2024

144

        1        A.   I can't say verbatim, but he said, I don't
        2   know if it's a training issue, and that's what he said.
        3   And he couldn't be conclusive on what the issue was. But
        4   he said, his words, I don't know if it was a training
        5   issue.  And the detectives even doubled down on that.
        6        Q.   Well, I'm looking at your sworn statement. You
        7   say he admitted to you that there was inadequate
        8   training.  That's not what you just told me.  What you
        9   told me was he said he wasn't sure if it was a training
       10   issue.
       11             Isn't that what he said?
       12             MR. WIEST:  Objection to form.  Argumentative.
       13             Go ahead.
       14             THE WITNESS:  When a chief says he's not sure
       15         if it's the training or what it is, and then I
       16         rebut with their code of conduct where they have a
       17         responsibility to know, even if they don't know,
       18         that is an issue of training.
       19   BY MR. BECK:
       20        Q.   Well, I'm not asking you about the philosophy.
       21   I'm asking you about what he said.  You claim under oath
       22   that he said he admitted to you that inadequate training
       23   on issues of constitutional rights and race in policing
       24   had likely led to the interaction.
       25             Did he actually say that?  That's the only

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1    question I'm asking.
 2              MR. WIEST:  Objection to form.  Asked and
 3         answered.
 4              Go ahead.
 5              THE WITNESS:  Did he actually say those words?
 6    BY MR. BECK:
 7         Q.   Yes, sir.
 8         A.   Not in -- not in that word form presentation.
 9         Q.   You said that the detectives doubled down, and
10    I just want to make sure I understand what you meant by
11    that.  What detectives made comments to you?
12         A.   The two detectives acknowledged that I was a
13    victim, and they told me that Cleveland Heights is going
14    to want to make this right by me.  And this is going to
15    be the first time we sit down.  We'll have several other
16    times, but Cleveland Heights is going to want to make
17    this right by me.
18         Q.   Do you know who those -- was that -- who were
19    the detectives?  I'm sorry.
20         A.   The -- the names are fleeing.  I'm sorry.
21         Q.   Okay.  And when did you talk to those
22    detectives?
23         A.   I just -- I was done -- when I got done with
24    Chief Britton, he called them down to talk to me right
25    away.
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 147 of 168. PageID #: 1405
The Deposition of DEMETRIUS KERN, taken June 9, 2024
146

```
 1        Q.   Okay.  Let me look at another thing, and I
 2   think I'm done.
 3             By the way, were any of these conversations
 4   that you had with either Chief Britton or the detectives
 5   recorded by you?
 6        A.   I recorded them, yes.
 7        Q.   So you have a recording of those
 8   conversations?
 9        A.   Yes, sir.
10             MR. BECK:  Have you produced those?
11             MR. WIEST:  We have.
12             MR. BECK:  Okay.  I don't remember seeing
13        that, but --
14             MR. WIEST:  It's in the Dropbox that was
15        provided to you with the records.
16             MR. BECK:  Okay.
17   BY MR. BECK:
18        Q.   Have those recordings been transcribed?  Do
19   you know?
20        A.   I don't know.
21             MR. BECK:  Okay.  Thank you, Mr. Kern.  That's
22        all I have.
23             THE WITNESS:  Thank you.
24             MR. SPYKER:  I do have some follow-ups.  Do
25        you want to take a break?  I shouldn't be too long.
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 148 of 168. PageID #: 1406
The Deposition of DEMETRIUS KENE, taken on June 9, 2022
147

```
 1              THE WITNESS:  I'm okay.  Might even -- let me
 2        take a bathroom --
 3              MR. SPYKER:  Yeah.
 4              MR. BECK:  Let me take a quick break.
 5                  (OFF THE RECORD)
 6              MR. SPYKER:  I am good whenever you guys are.
 7              THE WITNESS:  Okay.
 8                  REDIRECT EXAMINATION
 9  BY MR. SPYKER:
10        Q.   All right, sir, I just have a few follow-ups.
11  I'm going to jump around to some different topics --
12        A.   All right.
13        Q.   -- and try to wrap this up.  I listened to
14  Greg's questions about some of your damages, and there
15  are things I'm still trying to wrap my head around.  So
16  if I'm repetitive in any way, I apologize.  I'm just
17  trying to figure this stuff out.
18              Your responses to the discovery requests,
19  which has been marked, I believe, as D?
20        A.   Yeah.
21              THE REPORTER:  D.
22  BY MR. SPYKER:
23        Q.   That one right there.  Pull that one out for
24  me.
25        A.   I got it.
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 149 of 168. PageID #: 1407
The Deposition of DEMETRIUS KENNY, taken June 9, 2024
148

1     Q.   Okay.  Go to the last page of that document.

2     A.   All right.

3     Q.   And just read that verification.  It's similar

4    to what we did with the complaint.  Once you've had a

5    chance to review it, I'm just going to ask you -- that

6    is your signature, correct?

7     A.   Correct.

8     Q.   Yep?

9     A.   Yes.

10     Q.   Okay.  And so that indicates to me that you --

11    there are obviously objections, things your lawyer has

12    put in.  I'm not talking about that.  Your lawyer signs

13    for that below.

14          But as far as the factual statements in here,

15    you reviewed the factual information provided in

16    response to the questions, and you have verified that it

17    was accurate, correct?

18     A.   Yes.

19     Q.   Okay.  Turn to page 6 for me.

20     A.   Okay.

21     Q.   Okay.  My understanding is at the date and

22    time of the incident, which is September 22, 2022, I

23    believe?

24     A.   Yes.

25     Q.   You were a full-time student, correct?

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 150 of 168. PageID #: 1408
The Deposition of DEMETRIUS KERR, taken on June 9, 2022
149

 1        A.    Yes.

 2        Q.    Okay.  You did not have any employment or

 3   employment income at that time.  Is that an accurate

 4   statement?

 5        A.    Amazon and eBay stuff, but that's

 6   insignificant.

 7        Q.    Okay.  So --

 8        A.    Not insignificant, but Amazon and eBay stuff.

 9        Q.    When you say Amazon and eBay stuff, that could

10   mean a few different things to me.  So what do you mean?

11        A.    I mean, I sell things on Amazon and eBay.

12        Q.    Okay.  So you might have -- you come into --

13   like for me, I like Pokcards, right?  I might sell a set

14   of Pokcards on eBay, make some money for it, but it's

15   not my job.

16        A.    Right.

17        Q.    I'm a lawyer.  So is that -- is that kind of

18   what you're describing?  You would sell some things here

19   and there, but it wasn't a full-time profession?

20        A.    I wouldn't sell my Pokcards.  I would --

21        Q.    Well, I'm only selling duplicates, so I get

22   it.

23        A.    All right.

24        Q.    But is that accurate?  You're just selling

25   some stuff here and there?

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1        A.    Yes.

 2        Q.    Okay.  So look down at your response to

 3   question number 8.  You'll see an objection, and then

 4   you'll see a list: medical bills, lost wages, other 1983

 5   damages.

 6              You see where it says lost wages?

 7        A.    Yes.

 8        Q.    Okay.  It says, "Plaintiff" that's you, "was

 9   unable to perform his work duties."  What work duties

10   does that refer to?

11        A.    The work duties that I could have worked where

12   I work now, which I had a history of working in the

13   field that I am now, which I probably would have made

14   more than 64.5.

15        Q.    Okay.  But you would agree with me that at

16   the time -- as of the day of the incident,

17   September 22, 2022, you did not have any, quote, "work

18   duties," end quote?

19        A.    I wasn't working.

20        Q.    Okay.  The next part of that statement, after

21   the comma, it says, "and a contract he had negotiated."

22   What contract had you negotiated?  I'm unclear about

23   what that is.

24        A.    Well, the contract I negotiated was the

25   schooling, that I could have been working for CCNA if I
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 152 of 168. PageID #: 1410
The Deposition of DEMBO JUS KEBE, taken on June 7, 2024

151

1  finished that, and I could have been working for any

2  previous employers, you know what I mean?

3      Q.   Okay.  I understand what you're saying.  Where

4  my confusion is, when I see the words, "and a contract

5  he had negotiated," I'm thinking there's a written

6  document that is signed.

7           Is there any -- does this response refer to

8  any written document that is signed related to any

9  employment relationship you either had or might have

10  had?

11      A.   No.  But that -- the nature of a signed

12  document is -- it -- it isn't -- for CCNA, the -- the

13  professor is a renowned professor, and he gets his

14  students jobs, so there is no contract signed in that

15  case.  And in regards to work, I -- I could have been

16  working somewhere else.

17      Q.   Okay.  Now let's talk about the professor, and

18  I may have gotten this wrong, Hamad (phonetic)?

19      A.   Hamid.

20      Q.   Hamid.  Can you spell that for me?

21      A.   H-A-M-I-D.

22      Q.   H-A-M-I-D.

23      A.   Yeah.

24      Q.   Do you know his first name?

25      A.   I never called anybody by their first name.

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 153 of 168. PageID #: 1411
The Deposition of DEMETRIUS KERR, taken on June 11, 2024
152

```
 1        Q.    Fair enough.  And I believe you said he was a
 2   doctor?
 3        A.    Doctor -- I believe it's Dr. Hamid.
 4        Q.    Okay.  And he taught at Tri-City?
 5        A.    Tri-C.
 6        Q.    Tri-C?
 7        A.    Yeah.
 8        Q.    Spell that for me.
 9        A.    T-R-I, dash, C.
10        Q.    Okay.  And what was his field of instruction?
11        A.    CCNA prep.  I believe that's -- I don't if
12   that's his field of instruction, but that was what he
13   was preparing the students for.
14        Q.    Okay.  And what specific classes did you take
15   that Dr. Hamid was the professor for, if you recall?
16        A.    Well, it was more than him.
17        Q.    Sure.  And I'm just -- I'm specifically
18   focusing on him, though.  So I understand you took,
19   probably, a lot of classes.
20        A.    Intro -- Intro to Cybersecurity 1 and 2,
21   Network and Routing, Fundamentals of Cybersecurity, and
22   the C.  That's another one.  And those are different --
23   it's not just him.  It's different teachers.
24        Q.    And I understand.
25        A.    Right.
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 154 of 168. PageID #: 1412
The Deposition of DEMETRIUS KERNS, taken June 9, 2024
153

1      Q.   And regardless, though, your understanding was

2   that -- through enrolling in this program, taking these

3   classes, that Dr. Hamid's connections -- once you had

4   successfully completed the curriculum he had laid out

5   along with other professors, that would've secured you a

6   job in this field making approximately at least $64,000

7   a year; is that accurate?

8      A.   It's -- it's low, but Cisco has endorsed

9   colleges to train people, so I had the belief that I

10  would be working.

11     Q.   Okay.  Was your belief based on anything

12  explicit that Dr. Hamid told you?

13     A.   Once I get my certification, I'll be great.

14  I'll be good.

15     Q.   Okay.  So if we subpoena Dr. Hamid, you would

16  expect he would come in here and testify that, had you

17  completed the CCNA, he would've been able to use his

18  connections and absolutely get you a job?

19     A.   It is my understanding that after I finished

20  my CCNA, he would've been able to get me a job.

21     Q.   Okay.  Well, we will certainly explore that.

22  What do you currently make?  What's your monthly income

23  right now?

24     A.   It varies, but from April 1st to May 29th, I

25  think I made about $20,000.

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 155 of 168. PageID #: 1413
The Deposition of DEREK TURNER, taken on June 01, 2021
154

```
 1        Q.   Okay.  And that was in the two roles that we
 2   had previously discussed?
 3        A.   Yes.
 4        Q.   Ballpark, what have you made year-to-date?
 5   Understanding that it fluctuates, so a month --
 6        A.   I would have to look at my records.  I don't
 7   know.
 8        Q.   Okay.  So the April 1 to April 29, again, and
 9   I'm just exploring this a bit because you said it
10   fluctuates, is that a good month, an average month, or a
11   bad month?
12             MR. WIEST:  Objection to form.
13             THE WITNESS:  It's just okay.  So I'm in a
14        position now that I'll -- I'll probably -- possibly
15        make more than that, so.
16   BY MR. SPYKER:
17        Q.   Okay.  So I guess maybe I need to backtrack a
18   bit, and maybe this is a poor understanding of what you
19   had testified your current roles are.
20             And I understand you have two jobs, right?
21        A.   Correct.
22        Q.   Okay.  And one -- I have to flip my notes
23   over.  There was one that was something CLE?
24        A.   CLE.
25        Q.   Okay.  And then --
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF  Doc #: 54  Filed: 10/30/24  156 of 168.  PageID #: 1414
The Deposition of DEMETRIUS KERR, taken on June 9, 2024

155

 1        A.    And it was MM4U.

 2        Q.    MM4U.

 3        A.    Yep.

 4        Q.    All right.  How are you compensated by MM4U?

 5   Do you have an hourly wage, a salary?  Is it

 6   commission-based?

 7        A.    Commission.

 8        Q.    Okay.  How does the commission work?

 9        A.    27 -- 25 per unit with MM4U, 25 -- it's 25,

10   MM4U and 27 for CLE.  And then I get an override for

11   everybody that's under me.  But MM4U, I get an override

12   over the whole contract that I just closed from them.

13        Q.    Okay.

14        A.    And that's totality of Baltimore, Ohio.  It's

15   several states.

16        Q.    Got it.  And then is it a similar structure --

17   compensation structure with CLE?

18        A.    Yes.

19        Q.    Okay.  At the time you were enrolled in Tri-C

20   for the CCNA classes, you had already pled guilty to the

21   fraud charge related to your workers' compensation

22   issue; is that correct?

23        A.    What day was that?

24        Q.    I don't know.  I'm just asking from your

25   recollection.

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 157 of 168. PageID #: 1415
The Deposition of DEMETRIUS KENNEY, taken June 9, 2022
156

```
 1        A.    From my recollection, I believe so.

 2        Q.    Well, you were enrolled in the CCNA prep

 3   courses the day of the incident with the police,

 4   September 22, 2022, correct?

 5        A.    Correct.

 6        Q.    Okay.  And as of the day of the incident, you

 7   had already pled guilty to the workers' comp fraud,

 8   correct?

 9        A.    I believe so.

10        Q.    Okay.  Had you and Dr. Hamid ever discussed

11   how your conviction for fraud would've impacted your

12   ability to get a cybersecurity job?

13        A.    Yes.

14        Q.    Okay.  And how did that conversation go?  What

15   did he -- what insight did he offer?

16        A.    He said we just have to go with the people

17   that would hire you.

18        Q.    Okay.  Did he identify any specific people

19   that would hire you with that conviction on your record?

20        A.    Not specifically.

21        Q.    So Dr. Hamid never provided you with any

22   information as to a specific employer that he thought

23   would hire you with the fraud conviction on your record?

24        A.    Well, at the time -- no.  To answer your

25   question, but --
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF  Doc #: 54  Filed: 10/30/24  158 of 168.  PageID #: 1416
The Deposition of DEMETRIUS KERRY, taken on June 9, 2021
157

1    Q.   Okay.

2    A.   -- to be conversational, it's not customary to

3 go there with students when they haven't even finished

4 the CCNA.

5    Q.   Right.  It's not -- the job is anything but

6 guaranteed.  You got a lot of things you have to do

7 before you actually get to that point, right?

8         MR. WIEST:  Objection to form.

9         THE WITNESS:  Well, life isn't guaranteed.

10 BY MR. SPYKER:

11   Q.   Exactly.

12   A.   Right.

13   Q.   Exactly.  Okay.  The 64,500 referenced here,

14 is that what you believe the -- well, strike that.

15        At the time of the incident, how much longer

16 did you have in your CCNA coursework?

17   A.   I think it's the spring, the same as I told

18 the other attorney.

19   Q.   No.  And I understand.  So you were near

20 completion; is that fair?

21   A.   Yes.  Yes.

22   Q.   Okay.  What were the next steps before you

23 would have been fully qualified to interview and then

24 take a job in that career field?

25   A.   I just had to take the exam.

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 159 of 168. PageID #: 1417
The Deposition of DEMETRIUS KERNS, taken on June 9, 2022

158

 1      Q.   Take the exam.  Okay.  When are those exams
 2 scheduled?
 3      A.   I have an exam scheduled next month, to be
 4 honest.  I was going to try to take it.
 5      Q.   For the CCNA?
 6      A.   No.  For the CompTIA, which is a --
 7 competitive.
 8      Q.   I understand.  But what you were preparing
 9 for, for the CCNA -- let's pretend this incident never
10 happens, just for the purposes of the question.
11           When would you have taken the exam?
12      A.   Right after my classes was done.
13      Q.   And I understand you're saying right after
14 class.  That's hard for me to -- is it --
15      A.   So if this never happened, I would've taken it
16 no later than the spring.
17      Q.   Okay.  So the spring of the following year?
18 Because we're in September of 2022 --
19      A.   Yeah.
20      Q.   -- so you would've taken it spring of 2023?
21      A.   Yeah.
22      Q.   Okay.  So you wouldn't have been in a position
23 to earn any income from this CCNA potential gig until
24 you had passed the exam sometime in the spring of 2023,
25 if you had passed the exam?

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 160 of 168. PageID #: 1418
The Deposition of ELI DEMOUTH, KERRY, taken on June 9, 2024
159

 1        A.    Well, I wouldn't say that because
 2    opportunity -- just the further you get along in the
 3    relationships that you make, opportunities present
 4    themselves.
 5        Q.    **But you have to pass the exam, right?**
 6        A.    No.  We had just went to the CCNA conference,
 7    and I've met -- I've met people there, and it -- the
 8    reason we go to the conference is so we can talk and
 9    meet with prospective people that are endorsing and will
10    hire CCNA students.
11        Q.    **Sure.**
12        A.    And so that's why.  And I was one of the few
13    students that was invited to go there, and they paid for
14    that, for us, which is probably $1,000 per ticket.  So
15    me being a prospective student was very promising.
16        Q.    **Sure.  I understand.  And maybe I'm asking bad**
17    **questions.  We're getting late in the process, so I'll**
18    **try to clean that up a bit.**
19              **My understanding, based on your previous**
20    **testimony, and this is just -- I'm just saying my**
21    **understanding.  I'm not trying to re-characterize what**
22    **you said.  So if I'm wrong, this is an important time to**
23    **clarify that for me -- was that you would not have been**
24    **able to actually secure a job in this field until you**
25    **had passed the exam.  The exam was a prerequisite.**

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 161 of 168. PageID #: 1419
The Deposition of DEMETRIUS KERR, taken June 4, 2024
160

1          Am I understanding that correctly?

2     A.    That's a mischaracterization.

3     Q.    Okay.  Then explain to me how I'm

4  misunderstanding it, please.

5     A.    The certificate or the certification is just

6  reinforcement for the job.  The further you get along in

7  the program with Professor Hamid, he determines if you

8  should stay in and go further, take the test, or the

9  further -- he -- he determines how much more you need

10 based off of the exam, the pretesting.

11          So I could get a job as a student position

12 somewhere else.  So that doesn't -- the -- the

13 certification doesn't determine it.

14    Q.    Sure.

15    A.    But I was so insecure with my abilities, and I

16 was in -- not just the abilities, but I was traumatized

17 from the incident, that I didn't feel comfortable even

18 attempting to take a student position.

19    Q.    Okay.  So you didn't feel comfortable taking

20 the exam; you didn't feel comfortable attempting to take

21 a student position?

22    A.    Right.

23    Q.    I don't want to know anything you've discussed

24 with any of your attorneys, anybody that works for your

25 attorneys, anything of that nature.  Outside of that,

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1   who have you had significant conversations with about
 2   this incident and your lawsuit?
 3           And when I say significant conversations, more
 4   than just in passing, you know, oh, I'm going to a
 5   deposition here today.  Who have you actually sat down
 6   and talked and reflected on this incident with?
 7        A.   Well, I don't know if I sat down and
 8   reflected, but when the people see me out, it's like,
 9   they think I'm some type of celebrity or something.  And
10   they walked -- that's the guy.  This has been nothing
11   but an inconvenience for me.  So I try to not even not
12   talk about it, but I try to stay away from people.
13        Q.   Okay.  When is the last time you were out,
14   going about your normal day and someone has said, hey,
15   that's the guy from the incident?
16        A.   My barber did it the other day.
17        Q.   Okay.
18        A.   I looked at TikTok, my own barber, and that
19   was -- I'm like, should I even go back to this guy?
20   Like, this --
21        Q.   What do you mean?  What occurred when you said
22   you looked at TikTok?
23        A.   He was like, I saw you on TikTok, man.  That's
24   messed up.  What happened?
25           I'm like, man, I don't even want to talk about
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202



Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

```
 1    it, man.

 2         Q.    You mentioned to me that you had a torn quad

 3    injury previously.  How did that happen?  I don't think

 4    that I got that.  How did you tear your quad?

 5         A.    I was coming down off of a layup.  You would

 6    think it would've happened going up, but I was coming

 7    down.

 8         Q.    It was coming down?

 9         A.    Right.

10         Q.    Well, you were born in '85, right?

11         A.    It's a great year.

12         Q.    I was born in '88.  I stopped playing pickup

13    basketball two years ago.

14         A.    Well, you didn't have a jumper.

15         Q.    That's about the only thing I had.  Now, let

16    me ask you this: You're not assuming that I didn't have

17    a jumper because I'm white, right?  That wasn't a

18    racially motivated comment, was it?

19         A.    No.  But if we go that route, your jumper

20    would be the best in the world.

21         Q.    Well, there you go.  Okay.  That's a fair

22    point.

23         A.    Right.

24         Q.    I mean, I still got a jumper, but I just want

25    that in the record.
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 164 of 168. PageID #: 1422
The Deposition of DEMETRIUS KERR, taken June 21, 2024
163

1      A.    Right.

2      Q.    And I will test that in a game all around the

3  world, but I'm not guarding anybody.

4           MR. BRUNS:  And Tommy sits silently.

5           MR. KACZKOWSKI:  Yeah.

6           MR. SPYKER:  Tommy don't want these problems.

7      You already know.

8           Oh, let's see.  I might have one or two more

9      things, just clearing stuff up.  I can't end the

10     deposition on my basketball resume.

11          All right.  No.  We'll end it there.  That's

12     all I have.  Thank you.  They might have follow-up

13     questions based on what I asked.

14                   FURTHER EXAMINATION

15  BY MR. BECK:

16     Q.    I actually have one question based on what Mr.

17  Spyker asked you.  After the incident in September 2022,

18  did you drop out of Tri-C?

19     A.    Drop out.  Until -- it was an incident where

20  he called me and told me they would take my funding if I

21  don't come to class.  Mister -- Professor Hamid made a

22  way so I wouldn't -- it wouldn't be, like, on my record.

23          But, like, I was very revered because I tried

24  to be nice to people, right?  So I -- I wasn't able to

25  obtain the knowledge that I needed to take the exam, but

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 165 of 168. PageID #: 1423
The Deposition of DEMETRIUS KERR, taken on June 9, 2022
164

```
 1    I was put in a position that it wouldn't be negatively
 2    on my record.
 3        Q.   Okay.  And what I meant was, is that after
 4    September of 2022, did you just stop going to Tri-C for
 5    these classes?
 6        A.   I didn't make it to all the classes.  So I
 7    didn't just stop going, but I didn't make it to all the
 8    classes, and I -- it wasn't effective for me at all.
 9        Q.   So if we subpoena the records from Cuyahoga
10    Community College, they'll show us what your records
11    really are?
12        A.   It'll reflect what I'm talking about.
13            MR. BECK:  Okay.  That's all I have.  Thank
14        you.
15            MR. BRUNS:  Thanks.
16            MR. WIEST:  We're done.  Well, we'll read and
17        sign.
18            THE REPORTER:  Perfect.
19            MR. WIEST:  E-Tran, no rush.
20            THE REPORTER:  Okay.  And I will get the
21        e-mail for that.
22            MR. WIEST:  Thanks for the hospitality.
23            THE REPORTER:  Mr. Spyker, would we be
24        ordering?
25            MR. SPYKER:  Yes.  Of course.
```

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 166 of 168. PageID #: 1424
The Deposition of DEMONTUS KERR, taken on June 9, 2021
                                                                165

 1          THE REPORTER:  How would you like that?

 2          MR. SPYKER:  Thank you for your time, sir.

 3          THE WITNESS:  Thank you, man.

 4          MR. SPYKER:  I'm sorry.

 5          THE REPORTER:  How would we like to order?

 6          MR. SPYKER:  Normal, whatever the e-delivery,

 7     whatever.

 8          THE REPORTER:  E-Tran?

 9          MR. SPYKER:  Yeah, whatever you guys normally

10     do.

11          THE REPORTER:  Perfect.  No problem.

12          MR. BECK:  Same.

13          THE REPORTER:  Same?

14          MR. BECK:  Yeah.

15          THE REPORTER:  Perfect.  All right.  And then

16     what is -- do you want me to send the read to you?

17          MR. WIEST:  Yes, please.

18          THE REPORTER:  Perfect.

19                  (DEPOSITION CONCLUDED AT 1:46 P.M. ET)

20

21

22

23

24

25

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202



Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 1:23-cv-01327-CEF Doc #: 54 Filed: 10/30/24 167 of 168. PageID #: 1425
The Deposition of DEBORAH KERWIN, taken on June 21, 2024

166

```
 1                    CERTIFICATE OF REPORTER

 2                         STATE OF OHIO

 3

 4    I do hereby certify that the witness in the foregoing

 5    transcript was taken on the date, and at the time and

 6    place set out on the Title page hereof, by me after

 7    first being duly sworn to testify the truth, the whole

 8    truth, and nothing but the truth; and that the said

 9    matter was recorded digitally by me and then reduced to

10    typewritten form under my direction, and constitutes a

11    true record of the transcript as taken, all to the best

12    of my skill and ability. I certify that I am not a

13    relative or employee of either counsel and that I am in

14    no way interested financially, directly or indirectly,

15    in this action.

16

17

18

19

20

21

22    KAYLEIGH KINNAMON

23    COURT REPORTER/NOTARY

24    MY COMMISSION EXPIRES: 02/01/2029

25    SUBMITTED ON:  06/21/2024
```



The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

## EXHIBITS

EXHIBIT A - Verified Complaint-
    Spyker                                    53
EXHIBIT B*- Sergeant Wolf Body
    Cam Footage                              77
EXHIBIT D - Responses To                    116
    Interrogatory

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202



Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com