IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO – Cleveland Division

| | | |
|---|---|---|
| **DEMETRIUS KERN** | : | Case No. |
|     c/o Christopher Wiest, Esq. | | |
|     25 Town Center Blvd, Ste. 104 | : | |
|     Crestview Hills, KY 41017 | | |
| | : | |
|     Plaintiff | | |
| | : | |
| v. | | |
| | : | |
| **NAFTALI WOLF** | | |
| 1658 Oakwood Dr. | : | |
| Cleveland Heights, OH 44121 | | |
| | : | |
| **AND** | | |
| | : | |
| **CARLI LEWIS** | | |
| 2249 Elm St Apt 315 | : | |
| Cleveland, OH 44113 | | |
| | : | |
| **AND** | | |
| | : | |
| **CITY OF CLEVELAND HEIGHTS** | | |
|     c/o William Hanna, City Solicitor | : | |
| 40 Severance Circle | | |
| Cleveland Heights, OH 44118 | : | |
| | | |
|     Defendants | : | |

## PLAINTIFF'S VERIFIED COMPLAINT WITH JURY DEMAND ENDORSED HEREON

### Introduction

1. It is clearly established law that an obstruction of official business charge cannot be maintained based on an individual's mere refusal to provide identification, particularly where the individual has not been involved in a crime. It is equally clearly established law that an arrest cannot be maintained without probable cause. Defendants violated this

1



clearly established law in their arrest of the Plaintiff on September 22, 2022, and this action seeks redress for the resulting injuries.

## Parties

2. Plaintiff is a resident and citizen of Ohio, and the United States, and is a black male.

3. Defendants, Sergeant Naftali Wolf and Officer Carli Lewis ("Defendant Wolf" and "Defendant Lewis"), are police officers by and for the City of Cleveland Heights, Ohio, and were so acting in that capacity, and under color of law, on or about September 22, 2022, in their interactions with Plaintiff.

4. Defendant City of Cleveland Heights, Ohio, was and is a municipality within Ohio.

## Jurisdiction and Venue

5. Subject matter jurisdiction over the federal claims and causes of action asserted by Plaintiff in this case is conferred on this Court pursuant to 42 U.S.C. §1983, 42 U.S.C. § 1988, 28 U.S.C. §1331, 28 U.S.C. §§ 2201 and 2202, and other applicable law.

6. Subject matter jurisdiction over the state law claims and causes of action asserted by Plaintiff in this case is conferred on this Court pursuant to 28 U.S.C. §1367, because such state law claims arise from the same exact facts as the federal claims, and thus are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

7. Venue in this district is proper pursuant to 28 U.S.C. §1391 and other applicable law.

8. Venue in this division is appropriate, since all of the deprivations of Plaintiff's Constitutional Rights occurred in Cuyahoga County, Ohio, and a Defendant resides in this District and Division.

## Facts Common to all Claims

9. On or about September 22, 2022, in the course of conducting law enforcement operations involving another motorist, Defendant Lewis improperly and recklessly cut off Plaintiff from the flow of traffic, almost causing a traffic accident, and resulting in Plaintiff having to pull off to the side of the road. For the avoidance of all doubt, Plaintiff committed no traffic offense.

10. Defendant Lewis' lights and sirens were not activated when she acted recklessly in cutting off Plaintiff and forcing him to the side of the road.[1]

11. After Plaintiff had pulled over, Defendant Lewis then activated lights on her police vehicle to effect the traffic stop of another vehicle.

12. Once outside her police vehicle, Plaintiff told Defendant Lewis that she had not activated her lights and sirens, had almost hit him, and he wanted to obtain her name and badge number in order to file a complaint. Plaintiff stated several times to Defendant Lewis that he was upset with Defendant Lewis' actions.

13. Defendant Lewis apologized to Plaintiff for her actions and, it appeared, the situation was resolved.

14. However, Defendant Wolf then arrived on scene, approached Plaintiff, who was still upset and shaken from the near-accident, and immediately got confrontational with Plaintiff.

15. Despite having just arrived at the scene, and knowing nothing about what had happened to that point, Defendant Wolf presumed that Plaintiff had done something wrong, and

---

[1] We know that, in part, because the stop itself is not recorded, and the cameras that would have recorded the stop are activated when the lights and sirens are activated. Camera recording occurs after the vehicles are already pulled over to the side of the road.

was at fault for the situation, merely because Plaintiff is black. Without having any basis to do so, Defendant Wolf falsely accused Plaintiff of having pulled up behind an officer at a traffic stop.

16. In response, Plaintiff truthfully stated that Defendant Wolf did not even know what was going on, and Defendant Wolf admitted that "you're right, I don't."

17. In response, Plaintiff asked Defendant Wolf "why are you saying that?"

18. Doubling down, and driven by racial animus, Defendant Wolf responded "because what you are doing right now is against the law."

19. Plaintiff then truthfully explained that he was driven off the road by Defendant Lewis. And again, Defendant Wolf responded, "then you should have pulled over for lights and sirens." Plaintiff stated that this was not accurate and that there was a "disconnect."

20. Defendant Lewis then told Defendant Wolf that she was going to let Plaintiff go. However, Defendant Lewis then asked Plaintiff for his last name, and Plaintiff responded by asking why she was asking for his last name.

21. Demonstrating that he was determined to illegally arrest Plaintiff, Defendant Wolf then stated "well now you are going to be under arrest, because what you are doing is illegal, I can charge you for interfering with a traffic stop."

22. Plaintiff then asked several times if he was being detained.

23. In response, Defendant Wolf stated "if you want to be," and Plaintiff then asked what reasonable articulable suspicion the officers had to detain him.

24. Defendant Wolf, who previously admitted he wasn't there and didn't know what happened, but having determined in his own mind that Plaintiff was guilty of driving

4

while black, falsely repeated that Plaintiff failed to yield to lights and sirens (which were not, in fact, activated).

25. Defendant Wolf also told Plaintiff that he had to identify himself.

26. Plaintiff responded that he was going to videotape the interaction. Defendant Wolf responded "we have you on camera too."

27. Plaintiff stated that Defendant Wolf was violating his rights.

28. Plaintiff's repeated exercise of his free speech rights to criticize Defendants Lewis and Wolf's unlawful police misconduct infuriated Defendant Wolf.

29. Seconds after Plaintiff told Defendant Wolf that he was violating Plaintiff's rights, Defendant Wolf retaliated by radioing to dispatch that he had a "male who was obstructing," thus demonstrating his intention to carry out a retaliatory arrest for Plaintiff's protected speech.

30. As Defendant Wolf stepped away to run Plaintiff's vehicle to see who owned it, Defendant Lewis again demanded Plaintiff's identification.

31. Plaintiff was then detained by Defendants Lewis and Wolf and was not free to leave. He asked several times if he was free to leave, and was told that he was not free to leave.

32. Defendant Wolf demanded that Plaintiff produce his identification, under threat of arrest, even though Plaintiff had not committed, nor was he suspected of committing, any offenses.

33. Plaintiff therefore declined to produce his identification.

34. Defendant Wolf then spoke with Defendant Lewis, then he escalated the situation further, stating he was going to arrest Plaintiff.

35. Plaintiff again declined to produce his identification, asking Defendant Lewis what crime he was being investigated for.

36. In response, Defendant Lewis admitted that Plaintiff committed no crime and was not being investigated for any crime, and Defendant Wolf heard her state as much.

37. Defendant Wolf then stated that "I'm going to have to arrest you if you do not identify yourself."

38. Defendant Wolf also stated "obstructing is a crime."

39. Defendants Wolf and Lewis then ostensibly placed Plaintiff under arrest for an alleged violation of obstructing official business, which is codified at R.C. 2921.31. They did so despite clearly established Sixth Circuit (and Ohio) case law, that mere refusal to produce identification is not a violation of that section, as set forth in *Lyons v. City of Xenia*, 417 F.3d 565, 574 (6th Cir. 2005); *State v. Ellis*, 8th Dist. Cuyahoga No. 108302, 2020-Ohio-1115 (8th Dist. 2020); *Brooklyn v. Kaczor*, 8th Dist. Cuyahoga No. 98816, 2013-Ohio-2901 (8th Dist. 2013); *State v. McCrone*, 63 Ohio App.3d 831, 580 N.E.2d 468 (9th Dist.1989).

40. In so doing, Defendant Wolf acted maliciously, and in part because he had a racial animus.

41. In the process of illegally arresting Plaintiff, Plaintiff told Defendant Wolf that he was injuring Plaintiff. As a matter of fact, Defendant Wolf injured Plaintiff's shoulder when he pulled Plaintiff's arm behind his back.

42. Specifically, in the course of handcuffing Plaintiff, Defendant Wolf used excessive force, and caused injury to Plaintiff's shoulder, dislocating it, and ultimately causing Plaintiff to

need to seek medical treatment, which includes required surgery and significant rehabilitation, and which treatment continues to the present.[2]

43. In a pretense effort to then use more gratuitous force, Wolf falsely stated "stop resisting," even though body worn camera depicts absolutely no active resistance.

44. Defendant Wolf also reached into Plaintiff's pockets to illegally search him.

45. Plaintiff again stated that Defendant Wolf was violating his rights, and in response, Defendant Lewis verbally defended what Defendant Wolf was doing.

46. After Plaintiff repeated that his rights were being violated, Defendant Wolf responded "I'm not putting up with your bullshit."

47. Only after Plaintiff was placed in handcuffs and put in the police vehicle, did Defendant Wolf proceeded to find out what *actually* happened by finally asking Defendant Lewis.

48. To cover up the patently illegal arrest, Defendant Wolf knew he had to charge Plaintiff with something, and thus he made up charges that Plaintiff did not commit, to include failing to yield to an emergency vehicle, and obstruction.

49. Defendant Lewis responded that she did not need to give him a ticket for failing to yield (suggesting that Plaintiff did not commit that offense), to which Defendant Wolf responded "then he goes for obstructing."

50. When Defendant Lewis admitted that those charges might not be appropriate, Defendant Wolf stated "we can't," because Wolf knew that he had illegally and unconstitutionally arrested Plaintiff, and thus he needed to make up some charge to try and justify his

---

[2] Plaintiff's complaints of injury are captured in contemporaneous body worn camera footage and are documented in medical records from that same day after Plaintiff sought treatment.

unjustifiable and consciously unconstitutional behavior, and followed that statement up with "he is in handcuffs."

51. Defendant Wolf then stated that Plaintiff could "come to court" to defend himself against the baseless and bogus charge.

52. Defendant Wolf directed Defendant Lewis to complete the illegal arrest and charging, and Defendant Lewis did so. She had the opportunity to intervene, to stop Defendant Wolf several times, including in advance of Defendant Wolf arresting Plaintiff, but she declined to do so.[3]

53. Plaintiff was then examined by the medics in the ambulance and then went to the hospital to obtain treatment for his injuries.

54. Plaintiff was cited and charged with obstructing official business, but, because there was no probable cause for such a charge, the Cleveland Heights Prosecutor dismissed the charges a few days later, on October 3, 2022, citing no evidence to sustain the charge.

55. Defendant Wolf has a significant history of troubling incidents that the City of Cleveland Heights has failed to take appropriate action to address, all predating the incident in question in this case, including complaints related to unreasonably escalating citizen confrontations (in May/June, 2021), racial incidents involving inappropriate

---

[3] To the extent Lewis may argue that she was merely following the orders of Wolf, "since World War II, the 'just following orders' defense has not occupied a respected position in our jurisprudence, and officers in such cases may be held liable under § 1983 if there is a reason why any of them should question the validity of that order." *Kennedy v. City of Cincinnati*, 595 F.3d 327, 337 (6th Cir. 2010), *quoting O'Rourke v. Hayes*, 378 F.3d 1201, 1210 n.5 (11th Cir. 2004). "Regardless of the authority [Wolf] possessed, [Lewis] was not "relieve[d] . . . of [her] responsibility to decide for himself whether to violate clearly established constitutional rights[.]" *Id.*

8

confrontations with minorities (May, 2021), and errors of judgment in law enforcement (May, 2020).

56. Again, this incident with Plaintiff is merely the latest example of Defendant Wolf's unchecked constitutional abuse, motivated by an inappropriate racial animus, used to harass and injure minorities, such as Mr. Kern, because they are black.

57. Ongoing and serious deficiencies in official policy, unofficial custom, and deliberate indifference in the Cleveland Heights Police Department are both well known, and well documented.

58. For instance, the current Mayor, Kahlil Seren, has made numerous public statements identifying these failures, both prior to, and after the incident in question, including in the areas of policies and procedures for receiving, investigating, resolving, and reporting complaints related to police misconduct, with the Mayor, in comments to the media, describing existing policies as "insufficient" and known by the City prior to the incident in question. Specifically, citizen and internal complaints have been handled internally, and usually without appropriate oversight or correction.

59. Defendant, the City of Cleveland Heights, is liable for the misconduct of Defendants Wolf and Lewis because, among other reasons, the violations cited herein resulted from the city's official policy, an unofficial custom, and/or because the city was deliberately indifferent in failing to train or supervise the officers.

60. After the incident in question, Plaintiff met with the Chief of Police of Cleveland Heights, who acknowledged and admitted to him that the City of Cleveland Heights had inadequate training on issues of constitutional rights and race in policing, that likely led

to the interaction in question, demonstrating not only inadequate policies, but knowledge of inadequate training, all leading to unequivocal *Monell* liability.

61. That is even more the case in light of prior incidents involving Defendants Wolf and Lewis, including complaints related to Defendant Wolf unreasonably escalating citizen confrontations (in May/June, 2021), racial incidents involving inappropriate confrontations with minorities (May, 2021), and errors of judgment in law enforcement (May, 2020). The City and their officials were aware of these incidents, but engaged in deliberate indifference in failing to correct them.

**COUNT I – Violation of the Fourth Amendment (42 USC § 1983, all Defendants)**

62. Plaintiff reincorporates the preceding paragraphs as if fully written herein.

63. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

64. When such a seizure though an automobile stop occurs, it must be based on reasonable suspicion under the Fourth and Fourteenth Amendment, and Defendants Lewis and Wolf had no such reasonable suspicion for any detention of the Plaintiff, but they nevertheless continued an illegal detention of Plaintiff. The rights at issue were clearly established in *Delaware v. Prouse*, 440 U.S. 648, 653 (1979).

65. Defendants Wolf and Lewis' continued detention of Plaintiff likewise unconstitutionally expanded the scope of the investigation, in contravention of Plaintiff's constitutional rights under clearly established law under the Fourth and Fourteenth Amendment. *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999).

66. The arrest of Plaintiff by Defendants Wolf and Lewis was without probable cause under clearly established case law. *Miller v. Sanilac County*, 606 F.3d 240 (6th Cir. 2010);

*Green v. Throckmorton*, 681 F.3d 853 (6th Cir. 2012); *Lyons v. City of Xenia*, 417 F.3d 565, 574 (6th Cir. 2005).

67. The gratuitous use of force by Defendant Wolf has consistently been held to be excessive under clearly established case law. *See, e.g., Morrison v. Bd. Of Trs. of Green Twp.*, 583 F.3d 394, 407 (6th Cir. 2009); *Lawler v. City of Taylor*, 268 F. App'x 384, 387 (6th Cir. 2008); *Shumate v. City of Adrian*, 44 F.4th 427, 446 (6th Cir. 2022); *Meirthew v. Amore*, 417 F. App'x 494, 497-98 (6th Cir. 2011).

68. Further, in addition to her personal facilitation and participation, as described herein, Defendant Lewis is liable under a failure to intervene theory because she observed or had reason to know that excessive force would be or was being used, and she had both the opportunity and the means to prevent the harm from occurring, by simply telling Defendant Wolf that she was to blame for the encounter and that Plaintiff had not broken the law, in contravention of clearly established law set forth in *Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008). In fact, Defendant Lewis admitted, as Plaintiff was being arrested, that "this is messed up," demonstrating her knowledge and ability to intervene, but she nevertheless failed to intervene.

69. Defendants, acting under color of any statute, ordinance, regulation, custom, or usage, of the State of Ohio, subjected the Plaintiff, a citizen of the United States, to be deprived of his rights, privileges, or immunities secured by the Constitution, and thus are liable to the party injured under 42 U.S.C. §1983.

70. Furthermore, as a consequence and the proximate and actual cause of the foregoing and the actions of Defendants, Plaintiff has suffered various damages, including, without limitation, physical injury, the need for shoulder surgery that his medical providers relate

to the arrest in question, medical damages, mental distress, pain and suffering, humiliation, economic damages in the form of lost wages due to the medical treatment, and other damages, such as will be proven at trial, which exceeds $250,000.

71. Defendant, City of Cleveland Heights is likewise liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) for the foregoing Fourth Amendment violations, because (i) officials with final decision making authority ratified illegal actions; (ii) the City had and may still have a policy of inadequate training or supervision, including the failure to investigate, supervise, and take appropriate action with respect to Wolf, despite the existence of prior legitimate complaints against him for similar unconstitutional misconduct; and (iii) the City had and may still have a custom of tolerance or acquiescence of federal rights violations. *See Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

72. Plaintiff further seeks punitive damages against Defendants Wolf and Lewis, in their individual capacities, since the actions complained of were motivated by evil motive or intent, and/or involved reckless or callous indifference to the federally protected rights of Plaintiff. Plaintiff demands judgment on these punitive damages against Defendants, in their individual capacities, in an amount to be determined at trial, but not less than $250,000.00, exclusive of interest and costs.

73. Plaintiff further seeks his reasonable attorney fees and costs under 42 U.S.C. § 1988 for these violations.

**COUNT II – Violation of the First Amendment (42 USC § 1983, all Defendants)**

74. Plaintiff reincorporates the preceding paragraphs as if fully written herein.

75. Plaintiff engaged in clearly established protected speech in questioning the Defendant officers for their illegal activities and for his speech as set forth in, among other things, paragraphs 12, 16, 17, 19, 23, and 27, as well as Plaintiff's repeated verbal refusals to accede to the illegal demand to identify himself, and as set forth in and clearly established by *City of Houston v. Hill*, 482 U.S. 451, 461-463 (1987), *McCurdy v. Montgomery County*, 240 F.3d 512, 520 (6th Cir. 2001), *Barnes v. Wright*, 449 F.3d 709, 718 (6th Cir. 2006), *Greene v. Barber*, 310 F.3d 889, 895-96 (6th Cir. 2002).

76. Defendants Wolf and Lewis retaliated against Plaintiff for this protected speech by engaging in several adverse actions that would deter a person of ordinary firmness from engaging in such protected speech, including, without limitation, by detaining him and then arresting him and charging him, all without probable cause.

77. There is a causal connection between Plaintiff's protected speech and the adverse actions, in part because Defendants Wolf and Lewis admit that is why they are engaging in the adverse actions.

78. Defendants have thus violated Plaintiff's clearly established First Amendment rights, as set forth in *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999), establishing that all three elements of a First Amendment retaliation claim are met here.

79. Further, in addition to her personal facilitation and participation, as described herein, Defendant Lewis is liable under a failure to intervene theory because she observed or had reason to know that excessive force would be or was being used, and she had both the opportunity and the means to prevent the harm from occurring, by simply telling Defendant Wolf that she was to blame for the encounter and that Plaintiff had not broken

13

the law, in contravention of clearly established law set forth in *Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008).

80. Defendants, acting under color of any statute, ordinance, regulation, custom, or usage, of the State of Ohio, subjected the Plaintiff, a citizen of the United States, to be deprived of his rights, privileges, or immunities secured by the Constitution, and thus are liable to the party injured under 42 U.S.C. §1983.

81. Furthermore, as a consequence and the proximate and actual cause of the foregoing and the actions of Defendants, Plaintiff has suffered various damages, including, without limitation, physical injury, the need for shoulder surgery that his medical providers relate to the arrest in question, medical damages, mental distress, pain and suffering, humiliation, economic damages in the form of lost wages due to the medical treatment, and other damages, such as will be proven at trial, which exceeds $250,000.

82. Defendant, City of Cleveland Heights is likewise liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) for the foregoing Fourth Amendment violations, because (i) officials with final decision making authority ratified illegal actions; (ii) the City had and may still have a policy of inadequate training or supervision, including the failure to investigate, supervise, and take appropriate action with respect to Wolf, despite the existence of prior legitimate complaints against him for similar unconstitutional misconduct; and (iii) the City had and may still have a custom of tolerance or acquiescence of federal rights violations. *See Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

83. Plaintiff further seeks punitive damages against Defendants Wolf and Lewis, in their individual capacities, since the actions complained of were motivated by evil motive or

intent, and/or involved reckless or callous indifference to the federally protected rights of Plaintiff. Plaintiff demands judgment on these punitive damages against Defendants, in their individual capacities, in an amount to be determined at trial, but not less than $250,000.00, exclusive of interest and costs.

84. Plaintiff further seeks his reasonable attorney fees and costs under 42 U.S.C. § 1988 for these violations.

### COUNT III – Civil Assault and Battery (Wolf)[4]

85. Plaintiff reincorporates the preceding paragraphs as if fully written herein.

86. Defendant Wolf, in grabbing Plaintiff, and maliciously twisting his arm behind Plaintiff's back, without the consent of Plaintiff, committed an intentional harmful or offensive touching to the person of the Plaintiff, with the requisite intent, and has proximately and actually caused him severe and significant damage, requiring shoulder surgery and repair, and has caused him medical damages, pain and suffering, humiliation, mental distress, and other damages, such as will be proven at trial, which exceeds $250,000, thus committing a civil battery.

87. Prior to committing the foregoing civil battery, Defendant Wolf intentionally placed Plaintiff in apprehension of contact with him, without the consent of Plaintiff, committing civil assault, proximately and actually causing him mental distress, economic damages in the form of lost wages due to the medical treatment, and other damages, such as will be proven at trial, thus committing a civil assault.

---

[4] For the avoidance of all doubt, Counts III, IV, V, VI, and VII are state law claims.

88. While officers are privileged for battery or assault for making a lawful arrest, that privilege is not existent where, as here, the arrest was not lawful, and excessive force was used in making the arrest.

89. Plaintiff further seeks punitive damages against Defendant Wolf for the arrest, because it was done with the requisite malice and state of mind of oppression, in an amount to be proven at trial.

90. Defendant Wolf's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner.

## COUNT IV – Civil Unlawful Imprisonment (Wolf and Lewis)

91. Plaintiff reincorporates the preceding paragraphs as if fully written herein.

92. Defendants Wolf and Lewis confined Plaintiff intentionally, without privilege, and against his consent, confined Plaintiff within the roadside area and did not permit him to leave, which occurred for the duration of the appreciable time of the roadside detention, and then subsequent arrest.

93. The foregoing has proximately and actually caused Plaintiff damages, leading to the wrongful arrest and injury, which required shoulder surgery and repair, and has caused him medical damages, pain and suffering, humiliation, economic damages in the form of lost wages due to the medical treatment, mental distress, and other damages, such as will be proven at trial, which exceeds $250,000.

94. Plaintiff further seeks punitive damages against Defendants Wolf and Lewis, because it was done with the requisite malice and state of mind of oppression, in an amount to be proven at trial.

95. Defendant Wolf and Lewis' acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner.

### COUNT V – Civil False Arrest (Wolf and Lewis)

96. Plaintiff reincorporates the preceding paragraphs as if fully written herein.

97. Plaintiff was intentionally and unlawfully arrested by Defendants Wolf and Lewis.

98. For the benefit of all doubt, there was no probable cause for that arrest.

99. The foregoing has proximately and actually caused Plaintiff damages, which required shoulder surgery and repair, and has caused him medical damages, pain and suffering, humiliation, mental distress, economic damages in the form of lost wages due to the medical treatment, and other damages, such as will be proven at trial, which exceeds $250,000.

100. Plaintiff further seeks punitive damages against Defendants Wolf and Lewis, because it was done with the requisite malice and state of mind of oppression, in an amount to be proven at trial.

101. Defendant Wolf and Lewis' acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner.

### COUNT VI – Malicious criminal prosecution (Wolf and Lewis)

102. Plaintiff reincorporates the preceding paragraphs as if fully written herein.

103. Defendants Lewis and Wolf had malice in the institution of the false obstruction charge against Plaintiff; specifically, that malice included a knowing and deliberate attempt to insulate themselves against liability for the wrongful detention and wrongful arrest of Plaintiff, and was made without the purpose to bring Plaintiff to justice, but instead to cover up their own misconduct.

104. There was no probable cause for the obstruction charge.

105. The dismissal of that charge, effected on or about October 3, 2022, was in Plaintiff's favor.

106. The obstruction charge was made at the insistence of and was instituted by Defendants Wolf and Lewis.

107. The foregoing has proximately and actually caused Plaintiff damages, which required shoulder surgery and repair, and has caused him medical damages, pain and suffering, humiliation, mental distress, economic damages in the form of lost wages due to the medical treatment, and other damages, such as will be proven at trial, which exceeds $250,000.

108. Plaintiff further seeks punitive damages against Defendants Wolf and Lewis, because it was done with the requisite malice and state of mind of oppression, in an amount to be proven at trial.

109. Defendant Wolf and Lewis' acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner.

### COUNT VII – City Liability (R.C. 2744.02)

110. Plaintiff reincorporates the preceding paragraphs as if fully written herein.

111. The entirety of the interactions herein were the consequence of Defendant Lewis' negligent operation of her motor vehicle, as set forth in R.C. 2744.02(B)(1), and she was not, then, responding to an emergency call.

112. The entirety of the events, including the injuries to Plaintiff, stemmed from that negligent vehicle operation.

113.  Thus, Defendant, City of Cleveland Heights, is liable under R.C. 2744.02(B)(1) for the injuries to the Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as prayed for, including:

A. That Plaintiff be awarded money damages, including both compensatory and punitive damages against the individual capacity Defendants, in an amount to be proven at trial, and exceeding $500,000.00, exclusive of interest and costs;

B. That Plaintiff be awarded compensatory money damages against the City of Cleveland Heights, in an amount to be proven at trial, and exceeding $250,000.00, exclusive of interest and costs;

C. That trial by jury be had on all issues so triable;

D. That Plaintiff be awarded his costs in this action, including reasonable attorney fees under 42 U.S.C. § 1988; and

E. Such other relief as this Court shall deem just and proper.

Respectfully submitted,

/s/ Christopher Wiest
Christopher Wiest (Ohio 0077931)
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
513/257-1895 (v)
859/495-0803 (f)
chris@cwiestlaw.com
**Attorneys for Plaintiff**

/s/Thomas B. Bruns
Thomas B. Bruns (Ohio 0051212)
Bruns, Connell, Vollmar, Armstrong
4555 Lake Forrest Dr., Suite 330
Cincinnati, OH 45242
513-312-9890 (v)
tbruns@bcvalaw.com

## JURY DEMAND

Pursuant to FRCP 38 and other applicable law, Plaintiff demands trial by jury on all causes so triable.

/s/ Christopher Wiest
Christopher Wiest (Ohio 0077931)

## VERIFICATION

Pursuant to 28 U.S.C. 1746, I, Demetrius Kern declare under penalty of perjury that I have read the foregoing Verified Complaint, and state that the factual statements therein are true and accurate to the best of my knowledge.

Executed on June 21, 2023.

_____
Demetrius Kern