IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

CLEVELAND DIVISION

~~~~~~~~~~~~~~~~~~~~

DEMETRIUS KERN,

       Plaintiff,

    vs.         Case No.  1:23-CV-1327

NAFTALI WOLF,

et al.,

       Defendants.

~~~~~~~~~~~~~~~~~~~~

Zoom deposition of

OFFICER NATHAN WEBSTER

June 21, 2024
12:55 p.m.

Taken remotely at:

Cleveland, Ohio

Christine M. Emery, Notary Public

1    APPEARANCES:

2

3         On behalf of the Plaintiff:

4              Law Office of Christopher D. Wiest,

5              by

6              CHRISTOPHER D. WIEST, ESQ.

7              25 Town Center Boulevard, Suite 104

8              Crestview Hills, KY  41017

9              513-257-1895

10             chris@cwiestlaw.com

11

12                  -and-

13

14             Bruns, Connell, Vollmar &

15             Armstrong, LLC, by

16             THOMAS B. BRUNS, ESQ.

17             4555 Lake Forest Drive, Suite 330

18             Cincinnati, OH  45242

19             513-312-9890

20             tbruns@bcvalaw.com

21

22

23

24

25

1    APPEARANCES, continued.

2

3         On behalf of the Defendants City of

4         Cleveland Heights and Officer Carly

5         Lewis:

6              Baker, Dublikar, Beck, Wiley &

7              Mathews, by

8              ANDREA K. ZIARKO, ESQ.

9              400 South Main Street

10             North Canton, OH  44720

11             330-499-6000

12             andreaz@bakerfirm.com

13

14        On behalf of the Defendant Naftali

15        Wolf:

16             Reminger Co., LPA, by

17   via Zoom:  THOMAS N. SPYKER, ESQ.

18             200 Civic Center Drive, Suite 800

19             Columbus, OH  43215

20             614-232-2420

21             tspyker@reminger.com

22   ALSO PRESENT:

23   via Zoom:  Barlow Reporting &

24             Video Services, LLC

25                  ~ ~ ~ ~ ~

1                    TRANSCRIPT INDEX

2

3    APPEARANCES...............................    2

4

5    INDEX OF EXHIBITS ........................    5

6

7    EXAMINATION OF OFFICER NATHAN WEBSTER

8    BY MR. WIEST..............................    6

9    BY MR. SPYKER.............................   18

10

11    REPORTER'S CERTIFICATE...................   23

12

13    EXHIBIT CUSTODY

14    EXHIBIT RETAINED BY ATTORNEY WIEST

15

16

17

18

19

20

21

22

23

24

25

```
 1                    INDEX OF EXHIBITS

 2    NUMBER            DESCRIPTION           MARKED

 3    Exhibit 16    Dispatch Call................   8

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 6

1            The parties stipulated that the
2    court reporter may swear in the witness via
3    Zoom and that the witness verified that he is,
4    in fact, Officer Nathan Webster.
5            OFFICER NATHAN WEBSTER, of lawful age,
6    called for examination, as provided by the
7    Federal Rules of Civil Procedure, being by me
8    first duly sworn remotely, as hereinafter
9    certified, deposed and said as follows:
10           EXAMINATION OF OFFICER NATHAN WEBSTER
11   BY MR. WIEST:
12           Q.    Good afternoon, Officer Webster, my
13   name is Chris Wiest.  I represent Demetrius
14   Kern in this the matter.  I'm here with my
15   colleague, Tom Bruns, who's immediately off
16   camera.  We're in the same room as Ms. Ziarko
17   and the court reporter.  Mr. Spyker is
18   attending from his office in Columbus.
19           A.    Okay.
20           Q.    Just a couple ground rules, and I'm
21   going to be really quick with them.  This is
22   just like testifying in court.  You understand
23   that you're under oath; correct?
24           A.    Yes.  Yes.
25           Q.    Let me ask and begin here, do you

1   -- what do you remember, if anything, from the

2   Demetrius Kern incident on or about September

3   22nd, 2022?

4          A.    Yeah, up until like 30 minutes ago

5   I couldn't remember the month or the year.  I

6   think it was somewhere around '22.  I thought

7   maybe even earlier than that.  I couldn't

8   really remember, so I went and looked it up.  I

9   remember being there very, very, very briefly.

10  I don't really recall a lot.  I think -- I'm

11  not 100 percent, but I'm pretty sure he was

12  already arrested by the time I got there.  But

13  it was just a call for more officers for like

14  someone that wasn't complying or something

15  along those lines.

16         Q.    Okay.  I may play for you the

17  dispatch --

18         A.    Perfect.

19         Q.    -- interaction.  And I've got about

20  three minutes of your body camera, and maybe

21  it's a little less than that, that we're going

22  to play for you as well.

23               Have you reviewed that?

24         A.    Okay.  No.

25         Q.    Okay.  I think what I'd like to do,

1    because I think it's going to refresh your

2    recollection and it's going to make this

3    process go a little easier is, what I would

4    like to do is play for you the dispatch call,

5    which is Exhibit 16.

6            A.    Okay.

7                      -  -  -  -  -

8                (Thereupon, Exhibit 16, Dispatch

9                Call, was previously marked for

10               purposes of identification.)

11                    -  -  -  -  -

12           Q.    And then I'm going to play your

13   body camera for you.  And I think -- and then

14   I've got some questions.  So I think that's

15   what I'd like to do.  Let me go ahead and open

16   the dispatch call first and then I'll share it.

17   It is thinking about it.  Here we go.  Okay.

18   I'm going go ahead and -- we'll test my skills

19   or lack thereof of sharing.  I do want to share

20   sound, I think.  Okay.  All right.  Let me

21   start -- this is Exhibit 16.  It is the

22   dispatch calls.

23               I will represent to you that it's

24   our understanding that these are not

25   necessarily temporal.  In other words, all of

1    the dispatch calls are tied together, even

2    though there may be times between the call that

3    -- that we see on the body camera where they

4    don't necessarily follow.  But I'm going to

5    play what I think is everything kind of leading

6    up to your arrival on scene for you and then

7    I'm going to play when you get on scene as

8    well.

9              Are you ready?

10        A.    Yes.

11        Q.    Okay.

12              (Whereupon video was played.)

13        Q.    I played the first three minutes of

14    the -- of what's on the dispatch, although I

15    think the timing is little different than that.

16    I'm now going to play your body camera from for

17    you --

18        A.    Okay.

19        Q.    -- Officer Webster.

20              If my media player will open it.

21    Give me a second.

22              (Whereupon video was played.)

23        Q.    Okay.  I -- this is your body

24    camera that -- that we've got, sir, and --

25        A.    Okay.

Page 10

1          Q.     -- I'm about to play it.  You'll

2    see that your -- it looks like you have already

3    arrived on scene when the camera is activated.

4    Do you see that?

5          A.     Uh-huh.

6          Q.     Is that a yes?

7          A.     Yes.  Sorry.

8          Q.     Do you know how long you were at

9    the -- on the scene prior to your body camera

10   being activated?

11         A.     I don't remember, no.

12         Q.     Okay.  Do you have any independent

13   recollection sitting here today of anything

14   that occurred on scene that you recall prior to

15   activating your body camera?

16         A.     The only thing I 100 percent

17   remember for sure that happened was I was

18   looking at the Tesla right there.  I remember

19   it was a Tesla.  And I was intrigued by the

20   door handles because I was curious how they

21   worked.  That's the only thing I 100 percent

22   remember.

23         Q.     And we're going to see that in a

24   minute.

25         A.     Okay.

1          Q.    Yeah, you and --

2          A.    I wasn't sure if that was on or

3    before.

4          Q.    Yeah, I think we're -- and I think

5    we may have also seen it earlier today on

6    Torres' body camera as you and he had a

7    discussion about how the doors open.

8                Do you remember that?

9          A.    Okay.

10         Q.    Okay.

11         A.    Yep.

12         Q.    All right.  And other than that do

13   you have any recollection of the -- of this

14   incident with Mr. Kern?

15         A.    Not really, no.

16         Q.    Okay.  Let me go ahead and play

17   this for you and then --

18         A.    Okay.

19         Q.    -- we will have a little bit of a

20   discussion.

21               (Whereupon video was played.)

22         Q.    All right.  Officer Webster, first

23   of all, I'm not going to have any commentary

24   about your music selection, but let me -- let

25   me begin here, did you leave the scene after

Page 12

1    the body camera footage that we just saw?

2           A.    Yeah.

3           Q.    Okay.

4           A.    There was -- I remember there was

5    other pending calls.  I can't say 100 percent

6    for certain if I went and I checked with them

7    before I drove off, but I -- I didn't leave my

8    car after that to get out and go talk to them

9    or do anything else.  I can't remember, like I

10   said, if I drove up and asked were you guys

11   good and then I left or if I just left, I can't

12   remember.

13          Q.    Okay.  I heard a call come in over

14   the radio for an MVA, was that what you are

15   responding to --

16          A.    I don't remember.

17          Q.    -- after you left there?

18          A.    I don't remember if it was that

19   specific call or not.

20          Q.    Okay.  Prior to the activation of

21   your body camera footage, and we see this --

22   I'm going to show you some of Torres' in a

23   minute, we see you having a discussion with

24   Sergeant Wolf.

25                Do you have any recollection of

Page 13

1    that prior to the activation of your body

2    camera footage?

3            A.    No.

4            Q.    Okay.  You were not present on the

5    scene for Ms. Lewis' initial stop of

6    Mr. Goodman, nor for the arrest that occurred

7    with respect to Mr. Kern; fair?

8            A.    Yes.

9            Q.    That had already been done by the

10   time you showed up; correct?

11           A.    Yeah.  Yeah.

12           Q.    Okay.  Had anyone in the department

13   talked to you about this incident, I don't want

14   to know anything about lawyers, after it

15   occurred?

16           A.    I can't remember if it was exactly

17   the following day or maybe like a week or so

18   after, it kind of went like through all the

19   legal channels, like in court and everything,

20   but I don't remember if it was our own city

21   prosecutor or just our department admin or my

22   boss, I don't remember exactly who it was.  But

23   they went over the case and went over if that

24   was the correct ORC to use or --

25           MS. ZIARKO:  I'm going to --

1        A.    -- or a City code.

2             MS. ZIARKO:  I'm going to interrupt

3    here real quick.  And if any of this

4    conversation was with the -- the attorney, the

5    city prosecutor, you should not reveal that

6    information.  But if it's with anybody else or

7    if anybody else was present at the time, not

8    from the city, you can --

9             THE WITNESS:  Okay.

10            MS. ZIARKO:  -- you can testify

11   about that.

12       A.    All right.  Again, I didn't

13   remember who it was.  I just remember it was a

14   roll call thing.  Either way someone came down

15   and talked to us about if that was the right

16   ORC to even use.  And that's kind of -- we had

17   like a little roll call discussion about it.

18       Q.    About the use of the obstruction

19   charge?

20       A.    Right.  Yeah.

21       Q.    Okay.  And you think that was after

22   the current incident?

23       A.    It was after it.  I don't remember

24   if it was exactly the day after or a couple

25   days, I don't remember.

Page 15

1          Q.    Was any of that discussion

2    regarding charging obstruction simply for

3    somebody failing to identify themselves?

4               MS. ZIARKO:  Objection.

5          A.    From what I remember, yeah.  Yeah,

6    we had a discussion about if we were like a

7    stop and ID state or something along those

8    lines.  That's pretty much all I can remember.

9          Q.    Okay.  And what was your takeaway

10   from that, that you could not charge

11   obstruction only for failing to identify?

12         A.    What was that, I'm sorry?

13         Q.    That you could not charge an

14   obstruction charge for only failing to

15   identify?

16         A.    Correct, yeah.

17         Q.    Okay.  That training had not

18   occurred within the department to your

19   recollection prior to the Mr. Kern incident; is

20   that fair?

21              MS. ZIARKO:  Objection.

22         A.    That there was a training for like

23   the entire department about that --

24         Q.    Or any training --

25         A.    -- (cross-talk)?

1      Q.     -- that you received?  Yeah.

2      A.     We have legal updates every year.

3  That's something that we've done since I've

4  been here.  I could not tell you if we had one

5  before this incident or if the training took

6  place after.  But we do legal updates every

7  year.

8      Q.    Okay.  And you -- to your

9  recollection you don't know whether that was

10  before or after?

11      A.     Right, yeah, I don't remember.

12      Q.     But you do recall it specifically

13  occurring not long after also; correct?

14      A.     That roll call --

15      Q.     Yeah.

16      A.     -- discussion, yeah.

17      Q.     Okay.  Had anyone discussed the

18  Mr. Kern incident, including after the video

19  went viral or the filing of the lawsuit in this

20  matter with you?  And I don't want to know

21  about attorneys, obviously, any discussion

22  you've had with Ms. Ziarko or her firm or the

23  city law director's office, but anybody other

24  than that, has that -- had that been a subject

25  of discussion within the department?

Page 17

1        A.     There's a YouTube video that came

2   out, then there was a discussion.

3        Q.     Okay.

4        A.     It was more or less just kind of

5   everyone talking about it because it was on

6   social media, so.

7        Q.     Okay.

8        A.     That was pretty much it.  It was

9   just conversation about, hey, did you see the

10  video?  Did you see the video?

11       Q.     Okay.

12       A.     That was pretty much it.

13       Q.     Did you have any specific

14  discussion with either Sergeant Wolf or Officer

15  Lewis after that went viral about --

16       A.     No, I did not talk to them about

17  that.

18       Q.     Okay.  Sergeant Wolf indicated that

19  he had a discussion with Officer Lewis at the

20  Park Synagogue following the incident with

21  Mr. Kern.  Were you present for that?

22       A.     What was that?  I'm sorry.  One

23  more time.

24       Q.     Sergeant Wolf indicated he had a

25  discussion with Ms. -- with Officer Lewis at

Page 18

1    the Park Synagogue following the Kern incident.

2    Were you present for that discussion?

3           A.    If that was immediately after, no,

4    I was not present.  I was not even aware of

5    that.

6           Q.    Okay.

7                 (Discussion had off the record.)

8           Q.    I don't have anything else for you.

9    I don't know if your own counsel or Mr. Spyker

10   does.

11                By the way, sir, before I rest, you

12   don't have any other recollection of the

13   interactions with Mr. Kern or -- or the

14   incident other than what we've talked about

15   today or we saw on body camera; correct?

16          A.    Correct, yeah.

17          Q.    Okay.  I don't have anything else

18   for you.  I don't know if Mr. Spyker or

19   Ms. Ziarko do.

20        EXAMINATION OF OFFICER NATHAN WEBSTER

21   BY MR. SPYKER:

22          Q.    Sir, my name's Tom Spyker.  I am

23   Sergeant Wolf's attorney as he's been

24   individually named in this lawsuit.  And,

25   first, I'm just going to ask you a very brief

1    question:  Do you -- are you aware that in

2    connection with this lawsuit that Sergeant Wolf

3    and Officer Lewis are being accused of making

4    the decisions they made on this traffic stop

5    because they had a racial bias towards African

6    Americans?  Are you aware that allegation is

7    being made?

8              MR. WIEST:  Objection.

9         Q.    You can answer the question.

10        A.    Oh, okay.

11        Q.    They are just --

12        A.    Sorry.

13        Q.    Yeah.

14        A.    No.

15        Q.    Okay.

16        A.    I was not aware.

17        Q.    Did you observe anything at your

18   time on the scene that made you think Sergeant

19   Wolf was making decisions on the scene with

20   Mr. Kern based on a racial bias toward African

21   Americans?

22             MR. WIEST:  Objection.

23             MS. ZIARKO:  Go ahead.  Unless I

24   tell you --

25             THE WITNESS:  Oh, I still --

1          Q.    You can answer.

2                MS. ZIARKO:  -- yeah, not to

3    answer --

4                THE WITNESS:  Okay.

5                MS. ZIARKO:  -- you can answer the

6    question.

7                THE WITNESS:  Okay.

8          A.    I -- I really wasn't present for a

9    lot of it, so I'm not sure.

10         Q.    So nothing you observed, though --

11         A.    No.

12         Q.    -- at the time that (cross-talk)?

13         A.    Nothing that I observed.

14         Q.    The same question as it pertains to

15   Officer Lewis, did you observe anything in her

16   decision making or her interactions with

17   Mr. Kern that would lead you to think that she

18   had a racial bias towards African Americans?

19                MR. WIEST:  Objection.

20         A.    No, nothing that I observed.

21         Q.    Thank you, sir, those are the

22   questions I have.

23                MS. ZIARKO:  Okay.  I don't have

24   any questions.  You are done.

25                MR. WIEST:  Wait.

1              MS. ZIARKO:  Well, hold on a

2      second.

3              MR. WIEST:  Wait.

4              MS. ZIARKO:  We'll read.

5      (Remote deposition concluded at 1:15 p.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 22

1    Whereupon, counsel was requested to give

2    instruction regarding the witness's review of

3    the transcript pursuant to the Civil Rules.

4

5                    SIGNATURE:

6    Transcript review was requested pursuant to the

7    applicable Rules of Civil Procedure.

8

9                TRANSCRIPT DELIVERY:

10   Counsel was requested to give instruction

11   regarding delivery date of transcript.

12             Christopher D. Wiest, Esq.-Original

13             Andrea K. Ziarko, Esq.-Copy

14             Thomas N. Spyker, Esq.-Copy

15

16

17

18

19

20

21

22

23

24

25

Page 23

1                  REPORTER'S CERTIFICATE

2     The State of Ohio,    )

3                                    SS:

4     County of Cuyahoga.   )

5

6              I, Christine M. Emery, a Notary

7     Public within and for the State of Ohio, duly

8     commissioned and qualified, do hereby certify

9     that the within named witness, OFFICER NATHAN

10    WEBSTER, was by me first duly sworn remotely to

11    testify the truth, the whole truth and nothing

12    but the truth in the cause aforesaid; that the

13    testimony then given by the above-referenced

14    witness was by me reduced to stenotypy in the

15    presence of said witness; afterwards

16    transcribed, and that the foregoing is a true

17    and correct transcription of the testimony so

18    given by the above-referenced witness.

19             I do further certify that this

20    deposition was taken at the time and place in

21    the foregoing caption specified and was

22    completed without adjournment.

23

24

25

Page 24

1              I do further certify that I am not

2    a relative, counsel or attorney for either

3    party, or otherwise interested in the event of

4    this action.

5              IN WITNESS WHEREOF, I have hereunto

6    set my hand and affixed my seal of office at

7    Cleveland, Ohio, on this 8th day of

8    July, 2024.

9

10

11              <%12026,Signature%>

12

13         _____

14              Christine M. Emery, Notary Public

15              within and for the State of Ohio

16

17   My commission expires January 19, 2029.

18

19

20

21

22

23

24

25