**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DEMETRIUS KERN,** | : | **CASE NO.  1:23-cv-01327** |
| | : | |
| **Plaintiff,** | : | **JUDGE CHARLES ESQUE FLEMING** |
| | : | |
| **-vs-** | : | |
| | : | |
| **NAFTALI WOLF, et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS, CARLY LEWIS AND THE CITY OF CLEVELAND HEIGHTS

Pursuant to Fed.R.Civ.P. 56, Defendants Carly Lewis and the City of Cleveland Heights hereby move for summary judgment on all claims against them. This motion is supported by the attached memorandum, which is incorporated herein by reference.

Respectfully submitted,

*s/Gregory A. Beck*
Gregory A. Beck (0018260)
Andrea K. Ziarko (0073755)
BAKER | DUBLIKAR
400 S. Main Street
North Canton, Ohio 44720
e-mail: beck@bakerfirm.com
andreaz@bakerfirm.com
Phone: (330) 499-6000
Fax:    (330) 499-6423

## **TABLE OF CONTENTS**

Table of Authorities ........................................................................................................... iii

Statement of the Issues to be Decided ............................................................................. ix

Summary of the Argument Presented ............................................................................... ix

Memorandum in Support of Summary Judgment Motion ............................................... 1

Statement of the Facts ...................................................................................................... 1

Law and Argument .......................................................................................................... 6

Conclusion ....................................................................................................................... 30

Certification of Service ................................................................................................... 30

# TABLE OF AUTHORITIES

## Cases

*Aldini v. Johnson*, 609 F.3d 858 (6th Cir. 2010) ................................................................. 7

*Anderson v. Creighton*, 483 U.S. 635 (1987) ................................................................. 8, 10, 14

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................. 7

*Anderson v. The City of Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711 ........................... 26, 29

*Argabrite v. Neer,* 149 Ohio St.3d 349, 2016-Ohio-8374 ................................................................. 29

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ................................................................. 8, 9

*Atwater v. City of Lago Vista*, 532 U.S. 318 (2001) ................................................................. 9

*Barrera v. City of Mount Pleasant*, 12 F.4th 617 (6th Cir. 2021) ........................................... 15

*Bd. of the Cnty Comm'rs v. Brown*, 520 U.S. 397 (1997) ............................................................. 22

*Brinegar v. United States*, 338 U.S. 160 (1949) ................................................................. 14

*Buchanan v. Metz*, 132 F.Supp.3d 922 (E.D. Mich. 2015) ........................................................ 9, 10

*Burgess v. Fischer*, 735 F.3d 462 (6th Cir. 2013) ................................................................. 18

*Cameron v. Grainger Cnty*, 274 F.App'x 437 (6th Cir. 2008) ................................................. 16

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988) ................................................................. 24

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................. 6

*Chappell v. City of Cleveland*, 585 F.3d 901 (6th Cir. 2009) ................................................. 8

*Cherrington v. Skeeter*, 344 F.3d 631 (6th Cir. 2003) ................................................................. 21

*City of Canton v. Harris*, 489 U.S. 378 (1989) ................................................................. 21, 22

*City of Los Angeles v. Heller*, 475 U.S. 796 (1986) ................................................................. 19

*Cleveland Metro. Bar Ass'n v. Berk*, 132 Ohio St.3d 82, 2012-Ohio-2167 ........................... 29

*Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319 ................................................. 28

*Colten v. Kentucky*, 407 U.S. 104 (1972) ................................................................. 13

*Connick v. Thompson*, 563 U.S. 51 (2011) ............................................................... 21

*Coterel v. Reed*, 2016-Ohio-7411 ........................................................................... 26

*Craft v. Billingslea*, 459 F.Supp.3d 890 (E.D. Mich. 2020) ....................................... 19

*Devenpeck v. Alford*, 543 U.S. 146 (2004) ........................................................... 9, 10

*Doe v. Marlington Local Sch. Dist. Bd.*, 122 Ohio St.3d 12 (2009) ............................ 27

*Dolbin v. Miller*, 786 F. App'x 52 (6th Cir. 2019) ..................................................... 14

*Dunigan v. Noble*, 390 F.3d 486 (6th Cir. 2004) ......................................................... 8

*Durham v. Nu'Man*, 97 F.3d 862 (6th Cir. 1996) ........................................................ 8

*Francis v. French*, 2023 U.S. Dist. LEXIS 207467,
  2023 WL 8021539 (S.D. Ohio, Nov. 20, 2023) .................................................... 19

*Francis v. French*, 2023 U.S. Dist. LEXIS 220936,
  2023 WL 8598441 (S.D. Ohio, Dec. 12, 2023) .................................................... 19

*Frenchko v. Monroe*, 672 F. Supp. 3d 421 (N.D. Ohio 2024) ..................................... 17

*Froehlich v. Ohio Dep't of Mental Health*, 114 Ohio St.3d 286, 2007-Ohio-4161 ...... 25

*Frontera v. City of Columbus Div. of Police*, 395 F. App'x 191 (6th Cir. 2010) .......... 23

*Fox v. Desoto*, 489 F.3d 227 (6th Cir. 2007) .......................................................... 10

*Graham v. Connor*, 490 U.S. 386 (1989) ............................................................. 7, 18

*Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531 (6th Cir. 2012) ........................... 7

*Hanson v. Madison County Detention Center*, 736 Fed.Appx. 521 (6th Cir. 2018) ...... 22

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) .............................................................. 7

*Hartman v. Moore*, 547 U.S. 250 (2006) ................................................................ 16

*Hartman v. Thompson*, 931 F.3d 471 (6th Cir. 2019) .............................................. 10

*Harvey v. Campbell Cty.*, 453 F.App'x. 557 (6th Cir. 2011) ....................................... 21

*Heinen v. North Carolina*, 574 U.S. 54 (2014)............................................................................ 14

*Hibel v. Sixth Judicial District Court of Nevada*, 542 U.S. 177 (2004) ................................ 14, 15

*Hodges v. Meijer, Inc.*, 129 Ohio App.3d 318 (12th Dist. 1998) ................................................. 24

*Howe v. Henry Cty. Comm'rs.*, 167 Ohio App.3d 865, 2006-Ohio-3893 .................................... 28

*Illinois v. Gates*, 462 U.S. 213 (1983) ....................................................................................... 10

*Jordan v. City of Detroit*, 557 F.App'x 450 (6th Cir. 2014)........................................................ 24

*Kaley v. United States*, 571 U.S. 320 (2014) .............................................................................. 10

*Legenzoff v. Steckel*, 564 F.App'x 136 (6th Cir. 2014).................................................................. 9

*Lipman v. Budish*, 974 F.3d 726 (6th Cir. 2020) ........................................................................ 20

*Lyons v. City of Xenia*, 417 F.3d 565 (6th Cir. 2005) ............................................................ 10, 12

*Manuel v. City of Joliet*, 580 U.S. 357 (2017) .............................................................................. 7

*Matushita Electric Insustrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ........................ 6, 7

*Mayes v. Columbus*, 105 Ohio App.3d 728 (10th Dist. 1995)...................................................... 24

*McDonald v. Lacy*, 2018-Ohio-2753 ......................................................................................... 26

*McKee v. McCann*, 8th Dist. Cuyahoga No. 104956, 2017-Ohio-7181 ........................................ 25

*Mich. v. DeFillippo*, 443 U.S. 31 (1979) ................................................................................... 14

*Miller v. Calhoun County*, 408 F.3d 803 (6th Cir. 2005) ............................................................. 7

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) .................................................................................... 8

*Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658 (1978).......................... 19-23

*Mullenix v. Luna*, 308, 577 U.S. 7 (2015).................................................................................... 8

*N. Ridgeville v. Reichbaum*, 112 Ohio App.3d 79 (9th Dist.1996)............................................... 12

*Nichols v. Wayne County*, 822 F. App'x 445 (6th Cir. 2020)...................................................... 23

*Nieves v. Bartlett*, 587 U.S. 391 (2019) ..................................................................................... 16

*Ohio Civil Serv. Emps. Ass'n v. Seiter*, 858 F.2d 1171 (6th Cir. 1988)..........................................9

*Oklahoma City v. Tuttle*, 471 U.S. 808 (1985) .............................................................21, 24

*Ouza v. City of Dearborn Heights*, 969 F.3d 265 (6th Cir. 2020) ..................................22

*Pearson v. Callahan*, 555 U.S. 223 (2009)........................................................................7

*Peet v. City of Detroit*, 502 F.3d 557 (6th Cir. 2007) ....................................................16

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1978)..............................................19, 20

*Poe v. Haydon*, 853 F.2d 418 (6th Cir. 1988)..................................................................8

*Reichle v. Howards*, 566 U.S. 658 (2012) ......................................................................16

*Rondy v. Richland Newhope Indus., Inc.*, 2016-Ohio-118..............................................26

*Roseborough v. Trotwood*, 2007 U.S. Dist. LEXIS 83917,
    2007 WL 3402880 (S.D.Ohio Nov. 13, 2007)...........................................................12

*Rutledge v. O'Toole*, 8th Dist. Cuyahoga No. 84843, 2005-Ohio-1010 .......................28

*Shadrick v. Hopkins Cty.*, 805 F.3d 724 (6th Cir. 2015)..............................................22

*Skyes v. Anderson*, 625 F.3d 294 (6th Cir. 2010) ...........................................................9

*Smith v. Campbell*, 250 F.3d 1032 (6th Cir. 2001) ........................................................16

*Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674................................................28

*Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576 (6th Cir. 2016)..............................24

*State v. Body*, 2d Dist. Montgomery No. 27732, 2018-Ohio-3395 ........................11, 13

*State v. Grice*, 180 Ohio App.3d 700, 2009-Ohio-372 .................................................12

*State v. Lazzaro*, 76 Ohio St.3d 261, 1996-Ohio-397...................................................12

*State v. Novak*, 4th Dist. Gallia No. 16CA4, 2017-Ohio-455 .......................................11

*State v. Overholt*, 9th Dist. Medina No. 2905-M, 1999 Ohio App. LEXIS 3788,
    1999 WL 635717, (Aug. 18, 1999 )............................................................................12

*State v. Stayton*, 126 Ohio App.3d 158 (1998) .............................................................12

*State v. Terry*, 2d Dist. Montgomery No. 26722, 2016-Ohio-3484 ............................................... 13

*State v. Wellman*, 173 Ohio App.3d 494, 2007-Ohio-2953 ................................................ 11-14, 17

*Stewart v. City of Memphis*, 788 F.App'x 341 (6th Cir. 2019) ...................................................... 23

*Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) ................................................................... 16

*Thomas v. City of Chattanooga*, 398 F.3d 426 (6th Cir. 2005) .................................................... 24

*Tighe v. Diamond*, 149 Ohio St. 520 (1948) ............................................................................... 29

*Turner v. Scott*, 119 F.3d 425 (6th Cir. 1997) ....................................................................... 17, 18

*United States v. Harness*, 453 F.3d 752 (6th Cir. 2006) .............................................................. 10

*United States v. Padro*, 52 F.3d 120 (6th Cir. 1995) .................................................................. 10

*United States v. Reagan*, 401 F. App'x 14 (6th Cir. 2010) ........................................................... 11

*Voyticky v. Vill. of Timberlake*, 412 F.3d 669 (6th Cir. 2005) ...................................................... 10

*Wallace v. Coffee County*, 852 F. App'x 871 (6th Cir. 2021) ....................................................... 23

*Wells v. City of Dearborn Heights*, 538 Fed. App'x 631 (6th Cir. 2013) ...................................... 18

*White v. Pauly*, 580 U.S. 73 (2017) .............................................................................................. 8

*Whren v. United States*, 517 U.S. 806 (1996) .............................................................................. 10

*Williams v. Maurer*, 9 F.4th 416 (6th Cir. 2021) ..................................................................... 8, 10

**Statutes and Rules**

28 U.S.C. §1367 ............................................................................................................................ 24

42 U.S.C. §1983 ..................................................................................................................... *passim*

Cleveland Heights Ordinance No. 525.07 ....................................................................... 11, 14-16

Ohio Revised Code §2744.01(A) .................................................................................................. 28

Ohio Revised Code §2744.02(A)(1) .............................................................................................. 27

Ohio Revised Code §2744.02(B)(1) ......................................................................................... 26-28

Ohio Revised Code §2744.03(A)(6)(b) .......................................................................... 25, 26, 29

Ohio Revised Code §2921.31 ........................................................................................11-12, 14-17

Fed.R.Civ.P. 56(a) ........................................................................................................... 6

## STATEMENT OF THE ISSUES TO BE DECIDED

1.  Whether defendant Lewis is entitled to qualified immunity as probable cause existed for plaintiff's arrest, her conduct was objectively reasonable under the totality of the circumstances, and there was no realistic opportunity for Lewis to intervene on any claimed excessive use of force.

2.  Whether defendant City of Cleveland Heights is entitled to summary judgment on plaintiff's *Monell* claims as there were no underlying constitutional violations, and the City was not deliberately indifferent.

3.  Whether defendants are entitled to summary judgment on plaintiff's state law claims as there was probable cause for plaintiff's arrest, and defendants are therefore immune from liability. .

## SUMMARY OF THE ARGUMENT PRESENTED

Officer Lewis is entitled to qualified immunity of plaintiff's §1983 First and Fourth Amendment claims. The actions of the officer did not constitute a violation of plaintiff's Constitutional rights because probable cause existed for plaintiff's arrest.  Case law provides that an individual may be arrested for obstruction when he interferes with a police officer's official duties.  Here, the plaintiff interfered with a lawful traffic stop initiated and performed by Officer Lewis.  Likewise, the City of Cleveland Heights is entitled to summary judgment on plaintiff's *Monell* claims as the arresting officers did not violate plaintiff's constitutional rights, and the City did not act with deliberate indifference with regard to its policies.

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

At the heart of this matter is whether the plaintiff's interference with a lawful traffic stop gave law enforcement officers probable cause to arrest him under City of Cleveland Heights and Ohio law. The plaintiff was involved in a confrontation with Cleveland Heights police officers after he voluntarily pulled his car over and interfered with a lawful traffic stop of another vehicle. He continued to interfere with and delay the stop, resulting in his arrest for obstructing official business.

Plaintiff filed suit against the City of Cleveland Heights and the involved police officers, alleging, among other things, violations of his First and Fourth Amendment rights. However, for the foregoing reasons, defendants are entitled to an Order of summary judgment, dismissing all of the plaintiff's claims against them.

## I.    Statement of the Facts

On Thursday, September 22, 2022 at approximately 7:00 pm, Cleveland Heights police officer Carly Lewis was driving her police-issued, marked cruiser on Mayfield Road near Inglewood Road in Cleveland Heights when she observed a vehicle (2011 silver Infiniti) which matched the description of a suspect from a felony domestic situation that had occurred the previous day. (Lewis dep., Doc. #52, PageID #762, 776-777; Ex. 10, Doc. #51-12, PageID #538-545). Lewis ran the Infiniti through LEADS as the license plate had an expired display sticker. (Lewis dep., Doc. #52, PageID #778). Once the expired plates were confirmed, Lewis waited for an opportunity to move into the right lane and initiated a lawful traffic stop by turning on her overhead lights and sirens (Lewis dep., Doc. #52, PageID #780). This prompted the Infiniti to stop abruptly. (Lewis dep., Doc. #52, PageID #780, 786). Within a few seconds of turning on her lights and sirens, due to the abruptness of the Infiniti's stop, Lewis began to maneuver her vehicle to the

1

curb lane. (Lewis dep., Doc. #52, PageID #782). As she was doing so, the plaintiff, Demetrius Kern, who was driving a white Telsa behind  in the curb land some distance behind the stopping Infiniti, failed to yield to the emergency lights and sirens, nearly colliding with Lewis' cruiser. (Lewis dep., Doc. #52, PageID #780). Fortunately no collision occurred.

Once the Infiniti was stopped and Lewis' cruiser was positioned, Lewis exited her cruiser to investigate the situation, believing the driver of the stop vehicle may have been a felony suspect. As she did so, Kern, who had stopped his vehicle rather than proceed on his way, exited the Tesla and began walking aggressively towards Lewis as she was approaching the stopped Infiniti, shouting at her stating that she had run him off the road and he wanted her badge number. (Lewis dep., Doc. #52, PageID #835; Doc. #48, Ex. Kern_1119_20220922-185844.mp4). As can be seen on Lewis' body camera footage, Lewis directed Kern to wait, stating "one second." (Doc. #48, Ex. 11 at 0:04). Lewis' traffic stop involving the Infiniti was delayed as she had to call dispatch for backup, given that she now had two unknown individuals at the stop, one of whom was still suspected of a violent felony. (Doc. #48, Ex. 11 at 0:14-0:30; Lewis dep., Doc. #52, PageID #796-797). As can be seen in the reflection of the Infiniti, Lewis' attention was taken away from the stop and focused on Kern during this time. (Doc. #48, Ex. 11 at 0:16-0:23). Lewis informed Dispatch that Kern had failed to yield to her lights and sirens and was on the side of the road recording her. (Doc. #48, Ex. 11 at 0:24; Doc. #48, Ex. 16 at 0:03-0:16). Lewis proceeded with her traffic stop investigation, learning that the driver was a gentleman named Larelle Goodman, who was not the subject of the felony domestic violence situation. Goodman informed Lewis that he had just purchased the Infiniti and was in the process of having it transferred into his name. (Doc. #48, Ex. 11 at 0:56-1:11). Goodman also advised Lewis that he was carrying a gun in his vehicle. (Doc. #48, Ex. 11 at 1:11-1:18).

Lewis called in the license plate number of the Infiniti, but before she was able to return to her cruiser to run Goodman's license through LEADS, she was forced to deal with Kern, who was confrontational. (Doc. #48, Ex. 11 at 1:34-1:53). Lewis approached Kern, who claimed Lewis ran him off the road.  (Doc. #48, Ex. 11 at 1:54). Lewis apologized for the situation, stating: "I initiated my lights and sirens," but Kern interrupted, claiming he did not hear anything. Lewis explained that she was not wrong, but that Goodman "stopped abruptly." Kern continued to argue with Lewis, interrupting her and berating her for running him off the road. Kern appeared to be upset about a "disconnect" because Lewis was explaining the situation and the abruptness of the stop and did not say she was wrong. (Doc. #48, Ex. 11 at 1:56-3:09). Lewis then had to continue with the interruption of her traffic stop with Goodman to call in Kern's license plate number. (Doc. #48, Ex. 11 at 3:09-3:20).

During this time, Cleveland Heights police officer Naftali Wolf responded to Lewis' call for back up. . (Doc. #48, Ex. 12). When he arrived, he observed Kern confronting Lewis and believed Kern was interfering with her traffic stop based on the radio call for back-up. (Wolf dep., Doc. #60-1, PageID #1943-1944, 1993). The Infiniti with the "original possible suspect from the domestic violence" was still pulled over at the scene, in front of Lewis and Kern. (Wolf dep., Doc. #60-1, PageID #1993). Kern questioned why Lewis called for back-up assistance, to which Wolf responded that he could not pull up behind an officer on a traffic stop. (Doc. #48, Ex. 12 at 0:54-0:59). Kern told Wolf he did not know what was going on, and Wolf told Kern at that time that what he was doing was against the law. (Doc. #48, Ex. 12 at 0:59-1:04).  Kern again argued that Lewis ran him off the road, not once saying that Lewis did not have her lights or sirens on when Wolf explained that Lewis previously stated Kern failed to yield. (Doc. #48, Ex. 12 at 1:04-1:10). He simply reiterated his belief there was a "disconnect." (Doc. #48, Ex. 12 at 1:11).

After Lewis called in Kern's plates, she approached Kern and Wolf, indicating that she was going to let Kern go but needed his last name as she was conducting business with him. (Doc. #48, Ex. 11 at 3:28-3:53). Kern refused to comply with this request, and Lewis stepped away to return to her traffic stop with Goodman. Although Goodman committed a traffic violation by driving with expired plates, Lewis informed him she was not going to write a ticket as she had to deal with Kern. (Doc. #48, Ex. 11, 3:53-4:23). Lewis released Goodman from the traffic stop at that point. (Doc. #48, Ex. 11 at 4:23).

In the meantime, Wolf continued to interact with Kern, stating that what he was doing was illegal and he could be charged with "interfering with a traffic stop." (Doc. #48, Ex. 12 at 1:24-1:29). Kern questioned why he could be arrested, and as Wolf tried to explain that Kern did not yield to lights and sirens, Kern cursed and became irate, yelling that Lewis almost ran him off the road. (Doc. #48, Ex. 12 at 1:43-1:57). Kern continued to interrupt and scream, claiming that Wolf would be violating his rights if he was arrested. Wolf stated he did not want to arrest Kern, but the confrontation continued and Wolf called for more back-up assistance. (Doc. #48, Ex. 12 at 1:57-2:14). Wolf stated he would take a report on Kern's complaint, but he needed his identification. (Doc. #48, Ex. 12 at 2:15-2:18). Kern refused, stating he was dealing with Lewis and walked away from Wolf. (Doc. #48, Ex. 12 at 2:18-2:20).

As Kern approached Lewis, Lewis again explained the situation, stating she had initiated a traffic stop and had to call for back-up because she was dealing with more than one person when Kern pulled over, exited his vehicle and began walking towards Lewis. (Doc. #48, Ex. 11 at 4:35-5:05).  She again asked Kern to identify himself so that she could let Dispatch know the name of the person she was confronting. As she attempted to explain to Kern why his actions were

considered obstruction, Kern continued to interrupt and argue with Lewis. (Doc. #48, Ex. 11, 5:05-5:22). Kern walked away from Lewis at that point. (Doc. #48, Ex. 11 at 5:22).

As Kern walked away from Lewis, Wolf told Kern that he had in fact committed the crime of obstruction. (Doc. #48, Ex. 12 at 3:20).  Lewis agreed that "obstructing is a crime." (Doc. #48, Ex. 11 at 5:31-5:33). Wolf then told Kern he was going to arrest him for obstruction, and directed Kern to put his hands behind his back. (Doc. #48, Ex. 12 at 3:31). Wolf secured Kern's hands behind his back without incident. (Doc. #48, Ex. 12 at 3:35-3:40; Ex. 11 at 5:45-5:57). Wolf testified that he uses his discretion to handcuff everyone that he arrests for officer safety purposes. (Wolf dep., Doc. #60-1, PageID #1934-1935). Meanwhile, Kern twisted around, stated he did not have his ID with him but provided his social security number to Lewis, and continued to complain that Lewis almost ran him off the road, but he did not complain about the handcuffs or an alleged injury at that time. (Doc. #48, Ex. 12 at 3:35-3:48; Ex. 11 at 5:51-6:10). Wolf then told Lewis that Kern should be issued a ticket for obstruction. (Doc. #48, Ex. 12 at 3:53). Kern continued to twist around and asked Wolf if he was "going to break his wrists", at which point Wolf loosened the handcuffs. (Doc. #48, Ex. 12 at 4:00-4:10; Ex. 11 at 6:11-6:19). Wolf again explained that Kern could not stop in the middle of someone's traffic stop, and that he was being issued a ticket for interfering with the traffic stop. (Doc. #48, Ex. 12 at 4:10-4:38; Ex. 11 at 6:22-6:30). Kern then provided Lewis with his last name. (Doc. #48, Ex. 12 at 6:34).

Wolf walked Kern to Lewis' cruiser with no obvious or apparent use of force, although Kern continued to argue and swear at Wolf, who then had Kern sit himself in the back of Lewis' vehicle before he shut the door. (Doc. #48, Ex. 12 at 4:38-4:59; Ex. 11 at 6:43-7:09). Lewis was then instructed by Wolf, her supervisor, to issue Kern a citation for obstruction for interfering with a traffic stop based upon a totality of the circumstances which included the fact that Lewis was

interrupted from her traffic stop, "which was potentially a domestic violence investigation" and that Lewis could "no longer deal with" this potential suspect as she was pulled away to argue with Kern." (Wolf dep., Doc. #60-1, PageID #1839, 1945, 1948, 1994, 1998, 2010-2011). Lewis wrote the ticket for Obstructing Official Business pursuant to Cleveland Heights Ordinance No. 525.07 (Doc. #48, Ex. 11 at 10:00-18:11; Ex. 24, Doc. #51-15, PageID #552).

As she was writing the citation, Lewis had a question about the verbiage, so she explained the situation again to Wolf, who stated Kern's actions were obstruction. (Doc. #48, Ex. 11 at 18:26-20:07). Lewis finished writing the ticket, gave it to Kern and released him. (Doc. #48, Ex. 11 at 24:24-25:53).  Before he left, Kern said to Lewis, "you're probably the only good cop on the force." (Doc. #48, Ex. 11 at 25:52-25:53). While Lewis was speaking to Wolf about the ticket, Kern complained about his right shoulder, and Officer Joe Torres, who had responded after Wolf called for assistance, took the handcuffs off Kern to re-apply them in front of his body.  (Torres dep., Doc. #56, PageID #1674-1677; Ex. 31, Doc. #51-21, PageID #571). Kern declined medical treatment at the scene, got into his vehicle, and left to go to Metro Hospital. (Doc. #48, Ex. 11 at 27:18-27:30).

## II.    Law and Argument

### A.    Summary Judgment Standard

Summary judgment is appropriate when the evidence presented shows no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Matushita Electric Insusrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the non-moving party cannot establish the existence of essential elements of his claims, summary judgment is proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."

*Matushita*, 475 U.S. at 586. The mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**B.      Plaintiff's Federal Law Claims Under 42 U.S.C. §1983 All Fail**

"Where any person acting under color of state law abridges rights secured by the Constitution or United States laws…§1983 provides civil redress." *Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir. 2005). To state a claim under §1983, a plaintiff must allege that a defendant acted under color of state law, and that defendant's conduct deprived the plaintiff of rights secured under federal law. *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012). "The first inquiry in any §1983 suit is to isolate the precise constitutional violation" alleged. *Graham v. Connor*, 490 U.S. 386, 394 (1989). "After pinpointing" the constitutional right at issue, "courts still must determine the elements of, and rules associated with, an action seeking damages for its violation." *Manuel v. City of Joliet*, 580 U.S. 357, 370 (2017). However, the reach of §1983 is not without limit – governmental officials, including police officers, are immune from civil liability and entitled to summary judgment when their actions do not violate a clearly established constitutional right. *Aldini v. Johnson*, 609 F.3d 858, 863 (6th Cir. 2010). Here, plaintiff cannot establish that Lewis violated any of his constitutional or other rights, and Lewis is entitled to qualified immunity as to his §1983 claims.

**1.      Officer Lewis is Entitled to Summary Judgment with Respect to Plaintiff's Federal Law Claims Since She is Entitled to the Protection of Qualified Immunity.**

Qualified immunity shields government officials from §1983 liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223 (2009) (quoting *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982)). "Such immunity is an expression of policy designed to aid in the effective functioning of government," *Dunigan v. Noble*, 390 F.3d 486, 490-91 (6th Cir. 2004), giving officials "breathing room to make reasonable but mistaken judgments about open legal questions" so that only the "plainly incompetent or those who knowingly violate the law" are subject to suit. *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). An official is "entitled to qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Williams v. Maurer*, 9 F.4th 416, 430 (6th Cir. 2021). Once raised, plaintiff bears the burden to prove defendant is not entitled to qualified immunity. *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). Qualified immunity is "an immunity from suit rather than a mere defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It is purely a question of law for the Court, and should be resolved as early in the case as possible. *Poe v. Haydon*, 853 F.2d 418, 424 (6th Cir. 1988).

When the law is not sufficiently clear that a reasonable officer would be on notice that her conduct is clearly unlawful, qualified immunity is appropriate. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Mullenix v. Luna*, 308, 577 U.S. 7, 11 (2015). In deciding whether the right is clearly established, the Supreme Court has cautioned lower courts "not to define clearly established law at a high level of generality." *Ashcroft*, 563 U.S. at 742; *Anderson*, 483 U.S. at 640; *White v. Pauly*, 580 U.S. 73 (2017). A right is clearly established when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. "A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred." *Durham v.*

*Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996).  Absent controlling authority, a right is clearly established only through a "robust consensus" of cases of persuasive precedent.  *See Ashcroft*, 563 U.S. at 742. The precedent "must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." *Ohio Civil Serv. Emps. Ass'n v. Seiter*, 858 F.2d 1171, 1177 (6th Cir. 1988).

In this case, Kern cannot show a robust consensus of cases of persuasive authority stating a  clearly established right that a person, without privilege, has  authority  to pull his vehicle over and interfere with an unrelated, lawful traffic stop. Such  conduct constitutes obstructing official business under Ohio law, and the officers were justified in arresting Kern.

### 2.  Plaintiff's Fourth Amendment Claims Fail

Kern alleges that his detention and arrest violated the Fourth Amendment. (ECF No. 1, ¶¶ 62-73, PageID #10-12). False arrest claims under §1983 implicate the Fourth Amendment's prohibition against unreasonable seizure and require that a plaintiff show "the arresting officer lacked probable cause to arrest the plaintiff." *Skyes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010). In other words, an arrest "is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "A determination of probable cause in qualified immunity analysis must be looked at by examining the totality of the circumstances.  When determining whether an officer had probable cause, a court must examine whether it was clearly established that the circumstances with which [the officers were] confronted did not constitute probable cause for purposes of the Fourth Amendment." *Buchanan v. Metz*, 132 F.Supp.3d 922, 937 (E.D. Mich. 2015), citing *Legenzoff v. Steckel*, 564 F.App'x 136, 141 (6th Cir. 2014) (quoting *Anderson*, 483 U.S. at 639).

Probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338, (2014); *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer had probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). Probable cause exists where "the facts and circumstances within the officers' knowledge [are] sufficient to warrant a man of reasonable caution to believe that an offense had been, was being, or was about to be committed." *Hartman v. Thompson*, 931 F.3d 471, 481 (6th Cir. 2019) (quoting *Fox v. Desoto*, 489 F.3d 227, 236 (6th Cir. 2007)). Probable cause requires only a probability of criminal action, not an actual showing of such activity. *Illinois v. Gates*, 462 U.S. 213, 244 n. 13 (1983). Courts look at this question through the lens "of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Lyons v. City of Xenia*, 417 F.3d 565, 573 (6th Cir. 2005). "Qualified immunity requires that police investigations be reasonable, not perfect." *Buchanan*, 132 F.Supp. at 939.

Ultimately, the determination of probable cause involves a practical, commonsense review of the totality of the available facts and circumstances. *United States v. Padro*, 52 F.3d 120, 123 (6th Cir. 1995); *Gates*, 462 U.S. at 238. This analysis is objective, based on the reasonable officer standard. *Whren v. United States*, 517 U.S. 806, 813 (1996). In addition, "where no probable cause exists to arrest a plaintiff for a particular crime, but. . . probable cause exists to arrest that plaintiff for a related offense, the plaintiff cannot prevail in a suit alleging wrongful arrest brought pursuant to 42 U.S.C. §1983." *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 676 (6th Cir. 2005). Indeed, "an arresting officer's 'subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.'" *United States v. Harness*, 453 F.3d 752, 755 (6th Cir. 2006) (quoting *Devenpeck*, 543 U.S. at 153). Therefore, "knowledge of the precise crime committed is not necessary to a finding of probable cause provided that probable cause exists

showing that a crime was committed by the defendant". *United States v. Reagan*, 401 F. App'x 14, 16 (6th Cir. 2010).

Here, Lewis, a reasonable officer on the scene, had objectively reasonable grounds to believe Kern obstructed official business. To determine whether there was probable cause to arrest Kern, the Court should undertake an analysis of R.C. §2921.31, the Ohio statute upon which Cleveland Heights Ordinance No. 525.07 is founded, and the offense for which Kern was arrested.

 R.C. §2921.31(A) states:

> No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

Similarly, Cleveland Heights Ordinance No. 525.07(a) states:

> No person, without privilege to do so and with purpose to prevent, obstruct or delay the performance by a public official of any authorized act within his official capacity, shall do any act which hampers or impedes a public official in the performance of his lawful duties. (Ex. 21, Doc. #51-14, PageID #548).

Obstructing official business under R.C. §2921.31(A) has five essential elements: (1) an act by the defendant; (2) done with purpose to prevent, obstruct, or delay a public official, (3) that actually hampers or impedes a public official, (4) while the official is acting in the performance of a lawful duty, and (5) the defendant so acts without privilege. *State v. Novak*, 4th Dist. Gallia No. 16CA4, 2017-Ohio-455, at ¶14. "The proper focus in a prosecution for obstructing official business is on the defendant's conduct, verbal or physical, and its effect on the public official's ability to perform the official's lawful duties." *State v. Wellman*, 173 Ohio App.3d 494, 499, 2007-Ohio-2953; *State v. Body*, 2d Dist. Montgomery No. 27732, 2018-Ohio-3395 (defendant's conviction for obstructing official business in violation of R.C. §2921.31(A) was proper when defendant drove up to a lawful traffic stop involving her brother and continually interrupted the

officer, ignored his orders to leave, and repeatedly requested the same information from him.). In interpreting R.C. §2921.31, Ohio courts recognize that "[c]omplete and honest cooperation with the law enforcement process by all citizens is essential to the effective operation of the justice system." *State v. Lazzaro*, 76 Ohio St.3d 261, 1996-Ohio-397.

Courts generally require an affirmative act under R.C. §2921.31(A). *State v. Grice*, 180 Ohio App.3d 700, 2009-Ohio-372. An affirmative act is defined as any conduct, physical or verbal, that hampers or impedes the officer in the performance of his or her duties. *Wellman*, 173 Ohio App.3d at 499-500. Ohio courts have concluded the affirmative-act requirement may be satisfied on the basis of conduct that is not far afield from what occurred here. For example, hostile or abusive speech that obstructs officers from fulfilling their duties may amount to a sufficient affirmative act to sustain a charge of obstructing official business. *See State v. Stayton*, 126 Ohio App.3d 158 (1998); *State v. Overholt*, 9th Dist. Medina No. 2905-M, 1999 Ohio App. LEXIS 3788, 1999 WL 635717, *3-4 (Aug. 18, 1999 ) (defendant's "interference with the officers' attempts to complete an arrest, coupled with his repeated, prolonged, and profane outbursts" constituted sufficient "acts" to support a charge under R.C. §2921.31).

There are no bright line rules for what hampers or impedes an officer; thus, the court must analyze the criminal defendant's "entire course of conduct." *Wellman*, 173 Ohio App.3d at 499; *Overholt*, *supra*, at *2; *N. Ridgeville v. Reichbaum*, 112 Ohio App.3d 79, 84 (9th Dist.1996) (multiple affirmative acts taken together can be sufficient to establish a violation of R.C. §2921.31(A). "'Where the overall pattern of behavior is one of resistance, * * * officers may consider the totality of the events and need not point to a single act that rises to the level of obstruction.'" *Roseborough v. Trotwood*, 2007 U.S. Dist. LEXIS 83917, 2007 WL 3402880, *5 (S.D.Ohio Nov. 13, 2007), quoting *Lyons*, 417 F.3d at 574.

When considering whether actions hampered or impeded an officer from performing lawful duties, "there must be some substantial stoppage of the officer's progress." *Wellman*, 173 Ohio App.3d at 500. There is, however, "no 'finite period of time [that] constitutes a 'substantial stoppage,' be the delay occasioned by the interference thirty seconds or two minutes. If the record demonstrates that the defendant's act hampered or impeded the officer in the performance of his duties, the evidence supports the conviction." *Wellman*, 173 Ohio App.3d at 500. "[T]his element does not require that [the defendant] cause the officers to fail in their duties, but only that, by acting, [the defendant] *disrupted their performance of them*." *State v. Terry*, 2d Dist. Montgomery No. 26722, 2016-Ohio-3484, ¶22 (emphasis added). In quoting the trial court's decision, the *Body* Court agreed that:

> Police officers must be able to perform their duties in safety and with efficiency. Allowing an uninvolved member of the public to become part of an investigative scene is unsafe for the Officer, unsafe for the party and unsafe for the uninvolved person seeking to intervene. Such action to intervene seriously hampers and impedes the ability of Law Enforcement Officers to perform their lawful duties.

*Body*, 2018-Ohio-3395 at ¶28. The U.S. Supreme Court also recognized this disruptive behavior as obstruction, finding that a bystander to a traffic stop was not engaged in protected activity when he failed to leave a congested roadside where a friend in another car was being ticketed for a traffic offense. *Colten v. Kentucky*, 407 U.S. 104, 109-110 (1972). The Court explained that "the State has a legitimate interest in enforcing its traffic laws and its officers were entitled to enforce them *free from possible interference or interruption from bystanders*, even those claiming a third-party interest in the transaction." *Colten*, 407 U.S. at 109 (emphasis added).

There are no doubts as to plaintiff's actions, and there was no constitutional violation of his civil rights. The undisputed facts show the Cleveland Heights officers had probable cause to believe Kern violated Ohio and city law. Lewis and Wolf both directly observed and experienced

Kern's interference with her official duties in conducting a lawful traffic stop, in addition to his refusal to identify himself during and after the interference. As the video footage undisputedly shows, this interference lasted several minutes, and as *Wellman* has instructed, this is sufficient to support a charge under R.C. §2921.31 (and therefore under Cleveland Heights Ordinance No. 525.07. On this record, it is clear Kern intended to, and did, obstruct or delay Lewis' traffic stop, which hampered her performance in her lawful duties.

Even if the officers misread state law, the mistake was a reasonable one. Just as a reasonable mistake of fact does not violate an individual's Fourth Amendment rights, a reasonable mistake of law does not violate them either. *See Heinen v. North Carolina*, 574 U.S. 54, 66 (2014). In *Heinen*, officers mistook whether North Carolina required one brake light or both of them to be in working order. The Court held "reasonable suspicion can rest on a mistaken understanding of the scope of a legal prohibition." *Id*. at 60. "To be reasonable is not to be perfect," the Court explained, "and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" *Id*. at 60-61 (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)). In the qualified immunity context, an officer can prevail if he "reasonably but mistakenly" believed he had probable cause for an arrest. *Anderson*, 483 U.S. at 641; *Dolbin v. Miller*, 786 F. App'x 52, 56-57 (6th Cir. 2019) ("whether [the officers] actually had probable cause" is irrelevant to the qualified immunity inquiry, which turns only on "whether the officers . . . had the reasonable but mistaken belief that they had probable cause"). The fact that an individual is acquitted of the crime is irrelevant to the question of whether the arrest is valid. *Mich. v. DeFillippo*, 443 U.S. 31, 36 (1979).

Kern claims he was only arrested for failing to identify himself. Defendants dispute this, but even if this was true, Kern was lawfully arrested. *See Hibel v. Sixth Judicial District Court of*

*Nevada*, 542 U.S. 177 (2004). In *Hibel*, a Nevada officer received a report of a man assaulting a woman in a truck. When the officer located the truck, he asked the man to identify himself. The driver refused, and the State convicted him under its obstruction statute. The U.S. Supreme Court upheld the conviction over his Fourth and Fifth Amendment challenges to the arrest and conviction. *Id*. at 189-91.

Here, it was objectively reasonable for Lewis to think Kern's actions were a violation of city and state law. Kern stopped behind Lewis while she was performing a lawful traffic stop, exited his vehicle, and berated her for allegedly cutting him off in traffic. Lewis had her emergency overhead lights and siren on, as evidenced by her testimony as well the fact that Goodman, the subject of her traffic stop, pulled over in response to these indicators. Goodman stopped abruptly, causing Lewis to pull over and stop abruptly, which in turn caused Kern to brake in order to avoid an accident. Kern purposefully screamed at Lewis as she was performing the traffic stop, and also refused to provide his name. In addition, Kern's interference was significant enough to cause Lewis to call for back up, which is clear evidence of Kern's unlawful action. Even if mistaken, it was reasonable for the officers to believe that Kern's actions were not privileged, but rather constituted an obstruction of official business, and that his refusal to comply with their demands for identification – reasonable under the circumstances of Kern's behavior – further supported this obstruction charge. *See Barrera v. City of Mount Pleasant*, 12 F.4th 617 (6th Cir. 2021).

Because the officers had reasonable suspicion of criminal activity under the Fourth Amendment, the officers' repeated requests to plaintiff to identify himself were lawful. *Id*. Their interpretation of Cleveland Heights City Ord. No. 525.07 and R.C. §2921.31 did not violate the Fourth Amendment. "[B]ased on the facts and circumstances within [Lewis'] knowledge," there was enough "reasonably trustworthy information" for a "prudent" person to believe that probable

cause existed at the time of Kern's arrest. *See Peet v. City of Detroit*, 502 F.3d 557, 563-64 (6th Cir. 2007). Thus, the officers had probable cause to arrest Kern for violating Cleveland Heights Ord. No. 525.07 (R.C. §2921.31), and she is entitled to qualified immunity on Kern's Fourth Amendment claims.

### 3.        Plaintiff's Claim of First Amendment Retaliation Fails

Generally, "'the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). In *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) (en banc), the Sixth Circuit "crystalized" the basis for First Amendment retaliation claims into a three-part analysis. *Cameron v. Grainger Cnty*, 274 F.App'x 437, 440 (6th Cir. 2008). To succeed, the plaintiff must show: (1) he engaged in protected conduct; (2) that there was an adverse action against him that would deter a person of ordinary firmness from continuing to engage in the conduct; and (3) that there is a causal connection between his protected conduct and the adverse action. *Thaddeus-X*, 175 F.3d at 394. The "plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). If plaintiff is successful, defendant has the burden to show the same action would have been taken even absent the plaintiff's protected conduct. *Id*. But there is no recognized right to be free from a retaliatory arrest that is supported by probable cause. *See Reichle v. Howards*, 566 U.S. 658, 663 (2012).

Notably, "[t]he plaintiff pressing a retaliatory arrest claim must plead and prove the *absence of probable cause for the arrest*." *Nieves*, 587 U.S. at 401 (emphasis added). "Probable cause allows an officer to negate causation by establishing that unlawful conduct – not protected

speech – motivated the arrest." *Frenchko v. Monroe*, 672 F. Supp. 3d 421, 457 (N.D. Ohio 2024), appeal docketed, No. 24-3116 (6th Cir. Feb. 14, 2024).

Kern alleges he was engaged in "protected speech" because he questioned the officers and refused to provide his identification. (Doc. #1, PageID #13). As detailed above, *there was probable cause to arrest Kern*, and there is no evidence in the record that Lewis was motivated by anything other than Kern's obstruction with her lawful traffic stop. Kern's conduct went beyond just speech. His entire course of conduct was the basis of the charge for obstruction.  *See Wellman*, 173 Ohio App.3d at 503 (officer did not violate defendant's First Amendment rights when defendant was convicted of obstruction under R.C. §2921.31). Further, "the First Amendment 'has never conferred an absolute right to engage in express conduct whenever, wherever or in whatever manner a speaker may choose.' R.C. 2921.31 is content-neutral on its face. A person has a right to verbally protest a police officer's actions or even to argue with or curse at an officer. *But that person does not have the right to hamper or impede the officer in the performance of the officer's duties*. *Id*. (citations omitted, emphasis added). Kern was not arrested based on the *content* of his speech, but on his volume and demeanor and his other actions that hampered Lewis in conducting her traffic stop. His behavior "crossed the line between fair protest and actual obstruction." *Id*. Thus, Kern cannot establish the third required element of a claim for First Amendment retaliation.

### 4.  Plaintiff's Claims of Failure to Intervene Fail

"When a law enforcement officer uses excessive force or engages in other prohibited conduct, other officers on the scene have a duty to stop such action."  *See*, e.g., *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). Initially, Kern claims Lewis failed to intervene to protect him from alleged excessive force committed by Wolf. To establish such a claim, plaintiff must prove the officer observed or had reason to know that the excessive force would be or was being used

and that the officer had both the opportunity and the means to prevent the harm from occurring. *Turner*, 119 F.3d at 429.  An officer cannot be held liable, however, unless there was "a realistic opportunity to intervene and prevent harm." *Wells v. City of Dearborn Heights*, 538 Fed. App'x 631, 640 (6th Cir. 2013).

Fourth Amendment jurisprudence "has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. As to this physical coercion, the question is whether a defendant's force was reasonable "in light of the totality of the circumstances confronting the defendants, and not to the underlying intent or motivation of the defendants." *Williams*, 9 F.4th at 438. Kern's excessive force claim does not rise and fall with the lawfulness of his arrest.  Hence, qualified immunity is appropriate on an excessive force claim where an officer's use of force was objectively reasonable.

Kern's allegation of gratuitous force appears to be based on the way in which he was handcuffed. However, in the context of Sixth Circuit case law, the force used was not excessive. Kern was handcuffed in an appropriate manner. The videos clearly show there was no struggle, and no force was used in handcuffing Kern or placing him in Lewis' vehicle.  Under a totality of the circumstances, placing handcuffs on Kern with his hands behind his back does not rise to the level of a constitutional violation. Further, as there was no struggle or reason to know of gratuitous force, Lewis had no opportunity or means to intervene. This interaction did not last long enough for Lewis to perceive an excessive amount of force, nor for her to intercede to stop it.  *See Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013). Further, the video evidence shows that when Kern did complain – about his wrists – when Wolf was placing the handcuffs on him, Wolf adjusted them himself, and there was no need for Lewis to intervene.

To the extent Kern's failure to intervene claim focuses on his arrest, because it is predicated on First and/or Fourth Amendment claims that should be dismissed based upon the presence of probable cause, the failure to intervene claims should be dismissed as well. *See Craft v. Billingslea*, 459 F.Supp.3d 890, 912 (E.D. Mich. 2020) ("[A]s there was no constitutional violation, the other officers present cannot be held on a failure to intervene claim."). Moreover, these claims are contradicted by Kern's express allegations that Lewis participated in his arrest. (Doc. #1, PageID #62-66, 68, 76-79). Logically, Lewis could not have failed to intervene in her own conduct, and Lewis' actions are better analyzed as part of Kern's Fourth Amendment claims, set forth above. *See Francis v. French*, 2023 U.S. Dist. LEXIS 207467, 2023 WL 8021539 (S.D. Ohio, Nov. 20, 2023) (adopted by *Francis v. French*, 2023 U.S. Dist. LEXIS 220936, 2023 WL 8598441 (S.D. Ohio, Dec. 12, 2023). As a result, Kern's failure to intervene claims should be dismissed.

## 5. Plaintiff's *Monell* Claims Against the City of Cleveland Heights Fail.

Under §1983, there is a claim against any "person" who deprives a federal right while acting under color of state law. In *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 690 (1978), the Supreme Court held a city can be a "person" under §1983. But a city cannot be sued for an injury caused solely by its employee. *Id*. at 694. A city is only responsible for its own illegal acts. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-479 (1978).

Initially, damages cannot be awarded against a governmental entity based on the actions of its officers if they inflicted no constitutional harm. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Here, because no constitutional violation has been shown, Kern's *Monell* claim against Cleveland Heights cannot survive as a matter of law. Otherwise, there are four ways to prove a claim under *Monell*. A plaintiff must show: (1) an illegal official policy or legislative enactment; (2) an official with final decision making authority ratified illegal actions; (3) a policy of

19

inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations. *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020). Kern's claims in this case arise under the second, third and fourth theories. (Doc. #1, pageID #12, 14).

On a single-act theory, plaintiff must demonstrate that a "deliberate choice to follow a course of action is made from among various alternatives by the official . . . responsible for establishing final policy with respect to the subject matter in question." *Pembaur*, 475 U.S. at 483. Moreover, that course of action must be shown to be the moving force behind or cause of the plaintiff's harm. *Pembaur*, 475 U.S. at 484-85. *Pembaur* makes clear that municipal liability "attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id*. at 482. In other words, the official must be "responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Id*. at 483. There are two ways an official acting with final decision-making authority may ratify the unconstitutional acts of its employees. *Id. a*t 537-538. The first is through "affirmative approval of a particular decision made by a subordinate." *Id*. at 538. The second is by "failing to meaningfully investigate and punish allegations of unconstitutional conduct." *Id*.

There is simply no evidence in this case that a final decision maker ratified illegal actions. Kern filed a complaint against Lewis and Wolf with the police department, and that complaint was investigated thoroughly. (Britton dep., Doc. #55, PageID # 1582, 1592, 1596, 1604; Ex. 26, Doc. #51-17, PageID #555-557; Ex. 29, Doc. #51-19, PageID #567-569; Ex. 33, Doc. #51-23, PageID #573-584; Ex. 34, Doc. #51-24, PageID. #585-591). Wolf was subject to discipline for the incident with Kern. (Britton dep., Doc. #55, PageID #1596, 1603-1604; Wolf dep., Doc. #60-1, PageID #1878-1884, 2042-2045; Ex. 35, Doc. #51-25, PageID #592-598). There also exists no evidence that the city ratified any unlawful arrests for obstruction prior to Kern's arrest.

As to Kern's second theory of *Monell* liability, a city may be held liable under §1983 based on inadequate training, "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Inadequate police training may rise to this level where: (1) there are foreseeable consequences that could result from the lack of training; or (2) there is a failure to act in response to repeated complaints of constitutional violations. *Cherrington v. Skeeter*, 344 F.3d 631, 646 (6th Cir. 2003). Of these theories, failure to train is the "most tenuous." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). An alleged policy of inadequate training is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*." *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985) ("The 'policy'. . .that was challenged in *Monell* was a policy that by its terms compelled pregnant employees to take mandatory leaves of absence before such leaves were required for medical reasons; this policy in and of itself violated the constitutional rights of pregnant employees…").

To prevail, Kern must show that (1) Cleveland Heights' training program is inadequate to the tasks officers must perform; (2) the inadequacy results from the city's deliberate indifference; and (3) the inadequacy is closely related to or actually caused Kern's injury. *Canton*, 489 U.S. at 389-91. It is Kern's burden to prove that Cleveland Heights' training was inadequate. *Harvey v. Campbell Cty.*, 453 F.App'x. 557, 566 (6th Cir. 2011). He can only do so if he can prove the city failed to enable officers to properly respond to "usual and recurring situations." *Canton*, 489 U.S. at 390-91.  It is not enough to show that an injury could have been avoided if an officer had better or more training, sufficient to equip him to avoid the particular injury-causing conduct because that claim could be made about almost any encounter resulting in injury. *Canton*, 489 U.S. at 391.

Not only must Kern prove that Cleveland Heights' training was inadequate, he must also show that it resulted from deliberate indifference. There are two ways to do so:  (1) evidence that the city knew of prior instances of unconstitutional conduct such that it was clearly on notice that the training in that area was deficient and likely to cause injury yet ignored a history of abuse; or (2) in a "narrow range" of circumstances, evidence that the city's training failed to address recurring situations presenting an obvious potential for constitutional violation. *Shadrick v. Hopkins Cty.*, 805 F.3d 724, 739 (6th Cir. 2015); *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 287 (6th Cir. 2020). But in those cases, the risk of rights violations must be "so obvious" and inadequate training "so likely" to result in such violations that the city can be fairly described as deliberately indifferent.  *Canton*, 489 U.S. at 390.  Deliberate indifference is a stringent standard of fault, requiring proof that the city disregarded a known or obvious consequence of its action. *Bd. of the Cnty Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). As noted by the Sixth Circuit, "A *Monell* claim that survives summary judgment is exceedingly rare, and rightly so." *Hanson v. Madison County Detention Center*, 736 Fed.Appx. 521, 542 (6th Cir. 2018).

In the case *sub judice*, the city's policy with regard to arrests and constitutional rights is comprehensive. Lexipol, a policy-management company staffed by subject-matter experts, maintains Cleveland Heights' policies. (Briton dep., Doc. #55, PageID #1480-1481). Police officers were distributed the policies, which they acknowledged that they received and reviewed. (Briton dep., Doc. #55, PageID #1483-1484). These policies include topics at issue in this case, including the officers' duties with respect to constitutional rights, training, use of force, handcuffing, standards of conduct, and public recording of law enforcement activities. (Ex. 1, Doc. #51-1, PageID #352-377, 410-412). Lexipol also provides daily training bulletins which the officers are required to complete. (Briton dep., Doc. #55, PageID #1505). The police department

conducts yearly training for all mandated topics, as well as other individualized topics. (Briton dep., Doc. #55, PageID #1486-1487, 1504). The topic of Constitutional rights is covered in basic police academy training as well as under the policies and procedures manual. (Briton dep., Doc. #55, PageID #1489). Specific training on obstruction was presented to the police officers several months prior to September 22, 2022. (Briton dep., Doc. #55, PageID #1494-1495; Williams dep., Doc. #58, PageID #1769). Both Lewis and Wolf have documented training on topic including use of force, de-escalation, legal updates, criminal charges, use of restraints, objective reasonableness, OPATA training, mutual respect, and qualified immunity. (Ex. 2, Doc.#51-4, PageID #426-433; Ex. 8, Doc. #51-10, PageID No. 502-514).

Lastly, Kern cannot show a specific policy or custom of Cleveland Heights which resulted in a constitutional violation. A custom of tolerance is one that is "so widespread, permanent, and well settled as to have the force of law." *Wallace v. Coffee County*, 852 F. App'x 871, 876 (6th Cir. 2021); *Nichols v. Wayne County*, 822 F. App'x 445, 446 (6th Cir. 2020) (describing "custom" for purposes of *Monell* liability as a "well settled course of action deliberately chosen from among various alternatives"); *Frontera v. City of Columbus Div. of Police*, 395 F. App'x 191, 196 (6th Cir. 2010) ("A §1983 plaintiff may establish the existence of a custom by showing that policymaking officials knew about and acquiesced in the practice at issue.").

Here, Kern falls far short of carrying his "heavy burden" of establishing a municipal policy or custom, as he cannot show "existence of a clear and persistent pattern of [illegal activity]" or "notice" on the part of Cleveland Heights. *See Wallace*, 852 F. App'x at 876. For example, there is no statistical evidence of similar complaints against the police department compared to similarly-sized cities with similarly sized police forces. *See Jordan v. City of Detroit*, 557 F.App'x 450, 457 (6th Cir. 2014) (citing *Tuttle*, 471 U.S. at 823-24; *Stewart v. City of Memphis*, 788 F.App'x

341, 347 (6th Cir. 2019) ("Arguing that 'one instance of potential misconduct' is evidence of a clear and persistent pattern is a 'path to municipal liability [that] has been forbidden by the Supreme Court.'" (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 432-33 (6th Cir. 2005))).

### C.     Plaintiff's State Law Claims All Fail

Plaintiff asserts several claims arising under state law, which this Court has jurisdiction over pursuant to 28 U.S.C. §1367. Under federal law, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III."  28 U.S.C. §1367(a). This grant of jurisdiction brings all claims arising from a common nucleus of operative fact before the Court. *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 588 (6th Cir. 2016).

Against Lewis, Kern brings claims for unlawful imprisonment (Count IV), false arrest (Count V), and malicious prosecution (Count VI).  These claims arise from a common nucleus of operative fact relating to Kern's allegations under the U.S. Constitution, and this Court should exercise its supplemental jurisdiction over these claims in the interest of judicial economy and convenience to the parties. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988).

### 1.     Unlawful Imprisonment, False Arrest, and Malicious Prosecution

Under Ohio law, an action for false arrest includes false imprisonment. *Mayes v. Columbus*, 105 Ohio App.3d 728, 746 (10th Dist. 1995). In order to prevail on a claim for false arrest or imprisonment, a plaintiff must demonstrate: "(1) the intentional detention of the person and (2) the unlawfulness of the detention." *Hodges v. Meijer, Inc.*, 129 Ohio App.3d 318 (12th Dist. 1998). *Probable cause for the arrest* in question supplies a complete defense to a claim of false arrest. *McKee v. McCann*, 8th Dist. Cuyahoga No. 104956, 2017-Ohio-7181, ¶18.  Similarly, to establish a claim of malicious prosecution under Ohio law, a plaintiff must prove, "(1) malice

in instituting or continuing the prosecution, (2) *lack of probable cause*, and (3) termination of the prosecution in favor of the accused." *Froehlich v. Ohio Dep't of Mental Health*, 114 Ohio St.3d 286, 288, 2007-Ohio-4161, ¶10 (2007).

As set forth above, because Lewis and Wolf acted with probable cause in charging Kern with obstructing official business, Lewis is entitled to summary judgment on Kern's state claims for unlawful imprisonment, false arrest and malicious prosecution.

Furthermore, with respect to these state law tort claims, Lewis is entitled to statutory immunity pursuant to R.C. §2744.03(A)(6). Individual employees of a political subdivision are immune in their individual capacities from civil actions "to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function[.]" R.C. §2744.03(A). In Ohio, a "'police officer * * * cannot be held personally liable for acts committed while carrying out his or her official duties unless one of the exceptions to immunity is established.'" *Hunt v. Cleveland*, 8th Dist. Cuyahoga No. 103468, 2016-Ohio-3176, ¶25, quoting *Cook v. Cincinnati*, 103 Ohio App.3d 80 (1995). In this regard, R.C. §2744.03(A)(6) provides:

> an employee is immune from liability unless (1) the employee acted outside the scope of his or her employment or official responsibilities, (2) the employee acted with malicious purpose, in bad faith, wantonly, or recklessly, or (3) the Revised Code expressly imposes liability on the employee.

On this record, there is no indication that Lewis acted manifestly outside the scope of her employment or official responsibilities. Therefore, the first exception to statutory immunity does not apply. Likewise, there is no evidence that a section of the Revised Code expressly imposes civil liability on Lewis. As to the second exception, Lewis' actions were neither with malicious purpose, in bad faith, or performed wantonly, or recklessly.

The Ohio Supreme Court has opined that the General Assembly set forth different degrees of care in R.C. §2744.02(B)(1)(a) to impose liability on a political subdivision. *Anderson v. The City of Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, at ¶23. "Wanton" misconduct implies "the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is a great probability that harm will result." *Anderson*, 2012-Ohio-5711 at ¶33. "Malicious purpose" means a willful and intentional design to injure. *Coterel v. Reed*, 2016-Ohio-7411, ¶16, quoting *Rondy v. Richland Newhope Indus., Inc*., 2016-Ohio-118, ¶42 (5ᵗʰ Dist.). "Bad faith" suggests a dishonest purpose and conscious wrongdoing with ulterior motives or ill will. *Id*. "Reckless" conduct "is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct."  *Anderson,* 2012-Ohio-5711 at ¶34. Recklessness requires a showing that the actor knew his conduct "in all probability" would result in injury.  *McDonald v. Lacy*, 2018-Ohio-2753, ¶26.  Even showing recklessness is a "rigorous" threshold to meet. *Id*.

As set forth above, there are simply no facts in the record which rise to the level of a consciousness or indifference on the part of Lewis that her conduct would "in all likelihood" result in injury to Kern.  Rather, he was arrested for obstruction after unlawfully interfering with Lewis' traffic stop. Therefore, reasonable minds could not conclude that Lewis' actions were performed with a malicious purpose, in bad faith, or in a wanton or reckless manner.  Accordingly, Lewis is entitled to immunity under R.C. §2744.03(A)(6)(b).

2. **The City is Immune from Plaintiff's Claims Under R.C. Chapter 2744**

Kern alleges that Cleveland Heights is liable under R.C. §2744.02(B)(1), suggesting the "entirety of the interactions herein were the consequence of Defendant Lewis' negligent operation

of her motor vehicle, as set forth in R.C. 2744.02(B)(1), and she was not, then, responding to an emergency call."  (Doc. #1, PageID #18).

To the extent Kern suggests the city is liable under R.C. §2744.02(B)(1) for his arrest, the Ohio Supreme Court has specifically held that "the exception to immunity in R.C. §2744.02(B)(1) for the negligent operation of a motor vehicle pertains *only to negligence in driving or otherwise causing the vehicle to be moved*." *Doe v. Marlington Local Sch. Dist. Bd*., 122 Ohio St.3d 12, 18 (2009), ¶26.  Pursuant to this reasoning, the language of R.C. §2744.02(B)(1) "is not so expansive that it includes" conduct in the arrest on an individual, regardless of whether that conduct was precipitated by a traffic stop, as alleged in this case.  *See id*.  As a result, the City of Cleveland Heights is immune from Kern's state law claims.

Moreover, R.C. §2744.02(A)(1) exempts political subdivisions from liability for injuries caused by the acts of the political subdivisions or their employees. Specifically, R.C. §2744.02(A)(1) provides that "[e]xcept as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."  Kern has alleged no circumstances to which any exception contained within R.C. §2744.02(B) apply, and has thus creatively suggested that because the incident purportedly began while Lewis was operating her police cruiser, liability will be imputed on the city for any damages.

The problem with Kern's premise is that – even if this approach was accepted, which defendants maintain should not be the case – Lewis was operating her vehicle while responding to a call to duty, negating Kern's claim.  R.C. §2744.02(B)(1) states that political subdivisions "are liable for injury, death, or loss to person or property caused by the negligent operation of any motor

vehicle by their employees when the employees are engaged within the scope of their employment and authority." However, R.C. §2744.02(B)(1)(a) goes on to *grant a full defense to this liability* when "[a] member of a municipal corporation police department or any other police agency was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct***." As a result, a claim for negligence fails against a political subdivision when a police officer is responding to an emergency call or involved in a call to duty.

> An "emergency call" is defined under R.C. §2744.01(A) as:
>
> a call to duty, including, but not limited to, communications from citizens, police dispatches, and personal observations by peace officers of inherently dangerous situations that demand an immediate response on the part of a peace officer.

The Ohio Supreme Court held that an "emergency call" under R.C. §2744.01(A) is not limited to "those calls to duty that concern inherently dangerous situations." *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, ¶11. Instead, "an 'emergency call' * * * involves a situation to which a response by a peace officer is required by the officer's professional obligation." *Id*. at ¶15. The inquiry "turns on whether an officer was acting pursuant to a call to duty at the time of the accident." *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, ¶21. The issue of whether an officer is on an "emergency call" may be determined as a matter of law when there are no triable questions of fact present. *Rutledge v. O'Toole*, 8th Dist. Cuyahoga No. 84843, 2005-Ohio-1010, ¶19; *Howe v. Henry Cty. Comm'rs*., 167 Ohio App.3d 865, 2006-Ohio-3893, ¶13.

As the facts reveal, Lewis was responding to a call to duty, thus barring any allegations of negligence. Lewis initiated the stop of Goodman on suspicion that the Infiniti which he was operating belonged to a suspect who had a warrant out for a felony domestic charge. Lewis had a professional obligation to stop Goodman to determine whether he was the wanted suspect. As it

turns out, Goodman was not the individual Lewis first suspected, but there was another valid reason for stopping Goodman – his license plates were expired, which constituted a traffic violation. As such, Lewis was acting pursuant to a call to duty.

Further, Lewis' actions did not rise to the level of willful or wanton.  In addition to the analysis of wanton conduct set forth in the previous section, the Ohio Supreme Court has defined "willful" as "an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury." *Anderson*, 2012-Ohio-5711 at ¶32. These standards describe conduct that is *more than mere negligence*. In general, "negligence is defined as '[t]he failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation.'" *Cleveland Metro. Bar Ass'n v. Berk*, 132 Ohio St.3d 82, 2012-Ohio-2167, ¶12. "Negligence...does not involve intent or a conscious purpose to do a wrongful act or to omit the performance of a duty." *Tighe v. Diamond*, 149 Ohio St. 520 (1948). Instead, negligent conduct "conveys the idea of inadvertence as distinguished from premeditated or formed intention." *Id*. If reasonable minds could only conclude that the employee's conduct demonstrates, at most, negligence, then summary judgment is appropriate. *See  Argabrite v. Neer,* 149 Ohio St.3d 349, 2016-Ohio-8374, at ¶34 (Lanzinger, J., concurring) (stating R.C. §2744.03(A)(6)(b) means that "employees engaged in a governmental function will not be protected if their actions *exceed* the standard of negligence" (emphasis added)).

The facts herein do not demonstrate willful or wanton conduct.  Lewis did not intentionally deviate from a clear duty or purposefully do wrongful while operating her vehicle, nor did she fail to exercise any care.  Lewis testified that she had activated her lights and siren, which of course prompted Goodman to yield and pull over, albeit abruptly. Kern, who did not yield, almost collided

with Lewis, but this does not elevate Lewis' actions to willful or wanton. Even if her lights or siren were not activated, which defendants deny and there is zero support otherwise, she avoided an accident. Clearly, Lewis' actions do not rise above negligence, if that, while operating her vehicle.

## III.  Conclusion

Defendants Carly Lewis and the City of Cleveland Heights respectfully request that the Court issue an order of summary judgment, dismissing the case against these defendants and assessing costs against the plaintiff.

Respectfully submitted,


*/s/ Gregory A. Beck*
Gregory A. Beck (0018260)
Andrea K. Ziarko (0073755)
BAKER | DUBLIKAR
400 South Main Street
North Canton, Ohio  44720
Telephone:  (330) 499-6000
Telecopier:  (330) 499-6423
Email:  beck@bakerfirm.com
          andreaz@bakerfirm.com

***Counsel for Defendants Carli Lewis and
City of Cleveland Heights***


## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing was served via this Court's electronic filing system on the 31st day of October, 2024, upon all counsel of record.


*/s/ Gregory A. Beck*
Gregory A. Beck (0018260)
Andrea K. Ziarko (0073755)

30