**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO – Cleveland Division**

| | | | |
|---|---|---|---|
| DEMETRIUS KERN | : | Case No. | 1:23-cv-1327 |
|     **Plaintiff** | : | | |
| **v.** | : | | |
| NAFTALI WOLF, et. al. | : | | |
|     **Defendants** | : | | |

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABLITY**
**(LEWIS AND WOLF)**

        Plaintiff, pursuant to FRCP 56, moves this Court for partial summary judgment on the

liability of Lewis and Wolf for certain of his claims.[1]  A memorandum in support is attached

hereto and incorporated by reference herein.

Respectfully submitted,

| | |
|---|---|
| /s/ Christopher Wiest_____ | /s/Thomas B. Bruns_____ |
| Christopher Wiest (Ohio 0077931) | Thomas B. Bruns (Ohio 0051212) |
| Chris Wiest, Atty at Law, PLLC | Bruns, Connell, Vollmar, & Armstrong |
| 50 E. Rivercenter Blvd., Ste. 1280 | 4555 Lake Forrest Dr., Suite 330 |
| Covington, KY 41011 | Cincinnati, OH 45242 |
| 513/257-1895 (v) | 513-312-9890 (v) |
| 859/495-0803 (f) | tbruns@bcvalaw.com |
| chris@cwiestlaw.com | |
| **Attorneys for Plaintiff** | |

**CERTIFICATE OF SERVICE**

I certify that I have served a copy of the foregoing Motion and Memoranda upon all counsel of
record, this 31 day of October, 2024, via filing same with the Court's CM/ECF system.

/s/Christopher Wiest
_____

---

[1] At worst, Plaintiff believes there are genuine issues of material fact as to his claims against the City of
Cleveland Heights and that claim is not addressed in this motion.  Accordingly, Plaintiff will brief those
claims in opposition to the City's anticipated motion for summary judgment.  At worst, Plaintiff also
believes there are genuine issues of material fact on the excessive force Fourth Amendment claims and
will address those in Opposition to Defendants' anticipated motions, and that claim is also not addressed
in this motion.

# TABLE OF CONTENTS

TABLE OF CONTENTS......................................................................................................ii

TABLE OF AUTHORITIES.............................................................................................iii

MEMORANDUM IN SUPPORT OF MOTION.........................................................1

I.     FACTS AS MOSTLY CAPTURED ON VIDEO (in the light most favorable to Defendants)........................................................................................................1

    A.  Background on Officer Carly Lewis and her initial interaction with Mr. Kern prior to Naftali Wolf's arrival on scene on September 22, 2022...............1

    B.  Body camera footage of events occurring after Sgt. Wolf's arrival  and background regarding Sgt Wolf.........................................................................6

    C.  Additional Testimony and post-arrest occurrences..........................................14

II.    LAW AND ARGUMENT.............................................................................................17

    A.  Standard....................................................................................................................17

    B.  Plaintiff is entitled to partial summary judgment on his Fourth Amendment claims against Sgt. Wolf and Ofcr. Lewis..............................................17

    C.  Plaintiff is entitled to partial summary judgment on his First Amendment claims against Sgt. Wolf and Ofcr. Lewis..............................................23

    D.  Defendants are not entitled to qualified immunity.........................................26

    E.  Plaintiff is entitled to partial summary judgment on his state law assault and battery claim against Sgt. Wolf.........................................................................27

    F.  Plaintiff is entitled to partial summary judgment on his state law civil unlawful imprisonment and false arrest claims against Sgt. Wolf and Ofcr. Lewis.......................................................................................................................28

    G.  Plaintiff is entitled to partial summary judgment on his state law malicious prosecution claim against Wolf and Lewis.........................................28

    H.  There is no immunity for Sgt. Wolf or Ofcr. Lewis under state law immunity due to the fact that their actions were made with malicious purpose, in bad faith, or in a wanton or reckless manner.........................................................29

III.    CONCLUSION...........................................................................................................30

CERTIFICATE OF SERVICE.....................................................................................30

# TABLE OF AUTHORITIES

## Cases

*ACLU v. Alvarez*, 679 F.3d 583 (7th Cir. 2012)...............................................................24

*Agnew v. Porter*, 23 Ohio St. 2d 18, 260 N.E.2d 830 (Ohio 1970)...................................20

*Anders v. Cuevas*, 984 F.3d 1166 (6th Cir. 2021)............................................................26

*Anderson v. Holmes*, 2021 U.S. Dist. LEXIS 102401 (MIED 2021)...............................25

*Arnett v. Myers*, 281 F.3d 552 (6th Cir. 2002)................................................................24

*Barnes v. Wright*, 449 F.3d 709 (6th Cir. 2006)..............................................................24

*Bey v. Falk*, 946 F.3d 304 (6th Cir. 2019)......................................................................21

*Bloch v. Ribar*, 156 F.3d 673 (6th Cir. 1998)..................................................................24

*Brinkman v. Drolesbaugh*, 97 Ohio St. 171, 119 N.E. 451 (1918).................................28

*Buddenberg v. Weisdack*, 939 F.3d 732 (6th Cir. 2019)...................................................26

*Bunkley v. City of Detroit*, 902 F.3d 552 (6th Cir. 2018)................................................22

*Burr v. Perkins*, No. 2:04-cv-786, 2006 U.S. Dist. LEXIS 52442 (S.D. Ohio July 31, 2006).........19

*Caruso v. State*, 136 Ohio App.3d 616, 737 N.E.2d 563 (10th Dist. App. 2000).............................29

*Chestnut v. Wallace*, 947 F.3d 1085 (8th Cir. 2020).......................................................24

*City of Houston v. Hill*, 482 U.S. 451 (1987)..................................................................24

*Connick v. Myers*, 461 U.S. 138 (1983)..........................................................................24

*Criss v. Springfield Township*, 56 Ohio St.3d 82, 564 N.E.2d 440 (1990)......................29

*Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807 (6th Cir. 2007)....................24

*Crawford v. Geiger (Crawford II)*, 131 F. Supp. 3d 703 (N.D. Ohio 2015)...................24

*Delaware v. Prouse*, 440 U.S. 648 (1979).......................................................................17

*Dye v. Office of the Racing Comm'n*, 702 F.3d 286 (6th Cir. 2012).........................25, 26

*Fields v. City of Philadelphia*, 862 F.3d 353 (3d Cir. 2017)...........................................24

*Floyd v. City of Detroit*, 518 F.3d 398 (6th Cir. 2008)...............................................22, 25

*Fordyce v. City of Seattle*, 55 F.3d 436 (9th Cir. 1995)..................................................24

*Fritz v. Charter Twp. of Comstock*, 592 F.3d 718 (6th Cir. 2010)..................................23

*Gable v. Lewis*, 201 F.3d 769 (6th Cir. 2000)..................................................................24

*Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011)..................................................................24

*Greene v. Barber*, 310 F.3d 889 (6th Cir. 2002)..............................................................24

*Harasyn v. Normandy Metals, Inc.*, 49 Ohio St.3d 17, 551 N.E.2d 962 (1990)..............................27

*Hart v. Hillsdale Cty.*, 973 F.3d 627 (6th Cir. 2020)........................................................................20

*Holzemer v. City of Memphis*, 621 F.3d 512 (6th Cir. 2010)...........................................................24

*Hope v. Pelzer*, 536 U.S. 730 (2002)................................................................................................26

*Humphrey v. Mabry*, 482 F.3d 840 (6th Cir. 2007).........................................................................21

*In re Sofamor Danek Group, Inc.*, 123 F.3d 394 (6th Cir. 1997)....................................................17

*Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580 (6th Cir. 2008)...............................................28

*Jones v. City of Elyria*, 947 F.3d 905 (6th Cir. 2020)...............................................................19, 20

*Kaylor v. Rankin*, 356 F. Supp. 2d 839 (OHND 2005).............................................................27, 28

*Knox v. Hetrick*, 2009-Ohio-1359, 2009 Ohio App. LEXIS 1141 (8th Dist. 2009).................27, 30

*Kent v. Oakland County*, 810 F.3d 384 (6th Cir. 2016)...................................................................26

*Latits v. Phillips*, 878 F.3d 541 (6th Cir. 2017)...............................................................................17

*Love v. Port Clinton*, 37 Ohio St.3d 98, 524 N.E.2d 166 (1988)....................................................27

*McCurdy v. Montgomery County*, 240 F.3d 512 (6th Cir. 2001)...............................................24, 25

*McRae v. Icon Entertainment Group, Inc.*,
     10th Dist. Franklin No. 08AP-820, 2009-Ohio-5119.................................................................27

*Melanowski v. Judy*, 102 Ohio St. 153, 131 N.E. 360 (Ohio 1921)..................................28, 29, 30

*Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516 (6th Cir. 2008).....................................................25

*Nieves v. Bartlett*, 587 U.S. 391 (2021)...........................................................................................25

*Ouza v. City of Dearborn Heights*, 969 F.3d 265, 279 (6th Cir. 2020)............................................18

*Patrizi v. Huff*, 690 F.3d 459 (6th Cir. 2012)..............................................................................19, 20

*Pearson v. Callahan*, 555 U.S. 223 (2009)......................................................................................26

*Pullin v. City of Canton*, 133 F. Supp. 2d 1045 (N.D. Ohio 2001).................................................19

*Radvansky v. City of Olmsted Falls*, 395 F.3d 291 (6th Cir. 2005)................................................28

*Rogers v. Barbera*, 170 Ohio St. 241, 164 N.E.2d 162 (Ohio 1960)...............................................28

*Rudd v. City of Norton Shores*, 977 F.3d (6th Cir. 2020)...........................................................25, 26

*Saucier v. Katz*, 533 U.S. 194 (2001)...............................................................................................26

*Scott v. Harris*, 550 U.S. 372 (2007)...............................................................................................17

*Singfield v. Akron Metro. Housing Auth.*, 389 F.3d 555 (6th Cir. 2004).........................................26

*Semple v. Hope*, 15 Ohio St. 3d 372, 474 N.E.2d 314 (Ohio 1984)............................................3, 20

*Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000)............................................................24

iv

*Smith v. John Deere*, 83 Ohio App.3d 398, 614 N.E.2d 1148 (1993)................................................27

*Taylor v. Michigan Dep't of Corr.*, 69 F.3d 76 (6th Cir. 1995)......................................................18

*Taylor v. Riojas*, 141 S. Ct. 52 (2020)........................................................................................27

*Teramano v. Teramano*, 6 Ohio St. 2d 117, 216 N.E.2d 375 (Ohio 1966)..............................29, 30

*Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999)........................................................23, 24, 26

*Trussell v. General Motors Corp.*, 53 Ohio St.3d 142, 559 N.E.2d 732 (1990)..............................28

*Turner v. Lieutenant Driver*, 848 F.3d 678 (5th Cir. 2017).............................................................24

*Turner v. Scott*, 119 F.3d 425 (6th Cir. 1997)..........................................................................22, 25

*United States v. Hardnett*, 804 F.2d 353 (6th Cir. 1986)...............................................................17

*United States v. Hensley*, 469 U.S. 221 (1985)............................................................................21

*United States v. Hill*, 195 F.3d 258 (6th Cir. 1999).......................................................................17

*United States v. Lyons*, 687 F.3d 754 (6th Cir. 2012)..............................................................20, 21

*United States v. Sokolow*, 490 U.S. 1 (1989)................................................................................17

*Webb v. United States*, 789 F.3d 647 (6th Cir. 2015).....................................................................17

*Wesley v. Campbell*, 779 F.3d 421 (6th Cir. 2015).......................................................................20

*Williams v. Mehra*, 186 F.3d 685 (6th Cir. 1999).........................................................................17

*Wilson v. Layne*, 526 U.S. 603 (1999).........................................................................................26

*Wright v. City of Euclid*, 962 F.3d 852 (6th Cir. 2020)...........................................................18, 20

**Statutes**

R.C. 2921.31..............................................................................................................................18

R.C. 4511.39(A) ......................................................................................................................3, 20

R.C. 4511.45(B).........................................................................................................................20

**Rules**

FRCP 56........................................................................................................................................i

**Other Authorities**

22 Am. Jur. False Imprisonment § 2-3........................................................................................28

**Statement of the issues to be decided:**

(1) Whether Plaintiff is entitled to partial summary judgment on liability as to his Fourth Amendment claims for false arrest and unlawful detention against Wolf and Lewis?

(2) Whether Plaintiff is entitled to partial summary judgment on liability as to his First Amendment claim against Wolf and Lewis?

(3) Whether Defendants Wolf and Lewis are entitled to qualified immunity when they violated clearly established law?

(4) Whether Plaintiff is entitled to partial summary judgment on liability for his state law claims of assault and battery against Wolf?

(5) Whether Plaintiff is entitled to partial summary judgment on liability for his state law claims of unlawful imprisonment and false arrest against Wolf and Lewis?

(6) Whether Plaintiff is entitled to partial summary judgment on liability for his state law claims of malicious prosecution against Wolf and Lewis?

(7) Whether Plaintiff is entitled to partial summary judgment on liability on his state law claims when he overcomes state immunity due to Defendant Wolf and Lewis' actions taken with a "malicious purpose, in bad faith, or in a wanton or reckless manner" all in contravention of R.C. 2744.03?

**Summary of the argument:** Plaintiff is entitled to partial summary judgment on liability as to each of the foregoing claims.  As demonstrated in this memoranda, Defendants Wolf and Lewis violated clearly established law in their actions against him; moreover, Defendants Wolf and Lewis do not have qualified immunity because of their actions.  Finally, Defendants Wolf and Lewis are liable on the state law claims asserted against them, including because they lose immunity under R.C. 2744.03 for their actions taken with "malicious purpose, in bad faith, or in a wanton or reckless manner" all in contravention of R.C. 2744.03.

## MEMORANDUM IN SUPPORT OF MOTION

### I.  FACTS AS MOSTLY CAPTURED ON VIDEO (in the light most favorable to Defendants)[2]

This case arises out of a mostly caught on video interaction between the Plaintiff, Demetrius Kern ("Mr. Kern") and primarily two City of Cleveland Heights Police Officers, Carly Lewis (Ofcr. Lewis) and Naftali Wolf (Sgt. Wolf), on September 22, 2022.  (Ver. Compl., Doc. 1 at ¶¶ 3, 9-61).

#### A.  Background on Officer Carly Lewis and her initial interaction with Mr. Kern prior to Naftali Wolf's arrival on scene on September 22, 2022

Ofcr. Lewis joined the City of Cleveland Heights ("City") Police Department ("CHPD") on June 3, 2018.  (Depo. Lewis, Doc. 52, at 23).  Although she was provided with the CHPD's procedure manual, she was never trained on it.  (*Id.* at 24).  She also was never trained, at any time in, on clearly established rights, including those at issue in this case.  (*Id.* at 27, 35, 44-47, 72-73, 82).  With the City, her field training documented that she struggled with putting in the information necessary for a criminal complaint.  (*Id.* at 53, 56; Exhibit 9, Doc. 51-11).  Also documented was her difficulty with deciding when to activate lights and sirens.  (*Id.* at 54).

In 2019 in her first formal evaluation, Ofcr. Lewis stated she had a "hope" to learn and understand more policy and procedure, as well as learn city and state laws.  (*Id.* at 61, 67).  But, the City did nothing to follow up on these requests for training.  (*Id.* at 61-62).  She recalls receiving no training on obstruction charges prior to September 22, 2022.  (*Id.* at 63, 72). Despite her lack of training, she knew that in order to determine probable cause for an offense an officer had to know all of the elements of the offense, and there had to be evidence supporting all of those elements.  (*Id.* at 76-78).

---

[2] For the avoidance of doubt, there are additional facts and inferences that will be argued in opposition to Defendants' expected motion.

1

Ofcr. Lewis admits she had to perform her duties consistent with the U.S. Constitution, that she need not comply with an order that is in conflict with federal, state or local law, and that if the legality of an order is in doubt, she had to confer with an authority higher than the supervisor giving the order.  (*Id.* at 84-85).  However, the City never clarified whether she or other officers could or would be disciplined for violating the U.S. Constitution.  (*Id.* at 90).  She admits that City policy no. 423 required her body worn camera be activated in any enforcement or investigative contact (*id.* at 102-103), and that it is impossible to record all of such contact without activating the camera prior to activating her lights and siren.  (*Id.* at 106-107).

Lewis was sued in 2020 or 2021 for an accident involving a police vehicle, and the central dispute in that case was whether she had activated her lights and sirens.  (*Id.* at 74-75).

On September 22, 2022, Lewis was on patrol in the area of Noble Road and Mayfield Road when she saw a silver Infiniti that generally matched a description of a vehicle used by a suspect in a domestic violence incident from the day before.  (*Id.* at 115).  She had no knowledge of the suspect involved and she had not read the incident report.  (*Id.* at 116-117).  The Infiniti was driven by Larelle Goodman, and Ofcr. Lewis ran the license plate and discovered that it came back with an expired license plate sticker, which gave her probable cause to stop the Infiniti.  (*Id.* at 117).

Mayfield Road has five lanes, two lanes running in each direction and a middle turn lane.  (*Id.* at 118).  Ofcr. Lewis was in the left lane, while the Infiniti and Mr. Kern (driving a white Tesla) were in the right curb lane.  (*Id.* at 119-120).[3]  Ofcr. Lewis could not testify as to the

---

[3] Ofcr. Lewis told a different story to Internal Affairs approximately a week after the incident which, in her deposition, she admitted was truthful and she would make no changes today to her statements to Internal Affairs.  (Depo. Lewis, Doc. 52, at 196, 202-203).  Exhibit 17 is her statement to Internal Affairs in which she stated that her vehicle was in between the two lanes when Mr. Goodman slammed on his brakes (Exhibit 17 at 08:47:45, timestamps reflecting those on the body worn cameras), that she then shouted for Mr. Goodman to move forward, and he did so she could get behind him (*id.* at 08:47:55), that

distance between Mr. Kern's vehicle and the Infiniti, but "to her knowledge" there was at least a car length between them.  (Id. at 120-121).

Ofcr. Lewis testified that she activated her lights and siren, but not her turn signal, and then moved into the right lane.  (*Id.* at 119-120).  It took her seconds to move her vehicle into the right lane.  (*Id.* at 121).  Mr. Goodman hit his brakes right away in an "abrupt" manner, and Mr. Kern was behind Ofcr. Lewis' vehicle at that point.  (*Id.* at 124-125).  As a result of Mr. Goodman slamming on his brakes, Ofcr. Lewis slammed on her brakes, forcing Mr. Kern to slam on his brakes.  (*Id.* at 125).  Ofcr. Lewis admits that as she cut over, her vehicle was "very close" to Mr. Kern's vehicle, and she admits that there was almost a collision as a result.  (*Id.* at 126).

Ofcr. Lewis admits that, for a failure to yield to lights and sirens, there must be sufficient time for other drivers to appreciate the fact that lights and sirens are on, and then react to that.  (*Id.* at 128).[4]  And Ofcr. Lewis could not say how long Mr. Kern had to react (*id.* at 128) and

---

he followed all of her directives (*id.* at 08:48:15), that she apologized to Mr. Kern for the way the traffic stop went down because the "placement was bad," and the "timing was bad" (*id.* at 08:48:51), and that Mr. Kern committed no crimes other than Sgt. Wolf alleging obstruction.  (*Id.* at 08:53:44).  Exhibit 17a – which must be opened with a VS player application – contains a follow up interview of Ofcr. Lewis by Internal Affairs where she states that she observed no other crimes by Mr. Kern.  Given Ofcr. Lewis' and Sgt. Wolf's varying testimony, we have only set forth in this motion the facts and inferences in the light most favorable to them, not those in the light most favorable to Mr. Kern.

[4] Ofcr. Lewis drew an erroneous legal conclusion (which the Court should not credit) that Mr. Kern somehow failed to yield to lights and sirens.  (Depo. Lewis, Doc. 52, at 127).  The Ohio Supreme Court holds that a failure to yield violation can only be sustained where the driver who is accused of not yielding should "in the exercise of ordinary care, have heard the siren or seen the flashing lights."  *Semple v. Hope*, 15 Ohio St. 3d 372, 474 N.E.2d 314 (Ohio 1984).  Further, R.C. 4511.45(B) also provides that "this section does not relieve the driver of an emergency vehicle from the duty to drive with due regard for the safety of all persons and property upon the highway," and the driver of an emergency vehicle loses preferential status and the right of way, if another violation of law is committed.  *Agnew v. Porter*, 23 Ohio St. 2d 18, 24, 260 N.E.2d 830 (Ohio 1970).  Without question, Ofcr. Lewis committed a violation of R.C. 4511.39(A) when she failed to use a turn signal while changing lanes, thus losing any privileged status.

could not say how much time he had to stop.  (*Id.* at 130).  However, she admitted Mr. Kern did stop without any accident occurring.  (*Id.* at 131).[5]

In fact,  Ofcr. Lewis testified she did not even see Mr. Kern's vehicle as she made the lane change, because she was focused on Mr. Goodman's vehicle.  (*Id.* at 130).  Consequently, she could not say whether the almost-collision occurred during the lane change, or afterwards, because she did not see Mr. Kern's vehicle.  (*Id.* at 131-132).  She also admitted that because she was not behind Mr. Goodman when she activated lights and sirens, Mr. Goodman did not realize she was initiating a traffic stop of him.  (*Id.* at 131).

From activation of lights and siren, to her lane change, to Mr. Goodman's vehicle stopping (and Mr. Kern's vehicle stopping), it took 30 seconds or less but was "pretty immediately."  (*Id.* at 132-133).

After the vehicles were stopped, video picked up the interaction.  Filed conventionally is cell phone video taken by Mr. Kern, Kern_1119-20220922_185844.mp4,[6] that records him saying to Ofcr. Lewis, as she approaches Mr. Goodman's vehicle, "I want your badge number, you almost ran me off the road."  Ofcr. Lewis admitted this in her testimony and also admitted that Mr. Kern complied with her request to give her "a minute".  (Depo. Lewis, Doc. 52, at 134-135).  Ofcr. Lewis' body camera picks up at 18:58:44, as she is in her vehicle about to exit.

---

[5] Mr. Kern's testimony was that Ofcr. Lewis' lights and siren were not on, she cut him off, and then she pulled up and stopped.  (Depo. Kern, Doc. 54, at 40-41).  She was in the left lane, he was in the right lane and he was going the speed limit.  *Id.* at 134-135.  He had to slam on the brakes such that his brakes were on the floor, he was already in the curb lane and could not pull over further, and he thinks his vehicle skidded.  *Id.* at 136-137.  After he stopped, the other vehicles pulled forward and he parked a few lengths behind Ofcr. Lewis.  *Id.* at 137.  Her siren was not activated until she was fully in front of him.  *Id.* at 137-138.  He wanted her badge number and name in order to file a complaint about her reckless driving because she almost ran him off the road.  *Id.* at 41, 43.  She asked him to wait, so he did.  *Id.*

[6] Both of the .mp4 videos were authenticated with the declaration of Mr. Kern, filed herewith.

4

(Lewis BWC, Exhibit 11, filed conventionally).[7]  At 18:58:49 she exits and we can hear her say "one second" in response to Mr. Kern as she continues to proceed to Mr. Goodman's vehicle.  *Id.*

Informed that Mr. Kern wants her name and badge number, at 18:58:59 to 18:59:11, and at the side of Mr. Goodman's car, she reports to dispatch "81 radio, standby, its going to be on Mayfield, across from the first access road, send me another unit because another party does not know how to yield to lights and sirens, sitting here recording me, saying I almost ran him off the road." *Id.*[8]  Sgt.Wolf can be heard stating "en route." *Id.*  Her testimony was that she understood Mr. Kern asked for her name and badge number to make a formal complaint.  (Depo. Lewis, Doc. 52, at 141-142).  She also testified she knew citizens have the right to record police in the performance of their duties.  (*Id.* at 110-111).

Ofcr. Lewis then interacts with Mr. Goodman, asking if he is okay, introduces herself, tells him that the reason for the stop was that his plates were expired which isn't a bid deal, and then asks if Mr. Goodman knows "that guy" behind her.  Exhibit 11 at 18:59:14.  Mr. Goodman responds that he was trying to hurry up and move over, and Ofcr. Lewis tells him "you are good." *Id.* at 18:59:25.  She then asks Mr. Goodman for his driver's license and if he has it with him. *Id.* at 18:59:35.  Mr. Goodman explains that he bought the car from his dad, with his title in his glovebox. *Id.* at 18:59:46.  He asks to retrieve the title to show her, she asks if he has any weapons, and Mr. Goodman explains that he is armed and is licensed to carry. *Id.* at 18:59:56.

---

[7] All timestamps of body camera footage refer to the timestamps within the footage.  We have observed that not all cameras pick up the entirety of the events.  And, it appears, there is a two second difference between Wolf's body camera footage and Lewis' body camera footage (it appears at times Wolf's body camera footage is two seconds behind Lewis' footage).  For body camera footage, we cite for each exhibit whose camera the footage comes from the first time it is cited, the Exhibit number and the timestamp, and then the exhibit and the timestamp for subsequent citations.

[8] This can also be heard via the radio traffic recordings, Exhibit 16, though, as Lewis testified, all radio traffic was cut and pasted together, and thus the radio traffic does not reflect large time gaps between calls.  (Depo. Lewis, Doc.. 52, at 206-207).

She asks if he has a firearm, and he explains it is in the center console.  *Id.* at 18:59:58.  He reaches into the glovebox and hands her the title.  *Id.* at 19:00:15.  She then calls in Mr. Goodman's plate to dispatch.  *Id.* at 19:00:20.

Mr. Kern, meanwhile, had been standing back, on the sidewalk, away from Ofcr. Lewis, for more than a minute.  *Id.*; Kern_1120-20220922_185903.mp4, filed conventionally.  Ofcr. Lewis admits that Mr. Kern did not prevent her from talking to Mr. Goodman, but somehow "delayed it," though he complied with her directive to stand back and all other directives that she gave him.  (Depo. Lewis, Doc. 52, at 140-141).  She admits she had the scene under control prior to backup arriving.  *Id.* at 145.

Ofcr. Lewis then approached Mr. Kern and apologized to him.  Exhibit 11 at 19:00:37.  She claimed that she had her lights and siren on, but Mr. Kern stated that he did not hear anything.  *Id.* at 19:00:48. Mr. Kern then stated that wasn't going to argue with her.  *Id.* at 19:01:22.  He also tells Ofcr. Lewis that if you do something wrong, just say I'm sorry.  *Id.* at 19:01:33.  At 19:01:35 of her body camera, Sgt. Wolf arrives.  *Id.*

### B. Body camera footage of events occurring after Sgt. Wolf's arrival  and background regarding Sgt Wolf

Sgt. Wolf joined the Cleveland Heights Police Department in 2012.  (Depo. Wolf, Doc. 60-1 at 87).  Prior to that, he was a deputy for the Village of Bratenahl where he was counseled for being rude (but could not state how many times).  *Id.* at 81, 85, 86.  He testified he had some training on constitutional rights at the police academy in 2003-2004, but could not recall any specifics of that training.  *Id.* at 87.  He also had no recollection of such training during field training.  *Id.* at 88-89.  Despite this, his testimony was that most people in the department do not know the law better than him, specifically with respect to obstruction charges.  *Id.* at 57-58.  He remembers being trained on obstruction charges in field training that if someone doesn't identify

6

themselves in connection with any legal traffic stop, then to charge them with obstruction.  *Id.* at 97.  And that this was the practice of the CHPD.  *Id.* at 97-98.

Sgt. Wolf knew long before September 22, 2022, that he could not charge obstruction for simply failing to identify, but rather there had to be reasonable articulable suspicion someone committed a crime.  *Id.* at 98.  In 2021 he tried to get clarification from the city prosecutor about when to charge obstruction for failing to identify, but she told him to figure it out, so he read the statute.  *Id.* at 99-100.  Prior to September 22, 2022, he knew the elements of an obstruction charge.  *Id.* at 100.  And he admitted he knew it was a clearly established right to refuse to identify oneself if there was no probable cause some other crime was committed.  *Id.* at 106-107.

He admitted he knew he had to have probable cause before making an arrest, requiring evidence on every element, and he knew that this was a clearly established right.  *Id.* at 95-96, 105.  He admitted he knew all facts to support an arrest had to be known at the moment he made the arrest.  *Id.* at 113.  He admitted he knew that no use of force, including handcuffing, could be used to effect an illegal arrest.  *Id.* at 105-106.  He also admitted he knew it was a clearly established right to complain about law enforcement, and he could not retaliate against someone for doing so.  *Id.* at 106.  Sgt. Wolf also agreed he had no authority to detain someone just because they wanted to be, if they committed no crime.  *Id.* at 270.

Sgt. Wolf was promoted to sergeant on June 28, 2021.  Id. at 143.  His supervisor training did not include anything on constitutional rights.  Id. at 144-145.  He admitted that he previously had an interaction with a black female witness at a scene of a robbery arrest that he would send her a ticket for obstructing.  Id. at 152-156.  He was not aware that this resulted in a complaint in 2020 and a sustained finding of misconduct.  Id. at 146-151, Exhibit 8, Doc. 51-8.  And a similar incident occurred in 2021.  Doc. 21-9.

7

<u>Body camera footage after Sgt. Wolf arrives on scene</u>

Sgt Wolf's body camera footage begins at 19:01:00 (of his camera).  (Wolf BWC, Exhibit 12, at 19:01:00).  At approximately 19:01:53 he walks up to Mr. Kern and the first interaction occurs in which Sgt. Wolf immediately accuses Mr. Kern by stating "well you don't pull up behind an officer on a traffic stop."  Id. at 19:01:53.  Mr. Kern responds: "you don't even know what's going on," to which Sgt. Wolf replies "you're right, I don't."  *Id.*  Mr. Kern responds "so why are you saying that?"  *Id.*  And Sgt. Wolf replies: "because I am here and what you are doing right now is against the law."  *Id.* at 19:01:58.  Mr. Kern then responds "she almost ran me off the road."  *Id.*  And Sgt. Wolf replies: "then you should have pulled over for lights and sirens, she said on the radio that you didn't yield and its on dash cam I'm assuming."  *Id.* at 19:02:05.  Mr. Kern tells him he is wrong, saying "that's the disconnect man."  *Id.* at 19:02:05.  Sgt. Wolf then says "I'll tell you what, let her finish her stop, then we can sit down and talk like adults."  *Id.* at 19:02:07.  Ofcr. Lewis then responds, "we're good, I'm going to let him go."  *Id.* at 19:02:09.

At this point, Ofcr. Lewis asks Mr. Kern for his last name.  *Id.* at 19:02:11; Exhibit 11 at 19:02:13.  Mr. Kern wants to know why she needs his last name.  Exhibit 12 at 19:02:11.  Ofcr. Lewis responds that she is "asking who I am talking to" and "you asked me my last name."  *Id.* at 19.02.13.  Sgt. Wolf then states: "well now you are going to be under arrest, what you are doing is illegal, I can charge you with interfering with a traffic stop."  *Id.* at 19:02:22; Exhibit 11 at 19:02:24.  Ofcr. Lewis again asks Mr. Kern for his last name, to which Mr. Kern responds "Why?"  *Id.*  Ofcr. Lewis responds: "because I am conducting business with you now."  *Id.* at 19:02.29.  Mr. Kern then asks: "Am I being detained, or am I free to go," to which Sgt. Wolf responds: "If you want to be."  Exhibit 12 at 19:02:26; Exhibit 11 at 19.02.29.  Mr. Kern then

states "that's not how this works, what is your RAS, what is your reasonable articulable

suspicion of my crime?"  Exhibit 12 at 19:02:35.  Sgt. Wolf then states: "I will explain it to you.

Doing what you are doing right now…"  *Id.*  Mr. Kern then states "No, she almost ran me off the

road." *Id.* at 19:02:40.

 Sgt. Wolf responds: "Again, you didn't yield to lights and sirens." *Id.*  Mr. Kern then

states "she was next to me and stopped and almost ran me off the fucking road, what are you

talking about." *Id.* at 19:02.47.  Sgt. Wolf responds: "Okay, listen to me, you asked my

reasonable articulable suspicion, its probable cause." *Id.* at 19:02:50.  Mr. Kern responds: "I'm

not under arrest, if you arrest me you are violating my rights." *Id.* at 19:02:52.  Sgt. Wolf

responds: "I don't want to arrest you, we have to id you." *Id.* at 19:02:54.  Mr. Kern responds:

"you are violating my rights, is that what you want to do." *Id.* at 19:02:55.  Sgt. Wolf responds:

"we have to id you." *Id.* at 19:02:56.  Mr. Kern responds: "No you don't," and Sgt. Wolf repeats

"yes we do." *Id.* at 19:02:57.  Mr. Kern then states that "OK, I'm going to videotape this," and

Sgt. Wolf responds "OK, we have you on camera too." *Id.* at 19:03:00.  Mr. Kern then states

"I'm going to call, they can come get my car, you are violating my rights." *Id.* at 19:03:02.  And

Sgt. Wolf responds "who is getting what car?" *Id.* at 19:03:03.

 Sgt. Wolf then makes a radio call and states there is a male who is obstructing by failing

to identify himself. *Id.* at 19:03:06-10.  Mr. Kern responds "No I'm not, she almost ran me off

the road." *Id.*  Sgt. Wolf responds, "so I'll take a report on it, but you need to id." *Id.* at

19:03:12.

 Meanwhile, at 19:02:35 of her camera footage, Ofcr. Lewis walks back to Mr. Goodman,

finishes her stop of him, and releases him at 19:03:06 of her body camera.  Exhibit 11 at

19:02:35-19:03:06.  Ofcr. Lewis testified that at that point, all business involving Mr. Goodman was concluded.  (Depo. Lewis, Doc. 52, at 143-144).

Mr. Kern responds to Sgt. Wolf's statement about "taking a report on it" by stating "No, I'm dealing with her [Ofcr. Lewis]."  Exhibit 12 at 19:03:15.  Ofcr. Lewis then states to Mr. Kern "talk to me."  *Id.*  Mr. Kern then states to Sgt. Wolf "what the hell is wrong with you man." *Id.* at 19:03:16.  Sgt. Wolf then steps back and calls in Mr. Kern's vehicle's license plate.  *Id.* at 19:03:16 to 19:03:43.

Ofcr. Lewis is interacting with Mr. Kern and asks him to identify himself so that she can let her dispatcher know who she is dealing with.  Exhibit 11 at 19:03:54; Exhibit 12 at 19:03:52. Ofcr. Lewis then states **"if you don't identify yourself, that is obstruction."** Exhibit 11 at 19:03:54.  Mr. Kern (accurately) states "obstruction is a secondary crime, what crime did I commit?"  *Id.* at 19:04:00; Exhibit 12 at 19:04:02.  Ofcr. Lewis responds: "**there is no crime, but I want to identify you**."  Exhibit 11 at 19:04:01; Exhibit 12 19:04:03.

Mr. Kern then states "so, if there is no crime, I don't need to identify."  Exhibit 11 at 19:04:04; Exhibit 12 19:04:07.  Sgt. Wolf raises his voice and says "no look man, I'm sorry, I'm going to have to arrest you if you don't identify yourself."  Exhibit 11 at 19:04:11; Exhibit 12 19:04:13.  Mr. Kern responds that "she just said there is no crime."  Exhibit 11 at 19:04:13; Exhibit 12 19:04:13.  Sgt. Wolf responds "[i]t is a crime, obstructing is a crime."  *Id.*  Mr. Kern responds "what crime?"  Id.  And Wolf responds "you have to legally identify yourself to us." Exhibit 11 at 19:04:17; Exhibit 12 19:04:17.  Mr. Kern responds "she almost ran me off the road."  *Id.*

Sgt. Wolf then responds: "well, I still have to identify you."  Exhibit 11 at 19:04:20; Exhibit 12 19:04:20.  Mr. Kern responds "no you don't," and Sgt. Wolf replies "yes I do."  *Id.* at

19:04:22.  Mr. Kern then states "Okay, well I'm going to call someone to get my car then you can arrest me."  *Id.* at 19:04:24.  Sgt. Wolf then states "okay, turn around, put your hands behind your back."  *Id.* at 19:04:25.  Mr. Kern states "I didn't do anything," and Sgt. Wolf responds "OK, turn around put your hands behind your back."  *Id.* at 19:04:27.

Ofcr. Lewis then states "listen, all you have to do is [unintelligible]."  Exhibit 11 at 19:04:30.  And Mr. Kern states "I don't have my id with me."  *Id.*  Sgt. Wolf responds: "so just give me your name and your date of birth, that's all we ask for."  Exhibit 12 at 19:04:33.  Ofcr. Lewis asks what his "soc" is.  Exhibit 11 at 19:04:30.  Mr. Kern then states "for what?"  Exhibit 11 at 19:04:34.  And then Mr. Kern is placed in handcuffs and arrested by Sgt. Wolf.  Exhibit 12 at 19:04:33; Exhibit 11 at 19:04:33.

Sgt. Wolf then states "look, I'm not doing this, I'm not doing this."  Exhibit 12 at 19:04:37.  Ofcr. Lewis states to Mr. Kern "because I need to let me dispatcher know, its not a big deal."  Exhibit 11 at 19:04:38.  Mr. Kern responds "but you almost ran me off the road."  *Id.* at 19:04:38.  Ofcr. Lewis responds "we just had an adult conversation," (*id.* at 19:04:42), and then says "just give me your social so we can let you go."  *Id.* at 19:04:47.  Mr. Kern then provides his social security number.  *Id.*  Sgt. Wolf then responds "it doesn't matter, you're in handcuffs so I have to."  *Id.* at 19:04:50; Exhibit 12 at 19:04:52.

Mr. Kern then asks "you going to break my wrists?"  Exhibit 11 at 19:04:53.  Sgt. Wolf then states "stop resisting," and Mr. Kern responds "I am not resisting."  *Id.* at 19:04:57.  Mr. Kern again reiterates that Ofcr. Lewis "almost ran me off the road."  Id. at 19:05:04.  To which Sgt. Wolf responds "okay, we're dealing with it, but you can't just stop in the middle of someone's traffic stop."  Id. at 19:05:07.  Mr. Kern again states "I didn't stop on her traffic stop, I pulled over because I almost hit this pole."  *Id.*. at 19:05:10.

Sgt. Wolf then pulls out Mr. Kern's wallet.  *Id.* at 19:05:15.  Mr. Kern is asked his last name by Ofcr. Lewis and he provides it. Id. at 19:05:17.  Mr. Kern then turns to Ofcr. Lewis and says "you know what happened, why are you letting him do this?"  *Id.* at 19:05:21.  Ofcr. Lewis' response is: "Listen, he's a sergeant." Id. at 19:05:22.  Mr. Kern then says "he is violating my rights."  *Id.*  And Ofcr. Lewis says: "he is not, you didn't identify yourself."  *Id.* at 19:05:25. Sgt. Wolf then tells Mr. Kern to have a seat, Mr. Kern reiterates that his rights are being violated, and Sgt. Wolf states Mr. Kern somehow interfered with a traffic stop.  *Id.* at 19:05:29-19:05:31. Mr. Kern asks how he interfered, and Sgt. Wolf responds that he could have pulled up, waited and called, to which Mr. Kern responds that he did wait when Ofcr. Lewis told him to wait.  *Id.* at 19:05:37.  Sgt. Wolf then states that Mr. Kern was out talking to her.  *Id.* at 19:05:38.  Sgt. Wolf again tells Mr. Kern to have a seat, and then says "[d]ude, have a seat, I'm not putting up with your bullshit, okay, have a seat."  *Id.* at 19:05:48.

Sgt. Wolf and Ofcr. Lewis then have a conversation in which Sgt. Wolf asks if Mr. Kern's license is valid, Ofcr. Lewis responds she does not know, and only then does Ofcr. Lewis explain to Sgt. Wolf, for the first time, what happened.  *Id.* at 19:06:00-19:06:19.  Sgt. Wolf suggests citing Mr. Kern for failing to yield, but Ofcr. Lewis makes clear that she doesn't need to give him a ticket for that.  *Id.* at 19:06:19-19:06:44.  Ofcr. Lewis then states she is good with letting Mr. Kern go, but Sgt. Wolf says "we can't, he's in handcuffs."  *Id.*  Sgt. Wolf then reiterates that Mr. Kern obstructed by refusing to identify himself, and he was not going to sit and argue with someone "for an hour" and Mr. Kern could come to court.  *Id.* at 19:06:59.  Sgt. Wolf then directs Ofcr. Lewis to charge Mr. Kern with obstruction for failing to identify himself. *Id.* at 19:07:01.

12

Ofcr. Lewis then interacts again with Mr. Kern, opens the door, and Mr. Kern tells Ofcr. Lewis that she knows he did not obstruct, but she responds that Sgt. Wolf is the boss. *Id.* at 19:07:21. Mr. Kern states that he followed all of Ofcr. Lewis' directives and she acknowledges that he did so. *Id.* at 19:08:10. Ofcr. Lewis again tells Sgt.Wolf that she is fine not charging Mr. Kern, but Sgt. Wolf responds that "when in police work do we allow people not to identify themselves on a legal stop." *Id.* at 19:08:33.

Officer Webster shows up and discusses with Sgt. Wolf what happened, and Sgt. Wolf responds that Mr. Kern "refused to identify himself, that guy is in the back of that car now." Exhibit 12 at 19:09:09. Sgt. Wolf then admits that, with respect to the initial stop and interaction, **he doesn't know what happened**. Id. at 19:09:13. Later, at 19:13:44-19:13:53, Sgt. Wolf again states he doesn't know what happened with the stop, but Ofcr. Lewis tried to identify Mr. Kern, Mr. Kern refused, and then Sgt. Wolf was "doing this." *Id.*

Ofcr. Lewis then apologizes to Mr. Kern, tells him everything is on body camera, reiterates that Sgt. Wolf told her to charge Mr. Kern, and that the City has a good prosecutor and he will get a court date and they will work through this. Exhibit 11 at 19:09:12-19:10:43. She reiterates that she is doing what she was told. *Id.* at 19:11:15. Mr. Kern then made complaints about his arm being popped out. *Id.* at 19:11:49. Ofcr. Lewis asks for the charge from Sgt. Wolf. *Id.* at 19:12:11. And Mr. Kern again complains about his shoulder, with Ofcr. Lewis admitting that she didn't see what Sgt. Wolf did to Mr. Kern. *Id.* at 19:13:16. Mr. Kern then indicates to Ofcr. Lewis that he stood back, which Ofcr. Lewis acknowledges, and he asks how he was interfering with her stop, to which Lewis responds: "that's not what he's [Wolf's] saying." *Id.* at 19:14:13. Ofcr. Lewis then asks Sgt. Wolf again what verbiage to put on the citation, and asks him if it's "when asked to identify himself he refused," to which Sgt. Wolf

responds "yeah." *Id.* at 19:16:45-19:17:16.  Sgt. Wolf then asks Ofcr. Lewis again "just for my own…" [what happened] and she provides another narrative. *Id.* at 19:17:18-19:18:47.  Mr. Kern is cited, then released at 19:24:18.

### C.  Additional Testimony and post-arrest occurrences

Sgt. Wolf admits he has no personal knowledge that Mr. Kern failed to yield to lights and sirens.  (Depo. Wolf, Doc. 60-1, at 125, 187, 188, 189).  And he never asked Ofcr. Lewis or explored the basis for any such allegation. *Id.*  Ofcr. Lewis did not want to charge Mr. Kern with obstruction, but Sgt. Wolf ordered her to do so. *Id.* at 126-127.  He gave her the order because it "took it out of her hands." *Id.* at 128.  And when Mr. Kern asked at the scene why he was being charged, Sgt. Wolf truthfully answered. *Id.* at 128.  Further, every reason Sgt. Wolf had to charge Mr. Kern was on body camera. *Id.* at 129.  And, while he could not prohibit a member of the public from recording law enforcement, when Sgt. Wolf arrived on scene, that is what Mr. Kern was doing. *Id.* at 130-131.  Sgt. Wolf also admitted that Mr. Kern was saying that Ofcr. Lewis had cut him off and almost caused an accident, and that was why Mr. Kern had stopped. *Id.* at 132-133.

Sgt. Wolf testified that he knew he needed to do a thorough investigation of all the facts prior to arresting someone. *Id.* at 140.  Here, Sgt. Wolf admitted he had no personal knowledge that Mr. Kern purposely or had the intent to obstruct or delay Ofcr. Lewis' traffic stop, and he never obtained evidence of Mr. Kern's purpose. *Id.* at 169, 170, 177.  Sgt. Wolf's sole basis for the obstruction charge was him showing up, seeing Mr. Goodman's vehicle stopped, and seeing Ofcr. Lewis and Mr. Kern arguing about whether her lights and sirens were activated (Kern said they were not; Lewis said they were). *Id.* at 173-175.  The gist of it was that Ofcr. Lewis was not dealing with her suspect, Mr. Goodman. *Id.* at 175.  Sgt. Wolfe admitted he has no evidence that

14

Ofcr. Lewis wasn't just standing there discussing with Mr. Kern of her own free will.  *Id.* at 177-178.  Sgt. Wolf never asked.  *Id.* at 179.  And, Sgt. Wolf admitted he had no basis to dispute that Mr. Kern had previously been on the sidewalk waiting and following Ofcr. Lewis' instructions. *Id.*

Sgt. Wolf suggested that Mr. Kern could have been charged with impeding the flow of traffic because of his car being stopped, but he admitted he did not know if Ofcr. Lewis directed Mr. Kern to move his vehicle or had permission to have his car there by Ofcr. Lewis.  *Id*. at 182, 183, 185.  And he admitted he had no evidence that Mr. Kern's vehicle impeded traffic, especially in light of the fact that Ofcr. Lewis' vehicle was there and traffic had to flow around it in all events.  *Id.* at 182-185.[9]

Sgt. Wolf also suggested that Mr. Kern violated R.C. 4511.70 (opening door into traffic), but he had no evidence as to whether it was reasonably safe for Mr. Kern to open his door when he did so after he stopped his car to avoid striking Ofcr. Lewis' vehicle.  *Id.* at 186.

Ultimately, Sgt. Wolf admitted he had no basis to dispute Ofcr. Lewis' statement at the scene, prior to his arrest of Mr. Kern, that Mr. Kern committed no crimes.  *Id.* at 189-190.  Sgt. Wolf admitted telling Internal Affairs that he heard Ofcr. Lewis state at the scene that Mr. Kern committed no crimes, but he nevertheless demanded Mr. Kern identify himself.  *Id.* at 197-198. And he admitted he told internal affairs that the only crime he thought Mr. Kern committed was obstructing for failing to identify himself.  *Id.* at 200.  He also had no basis to dispute Ofcr.

---

[9] "Persons may not be punished for speaking boisterous, rude or insulting words, even with the intent to annoy another, unless the words by their very utterance inflict injury or are likely to provoke the average person to an immediate retaliatory breach of the peace." *Cincinnati v. Karlan*, 39 Ohio St. 2d 107, 314 N.E.2d 162, paragraph one of the syllabus (Ohio 1974).  And that applies to statements at the scene of a traffic stop.  *State v. Planchak*, 1997 Ohio App. LEXIS 3493 (1st Dist. App. 1997).

Lewis' statement to Internal Affairs that Mr. Kern was not interfering with her traffic stop. *Id.* at 201-202. And he admitted that he "jumped the gun" in arresting Mr. Kern. *Id.* at 221-222.

After the incident, with Mr. Kern, Sgt. Wolf met Ofcr. Lewis in the parking lot of the Park Synagogue. (Depo. Wolf, Doc. 60-1 at 37-38, 41). He could not state why he did not have this conversation with her at the scene. *Id.* at 44, 45. He never turned on his body worn camera for this conversation, and he was aware Mr. Kern, while at the scene, threatened a lawsuit. *Id.* at 45-46. Sgt. Wolf also spoke with Ofcr. Lewis at the station about the incident, but could not recall what was said. *Id.* at 49-50.

Ofcr. Lewis testified that the ordinance (and statute) of obstruction requires a purpose to prevent, obstruct, or delay the performance of an official act, but she had no idea what Mr. Kern's purpose was. (Depo. Lewis, Doc. 52, at 188). And, other than what he said verbally, he did no act to hamper or impede her investigation. *Id.* at 187. She thinks that perhaps taking her eyes off Mr. Goodman's vehicle for a second to tell Mr. Kern "one second" delayed her interaction with Mr. Goodman for a second. *Id.* at 214. But she also acknowledged that Mr. Kern followed her directives and waited for her to finish with Mr. Goodman. *Id.* at 214-215.

Even though Mr. Kern asked, prior to his arrest, if he was free to go and whether he was being detained, Ofcr. Lewis never told him he was free to go. *Id.* at 219-220. Sgt. Wolf never asked her "what happened" prior to arresting Mr. Kern, and Ofcr. Lewis never told Sgt. Wolf not to arrest Mr. Kern. *Id.* at 227. In writing the citation, Ofcr. Lewis knew that body cameras did not lie, and she knew a court would review it, and it could be thrown out. *Id.* at 232. She thought Mr. Kern's frustrations were justified. *Id.* at 235. She admitted that Mr. Kern was never stopped for a traffic violation. *Id.* at 246. And she did not disagree with the decision to dismiss the charge against Mr. Kern. *Id.* at 255. In fact, she testified that while she did not agree with

16

the decision to arrest or charge Mr. Kern, and while she could have called the shift lieutenant, she did not do so; she had enough time to intervene, but chose not to do so. *Id.* at 151-154.

## II.    LAW AND ARGUMENT

### A.  Standard

In considering a motion for summary judgment, the court must view the factual evidence in favor of the non-moving party and draw all reasonable inferences in the non-moving party's favor. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc).  But the Court must not credit any testimony that is "blatantly contradicted" by video testimony. *Scott v. Harris*, 550 U.S. 372, 380 (2007).  Rather, the Court should view "the facts in the light depicted by the video tape." *Id.* at 380-381.  However, "[t]o the extent that facts shown in videos can be interpreted in multiple ways or if videos do not show all relevant facts, such facts should be viewed in the light most favorable to the non-moving party." *Latits v. Phillips*, 878 F.3d 541, 547 (6th Cir. 2017).  And, Courts do not accept as true "the bare assertion of legal conclusions," *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (internal quotation omitted), nor do courts "accept as true legal conclusions or unwarranted factual inferences." *Id.*

### B.  Plaintiff is entitled to partial summary judgment on his Fourth Amendment claims against Sgt. Wolf and Ofcr. Lewis

Fourth Amendment detention: Ofcr. Lewis and Sgt. Wolf unlawfully detained Mr. Kern in violation of the Fourth Amendment when Mr. Kern asked if he was being detained or was free to go, including by Ofcr. Lewis failing to respond to his inquiry as to whether he was free to go (and Sgt. Wolf stating "if you want  to be" in response to whether Mr. Kern was being detained). *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *United States v. Hardnett*, 804 F.2d 353, 356 (6th Cir. 1986); *United States v. Hill*, 195 F.3d 258, 267 (6th Cir. 1999).  This violated the foregoing clearly established law.

Fourth Amendment false arrest: both Sgt. Wolf and Ofcr. Lewis were involved in making the arrest, because even though the physical act of placing Mr. Kern in handcuffs initially was done by Sgt. Wolf, Ofcr. Lewis verbally took the position along with Sgt. Wolf that Mr. Kern somehow was guilty of obstruction merely by not identifying himself (Lewis Camera at 5:33), and Ofcr. Lewis and Sgt. Wolf kept Mr. Kern detained for more than 15 minutes in her police cruiser, including when Ofcr. Lewis opened the door to speak with him and then closed it again to ensure he was kept in custody.   That is more than sufficient to hold both of them individually liable for the false arrest. *Taylor v. Michigan Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995) (plaintiff must allege facts showing that the defendant participated, condoned, encouraged, or knowingly acquiesced in alleged misconduct to establish liability); *Webb v. United States*, 789 F.3d 647, 660 (6th Cir. 2015) ("Within the meaning of the first element, 'the term 'participated' should be construed within the context of tort causation principles. Its meaning is akin to 'aided.' To be liable for 'participating' in the decision to prosecute, the officer must participate in a way that aids in the decision...").

A warrantless arrest is reasonable under the Fourth Amendment only where there is probable cause to believe that the suspect committed a criminal offense.  *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 279 (6th Cir. 2020).  Clearly established law left no doubt that merely refusing to identify is plainly insufficient to satisfy the crime of obstruction, and Ofcr. Lewis and Sgt. Wolf lacked probable cause under an obstruction[10] charge (just as Mr. Kern's photographing and speaking/arguing with the officers was clearly protected conduct), particularly where the evidence is clear that Mr. Kern complied with directives of Ofcr. Lewis to

---

[10] R.C. 2921.31 provides "(A) No person, without privilege to do so and **with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity**, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."

stand back until she was ready to speak with him, and he did so for several minutes. *Wright v. City of Euclid*, 962 F.3d 852, 873 (6th Cir. 2020) ("there must be some substantial stoppage of the officer's progress" and "statute also requires an affirmative act that interrupts police business; '[a] person may not be convicted of the offense simply by doing nothing,'" and "[w]ith respect to the element of 'purpose to obstruct,' '[a] person acts purposely when it is his specific intention to cause a certain result.'"); *Jones v. City of Elyria*, 947 F.3d 905, 915 (6th Cir. 2020) ("refusing to comply with an officer's request is not enough"); *Patrizi v. Huff*, 690 F.3d 459, 464 (6th Cir. 2012)[11] (advising someone not to identify themselves in response to an officer's request is not sufficient, nor are actions that do not actually prevent an officer from completing their duties, and complying with officer demands to step back did not establish a violation, further, "[w]here a defendant's conduct is limited to truthful speech, one cannot reasonably infer intent to obstruct official business unless the circumstantial evidence clearly demonstrates intent," and "such circumstantial evidence is lacking where an individual's conduct was 'limited to arguing with the police officers,' id.).

Sgt. Wolf and Ofcr. Lewis admitted they had no evidence of Mr. Kern's intentions, and no evidence of purpose to meet the statutory requirements of obstruction.  (Depo. Wolf, Doc. 60-1, at 169, 170, 177; Depo. Lewis, Doc. 52, at 188).  And other than what he said verbally, asking for her name and badge number, Mr. Kern did no act to hamper or impede her investigation. *Id.* at 187.  Rather, Ofcr. Lewis thinks/speculates that perhaps taking her eyes off Mr. Goodman's

---

[11] *Patrizi* cited favorably two district court decisions, *Pullin v. City of Canton*, 133 F. Supp. 2d 1045, 1052 (N.D. Ohio 2001) (upholding denial of summary judgment on qualified immunity grounds where Pullin approached the traffic stop only to offer assistance to the individual involved and began to leave the scene when instructed to do so by the police); and *Burr v. Perkins*, No. 2:04-cv-786, 2006 U.S. Dist. LEXIS 52442, 2006 WL 2165701, at *6 (S.D. Ohio July 31, 2006) (unpublished opinion) (concluding that under clearly established law Burr's interruption of the police investigation did not amount to obstruction where Burr approached only to help facilitate the conversation and backed away when instructed to do so by the police).

vehicle for a second to tell Mr. Kern "one second" delayed her interaction with Mr. Goodman for a second. *Id.* at 214.

Ofcr. Lewis and Sgt. Wolf both testified that the ordinance (and statute) regarding obstruction of official business requires a purpose to prevent, obstruct, or delay the performance of an official act, and Ofcr. Lewis had no idea what Mr. Kern's purpose was. (Depo. Lewis, Doc. 52, at 188; Doc. 51-14, ordinance and statute). And, Ofcr. Lewis admitted that Mr. Kern followed her directives and waited for her to finish with Mr. Goodman. *Id.* at 214-215. Even construing this evidence in a light most favorable to Defendants, it falls short under the standards the Sixth Circuit has articulated in *Wright*, 962 F.3d 852, 873; *Jones*, 947 F.3d 905, 915; and *Patrizi*, 690 F.3d 459, 464. And, the *post-hoc* suggestion of Mr. Kern failing to yield to lights and siren does not change this conclusion. Sgt. Wolf was not a witness to any of those purported events, and he was disabused of such a notion by Ofcr. Lewis' statement that Mr. Kern committed no crime. Exhibit 11 at 19:04:01; Exhibit 12 19:04:03. And, as reflected at pages 2 to 4 of this memoranda, there was no failure to yield violation. [12]

And Lewis' statement to dispatch about failing to yield was a bare legal conclusion, thus rendering any prior report unreliable for probable cause purposes. *Wesley v. Campbell*, 779 F.3d 421, 432 (6th Cir. 2015) (inconsistent statements rendered report unreliable for probable cause

---

[12] Ofcr. Lewis drew an erroneous legal conclusion (which the Court should not credit) that Mr. Kern somehow failed to yield to lights and siren. (Depo. Lewis, Doc. 52, at 127). The Ohio Supreme Court has explained that a failure to yield violation can only be sustained where the driver who is accused of not yielding should "in the exercise of ordinary care, have heard the siren or seen the flashing lights." *Semple v. Hope*, 15 Ohio St. 3d 372, 474 N.E.2d 314 (Ohio 1984). Further, R.C. 4511.45(B) also provides that "this section does not relieve the driver of an emergency vehicle from the duty to drive with due regard for the safety of all persons and property upon the highway," and the driver of an emergency vehicle loses preferential status and the right of way, if another violation of law is committed. *Agnew v. Porter*, 23 Ohio St. 2d 18, 24, 260 N.E.2d 830 (Ohio 1970). Ofcr. Lewis committed a violation of R.C. 4511.39(A) when she failed to activate her turn signal to make the lane change, thus losing any privileged status.

20

purposes); *Hart v. Hillsdale Cty.*, 973 F.3d 627, 643 (6th Cir. 2020) (probable cause cannot rely upon unreliable report or information).

Plaintiff anticipates Sgt. Wolf arguing that somehow he is protected by the collective knowledge doctrine, perhaps in conjunction with the failure to yield allegation, which indicates that "[r]esponding officers are entitled to presume the accuracy of the information furnished to them by other law enforcement personnel." *United States v. Lyons*, 687 F.3d 754, 769 (6th Cir. 2012). It also "recognizes the practical reality that 'effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another.'" *Id.* at 766 (*quoting United States v. Hensley*, 469 U.S. 221, 231 (1985)). Yet this doctrine necessarily asks "(1) what information was clear or should have been clear to the individual officer at the time of the incident; and (2) what information that officer was reasonably entitled to rely on in deciding how to act, based on an objective reading of the information." *Humphrey v. Mabry*, 482 F.3d 840, 848 (6th Cir. 2007). Therefore, in order for it to apply, "(1) the officer taking the action must act in objective reliance on the information received; (2) the officer providing the information must have facts supporting the level of suspicion required; and (3) the stop must be no more intrusive than would have been permissible for the officer requesting it." *United States v. Lyons*, 687 F.3d 754, 767 (6th Cir. 2012). And the doctrine does not apply where there is "a likelihood, or even a strong suspicion," that the initial source of the information is wrong. *Bey v. Falk*, 946 F.3d 304, 319 (6th Cir. 2019).

Fatally for Sgt. Wolf, he admitted that he had no basis to dispute Ofcr. Lewis' statement at the scene, before Sgt. Wolf arrested Mr. Kern, that Mr. Kern committed no crimes. (Depo. Wolf, Doc. 60-1, at 189-190). Sgt. Wolf told Internal Affairs that the only crime he thought Mr. Kern committed was obstructing for failing to identify himself. *Id.* at 200. He also had no basis

21

to dispute Ofcr. Lewis' statement to Internal Affairs that Mr. Kern was not interfering with her traffic stop. *Id.* at 201-202.  And he admits that he "jumped the gun" in arresting Mr. Kern. *Id.* at 221-222.  And no reasonable officer, having been informed by the original source of information that the subject in fact committed no crime – repeatedly in fact – prior to the arrest, would proceed with an arrest – and certainly not without conducting some additional investigation.  Indeed, that statement, that Mr. Kern committed no crime, was the last thing Sgt. Wolf heard from Ofcr. Lewis prior to arresting Mr. Kern for failing to identify.  Exhibit 11 at 19:04:01; Exhibit 12 19:04:03.  This conclusion is consistent with the evidence that Sgt. Wolf was told by Ofcr. Lewis upon his arrival that, after Sgt. Wolf suggested Mr. Kern violated the law against failing to yield to lights and sirens, Ofcr. Lewis states she wanted to let Mr. Kern go. Exhibit 12 at 19:02:09.  And, to the extent the Ofcr. Lewis will argue that she is entitled to qualified immunity because she was "simply following orders," the Sixth Circuit rejected that argument in *Bunkley v. City of Detroit*, 902 F.3d 552, 562 (6th Cir. 2018).

     <u>Failure to intervene (Ofcr. Lewis)</u>:  Ofcr. Lewis also is liable for the excessive force violation and Sgt. Wolf's illegal arrest under a failure to intervene theory.  *Bunkley v. City of Detroit*, 902 F.3d 552 (6th Cir. 2018); *Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008).  *Bunkley* involved, like this case, a claim for failure to intervene by officers who did not intervene (but had the opportunity to do so) relating to a supervisor's false arrest.  902 F.3d 552. As the Court made clear, "[i]t matters not whether the individual violating the constitutional rights of a citizen is a fellow officer or a superior." *Id.* at 565.

     The elements of a failure to intervene claim are (1) the officer observed or had reason to know that the constitutional violation was occurring, and (2) the officer had both the opportunity and the means to prevent the harm from occurring. *Floyd*, 518 F.3d 398, 406 (*quoting Turner v.*

*Scott*, 119 F.3d 425, 429 (6th Cir. 1997)).  Ofcr. Lewis testified that while she did not agree with the decision to arrest or charge Mr. Kern, and while she could have called the shift lieutenant, she did not do so.  In other words, she had enough time to intervene, but chose not to do so. (Depo. Lewis, Doc. 52 at 151-154).  Plaintiff is entitled to summary judgment on his § 1983 Fourth Amendment detention and false arrest claims.

### C. Plaintiff is entitled to partial summary judgment on his First Amendment claims against Sgt. Wolf and Ofcr. Lewis

A First Amendment retaliation claim has three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two -- that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) (emphasis added).  When it comes to adverse actions, where, as here, we deal with a citizen and not with a prisoner or a public employee, the adverse action need not be great. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010).

Plaintiff engaged in protected First Amendment activities, which both Defendants were aware of, starting with asking for Ofcr. Lewis' badge number and name upon initial contact, (Kern_1119-20220922_185844.mp4, filed conventionally),[13] to repeatedly telling Sgt. Wolf (and Ofcr. Lewis) they were violating his rights, (Exhibit 12, 19:02:52 to 19:05:48), to recording with his phone the interaction with Ofcr. Lewis, and later Sgt. Wolf. (Exhibit 11 at 18:58:59 to

---

[13] Ofcr. Lewis testified that she understood Mr. Kern was upset about the initial interaction and wanted to make a report/complaint.  (Depo. Lewis, Doc. 52, at 141-142).  And body camera footage reveals Sgt. Wolf's acknowledgment that Mr. Kern wanted to make a complaint about that interaction.  Exhibit 12 at 19:03:12.

18:59:11 (Lewis initial radio call to dispatch mentioning the recording), Exhibit 12 at 19:03:00; Depo. Wolf, Doc. 60-1, at 130-131).

Filing, threatening to file, or attempting to file a complaint against a police officer is clearly established First Amendment speech and petitioning for redress activity. *Connick v. Myers*, 461 U.S. 138, 148, (1983) (Speech that "bring[s] to light actual or potential wrongdoing or breach of public trust" is speech that addresses a matter of public concern, as is speech that "seek[s] to inform the public that [the government] [is] not discharging its governmental responsibilities."); *Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 586 (6th Cir. 2008); Gable v. Lewis, 201 F.3d 769 (6th Cir. 2000); *Holzemer v. City of Memphis*, 621 F.3d 512 (6th Cir. 2010); *Arnett v. Myers*, 281 F.3d 552, 560 (6th Cir. 2002).

Mr. Kern's protests to Ofcr. Lewis and Sgt. Wolf about his rights being violated also is clearly established First Amendment activity. *City of Houston v. Hill*, 482 U.S. 451, 461-463 (1987); *Bloch v. Ribar*, 156 F.3d 673, 682 (6th Cir. 1998); *McCurdy v. Montgomery County*, 240 F.3d 512, 520 (6th Cir. 2001); *Barnes v. Wright*, 449 F.3d 709, 718 (6th Cir. 2006); *Greene v. Barber*, 310 F.3d 889, 895-96 (6th Cir. 2002); *Arnett*, 281 F.3d 552, 560.  So is the right to record police. *Crawford v. Geiger (Crawford II)*, 131 F. Supp. 3d 703, 715 (N.D. Ohio 2015) (establishing that the right to record would be clearly established going forward); *see, also, Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011); *Fields v. City of Philadelphia*, 862 F.3d 353, 359 (3d Cir. 2017);  *Turner v. Lieutenant Driver*, 848 F.3d 678, 687-90 (5th Cir. 2017);  *ACLU v. Alvarez*, 679 F.3d 583, 606 (7th Cir. 2012); *Chestnut v. Wallace*, 947 F.3d 1085, 1090 (8th Cir. 2020); *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000);  *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995).

Moreover, detaining, arresting, threatening to arrest, and charging someone is sufficient adverse action to meet the second prong of *Blatter*, 175 F.3d 378, 394. *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 822-823 (6th Cir. 2007) (explaining that detention is not de minimis and would meet the adverse action prong, as would arrest); *McCurdy v. Montgomery County*, 240 F.3d 512, 520 (6th Cir. 2001) (impliedly acknowledging an arrest without probable cause constitutes adverse action of sufficient consequence); *Anderson v. Holmes*, 2021 U.S. Dist. LEXIS 102401 (MIED 2021) (failure to identify case First Amendment retaliation); *Rudd v. City of Norton Shores*, 977 F.3d 503 (6th Cir. 2020) (threatening to arrest sufficiently adverse).

And as explained in II.A., Ofcr. Lewis and Sgt. Wolf were intimately and personally involved in these adverse actions, with Ofcr. Lewis reporting Mr. Kern video recording in her initial call to dispatch, both demanding identification under threat of arrest, and Ofcr. Lewis' supporting Sgt. Wolf's activities. As noted, Ofcr. Lewis is liable for her failure to intervene where she observed or had reason to know that the constitutional violation was occurring, and she had both the opportunity and the means to prevent the harm from occurring. *Floyd*, 518 F.3d 398, 406 (*quoting Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)). This conclusion leaves no room for doubt where Ofcr. Lewis testified that while she did not agree with the decision to arrest or charge Mr. Kern (though she participated in the threats of arrest), and while she could have called the shift lieutenant, she did not do so; she had enough time to intervene, but chose not to do so. (Depo. Lewis, Doc. 52 at 151-154).

On causation, two points must be made. First, detaining, arresting, and charging Mr. Kern, all without probable cause (see Section II.A., *supra*), is significant evidence demonstrating causation and First Amendment retaliation. *Nieves v. Bartlett*, 587 U.S. 391, 401-402 (2021).

25

Second, temporal proximity between protected activity and adverse action can, by itself,

establish the requisite causation. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir.

2008); *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 306 (6th Cir. 2012) (two months

sufficient).  Evidence of up to a four-month gap between the protected speech and the initial

adverse action, without more, is sufficient evidence of causation.  *Id.*; *Anders v. Cuevas*, 984

F.3d 1166, 1177-1178 (6th Cir. 2021) (four months sufficient); *Rudd*, 977 F.3d 503, 515 (eight

days sufficient); *Buddenberg v. Weisdack*, 939 F.3d 732, 741 (6th Cir. 2019) (four days

sufficient); *Singfield v. Akron Metro. Housing Auth.*, 389 F.3d 555, 563 (6th Cir. 2004)

(concluding that a lapse of three months is a sufficient to show causal connection).  Here, the

retaliation and adverse actions were almost immediate.  These undisputed facts are more than

sufficient for all three elements of the First Amendment retaliation claim.  *Thaddeus-X v. Blatter*,

175 F.3d 378 (6th Cir. 1999).

### D.  Defendants are not entitled to qualified immunity

There is a two-step sequence for resolving a government official's claim to qualified

immunity.  First, the court must analyze whether the facts a plaintiff has alleged in his/her

complaint make out a violation of a constitutional right, and second, the court must decide

whether the right at issue was "clearly established" at the time of the defendant's misconduct.

*Saucier v. Katz*, 533 U.S. 194 (2001); *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

A plaintiff overcomes qualified immunity by citing to "cases of controlling authority in

their jurisdiction at the time of the incident" or "a consensus of cases of persuasive authority

such that a reasonable officer could not have believed that his actions were lawful." *Wilson v.

Layne*, 526 U.S. 603, 617 (1999); *Kent v. Oakland County*, 810 F.3d 384, 395 (6th Cir. 2016).

That said, "officials can still be on notice that their conduct violates established law even in

novel factual circumstances" if "the state of the law . . . gave [the government officials] fair warning that their alleged [conduct] . . . was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Moreover, even without citation to a particular case, Plaintiffs can overcome qualified immunity if the facts are "particularly egregious." *Taylor v. Riojas*, 141 S. Ct. 52, 54 (2020). Here, and as reflected in Sections II.A. and II.B., Sgt. Wolf and Ofcr. Lewis violated rights that were clearly established by published Sixth Circuit case law and/or a consensus of other circuit case law. That, in turn, divests them both of any defense of qualified immunity.

### E. Plaintiff is entitled to partial summary judgment on his state law assault and battery claim against Sgt. Wolf

"A person is subject to liability for battery when he acts intending to cause a harmful or offensive contact, and when a harmful contact results." *Love v. Port Clinton*, 37 Ohio St.3d 98, 99, 524 N.E.2d 166 (1988). "A defendant possesses the requisite level of intent to commit a Battery if he '"desires to cause [the] consequences of his act, or … believes that the consequences are substantially certain to result from it."' *McRae v. Icon Entertainment Group, Inc.*, 10th Dist. Franklin No. 08AP-820, 2009-Ohio-5119, ¶ 8, *citing Harasyn v. Normandy Metals, Inc.*, 49 Ohio St.3d 173, 175, 551 N.E.2d 962 (1990), *quoting* 1 Restatement of the Law 2d, Torts, Section 8A, at 15 (1965). An assault is defined as "the willful threat to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact; the threat or attempt must be coupled with a definitive act by one who has the apparent ability to do the harm or to commit the offensive touching." *Knox v. Hetrick*, 2009-Ohio-1359, 2009 Ohio App. LEXIS 1141 (8th Dist. 2009), *quoting Smith v. John Deere*, 83 Ohio App.3d 398, 406, 614 N.E.2d 1148 (1993). Furthermore, "[a]n essential element of … assault is that the actor knew with substantial certainty that his or her act would bring about harmful or offensive contact." *Id.*

Where officers act without lawful authority in arresting a Plaintiff, they commit an assault and battery. *Kaylor v. Rankin*, 356 F. Supp. 2d 839, 854 (OHND 2005), *citing Love v. City of Port Clinton*, 37 Ohio St.3d 98, 99, 524 N.E.2d 166 (1988) (officer who subdued and handcuffed the plaintiff committed intentional acts which, unless privileged, constituted a battery). For the reasons stated in the facts section and in Section II.A., Sgt. Wolf is liable for civil assault and battery.

### F. Plaintiff is entitled to partial summary judgment on his state law civil unlawful imprisonment and false arrest claims against Sgt. Wolf and Ofcr. Lewis

The Ohio Supreme Court has noted that "false arrest and false imprisonment as causes of action are indistinguishable." *Rogers v. Barbera*, 170 Ohio St. 241, 164 N.E.2d 162, 164 (Ohio 1960) (*quoting* 22 Am. Jur. False Imprisonment § 2-3). The court stated that "the essence of the tort consists in depriving the plaintiff of his liberty without lawful justification; and the good intention of the defendant does not excuse, nor does his evil intention create, the tort." *Id.* To prevail on a claim for false arrest/imprisonment, the plaintiff must demonstrate: "(1) the intentional detention of the person and (2) the unlawfulness of the detention." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 315 (6th Cir. 2005). An arrest without a probable cause is unlawful. *Id.* Malice is not an element of, and good faith is not a defense to, a claim of a false imprisonment/arrest. *Rankin*, 356 F. Supp. 2d 839, 855, *citing Brinkman v. Drolesbaugh*, 97 Ohio St. 171, 119 N.E. 451 (1918)

As in *Rankin*, the tort was established here through the intentional detention of Mr. Kern by Sgt. Wolf and Ofcr. Lewis, without probable cause, including for the reasons stated in the facts section and in Section II.A.

### G. Plaintiff is entitled to partial summary judgment on his state law malicious prosecution claim against Wolf and Lewis

To sustain a claim of malicious prosecution, Plaintiff must prove: "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Trussell v. General Motors Corp.*, 53 Ohio St.3d 142, 144, 559 N.E.2d 732 (1990).  In *Melanowski v. Judy*, 102 Ohio St. 153, 155, 131 N.E. 360 (Ohio 1921), the Ohio Supreme Court held that "in an action for malicious prosecution, the want of probable cause is the gist of the action. If such be proven, the legal inference may be drawn that the proceedings were actuated by malice." *Id.*, paragraph one of the syllabus.  Furthermore, for the purposes of malicious prosecution, malice is defined as "an improper purpose, or any purpose other than the legitimate interest of bringing an offender to justice." *Criss v. Springfield Township*, 56 Ohio St.3d 82, 85, 564 N.E.2d 440 (1990).

As discussed in Section II.A., there was no probable cause.  And, the prosecution terminated in Mr. Kern's favor.  See Exhibit 25, Doc. 51-16.  That leaves malice, which not only can be inferred through the lack of probable cause, *Melanowski*, 102 Ohio St. 153, but also is established through Sgt. Wolf's admission he has no basis to doubt Ofcr. Lewis' statement that Mr. Kern committed no crime, Lewis' admission to Mr. Kern that body camera captured everything and the prosecutor was good, and *post hoc* efforts by Sgt. Wolf, even continuing into his deposition testimony, to try to invent other crimes Mr. Kern could have been charged with. Or the discussion in II.B. about First Amendment retaliation, which also establishes an improper purpose.  All of that is malice.

### H. There is no immunity for Sgt. Wolf or Ofcr. Lewis under state law immunity due to the fact that their actions were made with malicious purpose, in bad faith, or in a wanton or reckless manner

R.C. 2744.03 provides for immunity for police officers unless they took actions with a "malicious purpose, in bad faith, or in a wanton or reckless manner."  Malicious purpose is

29

defined as "the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct that is unlawful or unjustified." *Caruso v. State*, 136 Ohio App.3d 616, 620-21, 737 N.E.2d 563 (10th Dist. App. 2000); *Teramano v. Teramano*, 6 Ohio St. 2d 117, 118, 216 N.E.2d 375 (Ohio 1966). "Bad faith has been defined as the opposite of good faith, generally implying or involving actual or constructive fraud or a design to mislead or deceive another." *Id.* And "reckless conduct refers to an act done with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk of physical harm and that such risk is greater than that necessary to make the conduct negligent."

As here, suggestions that an officer is inventing an after-the-fact excuse to justify illegal or unconstitutional action is sufficient to establish these elements. *Knox v. Hetrick*, 2009-Ohio-1359 (8th Dist. App. 2009). In fact, malice may be inferred from proof of lack of probable cause. *Melanowski v. Judy*, 102 Ohio St. 153, 155, 131 N.E. 360 (1921).

All of those malice factors are present here, including as discussed in Sections II.A. and II.B., which we incorporate by reference.

## III. CONCLUSION

Plaintiff's Motion for Partial Summary Judgment should be granted.

Respectfully submitted,

/s/ Christopher Wiest_____          /s/Thomas B. Bruns_____
Christopher Wiest (Ohio 0077931)        Thomas B. Bruns (Ohio 0051212)
Chris Wiest, Atty at Law, PLLC          Bruns, Connell, Vollmar, Armstrong
50 E. Rivercenter Blvd., Ste. 1280      4555 Lake Forrest Dr., Suite 330
Covington, KY 41011                     Cincinnati, OH 45242
513/257-1895 (v)                        513-312-9890 (v)
859/495-0803 (f)                        tbruns@bcvalaw.com
chris@cwiestlaw.com
**Attorneys for Plaintiff**