## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| Demetrius Kern, | : | Case No.:  1:23-cv-01327 |
| | : | |
| Plaintiff, | : | Judge Charles Esque Fleming |
| | : | |
| vs. | : | |
| | : | |
| Naftali Wolf, *et al.*, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT NAFTALI WOLF'S MOTION FOR SUMMARY JUDGMENT**

Defendant, Naftali Wolf ("Sergeant Wolf"), pursuant to Civil Rule 56, respectfully moves for an Order granting a Summary Judgment in his favor. Plaintiff brings multiple 42 U.S.C. § 1983 and state law claims, including unlawful detention, unlawful arrest, and excessive force, related to his arrest for obstructing official business. Probable cause existed. Plaintiff made a decision to insert himself into a traffic stop, drawing a police officer's attention away from *safely* conducting the stop. Under well-established Ohio law, this establishes probable cause for what Plaintiff was charged with. Moreover, no force was used outside of simply handcuffing Plaintiff. As a result, Sergeant Wolf is entitled to summary judgment as a matter of law. The full reasons why this Motion should be granted are set forth in the attached Memorandum.

Respectfully submitted,

/s/ Patrick Kasson
Patrick Kasson (0055570)
Thomas N. Spyker (0098075)
**REMINGER CO., LPA**
200 Civic Center Drive, Suite 800
Columbus, Ohio 43215
Tel: (614) 232-2418 | Fax: (614) 232-2410
pkasson@reminger.com
tspyker@reminger.com
*Counsel for Defendant Naftali Wolf*

1

## MEMORANDUM IN SUPPORT

Plaintiff made a choice. He inserted himself into a traffic stop. Plaintiff chose to yell at a police officer to get her attention, while she was attempting to safely conduct a traffic stop of a suspected violent domestic abuser. The officer should have been focused on the person she was stopping—*for her safety*. But Plaintiff was successful in taking her attention away and delaying the stop. The officer turned away from the traffic stop—*an unsafe act*—to deal with Plaintiff. And while the stop ended safely, the person believed to have been stopped was wanted for a dangerous act.

Plaintiff, of course, continued to be belligerent—admittedly intentionally interfering with the traffic stop. Under well-established Ohio law, any interference or delay with official duties is obstruction. As such, Plaintiff was arrested—with the only use of force being putting handcuffs on him.

Despite making a conscious decision to draw the officer's attention away from safely performing the stop, Plaintiff has filed suit for his brief arrest. Both the existence of probable cause and immunity bar Plaintiff's claims.

## I.    STATEMENT OF FACTS

### A.  Officer Lewis initiates a traffic stop.

On September 22, 2022, Officer Lewis initiated a traffic stop. (Compl. at ¶ 9, Doc. No. 1, PageID 3.). Officer Lewis was on patrol when she observed a silver sedan Infiniti that matched the description of a suspect from a domestic violence altercation that occurred the day before. (Lewis Dep. 115:10-116:12). As a result, Officer Lewis ran the license plate through LEADS which showed the vehicle had an expired license plate sticker. (Lewis Dep. at 117:17-22, 119:5-12). Once Officer Lewis confirmed that the vehicle had an expired tag, she transitioned from the left lane to

the right lane of the road and activated her overhead lights and sirens causing the suspected vehicle to pull over. (*Id.* at 119:14-17).

The vehicle Officer Lewis pulled over matched the description of a vehicle that the day before was involved in a felony domestic violence situation. (Lewis Dep. 116:8-12). At the time of initiating the traffic stop Officer Lewis knew that the occupant could be dangerous and may have been the individual involved in the domestic *violence* incident. (Britton Dep. 162:8-13).

**B. Standard and safe police practices required Officer Lewis to maintain a laser focus on the vehicle she was stopping.**

It is well established that police must be cognizant of danger during a traffic stop. *Arizona v. Johnson*, 555 U.S. 323, 330 (2009) citing *Michigan v. Long*, 463 U.S. 1032, 1047 (noting that "traffic stops are 'especially fraught with danger to police officers'"). Simply put, there is always a risk that a traffic stop may result in harm to a police officer. (Britton Dep. 160:2-6). This is especially true when Officer Lewis thought she was stopping someone who may have been involved in a violent incident. (*Id.* at 162:8-13). Obviously, as a police officer approaches a vehicle she has stopped, she does not know what the suspect will do. (*Id.* at 160:7-12). So, it is critical that the **officer always maintain a laser focus on the vehicle and its occupants at a traffic stop**. (*Id.* at 161:6-11). Anything else results in an unsafe act. (*Id.* at 162:14-21). And Officer Lewis was required to maintain such a laser focus at any traffic stop, including the stop at issue in this case. (*Id.* at 161:16-22). Simply put, to be safe—an officer must be completely laser focused on the vehicle and its occupants at a stop, to watch for any sign of danger so she can react. (*Id.* at 161:6-11).

### C.  Plaintiff follows Officer Lewis, pulls over behind her and obstructs the traffic stop for which he is not a party.

Plaintiff, who was driving in the right lane behind Officer Lewis, failed to yield to Officer Lewis' patrol cruiser lights and sirens. (Lewis Dep. 119:17-20). Plaintiff's failure to yield to the emergency vehicle's lights and sirens almost caused a collision between Officer Lewis' patrol cruiser and Plaintiff's vehicle. (*Id.*). Plaintiff pulled over. (*Id.* at 130:19-22). Naturally, Officer Lewis was preoccupied with the silver Infiniti and its driver Larelle Goodman ("Goodman"). (Kern Dep. Ex. 10).

Plaintiff was upset. (Lewis Dep. 136:5-7). And in an emotional rage, Plaintiff followed Officer Lewis to the traffic stop. (Lewis Dep. 175:2-9). This occurred as Officer Lewis was approaching the stopped vehicle. (Lewis Dep. 140:14-16). Without a doubt, Plaintiff shouted at Officer Lewis—to get her attention—when she should have been laser focused on the stop for her own safety. (Britton Dep. 164:1-5). Plaintiff got what he wished. He exited his vehicle and shouted at Officer Lewis. (Lewis Dep. 132:4-6). This had the effect of drawing Officer Lewis' attention away from the stop and the driver, to handle Plaintiff's outburst. (*Id.* at 140:14-19). This both delayed the traffic stop and stopped Officer Lewis from being laser focused on the stop, impairing her safety. (*Id.* 140:14-19).

Because of the inherent danger of engaging in a traffic stop along with Officer Lewis' knowledge of a potentially dangerous situation, her sole focus should have been on the pulled over silver Infiniti. (Britton Dep. 161:6-11). But Plaintiff chose to yell at Officer Lewis and take her attention away from the vehicle causing her to turn to look at Plaintiff. (*Id.* at 163:22-164:20). Plaintiff's decision to distract Officer Lewis from the traffic stop caused her to be unable to ensure her safety during the stop. (*Id.* at 161:16-22). As discussed above, an officer initiating a traffic stop does not have the full vantage point of a suspect requiring extra caution and focus when

4

approaching the vehicle (*Id.* at 160:7-24). Here, Plaintiff put Officer Lewis' safety at risk because her focus was not directly on the vehicle involved in the traffic stop.

After making contact with Goodman, Officer Lewis called for backup which is standard for her when she is handling a stop or incident with multiple individuals. (Lewis Dep. 135:14-136:13). When Officer Lewis initiated the traffic stop, she thought she would only need to focus on one individual—the individual she pulled over. (Britton Dep. 164:25-165:4). Instead, Officer Lewis had to address both Goodman and Plaintiff. And because Officer Lewis had to keep herself safe while conducting the traffic stop, she needed to call for backup. (*Id.* 164:25-165:13).

### D. Sergeant Wolf arrives on the scene and Plaintiff is arrested and cited for obstructing official business.

Shortly after Officer Lewis called for backup, Sergeant Wolf arrived on the scene and waited with Plaintiff while Officer Lewis wrapped up Goodman's traffic stop. (Lewis Dep. 143:11-17). After terminating the traffic stop with Goodman, Officer Lewis heard the situation between Sergeant Wolf and Plaintiff escalating as she returned. (*Id.* at 144:11-16). Because Plaintiff failed to yield to the sirens and lights, Officer Lewis asked for Plaintiff's name. (*Id.* at 146:8-17). Plaintiff did not provide his name to Officer Lewis or Sergeant Wolf when asked for identification, so Sergeant Wolf warned Plaintiff that he could be arrested for obstruction. (*Id.* at 147:2-7). Plaintiff then placed his hands behind his back and told Sergeant Wolf to arrest him. (Lewis Dep. 148:10-13). Sergeant Wolf placed Plaintiff in handcuffs. (*Id.* at 148:14-15). As Plaintiff is placed in handcuffs, he provided his social security number to Officer Lewis. (Lewis Dep. 148:16-18). Sergeant Wolf then placed Plaintiff in Officer Lewis' patrol vehicle. (*Id.* at 149:10-11).

As a police officer, Sergeant Wolf had the authority and discretion of when and when not to ticket and enforce the obstruction of official business violation. (Britton Dep. 167:17-20). And the demeanor of an individual who violated the law can influence the discretionary issuance of a

5

violation. (*Id.* at 168:22-24). Officer Lewis wrote the citation for obstruction under Sergeant Wolf's supervision and direction. (Kern Dep. Ex. 10).

### E. Sergeant Wolf is caught in a political fire storm driven by a police chief who did not understand the law.

There is a dispute among the officers as to whether there was probable cause to arrest Plaintiff. (Lewis Dep. 149:16-18; Wolf Dep. 178:15-179:6; Britton 139:2-13). And Plaintiff was subject to a disciplinary proceeding driven by the Chief. (Britton 134:13-18;). The Chief believed that Sergeant Wolf did not have probable cause at the time of the arrest because Sergeant Wolf did not know what Officer Lewis knew until after the arrest. (Britton Dep. 139:2-10). But the police Chief—sadly—was unaware of the well-established collective knowledge doctrine. (Britton Dep. 170:15-19).

When Chief Britton decided to write that Sergeant Wolf lacked probable cause, Chief Britton did not understand how the collective knowledge doctrine applied. (Britton Dep. 171:14-19). Under the collective knowledge doctrine, probable cause can rest on the collective knowledge of the police and the knowledge of other officers is imputed. *See United States v. McManus*, 560 F.2d 747, 750 (6th Cir. 1977); *Brown v. Lewis*, 779 F.3d 401, 412 (6th Cir. 2015); *Collins v. Nagle*, 892 F.2d 489, 495 (6th Cir. 1989). And "effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information." *United States v. Hensley*, 469 U.S. 221, 231 (1985).

Had Chief Britton had proper awareness of the doctrine, he would have known that Officer Lewis' knowledge of the circumstances giving rise to probable cause was imputed to Sergeant Wolf. (Lewis Dep. 133:21-22, 140:9-16; Wolf Dep. 124:25-125:12); *United States v. McManus*,

560 F.2d 747, 750 (6th Cir. 1977). Officer Lewis had stated over radio when calling for backup that there was a male who failed to yield and was disturbing the traffic stop. (Wolf Dep. 124:25-125:3). When Sergeant Wolf arrived, the knowledge of Officer Lewis—that probable cause existed because Plaintiff obstructed her traffic stop—was imputed to him. (Lewis Dep. 133:21-22, 140:9-16; Wolf Dep. 124:25-125:12); *United States v. McManus*, 560 F.2d 747, 750 (6th Cir. 1977). As such, Sergeant Wolf had probable cause when detaining, arresting, and citing Plaintiff for obstruction of official business.

## II.    LAW AND ARGUMENT[1]

### A.  Plaintiff's Fourth Amendment claims are not viable.

Plaintiff made a choice to follow Officer Lewis and disrupt her *safe* execution of a traffic stop. He was arrested and charged, released almost immediately. Probable cause existed under well-established Ohio law. Plaintiff's § 1983 Fourth Amendment claims are premised on (1) an unlawful detention; (2) unlawful arrest; (3) unlawful continued duration of detention; and (4) use of excessive force. (Compl., Doc. No. 1, PageID: 10-11, at ¶¶ 64-67). But Plaintiff was detained and arrested based on probable cause, with reasonable suspicion that he committed a crime—obstructing official business. Second, the length of the detention was not unreasonable. Lastly, Sergeant Wolf did not use excessive force when arresting Plaintiff. Thus, all alleged Fourth Amendment violations fail as a matter of law.

---

[1] Summary judgment is proper "if . . . there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can reasonably be drawn there from, must be read in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59 (1970). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact" (emphasis in original). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

i.   **Because Sergeant Wolf had a reasonable suspicion to detain Plaintiff, Plaintiff's claim for unlawful detention fails.**

Sergeant Wolf had an objective basis to suspect that Plaintiff had engaged in criminal activity authorizing Plaintiff's detention. (Wolf Dep. 124:25-125:12). Law enforcement officers may detain an individual for investigative purposes on reasonable suspicion that the individual has been or is about to be involved in criminal activity. *Mitchell v. Boelcke*, 440 F.3d 300, 303 (6th Cir. 2006) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1968, 20 L. Ed. 2d 889 (1968). To determine whether a reasonable suspicion exists, courts look at the totality of the circumstances to see if the officer has an objective basis for suspecting wrongdoing. *Mitchell v. Boelcke*, 440 F.3d 300, 303-04 (6th Cir. 2006) citing *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002).

Here, the totality of circumstances demonstrate that Sergeant Wolf had an objective basis to detain Plaintiff. Before Sergeant Wolf had even arrived on scene, he was under the impression that Plaintiff had obstructed Officer Lewis while attempting to complete an unrelated traffic stop. (Wolf Dep. 124:25-125:3, 326:11-14). Indeed, Plaintiff's behavior was of such nature that Lewis required backup to ensure her safety (Britton Dep. 164:16-165:13). And when Sergeant Wolf arrived on scene, he saw Plaintiff continuing to disrupt and obstruct Officer Lewis' duties as an officer through arguing with Officer Lewis. (Wolf Dep. 174:5-12, 326:11-14). These actions delayed Officer Lewis from carrying out her official duties. (*Id*.).

Because Plaintiff obstructed Officer Lewis' traffic stop, he was detained. (Wolf Dep. 273:22-274:3). At the time of detaining Plaintiff, Sergeant Wolf knew that Plaintiff interfered with Officer Lewis' traffic stop by failing to yield, yelling at her, and causing her focus to shift towards him instead of the traffic stop. (Lewis Dep. 133:21-22, 140:9-16; Wolf Dep. 124:25-125:12). And it is important to remember this interrupted the safe performance of her duties. (Britton Dep.

8

154:21-155:6, 169:24-25) (noting that Officer Lewis should have been laser focused on the stop, but Plaintiff took her focus away). Plaintiff obstructed Officer Lewis' duties. *See State v. Brantley*, 2022-Ohio-597 (1st Dist. 2022) (holding that the defendant had obstructed official business where the defendant ignored the officer's command and interfered with their interaction with another suspect). Because Sergeant Wolf had a reasonable suspicion that Plaintiff had obstructed official business, Plaintiff's claim for unlawful detention fails as a matter of law. *Mitchell v. Boelcke*, 440 F.3d 300, 303 (6th Cir. 2006).

ii. **Probable cause existed for Plaintiff's arrest, and this alone precludes his unlawful arrest claim.**

At the time of Plaintiff's arrest, Sergeant Wolf had reasonably reliable information that Plaintiff had obstructed Officer Lewis' traffic stop. To succeed on a claim for unlawful arrest under federal law, a plaintiff must prove that the arresting officer lacked probable cause. *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010).

To start, finding of probable cause defeats any claim for false arrest under 42 U.S.C. 1983. *See Bringman v. Fredericktown*, 2016 U.S. Dist. LEXIS 142173, at *11. And probable cause exists when a police officer "discovers reasonably reliable information that the suspect has committed a crime." *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000). Probable cause does not need to be based solely upon the knowledge of the arresting officer. *United States v. McManus*, 560 F.2d 747, 750 (6th Cir. 1977). Probable cause can rest upon the collective knowledge of the police. *Id.* So in determining whether Sergeant Wolf had probable cause, Officer Lewis' knowledge is imputed to him. (Lewis Dep. 133:21-22, 140:9-16; Wolf Dep. 124:25-125:12; Britton Dep. 169:24-170:6); *see Collins v. Nagle*, 892 F.2d 489, 495 (6th Cir. 1989) (noting that because the knowledge of the investigators working together was mutually imputed, the arresting officer did not need to require all of the information that gave rise to probable cause).

The determination of whether probable cause exists is based on the totality of the circumstances known to all officers at the time of the arrest. *United States v. Birdsong*, 816 F.2d 683 (6th Cir. 1987) (finding that there was probable cause for the arrest of the defendant based on the collective knowledge of the officers). Here, Segreant Wolf had probable cause to arrest Plaintiff for obstructing official business. And because this incident is captured on body camera, resolving any factual disputes, the Court can decide this point as a matter of law. *Novak v. City of Parma*, 932 F.3d 421, 429 (6th Cir.2019).

First, obstruction of official business requires: "(1) an act by the defendant; (2) done with the purpose to prevent, obstruct, **or delay** a public official; (3) that actually hampers or impedes a public official; (4) while the official is acting in the performance of a lawful duty; and (5) the defendant so acts without privilege." *Osberry v. Slusher*, 750 Fed App'x 385, 393 (6th Cir. 2018) (citing R.C. 2921.31).

For an individual to have obstructed official business the defendant must commit an affirmative act that interrupts police business. *Lyons v. City of Xenia*, 417 F.3d 565, 573-74 (6th Cir. 2005). Speech that obstructs an officer from fulfilling their duties can satisfy the affirmative act requirement when the behavior of the individual goes beyond the refusal to provide identification. *Id.* at 574-575. An individual's refusal to provide identification paired with "conduct that indicates an unwillingness to cooperate with the officers may sustain an arrest for obstruction." *Id.* at 574.

As here, an affirmative act such as delaying a traffic stop and yelling at officers is sufficient probable cause for arresting an individual for obstruction of official business. *See El-Bey v. Wallace*, No. 1:21-cv389, 2024 U.S. Dist. LEXIS 76508, at *14 (S.D. Ohio Jan. 11, 2024) (holding that officers had probable cause for arresting an individual for obstruction of official business

where the individual took affirmative acts of delaying the traffic stop, arguing with the officers, and challenging the officers to a duel).

Importantly, there is no defined amount of time required to constitute a delay for the purposes of obstruction. R.C. 2921.31. Rather the focus is on "if the record demonstrates that the defendant's act hampered or impeded the officer in the performance of his duties, the evidence supports the conviction." *State v. Wellman*, 2007-Ohio-2953, ¶ 18. (noting that the court "do[es] not hold that any finite period to time constitutes a 'substantial stoppage,' be the delay occasioned by the interference thirty second or two minutes").

Here, Plaintiff interfered with Officer Lewis' safe execution of the traffic stop by failing to yield, yelling at her, and risking her safety by causing her focus to shift towards him instead of the traffic stop. (Lewis Dep. 133:21-22, 140:9-16; Wolf Dep. 124:25-125:12; Britton Dep. 169:24-170:6). And there is no doubt—Officer Lewis was required—for her safety—to maintain laser focus on the subject of her stop. (Britton Dep. 161:16-22). Anything else would compromise her safety. But Plaintiff followed Officer Lewis. He pulled over behind her. (Britton Dep. 163:18-21; Kern Dep. 128:12-13). Placing her in the situation where the focus of her stop was in front of her— where her focus should be for her safety. (Lewis Dep. 130:24-131:1; Britton Dep. 161:16-22). But Plaintiff was behind her yelling. (Lewis Dep. 134:25-135:4).

But Plaintiff was yelling to get Officer Lewis' attention. (Britton Dep. 163:22-164:5). So, she turned to Plaintiff. (Lewis Dep. 140:14-16). And this took her away from her focus on the stop—where it should have been for her safety. (Lewis Dep. 140:14-16; Britton Dep. 161:6-22). Plaintiff's conduct of screaming and yelling delayed Officer Lewis' ability to return to patrol. (Britton 170:1-6). And this knowledge is imputed to Sergeant Wolf for probable cause purposes.

*See United States v. McManus*, 560 F.2d 747, 750 (6th Cir. 1977); *Collins v. Nagle*, 892 F.2d 489, 495 (6th Cir. 1989).

Sergeant Wolf was also aware of Plaintiff's obstruction of official business through the information stated over radio traffic, his encounter with Plaintiff, and from Officer Lewis' statements about Plaintiff's actions prior to his arrival on scene (Wolf Dep. 124:25-125:12, 174:5-12). Sergeant Wolf had reasonably reliable information that Plaintiff obstructed Officer Lewis' traffic stop. So, probable cause existed for Plaintiff's arrest. And Officer Lewis agreed. (Lewis Dep. 149:12-18). Because probable cause existed for Plaintiff's arrest, Plaintiff's claim for unlawful arrest fails as a matter of law.

Ohio law is clear that taking an officer away from her duties, as Plaintiff did Officer Lewis, is sufficient for an obstruction charge. Both the obstruction statute in the Revised Code (R.C. 2921.31) and prior Ohio rulings demonstrate that delaying an officer from their duties is obstruction.

First, the *statute*—on its plain face references delaying a public official's business. R.C. 2921.31. The statute expressly prohibits individuals from "prevent[ing], obstruct[ing], or **delay**[ing] the performance by a public official of any authorized act within the public official's official capacity." R.C. 2921.31. A "delay" means "the act of postponing or slowing." Delay, Black's Law Dictionary (12th ed. 2024). Under both the dictionary definition and plain meaning of "delay" as used in R.C. 2921.31, it's clear that any postponement or slowing of the official's duties qualifies as obstruction. Under the statute, if an individual—such as Plaintiff—delays an official acting in their official capacity—like Sergeant Wolf and Officer Lewis—the individual has obstructed official business. R.C. 2921.31.

12

Second, *Ohio case law* clearly establishes that an individual who inserts themselves in a traffic stop and delays the officers' in carrying out the traffic stop through disruptive behavior has indeed obstructed official business. *See Leonard v. Pryne*, No. 1:07-cv-283, 2008 U.S. Dist. LEXIS 122110, at *21-22 (S.D. Ohio June 24, 2008) (finding that an individual obstructed the officers' official business within the meaning of R.C. 2921.31 when he repeatedly got out of his vehicle, approached the officers while they were conducting a traffic stop, yelled at the officers, and impeded the officers' traffic stop); *see State v. Fort*, 2003-Ohio-1075, ¶¶ 25-29 (7th Dist.) (holding that Appellant obstructed official business by inserting himself into the traffic stop, yelling at the officer, and pulling the officer away from the traffic stop causing delay to the officer in concluding the traffic stop).

So, the evidence is absolute. Plaintiff made a choice to take Officer Lewis away from her safe performance of her duties in the traffic stop. (Kern Dep. 128:12-13). And Ohio law is clear that a delay such as this—even for a short time—constitutes obstruction. R.C. 2921.31; *State v. Wellman*, 2007-Ohio-2953, ¶ 18. Probable cause exited, which bars Plaintiff's case. *See Bringman v. Fredericktown*, 2016 U.S. Dist. LEXIS 142173, at *11.

### iii. Plaintiff's claim for continued detention fails because there was probable cause, and the detention was not unreasonable.

Because Plaintiff was interfering with a traffic stop and obstructing official business, he was detained by Sergeant Wolf. (Wolf Dep. 273:22-274:3). Plaintiff was handcuffed and in Lewis' vehicle for approximately 20 minutes. (Lewis Dep. 245:1-3). The approximate 20-minute detention was not unreasonable. And because probable cause existed to detain and arrest Plaintiff, the continued detention was not unreasonable.

A seizure under the Fourth Amendment can become unlawful if it is prolonged beyond the time reasonably required to complete the objective of the stop. *Illinois v. Caballes*, 543 U.S. 405,

407 (2005). An approximate "20-minute stop is not unreasonable when the police have acted diligently, and the suspect's actions contribute to the added delay." *United States v. Sharpe*, 470 U.S. 675, 676 (1985). Continued detention without probable cause is an actionable Fourth Amendment injury under § 1983. *Gregory v. City of Louisville*, 444 F.3d 725, 750 (6th Cir. 2006). However, this claim fails where there was probable cause for the continued detention. When a detention rises to the level of an arrest, there must be probable cause. *Gardenshire v. Schubert*, 205 303, 313 (6th Cir. 2000).

Not only did Sergeant Wolf have probable cause to detain and arrest Plaintiff, but also, the continued detention for a few minutes was not unreasonable. There is no per se time restriction for detention. *United States v. Medina*, 992 F.2d 573, 585 (6th Cir. 1993). So long as the officers were acting diligently to investigate the situation, the detention is not unreasonable in scope. *Id.* As previously discussed, Sergeant Wolf had reasonably reliable information that Plaintiff had or was going to obstruct official business. Plaintiff obstructed Officer Lewis' traffic stop in violation of R.C. 2921.31. The duration of the detention was not unreasonable and during the detention, the officers were discussing Plaintiff's obstruction charge and preparing the citation. (Lewis Dep. 156:12-13; Lewis Dep. 242:25-243:6). The detention was not exceedingly lengthy as the officers were acting diligently to investigate the situation and making the determination to issue Plaintiff a citation for obstruction of official business. *See United States v. Ellis*, 497 F.3d 606, 614 (6th Cir. 2007) (holding that a 22 minute detention was reasonable given that a large portion of the detention is necessitate by the purpose of the initial stop and identifying the occupants of the vehicle); *United States v. Collazo*, 818 F.3d 247, 257 (6th Cir. 2016) (finding that a 21 minutes detention was reasonable amount of time to complete the traffic stop and issue a warning). As such, Plaintiff's Fourth Amendment claim for continued detention fails as a matter of law.

14

### iv.   Sergeant Wolf did not use excessive force when arresting Plaintiff.

For the usage of handcuffs to constitute excessive force, an individual must show that they complained the handcuffs were too tight, the officer ignored the complaints, and the plaintiff experienced physical injury because of the handcuffing. *Hughey v. Easlick*, 3 F.4th 283, 289 (6th Cir. 2021). Plaintiff alleges that Sergeant Wolf used excessive force when handcuffing him, causing an injury to his shoulder. (Compl. at ¶¶ 42, 67, Doc. No. 1, PageID 6). However, Sergeant Wolf simply placed Plaintiff in handcuffs and no force beyond placing Plaintiff in handcuffs was used.

To determine whether excessive force was used, there must be a determination of "whether the officers' actions were objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 388, 109 S. Ct. 1865, 1867 (1989). The reasonableness of the officer's actions is determined from the "perspective of a reasonable officer on the scene." *Id.* at 396.

Handcuffing alone is not enough. To be sure, in placing an individual under arrest, the use of handcuffs alone cannot amount to excessive force. *Palshook v. Jarrett*, 120 F. Supp 2d 641, 656 (N.D. Ohio 2000). "In the absence of an obvious physical problem caused by the handcuffs or a plea by the defendant to loosen them, it is fair to ask how a reasonable officer should know that a problem has occurred." *Lyons v. City of Xenia*, 417 F.3d 565, 576 (6th Cir. 2005) (finding that Plaintiff failed to establish excessive force claim because she did not claim that she told the officers the handcuffs were too tight or complaints about the handcuffs were disregarded).

Sergeant Wolf did not use excessive force in handcuffing Plaintiff or placing him in Officer Lewis' vehicle. Sergeant Wolf's standard practice in making an arrest is handcuffing individuals for officer safety purposes. (Wolf Dep. 116:17-18). Outside of placing Plaintiff in handcuffs, no

15

force was used by Sergeant Wolf during the arrest. (Kern Dep. Ex. 10). And at no point while being placed in handcuffs did Plaintiff make statements to Sergeant Wolf that the handcuffs were too tight. (Kern Dep. 104:13-18). Plaintiff never communicated shoulder pain to Sergeant Wolf during or after being placed in handcuffs. (*Id.* at 104:24-105:6). And Plaintiff was not pushed into Officer Lewis' vehicle. (Kern Dep. Ex. 10). While in Officer Lewis' vehicle Plaintiff requested an ambulance due to shoulder pain (Kern Dep. 106:23-24; Kern Dep. Ex. 10).

Although Plaintiff alleges that his shoulder was in extreme pain because of the encounter with Sergeant Wolf, he was able to drive himself to hospital and refused to be brought in by ambulance. (Kern Dep. 50:12-18; Kern Dep. Ex. 10). Plus, the medical records will show he had a significant pre-existent should problem. Sergeant Wolf did not use any force outside of simply placing Plaintiff in handcuffs, and Plaintiff cannot demonstrate that excessive force was used.

### B. Plaintiff's First Amendment claim fails because there was probable cause for his arrest.

Plaintiff alleges that his First Amendment rights were violated causing his detention and subsequent arrest by Sergeant Wolf. Specifically, Plaintiff alleges that Sergeant Wolf retaliated against him for accusing Sergeant Wolf of violating his rights, asking Sergeant Wolf about his reasonable articulable suspicion for detaining him, and for refusing to identify himself. (Compl. at ¶¶ 23, 27, 76, Doc. No. 1, PageID 4-5, 13). Not true. Plaintiff's detention and arrest were based on his obstruction of official business. And an individual cannot hamper or impede an officer's duties and then excuse such behavior as mere verbal protest when behavior has "crossed the line between fair protest and actual obstruction." *Patrizi v. Huff*, 821 F. Supp 2d 926, 940 (N.D. Ohio 2011) (citing *State v. Wellman*, 2007-Ohio-2953, ¶ 31).

To succeed on a First Amendment retaliation claim, a plaintiff must demonstrate:

"(1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing

to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct."

*Fritz v. Charter Twp. Of Comstock*, 592 F.3d 718, 723 (6th Cir. 2010). Plaintiff's First Amendment retaliation claim fails for two reasons.

First, obstruction of official business is not protected conduct under the First Amendment. In the context of obstruction of official business (R.C. 2921.31), Ohio courts have held that although an individual has the right to verbally protest an officer's actions, an individual "does not have the right to hamper or impede the officer in the performance of the officer's duties." *Patrizi v. Huff*, 821 F. Supp 2d 926, 940 (N.D. Ohio 2011) (quoting *State v. Wellman*, 173 Ohio App.3d at 503). Further, First Amendment rights are not violated when the speech or contents of the words used by plaintiff were not the basis for the arrest but rather the interference with the performance of police duties that caused plaintiff to be arrested. *See King v. Ambs*, 519 F.3d 607, 610 (6th Cir. 2008) (holding that plaintiff's First Amendment rights were not violated when the plaintiff was arrested for obstruction rather than the speech by plaintiff).

Second, for Plaintiff to succeed on his First Amendment claim, want of probable cause must be alleged and proven. *Hartman v. Moore*, 547 U.S. 250, 252, 126 S. Ct. 1695, 1699 (2006). A First Amendment retaliation claim fails as a matter of law when police had probable cause to arrest him. *Everson v. Calhoun Cnty.*, 407 F. App'x 885, 887 (6th Cir. 2011).

Sergeant Wolf's decision to detain and arrest Plaintiff was based upon Plaintiff's unlawful conduct of interfering with Officer Lewis' traffic stop. (Kern Dep. Ex. 10). Sergeant Wolf was aware that Plaintiff had failed to yield to Officer Lewis' traffic stop and inserted himself into the scene in a confrontational manner obstructing official business. (Wolf Dep. 326:11-14). And the collective knowledge doctrine permits Sergeant Wolf to rely on the information conveyed by Officer Lewis about Plaintiff's irate behavior. *See Brown v. Lewis*, 779 F.3d 401, 412-413 (6th

17

Cir. 2015) (noting that "the doctrine imputes to the officer conducting the stop the knowledge of those with whom he communicated"). Obstruction of official business is not protected conduct under the First Amendment. *Patrizi v. Huff*, 821 F. Supp 2d 926, 940 (N.D. Ohio 2011). As previously established, probable cause existed for Plaintiff's arrest. And this reason alone defeats a claim for First Amendment retaliation. *Everson v. Calhoun Cnty.*, 407 F. App'x 885, 887 (6th Cir. 2011). As such, Plaintiff's First Amendment claim fails as a matter of law.

### C. Sergeant Wolf is entitled to immunity to any Constitutional claims because probable cause exists and there is no clearly established right which was violated.

Sergeant Wolf is entitled to qualified immunity against Plaintiff's claims brought under 42 U.S.C. 1983. Government officials, including police officers, may only be held liable in damages for those actions which (1) violated a plaintiff's statutory or constitutional rights <u>and</u> (2) where the right violated was *clearly established* at the time. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Even if this Court finds that Sergeant Wolf violated Plaintiff's rights, such rights were not clearly established as such that Sergeant may be held liable under 42 U.S.C. 1983. There is nothing that would have informed Sergeant Wolf that detaining and arresting Plaintiff under these circumstances, violated the law.

A government official's actions are clearly established as a violation of law only if it was "sufficiently clear that every reasonable official would understand that what [the government official did] is unlawful." *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018), *Ashcroft v. al-Kiidd*, 563 U.S. 731, 741 (2011). In other words, "existing law must have placed the constitutionality of the officer's conduct beyond debate." *Id.* In the Sixth Circuit, that requires a Supreme Court case, a Sixth Circuit case, or an Ohio Supreme Court case. *Durham v. Nu'man*, 97 F.3d 862, 866 (6th Cir. 1996).

Qualified immunity entitles its possessor to "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021). Additionally, it is ultimately the plaintiff's burden to establish that the defendants are not entitled to qualified immunity. *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When the alleged constitutional violations are based on the collective knowledge of police officers, an individual officer is still entitled to qualified immunity if an objectively reasonable officer in the same position could have reasonably believed that he or she was acting lawfully. *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007). "Where individual officers are acting in good faith and in reliance on the reports of other officers, have a sufficient factual basis for believing that they are in compliance with the law, qualified immunity is warranted, notwithstanding the fact that an action may be illegal when viewed under the totality of the circumstances." *Id.*

At all times during Plaintiff's detention and arrest, Sergeant Wolf was acting on the basis of the knowledge he gained from Officer Lewis' report of Plaintiff's failure to yield, obstruction of the traffic stop, and his own first-hand knowledge of Plaintiff's irate and confrontational behavior. (Lewis Dep. 133:21-22, 140:9-16; Wolf Dep. 124:25-125:12; Britton Dep. 169:24-170:6). And between the information Officer Lewis relayed to him and his first-hand knowledge of Plaintiff's actions, Sergeant Wolf had probable cause. *United States v. McManus*, 560 F.2d 747, 750 (6th Cir. 1977) (noting that probable cause can rest upon the collective knowledge of the police).

###### i. Sergeant Wolf is entitled to qualified immunity on Plaintiff's Fourth Amendment claim for unlawful detention.

For Plaintiff to succeed on the unlawful detention claim, Plaintiff must show that Sergeant Wolf violated his rights, and the conduct is a clear violation clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Plaintiff would have to identify existing law "finding a Fourth Amendment violation 'under similar circumstances.'" *District of Columbia v. Wesby*, 583 U.S. 48, 65 (2018). Plaintiff cannot do so. Plaintiff delayed Officer Lewis in completing her traffic stop with Goodman and delayed her in the performance of her official duties. (Lewis Dep. 140:14-19). And any delay that impedes an officer in the performance of their duties is obstruction. R.C. 2921.31; *State v. Wellman*, 2007-Ohio-2953, ¶ 18. Here, Sergeant Wolf was aware of the delay and disruption that Plaintiff caused in obstructing Officer Lewis' performance of her duties. (Wolf Dep 124:25-125:12, 326:11-14). And the collective knowledge doctrine permits an officer to rely on information obtained from fellow officers. *Brown v. Lewis*, 779 F.3d 401, 412 (6th Cir. 2015); *United States v. McManus*, 560 F.2d 747, 750 (6th Cir. 1977); *Collins v. Nagle*, 892 F.2d 489, 495 (6th Cir. 1989). Because probable cause existed, Plaintiff was not unlawfully detained. Thus, there is no argument that any reasonable official would understand Sergeant Wolf's actions to be unlawful, given that probable cause existed to detain him.

###### ii. Sergeant Wolf is entitled to qualified immunity on Plaintiff's Fourth Amendment claim for unlawful continued detention.

Once again, Plaintiff cannot demonstrate that his 20-minute detention was unreasonable or was in violation of clearly established law. In fact, the law is clear—there is no per se time restriction for detention so long as the officers act diligently to investigate the situation. *United States v. Medina*, 992 F.2d 573, 585 (6th Cir. 1993). Here, Sergeant Wolf acted diligently to investigate Plaintiff's obstruction of Officer Lewis' official duties. During the time that Plaintiff

was detained, Officer Lewis and Sergeant Wolf were discussing the obstruction charge and preparing the citation. (Lewis Dep. 156:12-13; Lewis Dep. 242:25-243:6).

And probable cause existed for the detention and continued detention of Plaintiff because Plaintiff obstructed official business. (Wolf Dep. 124:25-125:12, 326:11-14; Lewis 140:14-16, 149:16-18, 182:4-8). Probable cause defeats Plaintiff's §1983 claims for unlawful detention, unlawful continued detention, and unlawful arrest. *See Bowman v. City of Fairview Park*, 2024 U.S. Dist. LEXIS 70475 at *7 (N.D. Ohio Apr. 17, 2024) citing *Rowser v. Ohio*, 2013 U.S. Dist. LEXIS 3425 at *7 (N.d. Ohio Jan. 9, 2013). No reasonable officer who has probable cause for an individual's detention would consider an approximate 20-minuted detention an unreasonable duration of detention given the time needed to thoroughly investigate, discuss, and cite Plaintiff for his obstruction. As such, Sergeant Wolf is entitled to qualified immunity.

### iii.    Arrest 4A Sergeant Wolf is entitled to qualified immunity on Plaintiff's Fourth Amendment claim for unlawful arrest.

Plaintiff cannot demonstrate that the actions of Sergeant Wolf—arresting him for obstruction based on probable cause—is clearly established as a violation of law. Sergeant Wolf arrested Plaintiff because he had knowledge that Plaintiff has failed to yield to emergency sirens, inserted himself in Officer Lewis' traffic stop, yelled at Officer Lewis, and delayed Officer Lewis in the performance of her official duties. (Lewis Dep. 119:17-20, 132:4-6, 140:14-16; Wolf Dep. 124:25-125:12; Britton Dep. 164:1-5).

Here, probable cause for Plaintiff's arrest existed barring Plaintiff's unlawful arrest claim. *Bringman v. Fredericktown*, 2016 U.S. Dist. LEXIS 142173 at *11 ("When a Section 1983 claim is predicated on an allegation of false arrest, false imprisonment, or malicious prosecution, the claim must fail if probable cause for the arrest existed"). And any of Officer Lewis' knowledge and information regarding her interaction with Plaintiff, is imputed to Sergeant Wolf under the

collective knowledge doctrine giving rise to the existence of probable cause for Plaintiff's arrest. (Lewis Dep. 119:17-20, 132:4-6, 140:14-16; Wolf Dep. 124:25-125:12; Britton Dep. 164:1-5); *See United States v. McManus*, 560 F.2d 747, 750 (6th Cir. 1977); *Brown v. Lewis*, 779 F.3d 401, 412 (6th Cir. 2015); *Collins v. Nagle*, 892 F.2d 489, 495 (6th Cir. 1989).

As previously established, Sergeant Wolf had probable cause for both Plaintiff's detention and arrest. (*see* supra at p. 9). No reasonable officer would be on notice—beyond all doubt—that Sergeant Wolf's actions were unlawful, given that there was probable cause to detain and arrest Plaintiff. To be sure, there is no Sixth Circuit or Ohio Supreme Court case on all fours which would clearly establish this right—so Plaintiff cannot meet their burden here. See Wegner, 933 F.2d 390, 392 (6th Cir. 1991). Rather, Ohio lower court law is clear there was probable cause for the arrest. (*see* supra at p. 9). In sum, Sergeant Wolf's actions were not clearly established as a violation of law, and he is entitled to immunity from Plaintiff's claims.

###    iv.    Sergeant Wolf is entitled to qualified immunity on Plaintiff's Fourth Amendment excessive force claim.

Sergeant Wolf is entitled to qualified immunity on Plaintiff's excessive force claim as well. Not only did Sergeant Wolf not violate Plaintiff's rights when placing him under arrest when probable cause existed, but also, the use of handcuffs was reasonable. An officer is allowed to use the force of handcuffs when effecting a lawful arrest. *Graham v. Connor*, 490 U.S. 386, 396 (noting "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it"). And placing an individual under arrest, the mere use and placement of the handcuffs alone cannot amount to excessive force. *Palshook v. Jarrett*, 120 F. Supp 2d 641, 656 (N.D. Ohio 2000). Plaintiff cannot show that Sergeant Wolf violated his rights by effecting a lawful arrest with the use of handcuffs.

The Sixth Circuit has previously granted qualified immunity to officers in scenarios where the arrested individual failed to notify the officer that the handcuffs were too tight or ask for the officer to loosen or remove them. *Lyons v. City of Xenia*, 417 F.3d 565, 576 (6th Cir. 2005) (stating that in the absence of an obvious physical problem or a plea by the defendant to loosen the handcuffs a reasonable officer would not know that a problem occurred). Plaintiff did not complain or notify Sergeant Wolf that the handcuffs were too tight. (Kern Dep. 104:13-18). Sergeant Wolf was simply doing his job and effecting an arrest for the obstruction of official business. No reasonable officer would understand Sergeant Wolf's actions of placing Plaintiff in handcuffs to effect his lawful arrest would amount to an unlawful use of force. Sergeant Wolf's actions were not clearly established as a violation of law, and he is entitled to qualified immunity.

> **v.  Sergeant Wolf is entitled to qualified immunity on Plaintiff's First Amendment claim.**

With regard to Plaintiff's First Amendment retaliation claim, Plaintiff must show that Sergeant Wolf violated his First Amendment rights and that the right violated was clearly established at the time. *Harlow v. Fitzgerald*, 457 U.S. 800,818 (1982). Plaintiff cannot show that Sergeant Wolf's conduct was clearly established as a violation of law.  For a violation to be clearly established "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *King v. Ambs*, 519 F.3d 607, 615 (6th Cir. 2008) (quoting *Anderson v. Creighton*, 483 U.S. at 640). Here, Plaintiff was not arrested for his speech, Plaintiff was arrested for obstruction of official business. *See Johnson v. Estate of Laccheo*, 935 F.2d 109, 112 (6th Cir. 1991) (granting qualified immunity because officers did not violate an individual's First Amendment right when arresting an individual for obstruction because a reasonable police officer in like circumstances could have reasonably believed that the arrest was lawful); *King v. Ambs*, 519 F.3d 607, 610 (6th Cir. 2008) (holding that plaintiff's First Amendment

rights were not violated when the plaintiff was arrested for obstruction rather than the speech by plaintiff). Plaintiff obstructed official business. Obstruction is not protected conduct under the First Amendment. *Patrizi v. Huff*, 821 F. Supp 2d 926, 940 (N.D. Ohio 2011); *State v. Wellman*, 2007-Ohio-2953, ¶ 31 (affirming conviction for obstruction of official business under R.C. 2921.31 because the arrestee was convicted based on his volume, demeanor, and actions that hindered the officers' duties not the content of the speech). A reasonable officer would not have known that the enforcement of the obstruction statute in the context of this case violated the First Amendment. Thus, Sergeant Wolf is entitled to qualified immunity.

**D.  Plaintiff's state law claims against Sergeant Wolf fail for a multitude of reasons.**

Plaintiff alleges various state law claims against Sergeant Wolf including civil assault and battery, civil unlawful imprisonment and false arrest, and malicious criminal prosecution. These claims fail for a multitude of reasons.

**i.    Sergeant Wolf is immune under R.C. 2744.**

Sergeant Wolf is immune from Plaintiff's state law claim. Under R.C. 2744, employees of political subdivisions are immune from liability unless "(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; (c) civil liability is expressly imposed upon the employee by a section of the Revised Code." Ohio Rev. Code § 2744.03(A)(6).

**1.  Sergeant Wolf's actions were within the scope of his employment.**

A police officer's actions, taken within the scope of his employment, are governmental functions that are generally immune from liability. *Pernell v. Bills*, 2009-Ohio-6493, ¶ 1(affirming summary judgment for a police officer who was acting within the scope of his employment under

Ohio Rev. Code § 2744.03(A)(6)). Allegations of improper officer activity have been held to be within the scope of employment. *City of Sharonville v. Am. Emplrs. Ins. Co.*, 2006-Ohio-2180,109 Ohio St.3d 186, 190. "Thus, in cases in which the activity is arguably an outgrowth of a police officer's duties, such as in the arrest of a suspect, the investigation of a crime, or the handling of evidence, officers have been held to be acting within the scope of their employment." *Id.*

Sergeant Wolf acted within the scope of his employment the entire time he was assisting Officer Lewis with the traffic stop Plaintiff had interrupted. Officer Lewis had called out for assistance to address Plaintiff while she conducted a traffic stop. (Kern Dep. Ex. 10). Sergeant Wolf was aware that Plaintiff had obstructed Officer Lewis' traffic stop and was confrontational towards Officer Lewis (*Id.*). Because Sergeant Wolf had a reasonable suspicion that Plaintiff had or was committing a crime, Sergeant Wolf detained, arrested, and cited him. All of Sergeant Wolf's activities were an outgrowth of Sergeant Wolf's duties.

Sergeant Wolf detained, arrested, and cited Plaintiff because he obstructed Officer Lewis' traffic stop. Plaintiff interfered with Officer Lewis' traffic stop by failing to yield, yelling at her, and causing her focus to shift towards him instead of the traffic stop. (Lewis Dep. 133:21-22, 140:9-16; Wolf Dep. 124:25-125:12). Sergeant Wolf had reasonably reliable information that Plaintiff obstructed official business. Plaintiff's actions were stated over the radio traffic, and Sergeant Wolf had knowledge of Plaintiff's unlawful actions from his encounter with Plaintiff at the scene and Officer Lewis' statements about Plaintiff's obstruction. (Wolf Dep. 174:5-12, 326:11-14).

### 2. Sergeant Wolf did not act with malicious purpose, in bad faith, or in a wanton or reckless manner.

Plaintiff alleges that Sergeant Wolf acted with malicious purpose, in bad faith, or in a wanton or reckless manner towards him. (Compl. at ¶ 90, Doc. No. 1, PageID 16). Malicious

purpose is defined as the "willful and intentional desire to harm another, usually seriously, through conduct which is unlawful or unjustified." *Smith v. Redecker*, 2010-Ohio-505, ¶ 32 (citing *Hicks v. Leffler*, 119 OhioApp.3d 424, 428-429 (1997)). Bad faith is the "dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another." *Rural Bldg. of Cincinnati LLC v. Mercer*, 2017-Ohio-7226, ¶ 21, 96 N.E.3d 882, 888. Courts use "wanton or reckless" interchangeably; these are defined as "a complete disregard for the care and safety of others, indifferent to the consequences, with a belief that a probable harm will result." *Strickland v. Tower City Mgmt. Corp.*, 8th Dist. Cuyahoga No. 71830, 1977 Ohio App.LEXIS 5802, at *9. While these considerations are questions of fact, courts have found no malicious purpose, bad faith, or wanton or reckless behavior occurs when police officers were simply doing their job and following appropriate procedures and conformities of the law. *Alagha v. Cameron*, 2009-Ohio-4886, ¶ 22.

Sergeant Wolf was carrying out his duties as a police officer and did not act with malicious purpose, bad faith, or in a wanton or reckless manner. In arresting Plaintiff, Sergeant Wolf did not use excessive force. Sergeant Wolf simply handcuffed Plaintiff because he always handcuffs individuals he arrests, and his actions were solely a result of probable cause that Plaintiff obstructed official business. (Wolf Dep. 116:17-18; Kern Dep. Ex. 10). (see pgs   supra). There are no actions taken by Sergeant Wolf that would demonstrate a disregard for Plaintiff's safety or a failure to exercise any care. Plaintiff cannot demonstrate that Sergeant Wolf acted with malicious purpose, bad faith, or wanton or reckless behavior in detaining and arresting Plaintiff.

### 3.  Civil liability is not expressly imposed.

Under R.C. 2744.03, a government employee is immune unless civil liability is expressly imposed on them by a section of the Ohio Revised Code. *See Sollenberger v. Sollenberger*, 173

F.Supp. 3d 608, 632 (S.D. Ohio 2016) (dismissing R.C. 2307.60 claim against a sheriff because he was immune under R.C. 2744); *see also Cramer v. Auglaize Acres*, 2007-Ohio-1946, 113 OhioSt.3d 266, ¶ 20. Claims involving "constitutional guarantees and prohibitions," do not expressly impose liability for their violations. *Id.*

### ii. Even if the Court finds immunity inapplicable, Plaintiff's claims fail as a matter of law.

#### 1. Plaintiff's civil assault and battery claim against Sergeant Wolf fails.

Plaintiff alleges that Sergeant Wolf committed civil assault and battery against him by using excessive force when effectuating the arrest. (Compl. at ¶¶ 86-87, Doc. No. 1, PageID 15). Under Ohio law, assault is defined as "the willful threat or attempt to harm or touch another offensively, [where that] threat or attempt reasonably places the other in fear of such contact" whereas, battery is defined as "an intentional uninvited contact with another." *Harris v. United States*, 422 F.3d 322, 330 (6th Cir. 2005).

As applied to police officers, an officer may be liable for assault and battery if he uses an unreasonable amount of force to arrest an individual or in protection of himself. *D'Agastino v. City of Warren*, 75 F. App'x 990, 995 (6th Cir. 2003) (finding that if an officer repeatedly hit the plaintiff's face into the ground when making an arrest constituted excessive force, a genuine issue of material fact remained with regard to the excessive force and assault and battery claims). Conversely, where there is no excessive force, an officer is entitled to immunity. *Peoples v. City of Lima*, No. 3:14-CV-01804, 2015 U.S. Dist. LEXIS 30616, at *13-14 (N.D. Ohio Mar. 12, 2015) (emphasis added). Further, a police officer is privileged to make contact with a suspect to execute his duties unless the officer acted "manifestly outside the scope of his employment or official responsibilities," acted "with malicious purpose, in bad faith, or in a wanton and reckless manner,"

or in a manner for which liability can be imposed under some other law of the State of Ohio. R.C. 2744.03(A)(6)(a)-(c).

Sergeant Wolf did not use excessive force when arresting Plaintiff. Outside of placing Plaintiff in handcuffs, no force was used by Sergeant Wolf during the arrest. (Kern Dep. Ex. 10). Again, Sergent Wolf had probable cause to arrest Plaintiff. (Lewis Dep. 119:17-20, 132:4-6, 140:14-16; Wolf Dep. 124:25-125:12; Britton Dep. 164:1-5). (See pgs    supra)And in arresting him, the use of handcuffs is permissible, and the use of handcuffs alone does not constitute excessive force. *Graham v. Connor*, 490 U.S. 386, 396; *Palshook v. Jarrett*, 120 F. Supp 2d 641, 656. Sergeant Wolf was acting within his scope of employment and effectuating Plaintiff's arrest when he made physical contact with Plaintiff. Sergeant Wolf never used any more force than necessary that would impose liability for civil assault or battery. Plaintiff's claims for civil assault and battery fail because Sergeant Wolf did not use excessive force in arresting Plaintiff.

### 2.  Plaintiff's civil false arrest and unlawful imprisonment claims fail.

Similarly, Plaintiff's claims for false arrest and unlawful imprisonment fail as a matter of law because there was probable cause for his arrest. A false arrest and false imprisonment claim are made by establishing two elements: (1) the intentional detention of the person; and (2) the unlawfulness of the detention. *Ficklin v. Home Depot U.S.A., Inc.,* 2010-Ohio-5601, ¶ 34 (8th Dist.). An arrest based on probable cause is a lawful detention and, thereby, serves to defeat both a claim of false arrest and claim of false imprisonment. *Henderson v. City of Euclid.* 2015-Ohio-15, ¶ 55 (8th Dist.). As previously established, there was probable cause for Plaintiff's arrest. Sergeant Wolf had probable cause that Plaintiff obstructed official business when he inserted himself into Officer Lewis' traffic stop and took her attention away from the traffic stop, yelled at her, and delayed her in carrying out her official duties. (Lewis Dep. 119:17-20, 132:4-6, 140:14-

16; Wolf Dep. 124:25-125:12; Britton Dep. 164:1-5). Thus, Sergeant Wolf cannot be held liable for unlawful imprisonment or false arrest.

### 3. Plaintiff's malicious prosecution fails.

To prevail on a claim for malicious prosecution, a plaintiff must prove that: (1) the defendant maliciously instituted the prior proceedings against the plaintiff; (2) lack of probable cause for filing the prior lawsuit; (3) the prior proceedings terminated in the plaintiff's favor; and (4) the plaintiff's person or property was seized during the course of the prior proceedings. *Crawford v. Euclid Nat. Bank* (1985), 19 Ohio St.3d 135, 139, 483 N.E.2d 1168. The existence of probable cause defeats any claim for malicious prosecution. *Hinton v. Vill. Of Newburgh Heights*, 2016-Ohio-2727, ¶ 13 (8th Dist.). Here, probable cause existed and Plaintiff cannot satisfy the required elements of a malicious prosecution claim.

Plaintiff's claim for malicious prosecution fails because there was probable cause for his arrest and prosecution. (see pgs   supra) Sergeant Wolf did not maliciously institute the proceeding against Plaintiff, rather, Plaintiff's obstruction charge was simply the result of his own actions. Plaintiff voluntarily pulled over and inserted himself into a traffic stop in which he was not a party to. (Kern Dep. 128:12-23). Then Plaintiff was confrontational with Officer Lewis, yelling at her and causing her to take her attention away from the traffic stop. (Lewis Dep. 133:21-22, 140:14-16). Such a diversion of attention not only endangered Officer Lewis, but it also impeded her traffic stop and delayed her in finishing the traffic stop or permitting her to return to patrol. (Lewis Dep. 140:14-16, 182:4-8). And Sergeant Wolf had knowledge of all the events caused by Plaintiff. (Wolf Dep. 124:25-125:12). Because of the collective knowledge doctrine, Sergeant Wolf had probable cause to detain, arrest, and cite Plaintiff for obstruction of official business. Since

probable cause existed for Plaintiff's arrest, Plaintiff's claim for malicious prosecution is defeated. *See Vill. Of Newburgh Heights* 2016-Ohio-2727, ¶ 13 (8th Dist.).

## III.    CONCLUSION

Plaintiff made a decision – he  interfered with a traffic stop that he was not a party to, despite lights flashing on Officer Lewis's patrol car. . Plaintiff's allegations are without merit and are the result of his own actions. Plaintiff failed to yield to emergency vehicle lights and sirens and obstructed Officer Lewis' safe execution of a traffic stop. Plaintiff's claims fail as a matter of law because probable cause existed, Sergeant Wolf is afforded qualified immunity, and Sergeant Wolf is immune from the remaining state claims under Chapter 2744 of the Ohio Revised Code.


Respectfully submitted,

*/s/ Patrick Kasson*
Patrick Kasson (0055570)
Thomas N. Spyker (0098075)
200 Civic Center Drive, Suite 800
Columbus, Ohio 43215
Tel: (614) 232-2418 | Fax: (614) 232-2410
pkasson@reminger.com
tspyker@reminger.com
*Counsel for Defendant Naftali Wolf*


## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing was served via the court's electronic filing system this __ day of __, 2024.

/s/ Patrick Kasson
Patrick Kasson (0055570)