**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| Demetrius Kern, | : | Case No.: 1:23-cv-01327 |
| Plaintiff, | : | Judge Charles Esque Fleming |
| vs. | : | |
| Naftali Wolf, *et al.*, | : | |
| Defendant. | : | |

**DEFENDANT SERGEANT NAFTALI WOLF'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT**

Plaintiff's Motion for Summary Judgment presents the Court with the ironic spectacle of Plaintiff complaining about his arrest—when there is *indisputable video evidence that he committed the crime* for which he was arrested. Ohio law is crystal clear that the obstruction of an officer from her duties—**even for a moment**—is obstruction. And there is no doubt that Plaintiff did this. Simply put, Plaintiff committed the crime for which he was detained, arrested, and cited. So Plaintiff's claims are barred for multiple reasons including:

- As a matter of law, probable cause existed. Probable cause alone precludes Plaintiff's First Amendment claim and Fourth Amendment claims. Probable cause also bars Plaintiff's state law claims for unlawful imprisonment and false arrest and malicious prosecution.

- Plaintiff's Motion ignores that Officer Lewis provided the citation to Mr. Kern. And irrespective of Officer Lewis' understanding at the time, she clearly had probable cause to arrest him for obstruction.

- Sergeant Wolf had knowledge of the obstruction by Plaintiff sufficient for probable cause because Officer Lewis' knowledge regarding the scene is imputed through the collective knowledge doctrine.

- Sergeant Wolf did not use any force outside of handcuffing Plaintiff, which an officer is permitted to do when effecting a lawful arrest. As such, Plaintiff cannot succeed on a claim for excessive force.

1

- Because police officers are privileged to effect a lawful arrest using handcuffs and no unnecessary force was used, Plaintiff's state law claim for civil battery and assault fails.

- Sergeant Wolf has immunity to any constitutional claims because probable cause exists and there is no clearly established right which was violated.

- Sergeant Wolf has immunity because he acted within the scope of his employment without malice or bad faith, and none of the state law claims expressly abrogate sovereign immunity.

This case is simple—probable cause existed. There is no doubt Plaintiff's actions constituted obstruction of official business. Plaintiff (1) failed to yield to Officer Lewis' lights and sirens, (2) decided to stop, (3) exited his vehicle, (4) yelled at Officer Lewis, causing her to turn away from the stop, and (5) continued disrupting Officer Lewis' *safe* execution of a traffic stop. Officer Lewis (1) communicated the obstruction to Sergeant Wolf orally and, (2) through the collective knowledge doctrine, and what he saw, Sergeant Wolf lawfully detained and arrested Plaintiff for a crime he committed. As such, Plaintiff's Motion for Partial Summary Judgment should be denied and all claims against Sergeant Wolf must be dismissed.

## I. LAW AND ARGUMENT[1]

There is simply no doubt—as a matter of law—Plaintiff obstructed official business under Ohio law. He delayed the safe execution of a traffic stop, which is sufficient, among other things he did, for an obstruction of official business charge. So, Plaintiff argues that Sergeant Wolf did not know enough to determine whether probable cause existed. But Sergeant Wolf did know enough based upon what he heard on the radio and saw at the scene. And the collective knowledge doctrine imputes Officer Lewis' knowledge to him. As a result, (1) probable cause existed and (2) Sergeant Wolf had probable cause for the arrest and citation.

---

[1] For the sake of brevity, the Statement of Facts contained within Sergeant Wolf's Motion for Summary Judgment, Doc. # 63, Page ID: 2228-2257, is incorporated herein by reference.

### A. As a matter of law Plaintiff obstructed official business.

Plaintiff made a choice—he interrupted Officer Lewis' safe attempt to conduct a traffic stop. Under well established law, that is plenty for an obstruction of official business charge under Ohio law.

*First,* Plaintiff obstructed Officer Lewis' traffic stop. To be sure, Plaintiff made a conscious decision to stop, exit his vehicle, and yell at Officer Lewis to shift her attention away from the safe performance of a traffic stop. (Lewis Dep. 132:4-6. 133:21-22; 140:14-16). In conducting a safe traffic stop, Officer Lewis' **sole focus** should have been the individual in the traffic stop. (Britton Dep. 161:6-11). Yet, Plaintiff yelled and used profanity to get Officer Lewis' attention, causing a delay in her traffic stop. (*Id.* at 163:22-164:20). Officer Lewis had to take time away from the traffic stop to handle Plaintiff's outburst. (Lewis Dep. 140:14-19). Indeed, when Sergeant Wolf arrived, Office Lewis was engaged with Mr. Kern and the traffic stop was delayed—with the domestic violence suspect still in his car waiting for Office Lewis. (Wolf Dep. 174:5-13). Moreover, *Mr. Kern's actions took Sergeant Wolf away from his duties* because he needed to come to the scene and back up Officer Lewis. (Britton Dep. 166:17-22). Officer Lewis specifically requested another unit:

> "Send me another unit because another party does not know how to yield to lights and sirens, and he is standing here recording me saying I almost ran him off the road." … "And I will give you the plates for the vehicle that's out for…**confrontation**." (Lewis Dep. Ex. 16)

Critically, and in order to be responsible and **safe** during a traffic stop, an officer must be **laser focused** on the subject of the stop. (Britton Dep. 161:6-22). This is for the safety of the officer. (*Id.*). To be sure, it is well established and obvious that officers can face unexpected safety issues at a traffic stop. *Arizona v. Johnson*, 555 U.S. 323, 330 (2009), *citing Michigan v. Long*, 463 U.S. 1032, 1047 (1983) (noting that "traffic stops are 'especially fraught with danger to police

3

officers'"). So, the proper way to conduct a **safe** traffic stop is for the officer to never take her attention off the subject of the stop as she is approaching the car. (Britton Dep. 161:6-22). And in this case, the traffic stop involved a suspected individual who had engaged in a felony domestic violence situation—so there was potential for violence. (Britton Dep. 162:8-13; Lewis Dep. 116:8-12).

*Second,* as discussed above, Plaintiff was successful in impeding the safe stop. He yelled and used profanity to get Officer Lewis' attention, which caused a delay. (Britton Dep. 163:22-164:20). And as a result, Officer Lewis was not able to maintain "laser focus" on the subject of her stop. (Lewis Depo. 140:14-19). Rather, she was required to turn away and deal with the Plaintiff—taking her focus off of the stop where it should have been. (*Id.*). And as discussed above, Sergeant Wolf was required to leave his duties to back up Officer Lewis specifically because of Mr. Kern's actions. (Britton Dep. 164:16 – 165:8; 166:17-22). And when Sergeant Wolf arrived, Officer Lewis was not engaged in the traffic stop but rather was dealing with Mr. Kern—delaying the completion of the traffic stop. (Wolf Dep. 178:15 – 179:6; 326:8 – 327:1)

*Third*, obstruction of official business requires: "(1) an act by the defendant; (2) done with the purpose to prevent, obstruct, or delay a public official; (3) that actually hampers or impedes a public official; (4) while the official is acting in the performance of a lawful duty; and (5) the defendant so acts without privilege." *Osberry v. Slusher*, 750 Fed App'x 385, 393 (6th Cir. 2018) (citing R.C. 2921.31).

Here, Plaintiff delayed Officer Lewis' traffic stop. Plaintiff failed to yield, inserted himself into the traffic stop, took Officer Lewis' attention away from the traffic stop, yelled at Officer Lewis, and delayed her in carrying out her official duties. (Lewis Dep. 119:17-20, 132:4-6, 140:14-16; Wolf Dep. 124:25-125:12; Britton Dep. 164:1-5). Further, the traffic stop impeded Sergeant

4

Wolf's duties as he was required to come and back up Officer Lewis—as opposed to continuing what he was doing in his patrol. (Britton Dep. 166:17-22). And there is a long line of Ohio cases that are clear that any obstruction—no matter the length—is sufficient:

- *See State v. Fort*, 2003-Ohio-1075, ¶¶ 25-29 (7th Dist.) (holding that Appellant obstructed official business by inserting himself into the traffic stop, yelling at the officer, and pulling the officer away from the traffic stop causing delay to the officer in concluding the traffic stop).

- *See Cleveland Metroparks v. Cauthen*, 2020-Ohio-5266, ¶ 23 (8th Dist.) (finding that even though the delay was no more than one minute, the officers still experienced a substantial stoppage of the performance of their duties).

- *See State v. Wellman*, 2007-Ohio-2953, ¶ 18 (1st Dist.) (noting that the court "do[es] not hold that any finite period of time constitutes a 'substantial stoppage,' be the delay occasion by the interference thirty seconds or two minutes").

There is simply no doubt—as a matter of law—Plaintiff's decision to verbally accost Officer Lewis—as she was attempting to conduct a safe traffic stop—was obstruction as a matter of law. *See El-Bey v. Wallace*, No. 1:21-cv389, 2024 U.S. Dist. LEXIS 76508, at *14 (S.D. Ohio Jan. 11, 2024) (holding that officers had probable cause for arresting an individual for obstruction of official business where the individual took affirmative acts of delaying the traffic stop, arguing with the officers, and challenging the officers to a duel).

**B. Any delay or impediment of the officers' official duties is sufficient for obstruction.**

In addition to willfully arguing that no affirmative act was taken, Plaintiff claims there was not a "substantial stoppage" of Officer Lewis' duties. (Pltf.'s Mot. For Sum. J. at 18-19, Doc. No. 62, PageID 2213-2214). This deflection—when the evidence is clear that Officer Lewis was taken[2]

---

[2] The idea that no affirmative act took place is absurd. Plaintiff got out of his car, and yelled profanity at her which was clearly designed to get her attention. (Lewis Dep. 177:11-18; 198:19-23). Obviously, this is sufficient for an affirmative act. *Wellman,* 2007-Ohio-2953 ¶12, 18 (verbal conduct which affects an officer's performance of duties is sufficient).

5

away from the safe performance of her duties—grossly ignores the language of the statute and Ohio law. Neither require a "substantial stoppage" of any length of time.

*First*, there is no exact time that constitutes a "substantial stoppage" for the purposes of obstructing official business— the delay could be **seconds** and still constitute obstruction so long as the individual impeded and delayed an official act. *State v. Wellman,* 2007-Ohio-2953, ¶ 18 (1st Dist.). And the proper inquiry of an obstruction of official business charge is "on the defendant's conduct, **verbal** or physical, **and its effect on the public official's ability to perform the official's lawful duties**." *Id.* at ¶ 12. And the above case law—that any delay and performance of duties is enough—is in accord with the language of the statute. *See* R.C. 2911.31. And here there is no dispute—Officer Lewis was required to maintain laser focus with the subject of her stop. (Britton Dep. 161:16-22). Plaintiff's profanity laced conduct took her away from the stop and impeded her ability to safely perform the stop, because she was no longer laser focused on her stop. (Lewis Dep. 134:7, 135:14-23; Britton Dep. 164:1-5, 167:3-7). Indeed, as Sergeant Wolf arrived, the traffic stop had not been completed. (Wolf Dep. 174:5-13). The suspected domestic violence subject was sitting in his car. (*Id.*). And Officer Lewis was engaged in an argument with Mr. Kern—which obviously prevented her from completing the traffic stop. (Wolf Dep. 178:15 – 179:6). Rather, it was not until Sergeant Wolf left what he was doing and arrived that Officer Lewis could break off from Mr. Kern and complete the traffic stop. (Lewis Dep. 143:11-17; Wolf Dep. 175:12-25).

*Second*, the statute expressly prohibits delaying a public official's business. R.C. 2921.31. The statute makes it illegal to "prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity." *Id.* To be sure, the statute—by its terms—does not specify the amount of time that is necessary to constitute a substantial stoppage.

The statute requires that an individual takes an affirmative act to obstruct or delay the officer and that act interrupts police business. *Id.*, *see Lyons v. City of Xenia*, 417 F.3d 565, 573-574 (6th Cir. 2005). Here, Plaintiff interrupted Officer Lewis' traffic stop and profanely shouted at her to get her attention and obstruct the traffic stop. (Lewis Dep. 119:17-20, 132:4-6, 140:14-16; Wolf Dep. 124:25-125:12; Britton Dep. 164:1-5). Because of Plaintiff's actions, Officer Lewis' safety was at risk, her laser focus was interrupted, she had to deal with Mr. Kern and ask for back-up and she was delayed in carrying out the traffic stop or returning to her official duties. (Britton Dep. 161:16-22, 163:18-21; Lewis Dep. 133:21-22, 140:8-16). This is plenty.

## C. Probable cause existed for Plaintiff to be detained, arrested, and cited.[3]

Forced with the fact he committed the crime, the crux of Plaintiff's argument seems to be a false assertion that Sergeant Wolf did not have sufficient knowledge to know Plaintiff committed the crime and could not rely upon Officer Lewis. In other words, despite the evidence being undisputed that Plaintiff was guilty of the crime charged, he claims Sergeant Wolf did not have enough information to have probable cause. Plaintiff is wrong in three respects. First, Officer Lewis had sufficient knowledge for probable cause of an obstruction. Second, the collective knowledge doctrine imputes Officer Lewis' knowledge into Sergeant Wolf. Finally, and based upon what he heard and saw, Sergeant Wolf independently had enough information to determine that probable cause existed.

### i. Officer Lewis had probable cause to sign the citation for obstruction.

---

[3] All of Plaintiff's Constitutional claims (with exception to the Fourth Amendment claim for excessive force which fails because no excessive force was used) and state law claims fail (with exception to the civil assault and battery claim that fails because Sergeant Wolf was permitted to use handcuffs and did not use excessive force) as a matter of law because probable cause existed. In an effort to preserve time and space, Defendant reincorporates the arguments made in his Motion for Summary Judgment. *See* Def. Wolf's Mot. for Sum. J., Doc. # 63, Page ID: 2228-2257.

Importantly, it was Officer Lewis who signed the citation. (Lewis Dep. Ex. 24). And while she was instructed to by Sergeant Wolf, Officer Lewis alone had reasonably reliable information that Plaintiff had obstructed official business as she experienced Plaintiff's disruption of her safe traffic stop. (Lewis Dep. 133:21-22, 140:14-19; Lewis Dep. Ex. 24). So, there is no doubt that Officer Lewis—who signed the citation—had probable cause to conclude Plaintiff had engaged in obstruction.

To start, as discussed above, any delay in the performance of her duties is sufficient for an obstruction charge. (*See*, Pgs. 5-7, above) (*see also State v. Wellman*, 2007-Ohio-2953, ¶ 18). And Officer Lewis—at the time she signed the citation—knew the following:

- She was engaged in a traffic stop where she should have been solely focused on the person she was stopping.

- The person was stopped under the suspicion of being involved in a felony domestic violence situation.

- She was required for her duties to be laser focused on the stop and during the stop.

- As she was approaching her traffic stop, Plaintiff (after failing to yield), pulled his car over, got out, and began profanely yelling at her.

- This drew her attention away from her pursuit of the traffic stop—causing her to delay.

- Officer Lewis had to request backup to deal with Plaintiff. She effectively stated over the radio that there was a male obstructing her stop saying there was a "confrontation.".

- When Sergeant Wolf arrived, the traffic stop had not been completed and Officer Lewis was engaged in an argument with Mr. Kern—an argument Mr. Kern wanted.

- Sergeant Wolf had to leave what he was doing on patrol to come and back her up, thereby obstructing his official duties.

- It was not until Sergeant Wolf arrived that Officer Lewis was able to go back and complete the traffic stop.

(Lewis Dep. 116: 11-12, 133:21-22, 135:14-23, 140:9-16, 189:8-19, 198:21-23; Wolf Dep. 174:5-13, Ex. 16; Britton Dep. 160:20 – 161:22, 166:17-22).

8

As a matter of law, this is sufficient for probable cause. *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000) (probable cause exists when a police officer "discovers reasonably reliable information that the suspect has committed a crime."). There is no requirement that she identify the crime then. *Id.* As a matter of law, the citing officer—Officer Lewis—had probable cause to cite Plaintiff.

    **ii.** **Sergeant Wolf had sufficient probable cause based upon the collective knowledge doctrine.**

Again, in his Motion, Plaintiff seemed to focus on a false allegation that Sergeant Wolf did not know enough to determine if probable cause existed for the obstruction citation. Aside from the absurdity of making this argument when it is clear Plaintiff obstructed, Plaintiff ignores the collective knowledge doctrine.

Sergeant Wolf, had the following knowledge when he made the determination obstruction was occurring:

- He knew that Officer Lewis was requesting back up, "because another party does not know how to yield to lights and siren and he is standing her recording me saying I almost ran him off the road."

- He heard over dispatch Officer Lewis say, "and I'll give you the plates of the other vehicles that's out for…" confrontation.

- When he arrived at the traffic stop he saw that the suspected domestic violence suspect's car was still there but Officer Lewis was not tending to the traffic stop.

- Rather, Officer Lewis was engaged in a confrontation with Mr. Kern—who obviously had no business being there and interrupting a traffic stop. It was only after he arrived that Officer Lewis indicated she would go finish the traffic stop while Sergeant Wolf took care of Mr. Kern.

- He himself had been taken away from his patrol because of the call for back up from Officer Lewis—necessitated by Mr. Kern according to the call to dispatch.

    (Wolf Dep. 124:25 – 125:12, 174:5-13, 325:4-9; Lewis Dep. 143:11-17; Britton Dep. 160:20 – 161:22, 166:17-22)

9

There is no question that given what he heard on the dispatch and what he saw at the scene, Sergeant Wolf had probable cause to conclude obstruction occurred. He was told there was a "confrontation"—and he saw one when he arrived. (Wolf Dep. 327:4-13). The traffic stop was interrupted: Officer Lewis was arguing with Mr. Kern and the subject of the traffic stop was simply waiting in his car. (Wolf Dep. 174:5-13; Lewis Dep. 140:8-16). And it was only after that could Officer Lewis complete the traffic stop –once Sergeant Wolf was there. (Lewis Dep. 143:11-17). Finally, Officer Wolf was forced to abandon whatever police work he was doing to respond to Officer Lewis' call for backup. (Britton Dep. 166:17-22). As described by Sergeant Wolf, he viewed there was obstruction because:

- The fact that Officer Lewis is no longer dealing with her initial traffic stop, which was a potential domestic violence investigation, and she can no longer deal with the potential domestic violence suspect because she was being pulled all the way back to argue with Mr. Kern, is the obstruction and interference with a traffic stop."

- And he interpreted the call that she was dealing with a confrontational subject because Office Lewis used the word "confrontation."

(Wolf Dep. 174:12-25, 325:4-9).

So, through the collective knowledge doctrine, it was permissible for Sergeant Wolf to rely on Officer Lewis' statements to Dispatch. It is clearly established that "effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information." *United States v. Hensley*, 469 U.S. 221, 231 (1985). The collective knowledge doctrine permits probable cause to rest upon the collective knowledge of the police. *United States v. McManus*, 560 F.2d 747, 750 (6th Cir. 1977).

Indeed, all of the factors Plaintiff's Motion mentioned regarding the application of the collective knowledge doctrine are met. (Pltf.'s Mot. For Sum. J. at 21, Doc. No. 62, PageID 2216,

10

citing *United States v. Lyons*, 687 F.3d 754, 767 (6th Cir. 2012)). Sergeant Wolf acted in objective reliance on the statements that Officer Lewis made over the radio stating that Plaintiff failed to yield and was yelling. There was a confrontation. (Wolf Dep. 124:25-125:12, 174:5-12, 326:11-14); *Lyons*, 687 F.3d at 767. Further, Officer Lewis had facts supporting the level of suspicion required—she witnessed Plaintiff irately interrupt her traffic stop, and experienced Plaintiff delaying and impeding the traffic stop. (Lewis Dep. 140:14-16, 182:4-8); *Lyons* at 767. Finally, the third prong is satisfied because the stop and detention of Plaintiff by Sergeant Wolf was no more intrusive than permissible for Officer Lewis. *United States v. Lyons*, 687 F.3d 754, 767 (6th Cir. 2012).

By stating Plaintiff's behavior over the radio to Dispatch, Sergeant Wolf was aware of the circumstances of Plaintiff's obstruction. And through the collective knowledge doctrine, Officer Lewis' knowledge is imputed to Sergeant Wolf for the purposes of probable cause. *See United States v. McManus*, 560 F.2d 747, 750 (6th Cir. 1977); *Brown v. Lewis*, 779 F.3d 401, 412 (6th Cir. 2015); *Collins v. Nagle*, 892 F.2d 489, 495 (6th Cir. 1989). By imputing the investigating officer's suspicions onto the responding officer, without requiring the responding officer to independently weigh the reasonable suspicion analysis, the collective knowledge doctrine "preserves the propriety of the stop" and avoids crippling restrictions on our law enforcement. *United States v. Lyons*, 687 F.3d 754, 766 (6th Cir. 2012). Simply put—based upon what he heard on the radio, and what he saw at the scene, there was sufficient information for Sergeant Wolf to determine there was an obstruction of the traffic stop. And in fact, there was. As a result, there is no issue of fact that Sergeant Wolf had probable cause to believe an obstruction was occurring.

      **iii.**     **Even without the collective knowledge doctrine, Sergeant Wolf had sufficient knowledge to determine probable cause existed for obstruction.**

Even if Sergeant Wolf had not heard the dispatch, he had sufficient information from his own view of the scene and knowledge that a traffic stop with a domestic violence subject was going on to determine obstruction was occurring. To be sure, from his own observations, Sergeant Wolf knew:

- The traffic stop was for a domestic violence suspect.

- Upon arrival, Sergeant Wolf saw Mr. Kern arguing with Officer Lewis.

- She had called for back-up.

- It was in plain view that the traffic stop had not been completed—the subject in the car was waiting while the argument between Officer Lewis and Mr. Kern took place.

- Once Sergeant Wolf arrived on the scene, Officer Lewis then felt comfortable completing the traffic stop.

- And from conversations with Mr. Kern, Sergeant Wolf understood that he had pulled over to cuss and yell at Officer Lewis for something that had nothing to do with the traffic stop.

(Wolf Dep. 174:5-13; 178:15 – 179:6, 326:8 – 327:1, 327:4-13; Lewis Dep. 143:11-17).

These facts—known to Sergeant Wolf, alone, are sufficient for probable cause. *See State v. Fort,* 2003-Ohio-1075, ¶¶ 25-29 (7th Dist.), *Cleveland Metroparks v. Cauthen*, 2020-Ohio-5266, ¶ 23 (8th Dist.), *State v. Wellman*, 2007-Ohio-2953, ¶ 18.

**iv. Relying on Officer Lewis' statements regarding plaintiff's obstruction was proper.**

Despite video evidence that Plaintiff obstructed Officer Lewis, Plaintiff claims Officer Lewis' statement to Dispatch was unreliable for purposes of probable cause. (Doc. No. 62, PageID #2215-2216). This argument is a deflection and is unreliable because (a) Plaintiffs' reliability analysis does not apply to this case; and (b) Officer Lewis had actual probable cause based upon what she knew at the time when she stated Plaintiff was obstructing.

*First*, Plaintiff asserts that Officer Lewis' statements are unreliable. (Pltf.'s Mot. For Sum. J. at 20-21, Doc. No. 62, PageID 2215-2216). However, Officer Lewis is not an unreliable source. And the "presumption of veracity applies only where the witness is someone with respect to whom there is no apparent reason to question the person's reliability." *Hart v. Hillsdale Cnty.*, 973 F.3d 627, 642 (6th Cir. 2020). Simply put, there was nothing—**at the time**—that would have given Sergeant Wolf any reason to doubt what Officer Lewis had relayed to him. Objectively, it was reasonable to rely upon her.

*Second,* what Officer Lewis relayed on the radio was accurate. Mr. Kern was engaged in a confrontation with her—as confirmed by Sergeant Wolf when he arrived. (Wolf Dep. 327:4-13). It was clear when he arrived that there was a need for back-up, as the traffic stop had not been completed and Officer Lewis was engaged in an animated discussion with Mr. Kern. (Wolf Dep. 174:5-13). And all the disruptive behavior—confrontation included—has turned out to be true. (Wolf Dep. 326:8 – 327:13). As such, there is no reason not to rely upon Officer Lewis' statements to him.

*Third*, the information that Officer Lewis knew and communicated to Sergeant Wolf at the time of the incident is sufficient for the purposes of finding probable cause. Probable cause determinations are fact-dependent and turn on what the officer knew at the time. *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993). Importantly, "probable cause is said to exist where an officer reasonably believes that an individual has committed a violation, even if in hindsight this was not the case." *United States v. Copeland*, 321 F.3d 582, 592-593 (6th. Cir. 2003). Officer Lewis had sufficient information to conclude that probable cause existed, and that probable cause was imputed to Sergeant Wolf.

13

There is no strong suspicion **at the time** that Officer Lewis was incorrect as to what she reported to Dispatch—Sergeant Wolf had every reason to believe that Plaintiff had obstructed Officer Lewis in carrying out her official duties. (Lewis Dep. 119:17-20, 132:4-6, 140:14-16; Wolf Dep. 124:25-125:12; Britton Dep. 164:1-5). And Plaintiff's hostile and disruptive behavior—after Sergeant Wolf arrived—was obvious confirmation of what was reported. (Wolf Dep. 326:8 – 327:13). Simply put, there was no reason for him to be on the side of the road while Officer Lewis was conducting a traffic stop of a suspected violent person.

### D. Because probable cause exists Plaintiff's constitutional claims fail.[4]

As established previously, probable cause existed, and Plaintiff obstructed official business as a matter of law. So, the existence of probable cause bars Plaintiff's constitutional claims. *Bringman v. Fredericktown*, 2016 U.S. Dist. LEXIS 142173 at *11 ("When a Section 1983 claim is predicated on an allegation of false arrest, false imprisonment, or malicious prosecution, the claim must fail if probable cause for the arrest existed"); *Mitchell v. Boelcke*, 440 F.3d 300, 303 (6th Cir. 2006) (individuals may be detained if there is a reasonable suspicion that an individual has been or is about to be involved in criminal activity); *Everson v. Calhoun Cnty.*, 407 F. App'x 885, 887 (6th Cir. 2011) (finding that a First Amendment retaliation claim fails as a matter of law when probable cause for the arrest existed).

### E. Sergeant Wolf did not use excessive force.

Plaintiff does not address his Fourth Amendment claim for use of excessive force in the Partial Motion for Summary Judgment. However, Plaintiff claims that there are issues of material fact regarding the use of force. (Pltf.'s Mot. For Sum. J. at Fn. 1, Doc. No. 62, PageID 2190).

---

[4] All of Plaintiff's Constitutional claims (with exception to the Fourth Amendment claim for excessive force) fail as a matter of law because probable cause existed.

14

There are not. The body camera footage is clear—Sergeant Wolf did not use any force beyond merely placing Plaintiff in handcuffs.

An officer is permitted to use handcuffs in effecting an arrest. *Graham v. Connor*, 490 U.S. 386, 396; *Palshook v. Jarrett*, 120 F. Supp 2d 641, 656 (N.D. Ohio 2000). And the use of handcuffs alone is not enough. *Palshook v. Jarrett*, 120 F. Supp 2d 641, 656 (N.D. Ohio 2000). Plaintiff never communicated pain to Sergeant Wolf regarding the handcuffs or that the handcuffs were too tight. (Kern Dep. 104:13-18). And "in the absence of an obvious physical problem caused by the handcuffs or a plea by the defendant to loosen them, it is fair to ask how a reasonable officer should know that a problem has occurred." *Lyons v. City of Xenia*, 417 F.3d 565, 576 (6th Cir. 2005) (finding that Plaintiff failed to establish excessive force claim because she did not claim that she told the officers the handcuffs were too tight or complaints about the handcuffs were disregarded). Here, Sergeant Wolf was simply doing his job and effecting a lawful arrest by using handcuffs.

**F. Sergeant Wolf is entitled to qualified immunity.**

Plaintiff claims that Sergeant Wolf is not entitled to qualified immunity by simply alleging the case is "particularly egregious."—without pointing to a single case on all fours. Simply put, Sergeant Wolf is entitled to qualified immunity because Plaintiff has not met his burden of establishing case law on all fours. *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

*First*, the claims are based upon a lack of probable cause. (Pltf.'s Mot. For Sum. J., Doc. No. 62, PageID 2190-2225). But Ohio law is absolutely clear that probable cause existed here. (See, Pgs. 2-5 *supra.*). To be sure, there is nothing in Ohio law—or Sixth Circuit law—that would place Sergeant Wolf on notice that interrupting Officer Lewis' traffic stop was not an obstruction. Rather, Ohio case law seems relatively clear—as is the statute—that any delay or interruption is sufficient for obstruction. *State v. Wellman*, 2007-Ohio-2953, ¶ 18; R.C. 2921.31.

15

Yet, Plaintiff has the burden—a clearly established element of qualified immunity—to demonstrate a case which on all fours would have put Sergeant Wolf on notice that the interruption here was not sufficient for obstruction. *See Rivas-Villegas v. Cortesluna* 595 U.S. 1, 6 (2021) (noting that to show a violation of clearly established law the individual must identify a case that put the officer on notice that his specific conduct was unlawful). Plaintiff has not met that burden.

*Second,* Plaintiff argues that the collective knowledge doctrine cannot be used in this situation. But Plaintiff fails to cite any case which would put Officer Lewis and/or Sergeant Wolf on notice of this, and that is his burden. *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991); (Pltf.'s Mot. For Sum. J., Doc. No. 62, PageID 2221-2222).

*Third,* there is simply no question, Plaintiff must show a case "on all fours" that would have placed Sergeant Wolf on notice that detaining and citing Plaintiff in this situation was unconstitutional. *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991). It is *Plaintiff's burden* to provide this case law. And he does not. As a result, qualified immunity is established as a matter of law. *Id.*

Simply put, there are multiple cases in Ohio law that suggest any delay is sufficient for obstruction. *See e.g. State v. Wellman*, 2007-Ohio-2953, ¶ 18 (1st Dist.). And there are no cases—set forth by Plaintiff—which indicate obstruction does not occur under the facts in this case.

*Fourth,* Plaintiff's attempt to use the "particularly egregious" exception is just silly. Plaintiff relies on caselaw in which the conditions of confinement of an individual were particularly egregious due to the lack of basic necessities over the course of a six-day confinement resulting in qualified immunity to be inapplicable. *See Taylor v. Riojas* 592 U.S. 7, 9 (2020). Unlike scenarios in which the conditions were so egregious that no reasonable officer could have concluded they were constitutional, here, there is no precedent Plaintiff can point to that would

16

instruct a reasonable officer to believe that Sergeant Wolf's actions were unconstitutional. There is, however, Ohio case law that is on point which suggests even a brief interruption is sufficient for obstruction. *See Wellman* ¶ 18. And the information Sergeant Wolf gathered from the radio, and from what he saw, is sufficient. And the collective knowledge doctrine imputes Officer Lewis' knowledge.

As a result, Plaintiff's Motion should be denied because there is nothing on all fours—which is continually stressed by the U.S. Supreme Court—which would have placed Sergeant Wolf on notice.

### G. Sergeant Wolf is entitled to immunity under R.C. 2744 because he did not act with malice, in bad faith, or in a wanton or reckless manner.

Plaintiff maintains that Sergeant Wolf acted with malice and therefore is not entitled immunity under R.C. 2744. (Pltf.'s Mot. For Sum. J. at 29-30, Doc. No. 62, PageID 2224-2225). Specifically, Plaintiff relies on the alleged lack of probable cause to infer that Sergeant Wolf acted with malice. (*Id.* at 30). Sergeant Wolf did indeed have probable cause but also did not act with malice because he was doing his job.

Under R.C. 2744, Sergeant Wolf like other employees of political subdivisions are entitled to immunity unless "(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; (c) civil liability is expressly imposed upon the employee by a section of the Revised Code." Ohio Rev. Code § 2744.03(A)(6). Plaintiff argues that Sergeant Wolf acted with malice. (Pltf.'s Mot. For Sum. J. at 29-30, Doc. No. 62, PageID 2224-2225). Malicious purpose is defined as the "willful and intentional desire to harm another, usually seriously, through conduct which is unlawful or

17

unjustified." *Smith v. Redecker*, 2010-Ohio-505, ¶ 32 (citing *Hicks v. Leffler*, 119 OhioApp.3d 424, 428-429 (1997)).

The fact that Mr. Kern actually committed the crime itself, and Sergeant Wolf was doing his job, negates the argument malice or bad faith. *Alagha v. Cameron*, 2009-Ohio-4886, ¶ 23 (1st Dist.). An officer is tasked with addressing crimes. *State v. Latessa*, 2007-Ohio-3373, ¶ 25 (11th Dist.). Moreover, the evidence known to Sergeant Wolf, at the time, was that Mr. Kern had obstructed a traffic stop, prevented the safe execution of Officer Lewis' duties, and required Sergeant Wolf to leave what he was doing—obstructing his duties. (Wolf Dep. 174:5-13, 175:12-25; Britton Dep. 166:17-22). Simply put, Mr. Kern broke the law, and that in and of itself demonstrates that there is no bad faith here.

Here, Sergeant Wolf was carrying out his duties as a police officer and did not act with malicious purpose, bad faith, or in a wanton or reckless manner. Sergeant Wolf simply handcuffed Plaintiff because he always handcuffs individuals he arrests, and his actions were solely a result of probable cause that Plaintiff obstructed official business. (Wolf Dep. 116:17-18; Kern Dep. Ex. 10). There are no actions taken by Sergeant Wolf that would demonstrate a disregard for Plaintiff's safety or a failure to exercise any care. Plaintiff cannot demonstrate that Sergeant Wolf acted with malicious purpose, bad faith, or wanton or reckless behavior in detaining and arresting Plaintiff.

**H. Plaintiff's state claims against Sergeant Wolf fail as a matter of law.**

Even if Sergeant Wolf were not immune under R.C. 2744, Plaintiff's claims still all fail as a matter of law. As previously discussed, Sergeant Wolf had probable cause to arrest and cite Plaintiff for obstruction. Indeed, Plaintiff obstructed official business when he interrupted Officer Lewis' traffic stop failed to yield to emergency sirens, inserted himself in Officer Lewis' traffic stop, yelled at Officer Lewis, and delayed Officer Lewis in the performance of her official duties.

(Lewis Dep. 119:17-20, 132:4-6, 140:14-16; Wolf Dep. 124:25-125:12; Britton Dep. 164:1-5). As such, Plaintiff's state law claims for malicious prosecution and false arrest fail. *See Henderson v. City of Euclid*, 2015-Ohio- 15, ¶ 55 (8th Dist.), *see further Hinton v. Vill. Of Newburgh Heights*, 2016-Ohio-2727, ¶ 13 (8th Dist.). And because Sergeant Wolf was acting with legal authority, effecting a lawful arrest, and did not use excessive force, Plaintiff's civil assault and battery claim fails. *See D'Agastino v. City of Warren*, 75 F. App'x 990, 995 (6th Cir. 2003) (finding that an officer may be liable for assault and battery if he uses an unreasonable amount of force to arrest an individual or in protection of himself).

## II. CONCLUSION

For the foregoing reasons, Plaintiff's claims fail as a matter of law. As such, the Court should enter an Order denying Plaintiff's Partial Motion for Summary Judgment.

Respectfully submitted,

*/s/ Patrick Kasson*
Patrick Kasson (0055570)
Thomas N. Spyker (0098075)
Thomas H. Kaczkowski (0103039)
**REMINGER CO., LPA**
200 Civic Center Drive, Suite 800
Columbus, Ohio 43215
Tel: 614-232-2418 | Fax: 614-232-2410
pkasson@reminger.com
tspyker@reminger.com
tkaczkowski@reminger.com

*Counsel for Defendant Naftali Wolf*

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document was served by operation of this court's CM/ECF electronic filing system this 6th day of December, 2024.

*/s/ Patrick Kasson*
Patrick Kasson (0055570)