# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **DEMETRIUS KERN,** | : | CASE NO. 1:23-cv-01327 |
| Plaintiff, | : | JUDGE CHARLES ESQUE FLEMING |
| -vs- | : | |
| | : | **DEFENDANTS' REPLY** |
| **NAFTALI WOLF, et al.,** | : | **MEMORANDUM IN SUPPORT** |
| | : | **OF THEIR MOTION FOR** |
| Defendants. | : | **SUMMARY JUDGMENT** |

Now come defendants, Carly Lewis and the City of Cleveland Heights, by and through counsel, and hereby respectfully submit this Reply Memorandum in Support of their Motion for Summary Judgment. The plaintiff's Response in Opposition to the Defendants' Motion fails to provide any case law that would alter the analysis set forth in the Defendants' Motion and, otherwise, does not reference facts and evidence, which would create a genuine issue of material fact. Therefore, the Defendants respectfully move this Honorable Court for an Order granting them summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Respectfully submitted,

*s/Gregory A. Beck*
Gregory A. Beck (0018260)
Andrea K. Ziarko (0073755)
BAKER | DUBLIKAR
400 S. Main Street
North Canton, Ohio 44720
e-mail: beck@bakerfirm.com
andreaz@bakerfirm.com
Phone: (330) 499-6000
Fax:    (330) 499-6423
***Counsel for Defendants Carli Lewis and City of Cleveland Heights***

**Reply Memorandum in Support of Motion for Summary Judgment**

**I.      Introduction**

The plaintiff's Response to the defendants' Motion for Summary Judgment relies heavily on plaintiff's assertion that his arrest was based solely upon his unwillingness to identify himself. By doing so, plaintiff ignores the video evidence and deposition testimony made by officers Carli Lewis and Naftali Wolf that plaintiff's deliberate interference with Officer Lewis' traffic stop was the reason for his arrest. The record is clear that Officer Lewis was conducting an inherently dangerous traffic stop when plaintiff pulled his vehicle behind Officer Lewis and intentionally interfered with her traffic stop, thereby placing her in a vulnerable position and jeopardizing her safety. As plaintiff was already under lawful arrest for obstruction of official business, his failure to reveal his identity further warranted his arrest. Further, the plaintiff misconstrues the undisputed facts to disparage the officers' cause for arresting him. Moreover, the plaintiff has presented no evidence that the officers acted unreasonably or that the plaintiff suffered any injury as a result of his arrest. All of plaintiff's arguments in opposition to the defendants' Motion for Summary Judgment are unavailing and therefore fail to set forth any genuine issue of material fact.

**II.     Restatement of the Facts**

Plaintiff's complaint alleges several claims pursuant to 42 U.S.C. §1983, the Fourth and First Amendments, as well as state law claims. As set forth in defendants' Motion for Summary Judgment ("MSJ"), each of the plaintiff's claims in the instant action must fail.

In light of the MSJ and Plaintiff's Response to Defendants' MSJ (hereinafter referred to as "Response"), the following facts in the record remain undisputed:

- Plaintiff deliberately pulled over behind Officer Lewis ("Lewis") during a potential felony traffic stop;

- Lewis communicated to dispatch that she needed assistance in light of plaintiff's presence on the scene of her traffic stop;

- Plaintiff's intentionally interrupted Lewis' traffic stop to dispute the manner in which she initiated an inherently dangerous traffic stop;

- As a natural consequence of plaintiff's presence on scene, the plaintiff distracted Lewis from the focus of her traffic stop, which was to investigate the driver who may have been a felony suspect;

- Officer Naftali Wolf ("Wolf") offered to take a police report by plaintiff against Lewis, which the plaintiff refused;

- Plaintiff's was arrested and briefly detained before being cited for obstruction of official business and released at the scene;

- Wolf immediately loosened plaintiff's handcuffs when he complained the handcuffs were too tight;

- Plaintiff initially requested medical attention following his arrest and later refused once emergency personnel arrived on scene;

- No collision occurred as a result of Lewis' traffic stop.

The foundation upon which plaintiff's constitutional claims rear is his contention that the arrest was predicated on his failure to identify himself. However, the record is replete with evidence that Plaintiff was arrested for interfering with Lewis' traffic stop of an individual who may have been the subject of felony warrants (MSJ, Doc. #: 61, PageID #: 2160; Lewis dep., Doc. #52, PageID #762, 776-777; Ex. 10, Doc. #:51-12, PageID #538-545). The plaintiff complains that he was unlawfully detained by the officers when "Lewis fail(ed) to respond to his inquiry as to whether he was free to go (and Sgt. Wolf stating 'if you want to be' in response to whether Mr.

3

Kern was being detained)" (Response, Doc #: 68 Page ID #:2320). The plaintiff was handcuffed and placed under lawful arrest and released upon receiving a citation for obstruction under R.C. §2921.31. Plaintiff's brief arrest was not in contravention of his constitutional rights under the Fourth or First Amendment. As the officers arrested the plaintiff and had probable cause to do so, plaintiff 's allegations do not support his constitutional claims.

The undisputed facts also establish that plaintiff's handcuffed were loosened immediately following his complaint. (MSJ, Doc. #: 61, PageID #: 2164; Doc. #48, Ex. 12 at 4:00-4:10; Ex. 11 at 6:11-6:19). Although plaintiff initially claimed he needed medical attention, he admits he declined attention by emergency personnel when they arrived on scene. (Response, Doc #: 68 Page ID #:2312). Further, there is no evidence in the record that demonstrates that Officer Wolf "yanked [Kern's] arm in gratuitous violence" while arresting plaintiff. (Response, Doc #: 68 Page ID #:2328-2329).

To support his First Amendment claim, plaintiff asserts he engaged in protected acts by "recording with his phone the interaction with Ofcr. Lewis, and later Sgt. Wolf" as well as "filing, threatening to file, or attempting to file a complaint against a police officer." (Response, Doc #: 68 Page ID #:2330). As the evidence reflects, the basis for plaintiff's arrest was unrelated to his alleged First Amendment protected acts. Further, Wolf offered to take a police report by plaintiff for his complaints against Lewis (Ex. 12 at 2:18). The plaintiff refused and walked away from Wolf to further engage Lewis. (Ex. 12 at 2:18 to 3:15). Further, without any apparent authority in support, plaintiff argues that qualified immunity should be denied because Lewis' and Wolf's actions were "particularly egregious." (Response, Doc #: 68 Page ID #:2333). However, plaintiff offers no case law or facts to support his contention.

Plaintiff's *Monell* claim against Defendant City of Cleveland Heights ("City") is equally unconvincing. Plaintiff has not set forth any evidence that a "policy or custom" by a "final decision maker ratified illegal actions as it relates to the instant case." (MSJ, Doc #: 61 Page ID #:2179). Furthermore, the plaintiff has not presented evidence that the officers were inadequately trained, either by showing "foreseeable consequences that could result from lack of training" or "a failure to act in response to repeated complaints of constitutional violations." (MSJ, Doc #. 61, PageID #: 2180). Moreover, the City operates under Lexipol policies which "include topics at issue in this case, including the officers' duties with respect to constitutional rights, training, use of force, handcuffing, standards of conduct, and public recording of law enforcement activities." (MSJ, Doc #. 61, PageID #: 2181). As a result, the plaintiff has not shown that the City acted with deliberate indifference to his complaint.

Finally, with regard to plaintiff's state law arguments set forth in defendants' MSJ, plaintiff contends, without presenting any evidence in support, that Plaintiff failed to activate her lights and sirens while stopping the vehicle she sought to apprehend. (MSJ, Doc #. 68, PageID #: 2346). There is simply no evidence in the record to suggest that Lewis did not activate her lights and sirens. Otherwise, the driver of the vehicle she stopped would have had no reason to pull over. Plaintiff further seeks to discredit well-settled law that Lewis' traffic stop was considered an "emergency call." In any event, plaintiff has presented no evidence that the officers acted with malice, were reckless or acted in bad faith. There is also no evidence that plaintiff suffered any injury as a result of Lewis' traffic stop to overcome the officers' presumed immunity under R.C. Chapter 2744.

### III. Law and Argument

#### A. Officer Lewis is Entitled to Qualified Immunity, Precluding Plaintiff's Federal Claims under §1983.

Plaintiff Fourth Amendment claim is based solely on his subjective belief that Lewis and Wolf lacked probable cause to arrest him because he failed to identify himself. However, the record is clear: plaintiff's arrest was predicated on his interference with Lewis' felony traffic stop. As explained in defendants' MSJ, the plaintiff pulled over behind Lewis while she was in the process of conducting a traffic stop of a possible dangerous felon. When Lewis exited her cruiser to engage the driver of the vehicle, she was forced to direct her attention to plaintiff, who attempted to approach her cruiser. As a result, Lewis was not only interrupted from addressing the driver of the vehicle she pulled over, but was also put at risk by diverting her attention from the potential inherent dangers of effectuating a felony traffic stop.

Moreover, plaintiff has not cited to a single case recognizable under the Sixth Circuit or otherwise to show that he was entitled to interfere Lewis' lawful traffic stop. Instead, it is well-settled that "[f]ederal courts have long utilized a balancing test weighing the Government's interest in preserving officer safety against an individual's constitutional rights under the Fourth Amendment." *See United States v. Enslin*, 327 F.3d 788 (9th Cir. 2003); *Glantz v. Ren*, 2010 U.S. Dist. LEXIS 112712 (Dist. Mt. Oct. 22, 2010); *United States v. Rivera*, 2013 U.S. Dist. LEXIS 28045 (E.D. Pa. Feb. 27, 2013); *United States v. Terrazas*, 2022 U.S. Dist. LEXIS 150829 (W.D. Tx. Aug. 23, 2022). Officer safety is a critical factor in the Fourth Amendment analysis. "The Court must balance the plaintiff's interest in being free from unlawful seizure with the government's interests, including the safety of police officers." *Douglas v. Swing*, 2011 U.S. Dist. LEXIS 88496, *20; *see, also*, *United States v. Garcia*, 2023 U.S. Dist. LEXIS 903 (Dist. Nv. Jan. 2, 2023) ("Recognizing the delicate balance that courts must strike between preserving officer

safety and respecting individuals' rights to be free from unlawful searches and seizures."). This consideration is further emphasized in Wolf's Motion for Summary Judgment, therein Wolf states: "[i]t is well established that police must be cognizant of danger during a traffic stop. *Arizona v. Johnson*, 555 U.S. 323, 330 (2009) citing *Michigan v. Long*, 463 U.S. 1032, 1047 (noting that "traffic stops are 'especially fraught with danger to police officers'"). (*See* Defendant Wolf's MSJ, Doc #: 63, PageID #: 2230). Here, Lewis' safety was impaired by the plaintiff's intervention during a felony traffic stop. (*See* Defendant Wolf's MSJ, Doc #: 63, PageID #: 2229). It is an undisputed fact that Lewis instructed dispatch to send a unit to assist her with the plaintiff, which placed her safety in jeopardy by diverting her attention from the felony traffic stop. In his Response, plaintiff does not cite to a single case which grants him any right to intervene under this constitutional analysis.

Plaintiff further argues that the officers arrest of plaintiff for obstruction under R.C. §2921.31 was improper because the officers did not have knowledge of Mr. Kern's "objective intent" for interrupting Lewis' traffic stop. This is a misinterpretation of the law under R.C. §2921.31. In the case of *Wright v. City of Euclid*, which the plaintiff cites for support, that Court specifically states that "[w]ith respect to the element of 'purpose to obstruct,' '[a] person acts purposely when it is **his specific intention** to cause a certain result.'" (emphasis added) 962 F.3d 852, 873 (6th Cir. 2020). The "purpose" or "objective intent" is not premised on the officers' understanding of purpose, but by the individual's intent. Not only does the evidence demonstrate that it was the plaintiff's purpose and objective intent to interrupt Lewis during a traffic stop, the plaintiff was successful in his efforts by interrupting Lewis during an inherently dangerous traffic stop which in turn required her to request backup. Plaintiff failed to take into consideration the

7

impact of his actions on the safety of the officers, and his application of R.C. §2921.31 is misplaced.

### B. Plaintiff Was Not Subject to Excessive Force.

As explained in defendants' MSJ, plaintiff was arrested for obstructing official business for his interference with Lewis' lawful traffic stop. Despite his contentions that he was subject to false arrest, the record supports that plaintiff was not unlawfully detained or arrested because the arrest was supported by probable cause. Both officers were in agreement that the plaintiff interfered with Lewis' traffic stop. Plaintiff was briefly detained and then arrested for obstruction before he was released at the scene. As there was probable cause for his arrest, plaintiff's Fourth Amendment Claims fail.

The evidence in this case simply does not support that the officers acted "particularly egregious" in their treatment of plaintiff by arresting and releasing the plaintiff. Plaintiff complains that Wolf used "gratuitous violence" when he placed handcuffs on him and placed him under arrest. (Response, Doc #. 68, PageID #: 2328). As explained in defendants' MSJ and supported by video evidence, Wolf immediately loosened the handcuffs upon plaintiff's request. (MSJ, Doc #. 61, PageID #: 2164; Doc. #48, Ex. 12 at 4:00-4:10; Ex. 11 at 6:11-6:19). Such act by Wolf is damning to the plaintiff's reliance on the case of *Hughey v. Easlick*, 3 F.4th 283, 289 (6th Cir. 2021). In *Easlick*, the Sixth Circuit employed a three-part test for "ascertaining whether 'unduly tight or excessively forceful handcuffing' constitutes excessive force." *Id*. At the summary-judgment stage, a plaintiff must create a genuine dispute of material fact that "(1) [they] complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced 'some physical injury' resulting from the handcuffing." *Id.*

> Conceptually, the handcuffing test is a subset of the general Fourth Amendment excessive-force framework. See *Martin v. Heideman*, 106 F.3d 1308, 1313 (6th Cir.

8

1997) (explaining that we "ha[ve] chosen to view an 'excessively forceful handcuffing' claim under the general excessive force rubric").

> We distill from our precedent the relationship between these tests in § 1983 cases involving handcuffing. See *McGrew v. Duncan*, 937 F.3d 664, 668 (6th Cir. 2019); *Courtright v. City of Battle Creek*, 839 F.3d 513, 518-20 (6th Cir. 2016); *Baynes*, 799 F.3d at 607-08. We apply the three-prong handcuffing test to one specific act: a law-enforcement official's allegedly placing too-tight handcuffs on a person's wrists. If a plaintiff creates a genuine dispute of material fact that they complained that their handcuffs were too tight, the officer ignored those complaints, and the plaintiff experienced "some physical injury" from the physical contact between cuffs and wrists, summary judgment is unwarranted. If a plaintiff's sole allegation is that the cuffs around their wrists were too tight, we need apply only the handcuffing test and our analysis terminates there. But if a plaintiff alleges that excessive force otherwise occurred—even if related to the handcuffing process— we apply the general Fourth Amendment framework to all allegations underlying the excessive-force claim. If the plaintiff creates a genuine dispute of material fact about whether the officer acted unreasonably, summary judgment is likewise inappropriate. *Id.* at 289.

In *Easlick*, the officer "yank[ed] Hughey's arm during her arrest" and "refuse[d] to loosen or remove Hughey's cuffs after she complained of shoulder pain. *Id.* at 291. Here, the record clearly shows that when the plaintiff complained that his handcuffs were placed too tightly, Wolf immediately loosened the handcuffs. While the plaintiff was handcuffed in the back of the cruiser, the plaintiff did not complain of his handcuffs being too tight. Further, the plaintiff has not presented evidence of any bruising or evidence of "'some injury' from the physical contact between cuffs and wrists." *Id.* at 290.

The plaintiff's expert Declarations of Christopher Wiest and Jennifer Knight, Esq. ("Expert Declaration") attempt to express legal conclusions which are considered impermissible expert testimony. Stated more precisely, the two declarations are from attorneys whose claimed expertise is only with the legal realm and are therefore simply legal conclusions. The Sixth Circuit adheres to the determination in *DeMerrell v. City of Cheboygan*, 206 Fed. Appx. 418 (6th Cir. 2006), which limits expert testimony to the extent it seeks to decide "a legal conclusion." In *DeMerrell*, the

Court affirmed the district court's decision to ignore the plaintiff's expert opinion with respect to whether it was "objectively unreasonable for Officer White to shoot Mr. DeMerrell" and whether "a reasonable officer on the scene would not have concluded at the time that there existed probable cause that Mr. DeMerrell posed a significant threat of death or serious physical injury to the officer or others." *Id*. at 426. The Sixth Circuit stated:

> This testimony also expresses a legal conclusion, going beyond "stating opinions that suggest the answer to the ultimate issue." *Berry*, 25 F.3d at 1353. Still other conclusions by Plaintiff-Appellant's expert were improper legal conclusions, namely that the "use of deadly force by [Officer White] was improper and unnecessary." See *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992)(precluding expert testimony in a § 1983 excessive force case that an officer's conduct was not "justified under the circumstances," not "warranted under the circumstances," and "totally improper").

In this case, Jennifer Knight's Expert Declaration seeks to establish "beyond doubt that the force employed here was excessive from a police practices perspective." (Response, Doc #. 68, PageID #: 2327). In the Expert Declaration, Ms. Knight specifically states "It is my opinion that excessive force was used by Sgt. Wolf in effecting the arrest of Mr. Kern, and that Mr. Kern was injured as a result." (Response, Doc #. 68-2, PageID #: 2373). As explained by the Court in *DeMerrell* and related binding cases in the Sixth Circuit, Ms. Knight expresses a legal conclusion which is inadmissible in this case. *See Norman v. City of Lorain,* 2006 U.S. Dist. LEXIS 97840 *8 (N.D.Ohio 2006) (explaining that the expert "may not testify that the force used by Officer Lachner was 'unreasonable' or 'unnecessary" or "express any legal conclusions."). To the extent the Expert Declaration by Christopher Wiest touches on "issues of causation of the [plaintiff's] shoulder injury," such information is equally impermissible at the summary judgment phase. (Response, Doc #. 68, PageID #: 2312).

The officers' use of force to arrest the plaintiff was objectively reasonable under the circumstances. Therefore, their actions do not amount to a violation under the Fourth Amendment.

10

**C.      Probable Cause for Plaintiff's Arrest Nullifies First Amendment Claim.**

Plaintiff summarily responded to defendants' First Amendment arguments by reiterating his subjective belief that he was arrested for failing to identify himself after the officers on scene requested his identification. Again, the evidence in the record supports that the officers probable cause to arrest plaintiff after he interrupted Lewis during her felony traffic stop. When the plaintiff records Lewis (Ex. 11, at 19:03:00) and threatens to file a complaint against the officers, probable cause had already been established for his arrest (Ex. 12, at 1:28). Further, Wolf offered to take a police report from plaintiff relative to his complaints, but plaintiff refused.

As provided in the MSJ, the plaintiff has not demonstrated that his verbal complaints against the officers were a "substantial or motivating factor" that resulted in his arrest. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). If probable cause for arrest exists, as it did here, there can be no retaliatory action. *Reichle v. Howards*, 566 U.S. 658, 663 (2012). Therefore, plaintiff's First Amendment claim fails.

**D.      Plaintiff Fails to Support his *Monell* Claim Against Defendant City of Cleveland Heights.**

In his Response, the plaintiff argues that the Cleveland Heights Police Department operate under an unwritten policy to arrest individuals for obstruction if they fail to identify themselves (Response, Doc #. 68, PageID #: 2334-35). These allegations are irrelevant, as the reason for the plaintiff's arrest was not because he did not identify himself, but because he interfered with Lewis' traffic stop. Thus, plaintiff's argument that the "failure to identify is obstruction of official business" is a policy or custom of the department is not at issue in this case. Plaintiff cites to the case of *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1247-48 (6th Cir. 1990) to argue that a municipality can be liable for "the unconstitutional acts of its employees by failing to meaningfully investigate and punish allegations of unconstitutional conduct." Here, as explained in their MSJ, a

11

thorough investigation was pursued by the City, which even resulted in Wolf's disciplinary action as a result of his interaction with the plaintiff.

Plaintiff also has not met his burden to show that the officers have been inadequately trained or that the Cleveland Heights Police Department ("CHPD") acted with deliberate indifference. Plaintiff contends there is no record of a formal training plan at CHPD, but this is not the proper standard under the *Monell* analysis. As provided in their MSJ, the record reflects CHPD conducts yearly training for all mandated topics as well as individualized topics. (MSJ, Doc #. 61, PageID #: 2182, Briton dep., Doc. #55, PageID #1486-1487, 1504)). There is also evidence in the record that both officers received specific training on use of force, de-escalation, legal updates, criminal charges, use of restraints, objective reasonableness, OPOTA training, mutual respect, and qualified immunity. (MSJ, Doc #. 61, PageID #: 2182; Ex. 2, Doc.#51-4, PageID #426-433; Ex. 8, Doc. #51-10, PageID No. 502-514). There is simply no evidence in the record to support plaintiff's contention that Wolf was motivated by racial animus, or that Lewis failed to use her lights or sirens at the incident. Plaintiff's attempt to argue that two instances of citizen complaints against Wolf from 2020 and 2021 are insufficient to demonstrate a policy or custom of tolerance or a "clear and persistent pattern of illegal activity" to prevail on a *Monell* claim.

  E. **<u>Lewis is Entitled to Immunity on State Law Claims.</u>**

Plaintiff's Response offers little support to sustain his state laws claims against Lewis for Malicious Prosecution, False Arrest, and Unlawful Imprisonment. But for plaintiff's claim that he was arrested without probable cause, his claims fail. The evidence in the record establishes that the plaintiff was arrested not for failure to provide identification but for his conduct by intervening with Lewis' traffic stop. As previously argued in their MSJ, probable cause for the arrest in question supplies a complete defense to a claim of false arrest and imprisonment. (MSJ, Doc #.

12

61, PageID #: 2183; *McKee v. McCann*, 8th Dist. Cuyahoga No. 104956, 2017-Ohio-7181, ¶18 (explaining that "*Probable cause for the arrest* in question supplies a complete defense to a claim of false arrest"). In order to prevail on a malicious prosecution claim, there must be a lack of probable cause. The record reflects that there was in fact probable cause for plaintiff's arrest, which depletes the plaintiff's state law claims.

### F. The Plaintiff Suffered No Damages or Injuries to Prevail on State Law Claims against Defendant City under R.C. 2744.02(B).

The plaintiff's only demonstrable argument in support of his state law claims against the City is that he did disagree with the officers' arrest on the day of the incident. Plaintiff's Response provides little or no support to combat well-settled law which states that an "emergency call" under R.C. 2744.01(A) "need not be inherently dangerous to demand a response by the officer. It is the urgent call to duty, not the degree of actual danger, which triggers immunity under R.C. 2744.02(B)(1)(a)." *Hardesty v. Alcantara*, 2015 Ohio Misc. LEXIS 21454, *17-18. Moreover, "[t]he issue of whether an emergency call situation existed may be determined by summary judgment or as a matter of law where triable questions of fact are not present." *Id*.

The undisputed facts support Lewis was responding to an emergency call and pursued a vehicle she reasonably believed the driver of possessed felony warrants for domestic violence. Not only was the traffic stop inherently dangerous, but the apprehension of dangerous felons poses an urgent call to duty. (MSJ, Doc #. 61, PageID #: 2187). Plaintiff's assertion that the activation of lights or sirens, or alleged lack thereof, is simply irrelevant and therefore fails to strip immunity from either Lewis or the City. In his Response, the plaintiff argues that Lewis acted negligently. (Response, Doc #. 68, PageID #: 2346). As Lewis was responding to a call of duty, she is immune from any claims of negligence and there is no evidence that she operated her vehicle in a willful

13

or wanton manner. (MSJ, Doc #. 61, PageID #: 2186-2187). Under R.C. 2744.02(B)(1)(a), plaintiff's claim against Lewis for negligence fails.

Plaintiff then argues that Lewis' actions were willful and wanton. Here, plaintiff does not meet the threshold requirement to show that either officer acted in a willful or wanton manner. Plaintiff's reliance on *Kearns v. Meigs Cnty. Emergency Med. Servs.*, 2017-Ohio-1354, 88 N.E.3d 438 (4th Dist. App. 2017) simply misses the mark. *Kearns* is a case in which an emergency responder failed to activate their lights and sirens, which resulted in injury to the plaintiffs. Again, plaintiff has presented no evidence that Lewis failed to activate her lights and sirens or that the plaintiff suffered any injury from her vehicle operation.

In addition to the arguments asserted in her MSJ, Plaintiff has not made any showing of harm or injury suffered as a result of Lewis' actions, which is a requirement under R.C. 2744.02(B). In *Winbush v. Cin. Music Festival*, the court explained that the exception of willful or wanton conduct only applies to remove immunity of a political subdivision "when the plaintiff's injury was caused 'by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority.'" 2022-Ohio-2799, ¶ 19. There was no vehicle accident or injury to any party involved in this incident, including the driver of the Infiniti, Lewis, or the plaintiff. Thus, plaintiff's claims against the City fail.

And finally, based on the arguments presented, the plaintiff's claim for punitive damages must also fail in that there is no evidence that Officer Lewis acted with malice.

### III.     Conclusion

Officer Carly Lewis and the City of Cleveland Heights are entitled to summary judgment on all of plaintiff's claims in his complaint as there are no genuine issues of material fact and the complaint fails as a matter of law.

WHEREFORE, based upon all the foregoing reasons, the Defendants respectfully requests this Honorable Court issue an Order granting them summary judgment on all claims against it and dismissing plaintiff's complaint in its entirety, with prejudice.

Respectfully submitted,

*s/Gregory A. Beck*
Gregory A. Beck (0018260)
Andrea K. Ziarko (0073755)
BAKER | DUBLIKAR
400 S. Main Street
North Canton, Ohio 44720
e-mail: beck@bakerfirm.com
andreaz@bakerfirm.com
Phone: (330) 499-6000
Fax:     (330) 499-6423
***Counsel for Defendants Carli Lewis and City of Cleveland Heights***

### CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing was served via this Court's electronic filing system on the 20th day of December, 2024, upon all counsel of record.

*/s/ Gregory A. Beck*
Gregory A. Beck (0018260)