**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO – Cleveland Division**

| | | | |
|---|---|---|---|
| DEMETRIUS KERN | : | Case No. | 1:23-cv-1327 |
|     Plaintiff | : | | |
| v. | : | | |
| NAFTALI WOLF, et. al. | : | | |
|     Defendants | : | | |

**PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY**
**JUDGMENT ON LIABLITY (Sgt. WOLF AND Ofcr. Lewis)**

In their Oppositions (Doc. 66, Doc. 67) Sgt. Wolf and Ofcr. Lewis falsely claim they are relying on "indisputable evidence," but then argue "facts" contradicted by the indisputable video evidence from their own body worn cameras. Consequently, not all of their "indisputable evidence" is indisputable or evidence. And equally frivolously, they assert legal arguments contrary to published Sixth Circuit case law. In truth, the camera evidence, as well as Sgt. Wolf's and Officer Lewis' own under-oath admissions, and published case law, compel the conclusion that Mr. Kern is entitled to partial summary judgment as to liability on most of his claims against them.[1]

Plaintiff, Demetrius Kern ("Plaintiff" and/or "Mr. Kern") is not going to restate the actual undisputed facts, established either in the video or by way of admissions against interest that Sgt. Wolf and Ofcr. Lewis made under oath. He has done that already, in his motion for partial summary judgment. (Motion, Doc. 62, at pp. 1-17, PageID#2196-2212). Instead, and as set

---

[1] Again, the Motion for Partial Summary Judgment did not address claims against the City of Cleveland Heights, nor did it address (even though Sgt. Wolf makes arguments in his Opposition, Doc. 66), Mr. Kern's excessive force claims against Sgt. Wolf. (Doc. 62). Plaintiff believes those claims involve genuine issues of material fact, and thus they were addressed in Plaintiff's Opposition to Defendants' Motions (Doc. 68).

forth below, Plaintiff will address Defendants' misstatements of fact while addressing
Defendants' misstatements of law.

**A. Plaintiff is entitled to partial summary judgment on his Fourth Amendment claims against Sgt. Wolf and Ofcr. Lewis for illegal detention and false arrest**

Fourth Amendment detention: Sgt. Wolf and Ofcr. Lewis unlawfully detained Mr. Kern
in violation of the Fourth Amendment when Mr. Kern asked Defendants if he was being
detained, and Ofcr. Lewis failed to respond to his inquiry, and Sgt. Wolf stated "if you want  to
be".  *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *United States v. Sokolow*, 490 U.S. 1, 7
(1989); *United States v. Hardnett*, 804 F.2d 353, 356 (6th Cir. 1986); *United States v. Hill*, 195
F.3d 258, 267 (6th Cir. 1999).   This conduct by Defendants violated the foregoing clearly
established law.

Fourth Amendment false arrest: both Sgt. Wolf and Ofcr. Lewis took part in making the
unlawful arrest, because even though the physical act of placing Mr. Kern in handcuffs initially
was done by Sgt. Wolf, Ofcr. Lewis verbally took the position, along with Sgt. Wolf, that Mr.
Kern somehow was guilty of obstruction merely by not identifying himself (Lewis Camera at
5:33), and Ofcr. Lewis and Sgt. Wolf kept Mr. Kern detained for more than 15 minutes in her
police cruiser, including when Ofcr. Lewis opened the door to speak with him and then closed it
again to ensure he was kept in custody.   That is more than sufficient to hold both of them
individually liable for the false arrest.  *Taylor v. Michigan Dep't of Corr.*, 69 F.3d 76, 80-81 (6th
Cir. 1995); *Webb v. United States*, 789 F.3d 647, 660 (6th Cir. 2015).

There was no probable cause for the arrest:  Under the Fourth Amendment, a warrantless
arrest is reasonable only where there is probable cause to believe that the suspect committed a
criminal offense. *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 279 (6th Cir. 2020).  Here,
Sgt. Wolf and Ofcr. Lewis' Oppositions rely upon the fiction that there was probable cause to

2

arrest Mr. Kern.  Not so.  R.C. 2921.31 provides "(A) No person, without privilege to do so **and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity**, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."  (emphasis added).  Tellingly, and deceptively, Sgt. Wolf and Ofcr. Lewis claim an alleged one second delay constituted the illegal obstruction, all while ignoring that portion of the statute that requires an act, carried out without privilege to do so, but with a purpose to prevent, obstruct or delay.  (Memoranda, Doc. 66 at 1-14; Doc. 67 at 1-6).  Of course, Defendants both admitted under oath they have no evidence of any purpose to prevent, obstruct or delay by Mr. Kern.  (Depo. Wolf Doc. 60-1, at 169, 170, 177, Depo. Lewis Doc. 52 at 188).

In further support of their false conclusion regarding probable cause, Sgt. Wolf cites to Chief Britton's post-hoc review, but that does not provide competent evidence to evaluate probable cause, which is solely determined based on the information known to Sgt. Wolf and Ofcr. Lewis at the time of the arrest. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 307 (6th Cir. 2005).  Likewise, Ofcr. Lewis flagrantly misrepresents the record by claiming that "[b]ecause of [Mr. Kern's] interference, Lewis did not cite Goodman for his traffic violation and released him due to the time she had to spend with Kern."  (Lewis Response, Doc. 67, at 2).  Yet Ofcr. Lewis' testimony was that there was no "need" for her to cite Mr. Goodman, and she *never* testified that Kern's speech was the basis for her refusal to do so.  (Depo. Lewis, Doc. 52, at 143-144, PageID#804-804).  Thus, there is no evidence, much less "indisputable evidence" supporting her false argument.

As documented in the record, after the vehicles were stopped, video recorded the interaction between the parties.  Filed conventionally is cell phone video taken by Mr. Kern,

3

Kern_1119-20220922_185844.mp4,[2] that records him saying to Ofcr. Lewis, as she approaches Mr. Goodman's vehicle, "I want your badge number, you almost ran me off the road." (*Id.*). He did so in order to file a complaint about her reckless driving because she almost ran him off the road. (Depo. Kern, Doc.54 at 41, 43). In response, Ofcr. Lewis told Mr. Kern to wait, so he did. (*Id.*). Ofcr. Lewis admitted this in her testimony and also admitted that Mr. Kern complied with her request to wait. (Depo. Lewis, Doc. 52, at 134-135). In other word, it is undisputed Mr. Kern stayed back, away from Ofcr. Lewis, for more than a minute. (*Id.*; Kern_1120-20220922_185903.mp4, filed conventionally). And Ofcr. Lewis also admitted that Mr. Kern did not prevent her from talking to Mr. Goodman, but claims he somehow "delayed it," despite the fact Mr. Kern complied with her directive to stand back, and complied with all other directives that she gave him. (Depo. Lewis, Doc. 52, at 140-141). And Ofcr. Lewis admitted she had the scene under control prior to backup arriving. (*Id.* at 145). Ofcr. Lewis then approached Mr. Kern and apologized to him. (Exhibit 11 at 19:00:37). At 19:01:35 of her body camera, Sgt. Wolf arrives. (*Id.*).

Sgt Wolf's body worn camera footage begins at 19:01:00 (of his camera). (Wolf BWC, Exhibit 12, at 19:01:00). At approximately 19:01:53 he walks up to Mr. Kern and immediately falsely accuses Mr. Kern by stating "well you don't pull up behind an officer on a traffic stop." (*Id.* at 19:01:53). Mr. Kern responds: "you don't even know what's going on," to which Sgt. Wolf replies "you're right, I don't." (*Id.*). Mr. Kern then states "so why are you saying that?" (*Id.*). And Sgt. Wolf replies: "because I am here and what you are doing right now is against the law." (*Id.* at 19:01:58). Mr. Kern then responds "she almost ran me off the road." (*Id.*). Sgt.

---

[2] Both of the .mp4 videos were authenticated with the declaration of Mr. Kern. (Doc. 62-1). All of these video exhibits, including the Lewis and Wolf body camera footage at Exhibits 11 and 12, were filed conventionally. (Doc. 48; Doc. 59).

Wolf replies: "then you should have pulled over for lights and sirens, she said on the radio that you didn't yield and it's on dash cam I'm assuming." (*Id.* at 19:02:05). Mr. Kern tells Sgt. Wolf he is wrong, saying "that's the disconnect man." (*Id.* at 19:02:05). Sgt. Wolf then says "I'll tell you what, let her finish her stop, then we can sit down and talk like adults." (*Id.* at 19:02:07). Ofcr. Lewis then responds, "we're good, I'm going to let him go." (*Id.* at 19:02:09).

Instead of letting him go, Ofcr. Lewis asks Mr. Kern for his last name. (*Id.* at 19:02:11; Exhibit 11 at 19:02:13). Mr. Kern asks why she needs his last name. (Exhibit 12 at 19:02:11). Ofcr. Lewis responds that she is "asking who I am talking to," and says "you asked me my last name." (*Id.* at 19:02:13). Sgt. Wolf then states: "well now you are going to be under arrest, what you are doing is illegal, I can charge you with interfering with a traffic stop." (*Id.* at 19:02:22; Exhibit 11 at 19:02:24).

Ofcr. Lewis again asks Mr. Kern for his last name, to which Mr. Kern responds "Why?" (*Id.*). Ofcr. Lewis responds: "because I am conducting business with you now." (*Id.* at 19:02:29). Mr. Kern then asks: "Am I being detained, or am I free to go?" to which Sgt. Wolf responds: "If you want to be." (Exhibit 12 at 19:02:26; Exhibit 11 at 19:02:29). Mr. Kern then states "that's not how this works, what is your RAS, what is your reasonable articulable suspicion of my crime?" (Exhibit 12 at 19:02:35). Sgt. Wolf then states: "I will explain it to you. Doing what you are doing right now…" (*Id.*). Mr. Kern then states "No, she almost ran me off the road." (*Id.* at 19:02:40).

Sgt. Wolf responds: "Again, you didn't yield to lights and sirens." (*Id.*). Mr. Kern then states "she was next to me and stopped and almost ran me off the fucking road, what are you talking about." (*Id.* at 19:02:47). Sgt. Wolf responds: "Okay, listen to me, you asked my reasonable articulable suspicion, it's probable cause." (*Id.* at 19:02:50). Mr. Kern responds:

"I'm not under arrest, if you arrest me you are violating my rights."  (*Id.* at 19:02:52).  Sgt. Wolf responds: "I don't want to arrest you, we have to id you."  (*Id.* at 19:02:54).  Mr. Kern responds: "you are violating my rights, is that what you want to do?"  (*Id.* at 19:02:55).  Sgt. Wolf responds: "we have to id you."  (*Id.* at 19:02:56).  Mr. Kern responds: "No you don't," and Sgt. Wolf repeats "yes we do."  (*Id.* at 19:02:57).  Mr. Kern then states that "OK, I'm going to videotape this," and Sgt. Wolf responds "OK, we have you on camera too."  (*Id.* at 19:03:00). Mr. Kern then states "I'm going to call, they can come get my car, you are violating my rights." (*Id.* at 19:03:02).  And Sgt. Wolf responds "who is getting what car?"  *Id.* at 19:03:03.

Sgt. Wolf then makes a radio call and states there is a male who is obstructing **by purportedly failing to identify himself**.  (*Id.* at 19:03:06-10).  Mr. Kern then states again: "No I'm not, she almost ran me off the road."  (*Id.*).  Sgt. Wolf responds, "so I'll take a report on it, but you need to id."  (*Id.* at 19:03:12).

Meanwhile, at 19:02:35 of her body worn camera footage, Ofcr. Lewis walks back to Mr. Goodman, finishes her stop of him, and releases him at 19:03:06 of her body worn camera. (Exhibit 11 at 19:02:35-19:03:06).  Ofcr. Lewis testified that, at that point, all business involving Mr. Goodman was concluded.  (Depo. Lewis, Doc. 52, at 143-144).

Mr. Kern then responds to Sgt. Wolf's statement about "taking a report on it" by stating "No, I'm dealing with her [Ofcr. Lewis]."  (Exhibit 12 at 19:03:15).  In response, Ofcr. Lewis states to Mr. Kern "talk to me."  (*Id.*).  Mr. Kern then states to Sgt. Wolf "what the hell is wrong with you man."  (*Id.* at 19:03:16).  Sgt. Wolf then steps back and calls in the license plate number on Mr. Kern's vehicle.  (*Id.* at 19:03:16 to 19:03:43).

Ofcr. Lewis continues to interact with Mr. Kern and again asks him to identify himself so that she can let her dispatcher know who she is "dealing with".  (Exhibit 11 at 19:03:54; Exhibit

6

12 at 19:03:52).  Ofcr. Lewis then states **"if you don't identify yourself, that is obstruction."** (Exhibit 11 at 19:03:54).  Mr. Kern (accurately) states "obstruction is a secondary crime, what crime did I commit?"  (*Id.* at 19:04:00; Exhibit 12 at 19:04:02).  Ofcr. Lewis (accurately) responds (and Sgt. Wolf is present and hears this): "**there is no crime, but I want to identify you**."  (Exhibit 11 at 19:04:01; Exhibit 12 19:04:03).[3]

Mr. Kern then (accurately) states "so, if there is no crime, I don't need to identify." (Exhibit 11 at 19:04:04; Exhibit 12 19:04:07).  Sgt. Wolf raises his voice and says "no look man, I'm sorry, I'm going to have to arrest you if you don't identify yourself."  (Exhibit 11 at 19:04:11; Exhibit 12 19:04:13).  Mr. Kern responds that **"she just said there is no crime."** (Exhibit 11 at 19:04:13; Exhibit 12 19:04:13).  Sgt. Wolf responds "[i]t is a crime, obstructing is a crime."  (*Id.*).  Mr. Kern responds "what crime?"  (Id.).  And Sgt. Wolf responds "you have to legally identify yourself to us."  (Exhibit 11 at 19:04:17; Exhibit 12 19:04:17).  Mr. Kern responds "she almost ran me off the road."  (*Id.*).

Sgt. Wolf then responds: "well, I still have to identify you."  (Exhibit 11 at 19:04:20; Exhibit 12 19:04:20).  Mr. Kern responds "no you don't," and Sgt. Wolf replies "yes I do."  (*Id.,* at 19:04:22).  Mr. Kern then states "Okay, well I'm going to call someone to get my car then you can arrest me."  (*Id.* at 19:04:24).  Sgt. Wolf then states "okay, turn around, put your hands behind your back."  (*Id.* at 19:04:25).  Mr. Kern states "I didn't do anything," and Sgt. Wolf responds "OK, turn around put your hands behind your back."  (*Id.* at 19:04:27).

Defendants cite to the fact Mr. Kern raised his voice, and that he used profanity, but that only occurred after Defendants illegally demanded that Mr. Kern identify himself, which was

---

[3] This record further contradicts Defendant Lewis's blatant misrepresentation in which Lewis claims "Lewis reasonably believed that Plaintiff violated this statute."  (Lewis Response, Doc. 67, at 5, PageID#2285).  Here, Lewis *never* believed that Kern violated any laws by her own admission.  (Exhibit 11 at 19:04:01; Exhibit 12 19:04:03).

after the traffic interaction with Mr. Goodman had stopped, and after Defendants threatened Mr. Kern with an illegal arrest.

Clearly established law left no doubt that there was no probable cause here. Merely refusing to identify is plainly insufficient to satisfy the crime of obstruction, and Ofcr. Lewis and Sgt. Wolf lacked probable cause under an obstruction[4] charge (just as Mr. Kern's photographing and speaking/arguing with the officers was clearly protected conduct for the alleged one second delay that Defendants hang their entire argument upon), particularly where the evidence is clear that Mr. Kern complied with the directives of Ofcr. Lewis to stand back until she was ready to speak with him, and he did so for several minutes. *Wright v. City of Euclid*, 962 F.3d 852, 873 (6th Cir. 2020) ("there must be some substantial stoppage of the officer's progress" and "statute also requires an affirmative act that interrupts police business; '[a] person may not be convicted of the offense simply by doing nothing,'" and "[w]ith respect to the element of 'purpose to obstruct,' '[a] person acts purposely when it is his specific intention to cause a certain result.'"); *Jones v. City of Elyria*, 947 F.3d 905, 915 (6th Cir. 2020) ("refusing to comply with an officer's request is not enough"); *Patrizi v. Huff*, 690 F.3d 459, 464 (6th Cir. 2012)[5] (advising someone not to identify themselves in response to an officer's request is not sufficient, nor are actions that do not actually prevent an officer from completing their duties, and complying with officer

---

[4] R.C. 2921.31 provides "(A) No person, without privilege to do so and **with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity**, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."

[5] *Patrizi* cited favorably two district court decisions, *Pullin v. City of Canton*, 133 F. Supp. 2d 1045, 1052 (N.D. Ohio 2001) (upholding denial of summary judgment on qualified immunity grounds where Pullin approached the traffic stop only to offer assistance to the individual involved and began to leave the scene when instructed to do so by the police); and *Burr v. Perkins*, No. 2:04-cv-786, 2006 U.S. Dist. LEXIS 52442, 2006 WL 2165701, at *6 (S.D. Ohio July 31, 2006) (unpublished opinion) (concluding that under clearly established law Burr's interruption of the police investigation did not amount to obstruction where Burr approached only to help facilitate the conversation and backed away when instructed to do so by the police).

demands to step back did not establish a violation, further, "[w]here a defendant's conduct is limited to truthful speech, one cannot reasonably infer intent to obstruct official business unless the circumstantial evidence clearly demonstrates intent," and "such circumstantial evidence is lacking where an individual's conduct was 'limited to arguing with the police officers,'").

In fact, *Patrizi* made clear, in terms of the unprivileged act prong of the statute, that "truthful speech can satisfy the act element of the statute if it was done for the purpose of impeding an officer in the performance of his or her duty." *Id.* at 464. Moreover, "convictions premised on true speech" can occur "**only** when that speech involved yelling, cursing, aggressive conduct, and/or persistent disruptions **after warnings from the police against interrupting the investigation**." *Id.* Yet, here Defendants never warned Mr. Kern to stop interrupting any investigation – or to stop cursing – instead they repeatedly (and improperly) demanded his identification, and, when it comes to the Goodman traffic stop, Ofcr. Lewis informed Mr. Kern to wait and he did so.

Even worse, *Patrizi* makes clear, on the purpose element of the statute, that "[w]here a defendant's conduct is limited to truthful speech, one cannot reasonably infer intent to obstruct official business *unless the circumstantial evidence clearly demonstrates intent*." *Id.* at 466. "Ohio courts had found such circumstantial evidence lacking where an individual's conduct was 'limited to arguing with the police officers,' *id.*, as well as in circumstances where it was evident that the individual had other benign motivations.'" *Id.* Moreover, ensuring that constitutional rights are vindicated **is a lawful purpose** that prevents probable cause. *Id.* (emphasis added).

Moreover, given First Amendment limitations, the Sixth Circuit in *Patrizi* made clear that unless a defendant "cross[es] the line into fighting words or disorderly conduct prohibiting the officers from conducting their investigation," (*id.* at 467), "under clearly established law, the

9

officers lacked probable cause to believe that [the Defendant] was acting with the purpose of impeding their investigation …" (*id.* at 466). Sixth Circuit precedent makes clear that "short of 'fighting words,' probable cause cannot be based on a defendant's words alone: …" *Osberry v. Slusher*, 750 Fed. Appx. 385, 393 (6ᵗʰ Cir. 2018). "No matter how rude, abusive, offensive, derisive, vulgar, insulting, crude, profane or opprobrious spoken words may seem to be, their utterance may not be made a crime unless they are fighting words." *City of Cincinnati v. Karlan*, 39 Ohio St. 2d 107, 314 N.E.2d 162, 164 (Ohio 1974).

Here, of course, nothing that Mr. Kern said (because there is nothing that Defendants allege he did) comes even close to those lines. Moreover, here there can be no doubt about what motivated the initial interaction: Mr. Kern immediately stated that Ofcr. Lewis almost ran him off the road, so he requested Ofcr. Lewis' badge number and name in order to file a complaint, all of which is First Amendment protected activity. Again as noted, Sgt. Wolf and Ofcr. Lewis admitted they had no evidence of Mr. Kern's intentions, and no evidence of purpose to meet the statutory requirements of obstruction. (Depo. Wolf, Doc. 60-1, at 169, 170, 177; Depo. Lewis, Doc. 52, at 188). In fact, and other than what Mr. Kern said (asking for Ofcr. Lewis' name and badge number), Mr. Kern did no act to hamper or impede her investigation. (Depo. Lewis, Doc. 52, at 187). Rather, Ofcr. Lewis thinks/speculates that perhaps taking her eyes off Mr. Goodman's vehicle for a second to tell Mr. Kern "one second" delayed her interaction with Mr. Goodman for a second. *Id.* at 214. Even construing this evidence in a light most favorable to Defendants, it falls short under the standards the Sixth Circuit has articulated in *Wright*, 962 F.3d 852, 873; *Jones*, 947 F.3d 905, 915; and *Patrizi*, 690 F.3d 459, 464. And, the *post-hoc* suggestion of Mr. Kern failing to yield to lights and siren does not change this conclusion. Sgt. Wolf was not a witness to any of those purported events, and he was disabused of such a notion

by Ofcr. Lewis' statement that Mr. Kern committed "no crime".  Exhibit 11 at 19:04:01; Exhibit 12 19:04:03.

Moreover, there was no failure to yield violation.[6]  And Ofcr. Lewis' statement to dispatch about failing to yield was a bare legal conclusion, which she later recanted, thus rendering any prior report unreliable for probable cause purposes. *Wesley v. Campbell*, 779 F.3d 421, 432 (6th Cir. 2015) (inconsistent statements rendered report unreliable for probable cause purposes); *Hart v. Hillsdale Cty.*, 973 F.3d 627, 643 (6th Cir. 2020) (probable cause cannot rely upon unreliable report or information).  Consequently, Sgt. Wolf arguing that somehow he is protected by the collective knowledge doctrine, because he is entitled to have imputed to him Ofcr. Lewis' knowledge, results in the same conclusion where her knowledge is that Mr. Kern committed "no crime".  Caselaw supports this conclusion.  The collective knowledge doctrine holds that "[r]esponding officers are entitled to presume the accuracy of the information furnished to them by other law enforcement personnel." *United States v. Lyons*, 687 F.3d 754,

---

[6] Ofcr. Lewis drew an erroneous legal conclusion (which the Court should not credit) that Mr. Kern somehow failed to yield to lights and sirens.  (Depo. Lewis, Doc. 52, at 127).  Ofcr. Lewis admitted she could not say how long Mr. Kern had to react (*id.* at 128) and could not say how much time he had to stop.  (*Id.* at 130).  She also admitted Mr. Kern stopped without any accident occurring.  (*Id.* at 131).  Significantly, Ofcr. Lewis testified she did not even see Mr. Kern's vehicle as she made the lane change, because she was focused on Mr. Goodman's vehicle.  (*Id.* at 130).  Consequently, she could not say whether the almost-collision occurred during the lane change, or afterwards, because she did not see Mr. Kern's vehicle.  (*Id.* at 131-132).  The Ohio Supreme Court has explained that a failure to yield violation can only be sustained where the driver who is accused of not yielding should "in the exercise of ordinary care, have heard the siren or seen the flashing lights." *Semple v. Hope*, 15 Ohio St. 3d 372, 474 N.E.2d 314 (Ohio 1984).  Further, R.C. 4511.45(B) also provides that "this section does not relieve the driver of an emergency vehicle from the duty to drive with due regard for the safety of all persons and property upon the highway," and the driver of an emergency vehicle loses preferential status and the right of way, if another violation of law is committed. *Agnew v. Porter*, 23 Ohio St. 2d 18, 24, 260 N.E.2d 830 (Ohio 1970).  Ofcr. Lewis committed a violation of R.C. 4511.39(A) when she failed to activate her turn signal to make the lane change, thus losing any privileged status.  (Depo. Lewis, Doc. 52, at 119-120).

11

769 (6th Cir. 2012).  Yet application of the doctrine depends on the answers to the following questions:  "(1) what information was clear or should have been clear to the individual officer at the time of the incident; and (2) what information that officer was reasonably entitled to rely on in deciding how to act, based on an objective reading of the information." *Humphrey v. Mabry*, 482 F.3d 840, 848 (6th Cir. 2007).  Therefore, in order for it to apply, "(1) the officer taking the action must act in objective reliance on the information received; (2) the officer providing the information must have facts supporting the level of suspicion required; and (3) the stop must be no more intrusive than would have been permissible for the officer requesting it." *United States v. Lyons*, 687 F.3d 754, 767 (6th Cir. 2012).  Significantly here, the doctrine does not apply where there is "a likelihood, or even a strong suspicion," that the initial source of the information is wrong. *Bey v. Falk*, 946 F.3d 304, 319 (6th Cir. 2019).

Fatally for Sgt. Wolf, he admitted that he had no basis to dispute Ofcr. Lewis' statement that Mr. Kern had committed no crime.  (Depo. Wolf, Doc. 60-1, at 189-190).  And Sgt. Wolf told Internal Affairs that the only crime he thought Mr. Kern committed was obstructing for failing to identify himself.  *Id.* at 200.  He also admitted he had no basis to dispute Ofcr. Lewis' statement to Internal Affairs that Mr. Kern was not interfering with her traffic stop.  *Id.* at 201-202.  And he admits that he "jumped the gun" in arresting Mr. Kern.  *Id.* at 221-222.

And no reasonable officer, after having been informed by the original source of information that the subject in fact committed no crime, would proceed with an arrest – and certainly not without conducting some additional investigation.  Indeed, that statement, that Mr. Kern committed no crime, was the last thing Sgt. Wolf heard from Ofcr. Lewis prior to arresting Mr. Kern for obstruction solely (as he explained it at that time) for failing to identify.  Exhibit 11 at 19:04:01; Exhibit 12 19:04:03.  This conclusion is consistent with the evidence that Sgt. Wolf

was told by Ofcr. Lewis upon his arrival that, after Sgt. Wolf suggested Mr. Kern violated the

law against failing to yield to lights and sirens, she wanted to let Mr. Kern go.  Exhibit 12 at

19:02:09.  And, to the extent Ofcr. Lewis claims she is entitled to qualified immunity because

she was "simply following orders," the Sixth Circuit rejected that argument in *Bunkley v. City of

Detroit*, 902 F.3d 552, 562 (6th Cir. 2018).

       <u>Failure to intervene (Ofcr. Lewis)</u>:  Ofcr. Lewis also is liable for Sgt. Wolf's illegal arrest

under a failure to intervene theory.  *Bunkley v. City of Detroit*, 902 F.3d 552 (6th Cir. 2018);

*Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008).  *Bunkley* involved, like this case, a

claim for failure to intervene by officers who did not intervene (but had the opportunity to do so)

relating to a supervisor's false arrest.  902 F.3d 552.  As the Court made clear, "[i]t matters not

whether the individual violating the constitutional rights of a citizen is a fellow officer or a

superior." *Id.* at 565.  The elements of a failure to intervene claim are (1) the officer observed or

had reason to know that the constitutional violation was occurring, and (2) the officer had both

the opportunity and the means to prevent the harm from occurring. *Floyd*, 518 F.3d 398,

406 (*quoting Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)).  Ofcr. Lewis testified that while

she did not agree with the decision to arrest or charge Mr. Kern, and while she could have called

the shift lieutenant, she did not do so.  In other words, she had enough time to intervene, but

chose not to do so.  (Depo. Lewis, Doc. 52 at 151-154).  Plaintiff is entitled to summary

judgment on his § 1983 Fourth Amendment detention and false arrest claims.

      **B.  Plaintiff is entitled to partial summary judgment on his First Amendment claims
against Sgt. Wolf and Ofcr. Lewis**

      A First Amendment retaliation claim has three elements: (1) the plaintiff engaged in

protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person

of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal

connection between elements one and two -- that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) (emphasis added). When it comes to adverse actions, where, as here, we deal with a citizen and not with a prisoner or a public employee, the adverse action need not be great. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010).

Plaintiff engaged in protected First Amendment activities, which both Defendants were aware of, starting with asking for Ofcr. Lewis' badge number and name upon initial contact, (Kern_1119-20220922_185844.mp4, filed conventionally),[7] to repeatedly telling Sgt. Wolf (and Ofcr. Lewis) they were violating his rights, (Exhibit 12, 19:02:52 to 19:05:48), to recording with his phone the interaction with Ofcr. Lewis, and later Sgt. Wolf. (Exhibit 11 at 18:58:59 to 18:59:11 (Lewis initial radio call to dispatch mentioning the recording), Exhibit 12 at 19:03:00; Depo. Wolf, Doc. 60-1, at 130-131).

Filing, threatening to file, or attempting to file a complaint against a police officer is clearly established First Amendment speech and petitioning for redress activity. *Connick v. Myers*, 461 U.S. 138, 148, (1983) (Speech that "bring[s] to light actual or potential wrongdoing or breach of public trust" is speech that addresses a matter of public concern, as is speech that "seek[s] to inform the public that [the government] [is] not discharging its governmental responsibilities."); *Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 586 (6th Cir. 2008); Gable v. Lewis, 201 F.3d 769 (6th Cir. 2000); *Holzemer v. City of Memphis*, 621 F.3d 512 (6th Cir. 2010); *Arnett v. Myers*, 281 F.3d 552, 560 (6th Cir. 2002).

---

[7] Ofcr. Lewis testified that she understood Mr. Kern was upset about the initial interaction and wanted to make a report/complaint. (Depo. Lewis, Doc. 52, at 141-142). And body camera footage reveals Sgt. Wolf's acknowledgment that Mr. Kern wanted to make a complaint about that interaction. Exhibit 12 at 19:03:12.

14

Mr. Kern's protests to Sgt. Wolf and Ofcr. Lewis about his rights being violated also is clearly established First Amendment activity. *City of Houston v. Hill*, 482 U.S. 451, 461-463 (1987); *Bloch v. Ribar*, 156 F.3d 673, 682 (6th Cir. 1998); *McCurdy v. Montgomery County*, 240 F.3d 512, 520 (6th Cir. 2001); *Barnes v. Wright*, 449 F.3d 709, 718 (6th Cir. 2006); *Greene v. Barber*, 310 F.3d 889, 895-96 (6th Cir. 2002); *Arnett*, 281 F.3d 552, 560.  So is the right to record police. *Crawford v. Geiger (Crawford II)*, 131 F. Supp. 3d 703, 715 (N.D. Ohio 2015) (establishing that the right to record would be clearly established going forward); *see, also, Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011); *Fields v. City of Philadelphia*, 862 F.3d 353, 359 (3d Cir. 2017);  *Turner v. Lieutenant Driver*, 848 F.3d 678, 687-90 (5th Cir. 2017);  *ACLU v. Alvarez*, 679 F.3d 583, 606 (7th Cir. 2012); *Chestnut v. Wallace*, 947 F.3d 1085, 1090 (8th Cir. 2020); *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000);  *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995).

Moreover, detaining, arresting, threatening to arrest, and charging someone is sufficient adverse action to meet the second prong of *Blatter*, 175 F.3d 378, 394. *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 822-823 (6th Cir. 2007) (explaining that detention is not de minimis and would meet the adverse action prong, as would arrest); *McCurdy v. Montgomery County*, 240 F.3d 512, 520 (6th Cir. 2001) (impliedly acknowledging an arrest without probable cause constitutes adverse action of sufficient consequence); *Anderson v. Holmes*, 2021 U.S. Dist. LEXIS 102401 (MIED 2021) (failure to identify case First Amendment retaliation); *Rudd v. City of Norton Shores*, 977 F.3d 503 (6th Cir. 2020) (threatening to arrest sufficiently adverse).

And as explained above, Sgt. Wolf Ofcr. Lewis were intimately and personally involved in these adverse actions.  As noted, Ofcr. Lewis is liable for her failure to intervene where she

15

observed or had reason to know that the constitutional violation was occurring, and she had both the opportunity and the means to prevent the harm from occurring. *Floyd*, 518 F.3d 398, 406 (*quoting Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)).  This conclusion leaves no room for doubt where Ofcr. Lewis testified that while she did not agree with the decision to arrest or charge Mr. Kern (though she participated in the threats of arrest), and while she could have called the shift lieutenant, she did not do so; she had enough time to intervene, but chose not to do so.  (Depo. Lewis, Doc. 52 at 151-154).

On causation, two points must be made.  First, detaining, arresting, and charging Mr. Kern, all without probable cause (see above), is significant evidence demonstrating causation and First Amendment retaliation. *Nieves v. Bartlett*, 587 U.S. 391, 401-402 (2021).  Second, temporal proximity between protected activity and adverse action can, by itself, establish the requisite causation. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008); *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 306 (6th Cir. 2012) (two months sufficient).  Evidence of up to a four-month gap between the protected speech and the initial adverse action, without more, is sufficient evidence of causation.  *Id.*; *Anders v. Cuevas*, 984 F.3d 1166, 1177-1178 (6th Cir. 2021) (four months sufficient); *Rudd*, 977 F.3d 503, 515 (eight days sufficient); *Buddenberg v. Weisdack*, 939 F.3d 732, 741 (6th Cir. 2019) (four days sufficient); *Singfield v. Akron Metro. Housing Auth.*, 389 F.3d 555, 563 (6th Cir. 2004) (concluding that a lapse of three months is a sufficient to show causal connection).  Here, the retaliation and adverse actions were almost immediate.  These undisputed facts are more than sufficient for all three elements of the First Amendment retaliation claim.  *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999).

**C.  Defendants are not entitled to qualified immunity**

There is a two-step sequence for resolving a government official's claim to qualified immunity.  First, the court must analyze whether the facts a plaintiff has alleged in his/her complaint make out a violation of a constitutional right, and second, the court must decide whether the right at issue was "clearly established" at the time of the defendant's misconduct. *Saucier v. Katz*, 533 U.S. 194 (2001); *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

A plaintiff overcomes qualified immunity by citing to "cases of controlling authority in their jurisdiction at the time of the incident" or "a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 617 (1999); *Kent v. Oakland County*, 810 F.3d 384, 395 (6th Cir. 2016). That said, "officials can still be on notice that their conduct violates established law even in novel factual circumstances" if "the state of the law . . . gave [the government officials] fair warning that their alleged [conduct] . . . was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).  Moreover, even without citation to a particular case, Plaintiffs can overcome qualified immunity if the facts are "particularly egregious." *Taylor v. Riojas*, 141 S. Ct. 52, 54 (2020). Here, and as reflected above, Sgt. Wolf and Ofcr. Lewis violated rights that were clearly established by published Sixth Circuit case law and/or a consensus of other circuit case law. That, in turn, divests them both of any defense of qualified immunity.

### D.  Plaintiff is entitled to partial summary judgment on his state law assault and battery claim against Sgt. Wolf

"A person is subject to liability for battery when he acts intending to cause a harmful or offensive contact, and when a harmful contact results." *Love v. Port Clinton*, 37 Ohio St.3d 98, 99, 524 N.E.2d 166 (1988).  Where officers act without lawful authority in arresting a Plaintiff, they commit an assault and battery.  *Kaylor v. Rankin*, 356 F. Supp. 2d 839, 854 (OHND 2005), *citing Love v. City of Port Clinton*, 37 Ohio St.3d 98, 99, 524 N.E.2d 166 (1988) (officer who

subdued and handcuffed the plaintiff committed intentional acts which, unless privileged, constituted a battery). Sgt. Wolf is liable for civil assault and battery.

### E. Plaintiff is entitled to partial summary judgment on his state law civil unlawful imprisonment and false arrest claims against Sgt. Wolf and Ofcr. Lewis

The Ohio Supreme Court has noted that "false arrest and false imprisonment as causes of action are indistinguishable." *Rogers v. Barbera*, 170 Ohio St. 241, 164 N.E.2d 162, 164 (Ohio 1960) (*quoting* 22 Am. Jur. False Imprisonment § 2-3). The court stated that "the essence of the tort consists in depriving the plaintiff of his liberty without lawful justification; and the good intention of the defendant does not excuse, nor does his evil intention create, the tort." *Id.* To prevail on a claim for false arrest/imprisonment, the plaintiff must demonstrate: "(1) the intentional detention of the person and (2) the unlawfulness of the detention." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 315 (6th Cir. 2005). An arrest without a probable cause is unlawful. *Id.* Malice is not an element of, and good faith is not a defense to, a claim of a false imprisonment/arrest. *Rankin*, 356 F. Supp. 2d 839, 855, *citing Brinkman v. Drolesbaugh*, 97 Ohio St. 171, 119 N.E. 451 (1918). As in *Rankin*, the tort was established here through the intentional detention of Mr. Kern by Sgt. Wolf and Ofcr. Lewis, without probable cause, including for the reasons stated above.

### F. Plaintiff is entitled to partial summary judgment on his state law malicious prosecution claim against Sgt. Wolf and Ofcr. Lewis

To sustain a claim of malicious prosecution, Plaintiff must prove: "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Trussell v. General Motors Corp.*, 53 Ohio St.3d 142, 144, 559 N.E.2d 732 (1990). In *Melanowski v. Judy*, 102 Ohio St. 153, 155, 131 N.E. 360 (Ohio 1921), the Ohio Supreme Court held that "in an action for malicious prosecution, the want of

18

probable cause is the gist of the action. If such be proven, the legal inference may be drawn that the proceedings were actuated by malice." *Id.*, paragraph one of the syllabus. Furthermore, for the purposes of malicious prosecution, malice is defined as "an improper purpose, or any purpose other than the legitimate interest of bringing an offender to justice." *Criss v. Springfield Township*, 56 Ohio St.3d 82, 85, 564 N.E.2d 440 (1990).

As discussed above, there was no probable cause. And, the prosecution terminated in Mr. Kern's favor. See Exhibit 25, Doc. 51-16. That leaves malice, which not only can be inferred through the lack of probable cause, *Melanowski*, 102 Ohio St. 153, but also is established through Sgt. Wolf's admission he has no basis to doubt Ofcr. Lewis' statement that Mr. Kern committed no crime, Ofcr. Lewis' admission to Mr. Kern that body camera captured everything and the prosecutor was good, and *post hoc* efforts by Sgt. Wolf, even continuing into his deposition testimony, to try to invent other crimes Mr. Kern could have been charged with. Likewise, the First Amendment retaliation also establishes an improper purpose. All of that is malice.

### G. There is no immunity for Sgt. Wolf or Ofcr. Lewis under state law immunity due to the fact that their actions were made with malicious purpose, in bad faith, or in a wanton or reckless manner

R.C. 2744.03 provides for immunity for police officers unless they took actions with a "malicious purpose, in bad faith, or in a wanton or reckless manner." Malicious purpose is defined as "the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct that is unlawful or unjustified." *Caruso v. State*, 136 Ohio App.3d 616, 620-21, 737 N.E.2d 563 (10th Dist. App. 2000); *Teramano v. Teramano*, 6 Ohio St. 2d 117, 118, 216 N.E.2d 375 (Ohio 1966). "Bad faith has been defined as the opposite of good faith, generally implying or involving actual or constructive fraud or a design to mislead

or deceive another." *Id.*  And "reckless conduct refers to an act done with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk of physical harm and that such risk is greater than that necessary to make the conduct negligent."

As here, suggestions that an officer is inventing an after-the-fact excuse to justify illegal or unconstitutional action is sufficient to establish these elements. *Knox v. Hetrick*, 2009-Ohio-1359 (8th Dist. App. 2009).  In fact, malice may be inferred from proof of lack of probable cause. *Melanowski v. Judy*, 102 Ohio St. 153, 155, 131 N.E. 360 (1921).  In all events, we incorporate that portion of our Opposition to Defendants' Motion for Summary Judgment (Doc. 68 at pp.18-20, 47-48) at pages 18-20 and 47-48, in further support of malicious purpose, bad faith, wantonness, and/or recklessness.

## I.       CONCLUSION

Plaintiff's Motion for Partial Summary Judgment should be granted.

Respectfully submitted,

/s/ Christopher Wiest_____          /s/Thomas B. Bruns_____
Christopher Wiest (Ohio 0077931)          Thomas B. Bruns (Ohio 0051212)
Chris Wiest, Atty at Law, PLLC            Bruns, Connell, Vollmar, Armstrong
50 E. Rivercenter Blvd., Ste. 1280        4555 Lake Forrest Dr., Suite 330
Covington, KY 41011                       Cincinnati, OH 45242
513/257-1895 (v)                          513-312-9890 (v)
859/495-0803 (f)                          tbruns@bcvalaw.com
chris@cwiestlaw.com
**Attorneys for Plaintiff**

### CERTIFICATE OF SERVICE AND COMPLIANCE

I certify that I have served a copy of the foregoing upon Counsel for the Defendants, this 20 day of December, 2024, by filing same via CM/ECF.  I further certify that this Reply in under 20 pages, as required by L.R. 7.1(f) for this standard track case.

/s/ Christopher Wiest_____