IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Demetrius Kern, | : | Case No.: 1:23-cv-01327 |
| | : | |
| Plaintiff, | : | Judge Charles Esque Fleming |
| | : | |
| vs. | : | |
| | : | |
| Naftali Wolf, *et al.*, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT SERGEANT NAFTALI WOLF'S REPLY IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT (DOC #63)**

It is bold. Plaintiff takes the position that so long as he was yelling at a police officer, while he obstructs the police officer's work, he cannot be charged with obstruction of justice because his profane yelling is "protected speech." Bold but silly. Obviously, Plaintiff cannot justify his obstructive conduct just because it consisted of speech — i.e., claiming the obstruction charge was a violation of his First Amendment rights. To do so would invite anyone to obstruct a police officer's business—with no consequence—so long as they obstructed orally by yelling at the police officer.

Knowing that summary judgment is mandatory because probable cause existed for his arrest, Plaintiff files a fifty-page brief hoping to create an issue of fact where none exists. Sergeant Wolf's Motion for Summary Judgment should be granted for multiple reasons set forth in both Sergeant Wolf's MSJ and Memo in Opp previously filed. These reasons are highlighted below.

**1. As A Matter of Law, Probable Cause Existed for the Obstruction Charge.**

Plaintiff characterizes his actions as causing a "one second" delay in Officer Lewis' duties. That is just not true. The following is undisputed:

- Officer Lewis was engaged in a traffic stop where, for her safety, she should have been focused on the person she was stopping.[1]

- Officer Lewis' duties required her to be laser focused on the stopped suspect.

- As Officer Lewis was approaching her traffic stop, Plaintiff (after failing to yield), pulled his car over, got out, and began profanely yelling at her.

- There was no reason to yell at Officer Lewis, other than to have her turn her attention from the traffic stop to engage Plaintiff.

- Officer Lewis had to request backup to deal with Plaintiff because there was a "confrontation" with Plaintiff.

- When Sergeant Wolf arrived minutes later, this traffic stop had not been completed because Officer Lewis was engaged in an argument with Plaintiff —the argument Plaintiff stopped to have.

- Sergeant Wolf left what he was doing on patrol to come and back Officer Lewis up, therefore obstructing his own official duties.

- It was not until Sergeant Wolf arrived that Officer Lewis was able to go back and finish the traffic stop.

(Lewis. Dep. 116: 11-12, 133: 21-22, 135:14-23, 140: 9-16, 189:8-19, 198:21-23; Wolf Dep. 174: 5-13, Ex. 16; Britton Dep. 160: 20-161:22, 166:17-22).

---

[1] The person was stopped under suspicion of being involved in a felony domestic violence situation.

2

With these facts, there can be no dispute that an obstruction occurred.

For starters, Plaintiff's argument that there was only a one-second delay and therefore not a substantial stoppage ignores three things. First, any delay or impediment to the officer's duty is sufficient for obstruction. (*See* Doc. #66, Page ID #2266-2268 (citing multiple Ohio cases which are clear that any delay is sufficient)). Second, the traffic stop was not completed by the time Sergeant Wolf arrived. (Wolf Depo. 174:5-13). And Officer Lewis was not able to complete the traffic stop until Sergeant Wolf took over the "confrontation" with Plaintiff. (Lewis Depo. 143:11-17, 179:11-14; Wolf Depo. 325:7-327:1). Third, Plaintiff ignores what the "safe" execution of Officer Lewis' duties were, and that the *safe execution was obstructed*. There is no dispute in the record that Officer Lewis should have been focused solely on the stopped suspect for her safety.[2] And there is no dispute that during the stop she was forced to turn away—stopping what she should have done for *her safety*. (Britton Depo. 164:16 – 165:13). So, there's no question that Plaintiff's conduct interrupted and obstructed the "safe" performance of Officer Lewis' duties —which should always be considered substantial**.** (Britton Depo. 159:17-21); *see also Pa. v. Mimms*, 434 U.S. 106, 111 (1977) (recognizing the importance of police officers safely conducting traffic stops.).

Next, Plaintiff disingenuously argues there was no evidence that he intended to obstruct the stop. While neither officer could see into Plaintiff's mind, there was clearly sufficient evidence from which this could be inferred. *See United States v. Ledbetter*, 929 F.3d 338, 355 (6th Cir. 2019) (finding that circumstantial evidence alone can support a conviction); *see also United States v. Lee*, 919 F.3d 340, 359 (6th Cir. 2019) (finding a rational juror could conclude a defendant intentionally obstructed justice based on circumstantial evidence.). To be sure, it was obvious that

---

[2] Not even Plaintiff's expert disputes this.

Officer Lewis had pulled over a potential suspect and was engaged in a traffic stop. (Lewis Depo. 135:3-23; Wolf Depo. 326:8-14) So when Plaintiff (with a law enforcement background) gets out of the car and starts yelling profanely at Officer Lewis, it is completely logical to infer that it was Plaintiff's intent to obtain Officer Lewis' attention. (Lewis Depo. 135:1-4).

What is Plaintiff arguing here? That when he yelled at Officer Lewis while she was engaged in a traffic stop he wasn't trying to get her attention? That he just assumed she would keep going and address him later? While nobody can read Plaintiff's mind, the answer is obvious—he intended to grab Officer Lewis' attention with his profanity laced comments. And that is sufficient for the officers to infer that his intent was to draw Officer Lewis away from what she was doing. So even if the police didn't know what was in Plaintiff's mind for a certainty, what he wanted could easily be inferred. *See Lee*, 919 F.3d at 359. In fact, to believe he wanted anything else but to get Officer Lewis' attention, when she should have been laser focused on her stop, is folly.

Additionally, Plaintiff's hand-picked quotes from various parts of the investigation ignores what the actual deposition testimony was. Officer Lewis clearly believed that Plaintiff obstructed and interfered with her traffic stop. (Lewis Depo. 147:9-10). Moreover, Sergeant Wolf clearly explained in his deposition why he thought there was probable cause that obstruction occurred. (Wolf Depo 178:15 – 179:6).[3]

The facts are not in dispute. Officer Lewis was engaged in a traffic stop—where safe execution of it required her to not take her focus off the suspect, even for a second. (Britton Depo.

---

[3] To be sure, probable cause for Plaintiff's arrest existed through Officer Lewis and Sergeant Wolf's independent knowledge of the situation, as well as through the collective knowledge doctrine. And under the collective knowledge doctrine, one officer's knowledge can be imputed onto other arresting officers –meaning that probable cause can rest upon the collective knowledge of the police. *United States v. McManus*, 560 F.2d 747, 750 (6th Cir. 1977) (*See also* Def. Wolf's Memo in Opp. to Pltf's Mtn for Sum. Judg. Doc. #66, Page ID #2268-2275).

4

160:20 – 161:22). Plaintiff pulled over and profanely yelled at Officer Lewis —the only intent of which could be to grab her attention away from what she was doing. (Lewis Depo. 135:1-4). And Plaintiff was successful. Officer Lewis had to turn to deal with him, take time to call for backup and did not complete the traffic stop until Sergeant Wolf arrived. (Lewis Depo. 143:11-17, 179:11-14; Wolf Depo. 325:7-327:1). It was an unsafe action. (Britton Depo. 160:20 – 161:22). This is clearly sufficient for probable cause that obstruction occurred. And the establishment of probable cause is fatal for Plaintiff's claims.

2. **Plaintiff's First Amendment Claim Does Not Immunize Him from An Obstruction Charge.**

Plaintiff claims essentially that because he was complaining to police officers about their duty —in a manner that obstructed the safe completion of their duties— it immunizes him from an obstruction charge. This is not true for several reasons.

*First*, there is no evidence that the verbal complaints against the officers were a "substantial or motivating factor" that resulted in his arrest. *Smith v. Campbell,* 250 F3d. 1032, 1037 (6 Cir. 2001). Moreover, because probable cause exists, there can be no retaliatory action claim. *Reichle v. Howards*, 566 US 658, 663 (2012).

*Second,* it makes sense that Plaintiff cannot hide his obstruction under the guise of alleged protected speech. If this were true, a citizen could always interrupt an officer's safe performance of their duties so long as he was yelling at the officer about their conduct. And here, when Plaintiff records Lewis (Ex. 11 at 19:3:00) and threatens to file a complaint, probable cause has already been established for his arrest. (Ex. 12 at 1:28). Simply put, by yelling purposefully and profanely at Officer Lewis—and drawing her attention away from the *safe* exercise of her duties— Plaintiff had provided probable cause for the obstruction charge. Actions he took after that cannot immunize him for the obstruction.

5

### 3. Plaintiff's Claim of Excessive Force Fails

Plaintiff was handcuffed, which is customary in an arrest. *Graham v. Connor*, 490 US 386, 396 (date); *Palshook v. Jarret,* 120F. Supp. 2d, 641, 656 (N.D. Ohio 2000). Simply put, the use of handcuffs alone is not enough. *Palshook v. Jarret,* 120 F Supp. 2d, 656. So, Plaintiff tries to rely upon *Hughey v. Eastlick*, 3 F.4th 283 (6th Cir. 2021) and the court's three-part test discussing whether unduly tight or excessively forceful handcuffing constitutes excessive force. (Doc #38, PAGEID #2328). Yet, Plaintiff ignores a crucial undisputed fact. Sergeant Wolf immediately loosened the handcuffs at Plaintiff's request. (Doc. # 48, Ex. 12 at 4:00-4: 10; Ex. 11 at 6:11-6:19). And once in the cruiser, Kern never complained to Sergeant Wolf that the cuffs were too tight. (Kern Dep. 104:13-18).

Moreover, there is no evidence that there was some physical injury resulting from handcuffing because there was no bruising, marks, or otherwise. So, *Hughey* does not apply. In *Hughey*, the officer ignored the suspect's complaints, and there was evidence of some physical injury from the cuffs being too tight. *Hughey v. Eastlick*, 3 F.4th 283, 289 (6th Cir. 2021).

Plaintiff's attempt to put forth non-physician experts to declare that a torn rotator cuff resulted from handcuffs that were too tight and a "shoulder yank" fails for the obvious reason that their experts are not doctors. Plaintiff's expert's affidavit, Jennifer Knight, she discusses the size of Mr. Kern and the need to use two handcuffs versus one. But the immunity law requires that Plaintiff provides a case on all fours that demonstrates the failure to use two handcuffs on a gentleman this large would be a constitutional violation. *Wegener v. City of Covington*, 933 F 2d 390, 392 6 Cir. 1991. And Plaintiff does not cite a case that indicates what Plaintiff's expert says Sergeant Wolf did was a constitutional violation of a clearly established right at the time this occurred.

6

4. **Plaintiff's Entire Case is Predicated on the Unsubstantiated Claim that Plaintiff's Yelling at the Officers and Threatening to File a Complaint was the Reason he was Charged with Obstruction.**

Everything Plaintiff argues comes from a premise that because Plaintiff threatened a complaint and allegedly engaged in protected activity, his arrest for obstruction must have been the motivating factor. This argument, of course, ignores the fact that Plaintiff clearly obstructed and probable cause existed. And the mere fact that he was yelling at the police officers, in the course of his obstruction, cannot immunize him for this.

*First*, there's absolutely no testimony that Plaintiff's threat of filing a complaint motivated the arrest. (Wolf Depo. 201:13-18 (Sergeant Wolf explaining the reason he arrested Plaintiff was for interfering with Officer Lewis' traffic stop); Lewis Depo. 148:10-18 (Officer Lewis explaining Plaintiff refused to identify and told Sergeant Wolf "arrest me")).

*Second*, the case law Plaintiff cites concerning the temporal connection between the exercise of free speech and an arrest is inapplicable. Particularly, none of those cases deal with a plaintiff clearly obstructing police before he engaged in his alleged free speech. For example, in *Mickey v. Zeidler*, 516 F.3d 516, 525 (6th Cir. 2008), the "protected activity" and "adverse action" specifically dealt with establishing a prima facie case of employment discrimination and had nothing to do with a First Amendment retaliation claim. *See also Dye v. Office of the Racing Comm'n,* 702 F.3d 286, 306 (6th Cir. 2012) (Plaintiff claimed they were fired over political disagreements); *Anders v. Cuevas*, 984 F.3d 1166, 1177-1178 (6th Cir. 2021) (Plaintiff was in a towing dispute with city officials); *Rudd v. City of Norton Shores*, 977 F.3d 503, 515 (6th Cir. 2020) (Plaintiff was detained for allegedly violating a child protection); *Buddenberg v. Weisdack*, 939 F.3d 732, 741 (6th Cir. 2019) (Plaintiff claimed she was suspended for making ethical complaints about other employees); *Singfield v. Akron Metro. Housing Auth.*, 389 F.3d 555, 563 (6th Cir. 2004) (Plaintiff claimed they were fired over filing an EEOC charge).

If Plaintiff were right, the fact that he engaged in protected speech effectively immunized him from arrest —even when he distracted an officer from the safe exercise of her duties. No case has ever held that the mere fact that a plaintiff engaged in protected speech —during the course of an obstruction— immunizes them from an obstruction charge. Rather, there is applicable case law that suggests while actions such as verbal criticism of the police are protected under the First Amendment, when those actions obstruct or impede officers in the performance of their duties they are not protected. *See City of Parm v. Odolecki*, 8th Dist. Cuyahoga, 2017-Ohio-2979 (holding that a plaintiff's recording and filming interfered with the police's interaction with a third party and was obstruction). Moreover, if there was probable cause for the acts the officer took, there can be no retaliation claim. *Reichle v. Howards*, 566 U.S. 658, 663 (2012). And so long as there was probable cause for the arrest, that is sufficient.

**5. Sergeant Wolf is Entitled to Qualified Immunity.**

The Plaintiff's argument on qualified immunity is flawed for multiple reasons.

*First,* the Plaintiff has yet to submit a case on all fours. *Wegner,* 933 F 2d, 392. There is no case that says that the distraction of an officer from the **safe** performance of her duties—even for a minute—is not obstruction. Likewise, there is no case that suggests the fact that Sergeant Wolf was taken off the patrol he was engaged in, because Officer Lewis felt there was a "confrontation", would not qualify as obstruction. (Wolf Depo. 325:4-11). Finally, Plaintiff cites no case that clearly establishes that someone of Mr. Kern's size deserves two handcuffs and a failure to provide those is excessive force. As such, failing to clearly establish a right, summary judgment should be granted. *See Rivas-Villegas v. Cortesluna* 595 U.S. 1, 5-6 (2021).

*Second,* Plaintiff has not demonstrated a clearly established right to protection from an obstruction of justice arrest just because—during the course of the obstruction—Plaintiff allegedly

8

engaged in protected conduct. There is not a single case—on all fours—where a plaintiff yelled at an officer to get her attention, drawing herself away from the safe exercise of her duties, where it was later deemed unconstitutional to charge the plaintiff with obstruction because along the way they engaged in protected speech.

Simply put, the Defendants have cited a mountain of Ohio law and facts from the encounter which demonstrate an obstruction occurred. Yet, there is not a single case which indicates an obstruction—under these circumstances—did not occur. Or that it was a violation of a clearly established right. As such, as a matter of law, immunity bars the claims.

### 6. Plaintiff's State Law Claims Fail Because Sergeant Wolf is Entitled to Immunity Under R.C. 2744.

Plaintiff maintains that Sergeant Wolf acted with malice and is therefore not entitled to immunity. This argument fails for several reasons.

*First,* as discussed above, probable cause clearly existed for Plaintiff's arrest.

*Second,* Plaintiff actually committed the crimes. The fact that Officer Lewis and Sergeant Wolf were doing their jobs negates any arguments of malice or bad faith. *Alegha v. Cameron*, 2009-Ohio-4886, ¶23. Simply put, Plaintiff broke the law and that in and of itself demonstrates there is no bad faith here.

### 7. Plaintiff's State Law Claims Fail as a Matter of Law.

As discussed above, there is no question Plaintiff obstructed and probable cause existed for his arrest. As such, Plaintiff's malicious prosecution and false arrest claims fail. See *Henderson v. Euclid,* 2015-Ohio-15, ¶55 (8th Dist.); *Hinton v. Vil of Newburgh,* 2016-Ohio-27, ¶13 (8th Dist.). And because Sergeant Wolf was acting of legal authority—effecting a lawful arrest—he did not use excessive force. See *D'Agastino v. City of Warren,* 75F. App. 990, 995 (6th Cir. 2003) (finding that an officer may only be liable for assault and battery if he uses an unreasonable amount of force

9

to arrest an individual). As such, Plaintiff's civil assault and battery claims fail for the simple reason that putting handcuffs on someone and putting them in a car, after loosening the handcuffs because they were too tight, is not excessive force.

**8. Plaintiff's Request for Additional Discovery is Immaterial.**

Plaintiff argues that additional time is needed for discovery so he can obtain Sergeant Wolf's medical records. Plaintiff opines that he believes there will be counseling in the records discussing racial animus. (Declaration of Christopher Weist, Doc. #68-3, Page ID 2385). But there is no precedent for a police officer's records to be scrutinized for counseling in racial animus for Plaintiff to survive an immunity defense. More importantly, Plaintiff's counsel apparently flat out misrepresented to the court as to why he was seeking these records. Nowhere in the Motion to Compel does he argue that records will show evidence of racial animus. (*See* Doc. #33, Page ID 140). And there is nothing in the document provided to the Chief—that's one document—that references any racial animus. As such, to permit Plaintiff to conduct a fishing expedition of an officer's medical records for racial animus is unprecedented and obnoxious. Indeed, additional discovery is unnecessary for the Court's consideration of Defendants' Motions for Summary Judgment.

Respectfully submitted,

*/s/ Patrick Kasson*
Patrick Kasson (0055570)
Thomas N. Spyker (0098075)
Thomas H. Kaczkowski (0103039)
**REMINGER CO., LPA**
200 Civic Center Drive, Suite 800
Columbus, Ohio 43215
Tel: 614-232-2418 | Fax: 614-232-2410
pkasson@reminger.com
tspyker@reminger.com
tkaczkowski@reminger.com

*Counsel for Defendant Naftali Wolf*

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document was served by operation of this court's CM/ECF electronic filing system this 30th day of December, 2024.

*/s/ Patrick Kasson*
Patrick Kasson (0055570)